# U.S. Bankruptcy Court
## United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
## Adversary Proceeding #: 25–10037–ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn          *Date Filed:* 09/01/25
*Lead BK Case:* 25–00200
*Lead BK Title:* JPK Newco, LLC
*Lead BK Chapter:* 11
*Demand:*
  *Nature[s] of Suit:*  01  Determination of removed claim or
                cause

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−−−

**Developer RE1 LLC**                     represented by **James D. Sadowski**
1629 K Street NW                          Greenstein DeLorme & Luchs, PC
Suite 300                                 801 17th Street, N.W.
Washington, DC 20006                      Suite 1000
                                          Washington DC, DC 20006
                                          202–452–1400
                                          Fax : 202–452–1410
                                          Email: jds@gdllaw.com
                                          *LEAD ATTORNEY*

                                          **Alexandria Jean Smith**
                                          Greenstein DeLorme and Luchs PC
                                          801 17th Street NW
                                          Suite 1000
                                          Washington, DC 20006
                                          202–452–1400
                                          Email: ajs@gdllaw.com

                                          **Jeremy S. Williams**
                                          Kutak Rock LLP
                                          1021 East Cary Street
                                          Suite 810
                                          Richmond, VA 23219
                                          804–343–5257
                                          Email: jeremy.williams@kutakrock.com

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−−−

**423 Kennedy St Holdings LLC**           represented by **James D. Sadowski**
1629 K Street, NW                         (See above for address)
Suite 300                                 *LEAD ATTORNEY*
Washington, DC 20006
                                          **Alexandria Jean Smith**
                                          (See above for address)

                                          **Jeremy S. Williams**
                                          (See above for address)

V.

*Defendant*

1

——————————————————

**DP Capital LLC**                                      represented by **Maurice Belmont VerStandig**
                                                       The VerStandig Law Firm, LLC
                                                       9812 Falls Road
                                                       #114–160
                                                       Potomac, MD 20854
                                                       301–444–4600
                                                       Email: mac@mbvesq.com

*Defendant*
——————————————————

**Russell Drazin**                                     represented by **Maurice Belmont VerStandig**
Pardo Drazin LLC                                       (See above for address)
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

*Defendant*
——————————————————

**Daniel Huertas**                                     represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                       (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
——————————————————

**SF NU, LLC**                                         represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                       (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
——————————————————

**WCP Fund I LLC**                                     represented by **Maurice Belmont VerStandig**
c/o Maurice B. VertSandig, Esq.                        (See above for address)
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012
301–444–4600

*Defendant*
——————————————————

**JPK NewCo LLC**                                      represented by **Maurice Belmont VerStandig**
8401 Greensboro Drive                                  (See above for address)
Suite 960
McLean, VA 22102

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 09/01/2025 | | 1 | Adversary case 25–10037. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A – All Docket Entries (Part I) # 2 Exhibit A – All Docket Entries |

| | | | |
|---|---|---|---|
| | | | (Part II) # 3 Exhibit A – All Docket Entries (Part III)) (01 (Determination of removed claim or cause)) (VerStandig, Maurice) (Entered: 09/01/2025) |
| 09/01/2025 | | 2 | Receipt of Notice of Removal( 25–10037–ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2866663. Fee Amount 350.00 (re:Doc# 1) (U.S. Treasury) (Entered: 09/01/2025) |
| 09/01/2025 | | 3 | Motion for Remand Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Williams, Jeremy) (Entered: 09/01/2025) |
| 09/01/2025 | | 4 | Motion *for Expedited Hearing on Claimants' Second Remand Motion* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Motion for Remand.) (Williams, Jeremy) (Entered: 09/01/2025) |
| 09/04/2025 | | 5 | Minute Entry RE: Hearing Held. (Re: Related Document: 4 Motion for Expedited Hearing.) Appearances: Maurice VerStandig, Jeremy Williams. Motion for Expedited Hearing Resolved, Motion for Remand to be Noticed by Filer. (Mathewes, Aimee) (Entered: 09/05/2025) |
| 09/05/2025 | | 6 | PDF with attached Audio File. Court Date & Time [ 9/4/2025 12:06:49 PM ]. File Size [ 25008 KB ]. Run Time [ 00:52:06 ]. (Audio Duplicate Docket.). (admin). (Entered: 09/06/2025) |
| 09/15/2025 | | 7 | Objection *and Statement of No Consent to Final Orders* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 09/15/2025) |
| 10/06/2025 | | 8 | **INCORRECT EVENT USED, REDOCKETED BY CLERK'S OFFICE AT ECF NO. 10.** Motion *for Withdrawal of the Reference* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit Relevant Documents # 2 Exhibit Docket Sheet) (Smith, Alexandria) CORRECTIVE ENTRY: INCORRECT EVENT USED. MODIFIED TO EDIT TEXT on 10/8/2025 (CA). (Entered: 10/06/2025) |
| 10/06/2025 | | 10 | DISREGARD THIS ENTRY – ATTY. FILED CORRECTION AT ECF NO. 11. Motion for Withdrawal of Reference . Fee Amount $199. Filed by 423 Kennedy St Holdings LLC , Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Respondent Designation due by 10/20/2025. Transmission of Withdrawal of Reference Due by 11/5/2025. (Attachments: # 1 Exhibit Relevant Docs # 2 Exhibit Docket Sheet) (Alde, Claude) (Entered: 10/08/2025) |
| 10/07/2025 | | 9 | DISREGARD DOCKET ENTRY– ENTRY WAS REDOCKETED BY CLERK'S OFFICE AT ECF NO. 10. Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)8 Motion) Deficient Pleading(s)/Document(s) due by 10/21/2025. (Alde, Claude) Modified on 10/8/2025 (CA). (Entered: 10/07/2025) |
| 10/08/2025 | | 11 | (CORRECTION) Motion for Withdrawal of Reference . Fee Amount $199 Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:8 Motion, 10 Motion for Withdrawal of Reference.) Respondent Designation due by 10/22/2025 for 10,. Transmission of Withdrawal of Reference Due by 11/7/2025 for 10,. (Attachments: # 1 Exhibit Relevant Documents # 2 Exhibit Docket Sheet)(Smith, Alexandria) CORRECTIVE ENTRY: Modified TO EDIT |

| | | | |
|---|---|---|---|
| | | | TEXT on 10/10/2025 (CA). (Entered: 10/08/2025) |
| 10/08/2025 | | 12 | Receipt of Motion for Withdrawal of Reference( 25–10037–ELG) [appeal,mwdref] ( 199.00) Filing Fee. Receipt numberA2881069. Fee Amount 199.00 (re:Doc# 11) (U.S. Treasury) (Entered: 10/08/2025) |
| 10/22/2025 | | 13 | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:11 Motion for Withdrawal of Reference.) (VerStandig, Maurice) (Entered: 10/22/2025) |
| 10/29/2025 | | 14 | Reply Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:8 Motion.) (Smith, Alexandria) (Entered: 10/29/2025) |

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Special Counsel for JPK NewCo LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | |
| JPK NewCo LLC, | Case No. 25-200-ELG |
| Debtor. | Chapter 11 |
| | |
| Developer RE1 LLC, | |
| Plaintiff, | Adv. Case No. _____ |
| | State Court Case 2022-CAB-005935 |
| v. | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; SF NU, LLC; WCP Fund I LLC; and JPK NewCo LLC, | |
| Defendants. | |
| | |
| 423 Kennedy St Holdings LLC, | |
| Plaintiff, | State Court Case 2022-CAB-005935 (State Court Cases Consolidated) |
| v. | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; WCP Fund I LLC; and JPK NewCo LLC, | |
| Defendants. | |

1

5

<u>**NOTICE OF REMOVAL**</u>

Comes now JPK NewCo LLC ("JPK"), by and through undersigned counsel, pursuant to Section 1452 of Title 28 of the United States Code, Section 1334 of Title 28 of the United States Code, and <mark>Federal Rule of Bankruptcy Procedure 9027</mark>, and hereby gives notice of the removal of the above-captioned consolidated matters from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia (which, as noted *infra*, results in the referral of the matter to the United States Bankruptcy Court for the District of Columbia), and in support thereof notes as follows:

**The Removed Cases**

1.      These are civil actions commenced in the Superior Court of the District of Columbia by Developer RE1 LLC ("DRL"), on or about December 16, 2022, and by 423 Kennedy St Holdings LLC ("423 Kennedy"), on or about July 13, 2023, with the two cases being subsequently consolidated on or about June 11, 2024.

2.      DRL owns the real property located at 5501 First Street, NW, Washington, DC 20011 (the "DRL Property").

3.      423 Kennedy owns the real property located at 423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property").

4.      WCP Fund I LLC ("WCP") loaned monies to both DRL and 423 Kennedy, securing such loans with deeds of trust fixed upon the DRL Property and the 423 Kennedy Property, respectively.

5.      WCP declared both loans to be in default following the occurrence of various breaches of the promissory notes and deeds of trust; despite such defaults, WCP permitted each borrower until the maturity date of the loans to pay off the underlying promissory notes.

2

6.      When neither 423 Kennedy nor DRL paid their correlative loans at maturity, WCP commenced the process of foreclosing upon the respective properties.

7.      These cases were brought by 423 Kennedy and DRL in an effort to (i) enjoin WCP from foreclosing; (ii) assert WCP did not have the right to declare defaults under the promissory notes and deeds of trust; and (iii) seek various forms of damages, including forfeiture and monetary damages.

8.      423 Kennedy and DRL are also suing (i) Russell Drazin, the substitute trustee under the deeds of trust, on a theory of breach of fiduciary duty; and (ii) Daniel Huertas, DP Capital LLC, and SF NU, LLC, on various theories (though SF NU, LLC is only a party to one of the two consolidated cases), some of which are pegged to ownership of the promissory notes and rights under the deeds of trust.

9.      Certain promissory notes and correlative deeds of trust, implicated in these two consolidated cases, are now held by JPK, the above-captioned debtor.

10.      423 Kennedy and DRL are also suing JPK as part of these consolidated actions, seeking similar relief and endeavoring to avoid the conveyance of two promissory notes and correlative deeds of trust to JPK.

11.      The core litigation goals in these two cases, on the parts of DRL and 423 Kennedy, appear to be frustrating the collection efforts of JPK and the other defendants, challenging the indebtedness owed and seeking relief from the terms of commercial loan documents.

### The JPK Bankruptcy and Related Adversary Proceeding

12.      On May 27, 2025, JPK filed a voluntary petition for chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the United States Code, therein electing to proceed under Subchapter V of chapter 11.

13. At all times since, JPK has been a debtor-in-possession.

14. DRL has filed a proof of claim, in JPK's bankruptcy case, therein expressly indicating the facts supporting such claim are "outlined" in the above-captioned, now-removed civil litigation.

15. 423 Kennedy has also filed a proof of claim in JPK's bankruptcy case, therein expressly indicating the facts supporting such claim are "outlined" in the above-captioned, now-removed civil litigation.

16. In connection with JPK's chapter 11 case, JPK has brought suit against DRL and 423 Kennedy seeking, *inter alia*, a turnover of monies due and owing under fully matured promissory notes, alongside varies forms of declaratory relief. *See JPK NewCo LLC v. Developer RE1 LLC, et al.*, Case No. 25-10015-ELG (Bankr. D.D.C. 2025).

17. The promissory notes at issue in the foregoing adversary proceeding are amongst those at issue in this now-removed litigation.

18. The declaratory relief sought in the foregoing adversary proceeding overlaps, partially but substantively, with various issues to be adjudicated in this now-removed litigation.

### Core Status

19. Insofar as the claims brought by DRL and 423 Kennedy in this case now inform proofs of claim in JPK's bankruptcy, this is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

20. Insofar as JPK is also asserting claims against DRL and 423 Kennedy, emanating from the same subject matter as the proofs of claim lodged by DRL and 423 Kennedy, this is a core proceeding. 28 U.S.C. § 157(b)(2)(C).

21. Insofar as this case concerns the same subject matter as JPK's suit against DRL and 423 Kennedy for turnover, this is a core proceeding. 28 U.S.C. § 157(b)(2)(E).

22. Insofar as this now-removed litigation concerns an allegation that JPK received assets via fraudulent conveyance, this is a core proceeding. 28 U.S.C. § 157(b)(2)(H).

23. Insofar as this now-removed litigation challenges the extent of liens held by JPK, and challenges JPK's ability to foreclose upon those liens, this is a core proceeding. 28 U.S.C. § 157(b)(2)(K).

24. Insofar as this now-removed litigation seeks an order permanently enjoining JPK from utilizing lien instruments that are assets of its estate, this is a core proceeding. 28 U.S.C. § 157(b)(2)(M).

25. Insofar as this now-removed litigation seeks to prevent JPK from liquidating two assets of the bankruptcy estate, and the outcome of this litigation will profoundly impact JPK's reorganization, this is a core proceeding. 28 U.S.C. §§ 157(b)(2)(O), 157(b)(2)(A).

### Formalistic Recitations

26. As acknowledged by the Superior Court of the District of Columbia, the proceedings in these two cases are subject to the automatic stay set forth in Section 362 of Title 11 of the United States Code. Such stay has never been terminated.

27. Pursuant to DCt.LBR 5011-1, these consolidated cases are automatically referred to the United States Bankruptcy Court for the District of Columbia upon being removed from the Superior Court of the District of Columbia.

28. Attached hereto as Exhibit A is "a copy of all process and pleadings," together with all docket entries, in the consolidated cases.

29. A copy of this notice is being docketed in the Superior Court of the District of Columbia, in a manner substantially contemporaneous with its filing herein, sans Exhibit A.

30. The Defendants consent to the entry of final orders or judgments of the United States Bankruptcy Court for the District of Columbia.

Respectfully submitted,

Dated: September 1, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

*[Certificate of Service on Following Page]*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of September, 2025, a copy of the foregoing is being tendered to a third party commercial mailing vendor to be sent, via first class mail, postage prepaid, on September 2, 2025, to:

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, NW
Suite 1000
Washington, DC 20006
*Counsel for Developer RE1 LLC and*
*423 Kennedy St Holdings LLC*

Alexandria J. Smith, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, NW
Suite 1000
Washington, DC 20006
*Counsel for Developer RE1 LLC and*
*423 Kennedy St Holdings LLC*

423 Kennedy St Holdings, LLC
1629 K Street, NW
Suite 300
Washington, DC 20006

Developer RE1 LLC
1629 K Street, NW
Suite 300
Washington, DC 20006

A copy is also being sent to each of the foregoing lawyers, electronically, through the docketing of this notice in the consolidated Superior Court case.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

7

**United States Bankruptcy Court**
**for the District of Columbia**
**Angela D. Caesar, Clerk**
**333 Constitution Avenue, NW**
**Washington, DC 20001**
**(202) 354-3000**

Date: May 12, 2025

Clerk's Office
Superior Court for the District of Columbia
500 Indiana Avenue, NW
Room JM-170
Washington, DC 20001

      **RE:   YSRTL LLC TES CUSTODIAN v. WATERLOO RESCUE, LLC**
              **D.C. Superior Court Case No: 2022-CAB-005935**
              **Adversary Proceeding #: 24-10023-ELG**

Dear Clerk:

      On <u>May 12, 2025,</u> this Court signed an order remanding the above-entitled case to your Court. Enclosed is a copy of that order together with our case file and a certified copy of the docket entries.



                        ANGELA D. CAESAR, Clerk

                By:        <u>Megan G. Bleskoski</u>
                         Deputy Clerk

## U.S. Bankruptcy Court
## United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
## Adversary Proceeding #: 24−10023−ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn
*Lead BK Case:* 23−00217
*Lead BK Title:* Charles Paxton Paret
*Lead BK Chapter:* 7
*Demand:* $3000000
   *Nature[s] of Suit:*

*Date Filed:* 07/04/24

| | | |
|---|---|---|
| 01 | Determination of removed claim or cause |
| 21 | Validity, priority or extent of lien or other interest in property |
| 91 | Declaratory judgment |
| 72 | Injunctive relief − other |

### Plaintiff

**Developer RE1 LLC**
1629 K Street NW
Suite 300
Washington, DC 20006

represented by **James D. Sadowski**
Greenstein DeLorme & Luchs, PC
801 17th Street, N.W.
Suite 1000
Washington DC, DC 20006
202−452−1400
Fax : 202−452−1410
Email: jds@gdllaw.com
*LEAD ATTORNEY*

**Alexandria Jean Smith**
Greenstein DeLorme and Luchs PC
801 17th Street NW
Suite 1000
Washington, DC 20006
202−452−1400
Email: ajs@gdllaw.com
*LEAD ATTORNEY*

### Plaintiff

**423 Kennedy St Holdings LLC**
1629 K Street, NW
Suite 300
Washington, DC 20006

represented by **James D. Sadowski**
(See above for address)
*LEAD ATTORNEY*

**Alexandria Jean Smith**
(See above for address)
*LEAD ATTORNEY*

V.

### Defendant

**WCP Fund I LLC**
c/o Maurice B. VertSandig, Esq.
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665

represented by **Maurice Belmont VerStandig**
The VerStandig Law Firm, LLC
9812 Falls Road
#114−160
Potomac, MD 20854

1

Henderson, NV 89012
301–444–4600

301–444–4600
Email: mac@mbvesq.com

### Defendant

**DP Capital LLC**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

### Defendant

**SF NU, LLC**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

### Defendant

**Daniel Huertas**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

### Defendant

**Russell Drazin**
Pardo Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

represented by **Maurice Belmont VerStandig**
(See above for address)

### Defendant

**JPK NewCo LLC**
8401 Greensboro Drive
Suite 960
McLean, VA 22102

represented by **Maurice Belmont VerStandig**
(See above for address)

### Defendant

**Shaheen Sairi**

represented by **Shaheen Sairi**
PRO SE

| Filing Date | # | Docket Text |
|---|---|---|
| 07/04/2024 | 1 | Adversary case 24–10023. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A – Meeting of Creditors Transcript # 2 Exhibit B – All Pleading |

2

14

| | | | |
|---|---|---|---|
| | | | and Process, Together with All Docket Entries) (01 (Determination of removed claim or cause),21 (Validity, priority or extent of lien or other interest in property)) (VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 2 | Receipt of Notice of Removal( 24−10023−ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2758216. Fee Amount 350.00 (VerStandig, Maurice) (re:Doc# 1) (U.S. Treasury) (Entered: 07/04/2024) |
| 07/04/2024 | | 3 | Notice of Hearing *on Motion of SF NU, LLC to Dismiss Second Amended Complaint* Filed by SF NU, LLC (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A − Motion to Dismiss # 2 Exhibit B − Opposition to Motion to Dismiss # 3 Exhibit C − Second Amended Complaint)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 4 | Notice of Hearing *on Motion of Daniel Huertas to Quash Subpoena* Filed by Daniel Huertas (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A − Motion to Quash Subpoena # 2 Exhibit B − Subpoena)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/06/2024 | | 5 | Motion to Extend Time Period − *to Extend Scheduling Order*. Filed by SF NU, LLC. Objections due by 7/22/2024.Hearing scheduled for 7/23/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/06/2024 | | 6 | Exhibit *A − Second Amended Complaint* Filed by SF NU, LLC. (Re: Related Document(s) #:5 Motion to Extend/Shorten Time.) (Attachments: # 1 Exhibit B − Motion to Dismiss)(VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/07/2024 | | 7 | Motion For Summary Judgment Filed by Russell Drazin (Attachments: # 1 Exhibit A − First Developer RE1 Promissory Note # 2 Exhibit B − Second Developer RE1 Promissory Note # 3 Exhibit C − First Developer RE1 Deed of Trust # 4 Exhibit D − Second Developer RE1 Deed of Trust # 5 Exhibit E − First 423 Kennedy Street Promissory Note # 6 Exhibit F − Second 423 Kennedy Street Promissory Note # 7 Exhibit G − First 423 Kennedy Street Deed of Trust # 8 Exhibit H − Second 423 Kennedy Street Deed of Trust # 9 Exhibit I − Developer RE1 Notice of Default # 10 Exhibit J − 423 Kennedy Street Notice of Default # 11 Exhibit K − Developer RE1 Affidavit of Non−Residential Mortgage Foreclosure # 12 Exhibit L − 423 Kennedy Street Affidavit of Non−Residential Mortgage Foreclosure # 13 Exhibit M − Developer RE1 Notice of Foreclosure # 14 Exhibit N − 423 Kennedy Street Notice of Foreclosure # 15 Exhibit O − Affidavit of Daniel Huertas # 16 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/07/2024 | | 8 | Notice of Hearing Filed by Russell Drazin (Re: Related Document(s) #:7 Motion for Summary Judgment.) Hearing scheduled for 7/23/2024 at 10:00 AM for 7,. (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/08/2024 | | 9 | Motion for Protective Order Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, WCP Fund I LLC. Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 |

3

| | | | |
|---|---|---|---|
| | | | Exhibit A − Notice of Deposition # 2 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/08/2024) |
| 07/09/2024 | | 10 | Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)1 Notice of Removal) Deficient Pleading(s)/Document(s) due by 7/23/2024. (Bleskoski, Megan) (Entered: 07/09/2024) |
| 07/11/2024 | | 11 | BNC Certificate of Mailing − PDF Document. (RE: related document(s)10 Notice to Party Filing Deficient Pleading(s)/Document(s)) No. of Notices: 2. Notice Date 07/11/2024. (Admin.) (Entered: 07/12/2024) |
| 07/17/2024 | | 12 | Statement of No Consent to Final Orders or Judgment Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit July 3, 2024 email and copies of deposition notices) (Sadowski, James) Modified on 7/22/2024 MODIFIED TO EDIT TEXT (Mathewes, Aimee). (Entered: 07/17/2024) |
| 07/21/2024 | | 13 | Motion for Remand *and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines*, Motion Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Exhibit Exhibit 1 − Docket Sheet for 2022−CAB−005935 # 2 Exhibit Exhibit 2 − Docket Sheet for 2023−CAB−004260) (Sadowski, James) (Entered: 07/21/2024) |
| 07/21/2024 | | 14 | Notice of Hearing *on Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Hearing scheduled for 8/28/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 8 and for 4 and for 13 and for 1 and for 12 and for 5 and for 9 and for 7 and for 3,. (Sadowski, James) (Entered: 07/21/2024) |
| 07/22/2024 | | 15 | Amended Document *Notice of Removal (Amended Solely to Cure Deficiency)* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:1 Notice of Removal.) (VerStandig, Maurice) (Entered: 07/22/2024) |
| 07/22/2024 | | 16 | Omnibus Objection *to Motions Filed by the Defendants After an Improper Removal of Non−Core Proceedings* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order.) (Sadowski, James) (Entered: 07/22/2024) |
| 07/23/2024 | | 17 | PDF with attached Audio File. Court Date & Time [ 7/23/2024 10:35:59 AM ]. File Size [ 5768 KB ]. Run Time [ 00:12:01 ]. (admin). (Entered: 07/24/2024) |
| 07/23/2024 | | 18 | |

| | | | |
|---|---|---|---|
| | | | Minute Entry RE: Hearing Continued (BK) (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. All Pending Matters Rescheduled − Hearing scheduled for 8/27/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 07/24/2024) |
| 08/09/2024 | | 19 | Record Transmitted from Superior Court (Attachments: # 1 Main Document Part 2, (2) Main Document Part 3) (Bleskoski, Megan) (Entered: 08/09/2024) |
| 08/20/2024 | | 20 | Opposition Filed by JPK NewCo LLC, DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (VerStandig, Maurice) (Entered: 08/20/2024) |
| 08/26/2024 | | 21 | Reply *to Opposition to Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Sadowski, James) (Entered: 08/26/2024) |
| 08/27/2024 | | 22 | Minute Entry RE: Hearing Continued (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig, Jeffrey Orenstein, Kristen Eustis. All Pending Matters Stayed, All Deadline Tolled. Hearing scheduled for 11/13/2024 at 11:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code (Mathewes, Aimee) (Entered: 08/28/2024) |
| 08/28/2024 | | 23 | PDF with attached Audio File. Court Date & Time [ 8/27/2024 10:18:30 AM ]. File Size [ 28984 KB ]. Run Time [ 01:00:23 ]. (admin). (Entered: 08/29/2024) |
| 11/13/2024 | | 24 | Minute Entry RE: Hearing − Continued (AP) (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Appearances: James Sadowski, Maurice VerStandig. Motion to Remand Scheduled for Decision, Supplemental Briefs Due by 11/27/2024, Responses Due 12/4/2024. Remaining Matters Continued for Status, Hearing scheduled for 12/18/2024 at 12:00 PM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 11/13/2024) |
| 11/15/2024 | | 25 | PDF with attached Audio File. Court Date & Time [ 11/13/2024 11:43:57 AM ]. File Size [ 4904 KB ]. Run Time [ 00:10:13 ]. (admin). (Entered: 11/16/2024) |
| 11/27/2024 | | 26 | Supplemental Brief *in Support of Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Attachments: # 1 Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors)(Sadowski, James) (Entered: 11/27/2024) |

| | | | |
|---|---|---|---|
| 12/04/2024 | | 27 | Reply Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:26 Brief.) (VerStandig, Maurice) (Entered: 12/04/2024) |
| 12/18/2024 | | 28 | Minute Entry RE: Hearing Held (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Denied, Order to be Submitted. Motion for Summary Judgment, Motion to Dismiss Filed by SF NU, LLC, Scheduling Order Motion, and Motion to Dismiss Counterclaim Continued, Remaining Pending Matters Disposed on Record. Hearing scheduled for 1/28/2025 at 09:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 12/19/2024) |
| 12/19/2024 | | 29 | PDF with attached Audio File. Court Date & Time [ 12/18/2024 12:22:38 PM ]. File Size [ 33184 KB ]. Run Time [ 01:09:08 ]. (admin). (Entered: 12/20/2024) |
| 01/17/2025 | · | 30 | Opposition *to Motion for Summary Judgment* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:7 Motion for Summary Judgment.) (Attachments: # 1 Affidavit Declaration of Mel Negussie # 2 Exhibit No. 1 – April 7, 2023 Order from Judge Scott # 3 Exhibit No. 2 – July 24, 2023 Order Granting Injunctive Relief # 4 Exhibit No. 3 – Order Memorializing TRO Decision # 5 Exhibit No. 4 – Exhibit S from DevRE1 TRO Hearing (Loan Payment Records) # 6 Exhibit No. 5 – Huertas Deposition Excerpts) (Sadowski, James) (Entered: 01/17/2025) |
| 01/28/2025 | | 31 | Order Granting Defendant SF NU, LLC's Motion to Dismiss With Leave to Amend and Denying Plaintiff Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund 1 LLC'S Counterclaim Without Prejudice (Re: Related Document(s)1 Notice of Removal.) Order entered on 1/28/2025. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 32 | Minute Entry RE: Hearing Held (RE: related document(s)3 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment) Appearances: James Sadowski, Maurice VerStandig. Motion to Dismiss Complaint Granted, Amended Complaint Due by 2/25/2025, Answer Due by 3/11/2025. Motion for Summary Judgment Under Advisement. Scheduling Conference Scheduled for 4/2/2025 at 10:00 AM via Zoom. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/28/2025 | | 33 | Hearing Scheduled (AP) (Re: Related Document(s) #:1 Notice of Removal.) Scheduling Conference scheduled for 4/2/2025 at 10:00 AM Via Zoom–contact Gunn_Hearings@dcb.uscourts.gov for Meeting Code. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/30/2025 | | 34 | PDF with attached Audio File. Court Date & Time [ 1/28/2025 9:03:41 AM ]. File Size [ 48640 KB ]. Run Time [ 01:41:20 ]. (admin). (Entered: 01/31/2025) |
| 02/11/2025 | | 35 | Order Denying Motion to Remand (Related Document #: 13) Entered on 2/11/2025. (Bleskoski, Megan) (Entered: 02/11/2025) |

6

| | | | |
|---|---|---|---|
| 02/13/2025 | | 36 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)35 Order on Motion For Remand) No. of Notices: 1. Notice Date 02/13/2025. (Admin.) (Entered: 02/14/2025) |
| 02/25/2025 | | 37 | Consent Motion to Extend Time Period *to File Amended Complaint*. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:31 Order – Generic.) (Attachments: # 1 Proposed Order Consent Order Extending Deadline to File Amended Complaint) (Sadowski, James) (Entered: 02/25/2025) |
| 02/25/2025 | | 38 | Consent Order Granting Motion to Extend Time to File Amended Complaint (Related Document #: 37) Entered on 2/25/2025. (Bleskoski, Megan). (Entered: 02/25/2025) |
| 02/27/2025 | | 39 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)38 Order on Motion to Extend Time) No. of Notices: 0. Notice Date 02/27/2025. (Admin.) (Entered: 02/28/2025) |
| 03/05/2025 | | 40 | Amended Complaint by 423 Kennedy St Holdings LLC, Developer RE1 LLC against DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 03/05/2025) |
| 03/16/2025 | | 41 | Draft Summons (Re: Related Document(s) #:40 Amended Complaint.) (Sadowski, James) (Entered: 03/16/2025) |
| 03/17/2025 | | 42 | Summons Issued on Shaheen Sairi. Number of Summons Issued: 1. Answer due by: 4/16/2025. YOU MUST PRINT YOUR ISSUED SUMMONS, WHICH IS ATTACHED TO THIS DOCUMENT. PAPER COPIES WILL NOT BE MAILED. (Re: Related Document(s) #:40 Amended Complaint.) Status Hearing to be held on 4/2/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 03/17/2025) |
| 03/18/2025 | | 43 | Answer to Complaint *(Counterclaim of WCP Fund I LLC)* Filed by Developer RE1 LLC (Sadowski, James) (Entered: 03/18/2025) |
| 03/19/2025 | | 44 | Motion to Dismiss Adversary Proceeding *or, in the Alternative,*, Motion For Summary Judgment Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Attachments: # 1 Exhibit A – DRL First Promissory Note # 2 Exhibit B – DRL Second Promissory Note # 3 Exhibit C – DRL First Deed of Trust # 4 Exhibit D – DRL Second Deed of Trust # 5 Exhibit E – 423 Kennedy First Promissory Note # 6 Exhibit F – 423 Kennedy Second Promissory Note # 7 Exhibit G – 423 Kennedy First Deed of Trust # 8 Exhibit H – 423 Kennedy Second Deed of Trust # 9 Exhibit I – Declaration of Christina Araujo # 10 Exhibit J – Water and Sewer Lien # 11 Exhibit K – Tax Payment History # 12 Exhibit L – Department of Buildings Lien # 13 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/19/2025 | | 45 | Notice of Hearing Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44,. (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/25/2025 | | 46 | |

7

| | | | |
|---|---|---|---|
| | | | Motion for Remand *(Renewed)* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Attachments: # 1 Exhibit Ex. 1 − Transcript Meeting of Creditors − JPK NewCo LLC # 2 Exhibit Ex. 2 − Unanimous Consent − Charles Paret (5515 1st St Holdings LLC) # 3 Exhibit No. 3 − Unanimous Consent (Charles Paret − 71 Kennedy St Holdings LLC) # 4 Exhibit No. 4 − Affidavit of Charles Paret (423 Kennedy St Holdings LLC)) (Sadowski, James) (Entered: 03/25/2025) |
| 03/25/2025 | | 47 | Notice of Hearing *and Objection Deadline* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:46 Motion for Remand.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46,. (Sadowski, James) (Entered: 03/25/2025) |
| 04/01/2025 | | 48 | Consent Order Rescheduling Hearings and Deadlines. (Re: Related Document(s)44 Motion to Dismiss Adversary Proceeding, 45 Notice of Hearing (Original or Amended) filed by Defendant DP Capital LLC, Defendant WCP Fund I LLC, Defendant Daniel Huertas, Defendant SF NU, LLC, Defendant Russell Drazin, Defendant JPK NewCo LLC, 46 Motion for Remand.) Order entered on 4/1/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44, Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46, . (Bleskoski, Megan). (Entered: 04/01/2025) |
| 04/02/2025 | | 49 | Notice of Returned Mail Undeliverable as to Shaheen Sairi − Incomplete Address. (RE: related document(s) 48 Hearing Continued) (Alde, Claude) (Entered: 04/02/2025) |
| 04/03/2025 | | 50 | BNC Certificate of Mailing − PDF Document. (RE: related document(s)48 Hearing Continued) No. of Notices: 5. Notice Date 04/03/2025. (Admin.) (Entered: 04/04/2025) |
| 04/12/2025 | | 51 | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:46 Motion for Remand.) (VerStandig, Maurice) (Entered: 04/12/2025) |
| 04/16/2025 | | 52 | Consent Motion *to Extend Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment, 46 Motion for Remand.) (Attachments: # 1 Proposed Order Proposed Order Granting Motion to Extend Deadlines) (Sadowski, James) (Entered: 04/16/2025) |
| 04/17/2025 | | 53 | Consent Order Granting Motion To Extend Deadlines. (Related Document #: 52) Entered on 4/17/2025. (Bleskoski, Megan) (Entered: 04/17/2025) |
| 04/18/2025 | | 54 | Opposition Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment.) (Attachments: # 1 Exhibit Response to Statement of Material Facts in Dispute # 2 Exhibit Declaration of Mel Negussie # 3 Exhibit DC Code Section 28−3104 # 4 Exhibit DC Code Section 28−3105 # 5 Exhibit First TRO Order # 6 Exhibit Second TRO Order # 7 Exhibit Developer RE1 Loan history # 8 Exhibit 423 Kennedy Loan History # 9 Exhibit Huertas Transcript Excerpts # 10 Exhibit 4−7−23 Order # 11 Exhibit DEV RE Scheduling Conference Transcript) (Sadowski, James) (Entered: 04/18/2025) |

| | | | |
|---|---|---|---|
| 04/19/2025 | | 55 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)53 Order on Motion) No. of Notices: 0. Notice Date 04/19/2025. (Admin.) (Entered: 04/20/2025) |
| 05/06/2025 | | 56 | Order Requiring Supplemental Briefing By May 7, 2025. (Re: Related Document(s)40 Amended Complaint.) Order entered on 5/6/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 40, . (Bleskoski, Megan) (Entered: 05/06/2025) |
| 05/06/2025 | | 57 | Motion *for Leave to File Fourth Amended Complaint* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:40 Amended Complaint.) (Attachments: # 1 Exhibit Fourth Amended Complaint) (Sadowski, James) (Entered: 05/06/2025) |
| 05/06/2025 | | 58 | Brief *Regarding Lack of Mootness of Summary Judgment Motion* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (VerStandig, Maurice) (Entered: 05/06/2025) |
| 05/07/2025 | | 59 | Notice of Returned Mail as Undeliverable to Shaheen Sairi, Incomplete Address. (RE: related document(s)56 Hearing Scheduled) (Bleskoski, Megan) (Entered: 05/07/2025) |
| 05/07/2025 | | 60 | Brief *Regarding Mootness* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (Sadowski, James) (Entered: 05/07/2025) |
| 05/08/2025 | | 61 | Minute Entry RE: Hearing Held (BK) (RE: related document(s)44 Motion to Dismiss Adversary Proceeding, 46 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Granted, Order to be Submitted. (Mathewes, Aimee) (Entered: 05/08/2025) |
| 05/08/2025 | | 62 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)56 Hearing Scheduled) No. of Notices: 10. Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | | 63 | PDF with attached Audio File. Court Date & Time [ 5/8/2025 10:06:13 AM ]. File Size [ 40808 KB ]. Run Time [ 01:25:01 ]. (admin). (Entered: 05/10/2025) |
| 05/12/2025 | | 64 | Order Granting Renewed Motion To Remand (Re: Related Document(s)46 Motion for Remand.) Order entered on 5/12/2025. (Bleskoski, Megan) (Entered: 05/12/2025) |



/s/ Megan Bleskoski

05/12/2025

The order below is hereby signed.

Signed: May 12 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |

|  |  |
|---|---|
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,

    *Defendants.*

**ORDER GRANTING RENEWED MOTION TO REMAND**

Before the Court is the Plaintiffs' *Renewed Motion for Remand* ("Motion for Remand") (ECF No. 46) and the Defendants' *Opposition to the Motion for Remand* (ECF No. 51). At the conclusion of the hearing held May 8, 2025 (the "Hearing"), the Court issued an oral ruling granting the Motion for Remand. The Court enters this Order consistent with the oral ruling.

1. Mandatory Abstention

The Court finds that the Plaintiffs' claims in this case did not arise under Title 11 or arise in a case under Title 11. As of the date of the Hearing, all of the Plaintiffs' claims as stated in the Third Amended Complaint (ECF No. 40) arose under state law.[1] Further, none of the Plaintiffs' claims could have been commenced in a court of the United States absent jurisdiction under 28 U.S.C. § 1334(c)(2). Therefore, the Court finds that it has "related to" jurisdiction over the Plaintiffs' claims.

Under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain (also referred to as mandatory abstention):

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). For the reasons stated at the hearing, the Court finds that the renewed Motion for Remand was timely filed after the dismissal of the JPK NewCo LLC chapter 11 case,

---

[1] The Court previously considered and denied without prejudice a motion to remand filed by the Plaintiffs. At the time of the previous motion, defendant JPK NewCo LLC was a debtor in a chapter 11 case. The JPK NewCo LLC chapter 11 was dismissed less than 30 days prior to the filing of the Motion for Remand. The dismissal of the JPK NewCo LLC chapter 11 substantially changed the Court's analysis as to its jurisdiction over the claims in the Third Amended Complaint.

the Plaintiffs' claims can be timely adjudicated in the Superior Court of the District Court of Columbia, and, therefore, mandatory abstention is appropriate.

> 2. Permissive Abstention

Alternatively, the Court finds that abstention under 28 U.S.C. § 1334(c)(1)[2] (also referred to as permissive abstention) is appropriate. In evaluating whether permissive abstention is appropriate, courts have looked to a variety of factors, including but not limited to:

(1) the effect on the efficient administration of the bankruptcy estate;

(2) the extent to which issues of state law predominate;

(3) the difficulty or unsettled nature of applicable state law;

(4) comity;

(5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy court;

(6) the existence of the right to a jury trial; and

(7) prejudice to the involuntarily removed defendants.

*See*, *e.g.*, *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998).

As noted in more detail at the hearing, most of the permissive abstention factors either support or are neutral as to abstention.

Therefore, for the reasons stated herein and at the Hearing, it is hereby **ADJUDGED, ORDERED**, and **DECREED** that:

1. The Plaintiffs' Motion for Remand is **GRANTED**;

2. The Court hereby **ABSTAINS** under 28 U.S.C. §§ 1334(c)(1) and (c)(2) from hearing this case.

---

[2] "[N]othing in [§ 1334] prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . related to a case under title 11." 28 U.S.C. § 1334(c)(1).

3.      This Order is not appealable under <mark>28 U.S.C. § 1334(d)</mark>.

4.      Due to remand, the Court takes no position or action on the *Motion to Dismiss or, In the Alternative, for Summary Judgment* filed by Defendants DP Capital LLC, WCP Fund I LLC, Daniel Huertas, Russell Drazin, SF NU, LLC, and JPK NewCo LLC (<mark>ECF No. 44</mark>).

5.      This case is hereby **REMANDED** to the Superior Court of the District of Columbia.


[Signed and dated above]



Service to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854

James D. Sadowski, Esq.
Alexandria J. Smith
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006


**END OF ORDER**



**ECF DOCUMENT**

I hereby attest and certify that this is a printed copy of a Document which was electronically filed with the United States District and Bankruptcy Courts for the District of Columbia.
Date Filed:_____
05/12/2025

By:_____
/s/ Megan Bleskoski

ANGELA D. CAESAR, CLERK

4

# U.S. Bankruptcy Court
## United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
## Adversary Proceeding #: 24–10023–ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn          *Date Filed:* 07/04/24
*Lead BK Case:* 23–00217
*Lead BK Title:* Charles Paxton Paret
*Lead BK Chapter:* 7
*Demand:* $3000000
  *Nature[s] of Suit:*     01     Determination of removed claim or cause
                           21     Validity, priority or extent of lien or other interest
                                  in property
                           91     Declaratory judgment
                           72     Injunctive relief – other

### Plaintiff
––––––––––––––––––––––––

**Developer RE1 LLC**                              represented by **James D. Sadowski**
1629 K Street NW                                   Greenstein DeLorme & Luchs, PC
Suite 300                                          801 17th Street, N.W.
Washington, DC 20006                               Suite 1000
                                                   Washington DC, DC 20006
                                                   202–452–1400
                                                   Fax : 202–452–1410
                                                   Email: jds@gdllaw.com
                                                   *LEAD ATTORNEY*

                                                   **Alexandria Jean Smith**
                                                   Greenstein DeLorme and Luchs PC
                                                   801 17th Street NW
                                                   Suite 1000
                                                   Washington, DC 20006
                                                   202–452–1400
                                                   Email: ajs@gdllaw.com
                                                   *LEAD ATTORNEY*

### Plaintiff
––––––––––––––––––––––––

**423 Kennedy St Holdings LLC**                    represented by **James D. Sadowski**
1629 K Street, NW                                  (See above for address)
Suite 300                                          *LEAD ATTORNEY*
Washington, DC 20006
                                                   **Alexandria Jean Smith**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*

V.

### Defendant
––––––––––––––––––––––––

**WCP Fund I LLC**                                 represented by **Maurice Belmont VerStandig**
c/o Maurice B. VertSandig, Esq.                    The VerStandig Law Firm, LLC
The VerStandig Law Firm, LLC                       9812 Falls Road
1452 W. Horizon Ridge Pkwy                         #114–160
#665                                               Potomac, MD 20854

Henderson, NV 89012
301–444–4600

301–444–4600
Email: mac@mbvesq.com

*Defendant*
––––––––––––––––––––––––
**DP Capital LLC**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*
––––––––––––––––––––––––
**SF NU, LLC**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*
––––––––––––––––––––––––
**Daniel Huertas**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*
––––––––––––––––––––––––
**Russell Drazin**
Pardo Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*
––––––––––––––––––––––––
**JPK NewCo LLC**
8401 Greensboro Drive
Suite 960
McLean, VA 22102

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*
––––––––––––––––––––––––
**Shaheen Sairi**

represented by **Shaheen Sairi**
PRO SE

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 07/04/2024 | | 1 | Adversary case 24–10023. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A – Meeting of Creditors Transcript # 2 Exhibit B – All Pleading |

22

| | | | |
|---|---|---|---|
| | | | and Process, Together with All Docket Entries) (01 (Determination of removed claim or cause),21 (Validity, priority or extent of lien or other interest in property)) (VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 2 | Receipt of Notice of Removal( 24–10023–ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2758216. Fee Amount 350.00 (VerStandig, Maurice) (re:Doc# 1) (U.S. Treasury) (Entered: 07/04/2024) |
| 07/04/2024 | | 3 | Notice of Hearing *on Motion of SF NU, LLC to Dismiss Second Amended Complaint* Filed by SF NU, LLC (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A – Motion to Dismiss # 2 Exhibit B – Opposition to Motion to Dismiss # 3 Exhibit C – Second Amended Complaint)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 4 | Notice of Hearing *on Motion of Daniel Huertas to Quash Subpoena* Filed by Daniel Huertas (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A – Motion to Quash Subpoena # 2 Exhibit B – Subpoena)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/06/2024 | | 5 | Motion to Extend Time Period – *to Extend Scheduling Order*. Filed by SF NU, LLC. Objections due by 7/22/2024.Hearing scheduled for 7/23/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/06/2024 | | 6 | Exhibit *A – Second Amended Complaint* Filed by SF NU, LLC. (Re: Related Document(s) #:5 Motion to Extend/Shorten Time.) (Attachments: # 1 Exhibit B – Motion to Dismiss)(VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/07/2024 | | 7 | Motion For Summary Judgment Filed by Russell Drazin (Attachments: # 1 Exhibit A – First Developer RE1 Promissory Note # 2 Exhibit B – Second Developer RE1 Promissory Note # 3 Exhibit C – First Developer RE1 Deed of Trust # 4 Exhibit D – Second Developer RE1 Deed of Trust # 5 Exhibit E – First 423 Kennedy Street Promissory Note # 6 Exhibit F – Second 423 Kennedy Street Promissory Note # 7 Exhibit G – First 423 Kennedy Street Deed of Trust # 8 Exhibit H – Second 423 Kennedy Street Deed of Trust # 9 Exhibit I – Developer RE1 Notice of Default # 10 Exhibit J – 423 Kennedy Street Notice of Default # 11 Exhibit K – Developer RE1 Affidavit of Non–Residential Mortgage Foreclosure # 12 Exhibit L – 423 Kennedy Street Affidavit of Non–Residential Mortgage Foreclosure # 13 Exhibit M – Developer RE1 Notice of Foreclosure # 14 Exhibit N – 423 Kennedy Street Notice of Foreclosure # 15 Exhibit O – Affidavit of Daniel Huertas # 16 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/07/2024 | | 8 | Notice of Hearing Filed by Russell Drazin (Re: Related Document(s) #:7 Motion for Summary Judgment.) Hearing scheduled for 7/23/2024 at 10:00 AM for 7,. (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/08/2024 | | 9 | Motion for Protective Order Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, WCP Fund I LLC. Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit A – Notice of Deposition # 2 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/08/2024) |
| 07/09/2024 | | 10 | Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)1 Notice of Removal) Deficient Pleading(s)/Document(s) due by 7/23/2024. (Bleskoski, Megan) (Entered: 07/09/2024) |
| 07/11/2024 | | 11 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)10 Notice to Party Filing Deficient Pleading(s)/Document(s)) No. of Notices: 2. Notice Date 07/11/2024. (Admin.) (Entered: 07/12/2024) |
| 07/17/2024 | | 12 | Statement of No Consent to Final Orders or Judgment Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit July 3, 2024 email and copies of deposition notices) (Sadowski, James) Modified on 7/22/2024 MODIFIED TO EDIT TEXT (Mathewes, Aimee). (Entered: 07/17/2024) |
| 07/21/2024 | | 13 | Motion for Remand *and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines*, Motion Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Exhibit Exhibit 1 – Docket Sheet for 2022–CAB–005935 # 2 Exhibit Exhibit 2 – Docket Sheet for 2023–CAB–004260) (Sadowski, James) (Entered: 07/21/2024) |
| 07/21/2024 | | 14 | Notice of Hearing *on Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Hearing scheduled for 8/28/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 8 and for 4 and for 13 and for 1 and for 12 and for 5 and for 9 and for 7 and for 3,. (Sadowski, James) (Entered: 07/21/2024) |
| 07/22/2024 | | 15 | Amended Document *Notice of Removal (Amended Solely to Cure Deficiency)* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:1 Notice of Removal.) (VerStandig, Maurice) (Entered: 07/22/2024) |
| 07/22/2024 | | 16 | Omnibus Objection *to Motions Filed by the Defendants After an Improper Removal of Non–Core Proceedings* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order.) (Sadowski, James) (Entered: 07/22/2024) |
| 07/23/2024 | | 17 | PDF with attached Audio File. Court Date & Time [ 7/23/2024 10:35:59 AM ]. File Size [ 5768 KB ]. Run Time [ 00:12:01 ]. (admin). (Entered: 07/24/2024) |
| 07/23/2024 | | 18 | |

| | | | |
|---|---|---|---|
| | | | Minute Entry RE: Hearing Continued (BK) (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. All Pending Matters Rescheduled – Hearing scheduled for 8/27/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 07/24/2024) |
| 08/09/2024 | | 19 | Record Transmitted from Superior Court (Attachments: # 1 Main Document Part 2, (2) Main Document Part 3) (Bleskoski, Megan) (Entered: 08/09/2024) |
| 08/20/2024 | | 20 | Opposition Filed by JPK NewCo LLC, DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (VerStandig, Maurice) (Entered: 08/20/2024) |
| 08/26/2024 | | 21 | Reply *to Opposition to Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Sadowski, James) (Entered: 08/26/2024) |
| 08/27/2024 | | 22 | Minute Entry RE: Hearing Continued (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig, Jeffrey Orenstein, Kristen Eustis. All Pending Matters Stayed, All Deadline Tolled. Hearing scheduled for 11/13/2024 at 11:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code (Mathewes, Aimee) (Entered: 08/28/2024) |
| 08/28/2024 | | 23 | PDF with attached Audio File. Court Date & Time [ 8/27/2024 10:18:30 AM ]. File Size [ 28984 KB ]. Run Time [ 01:00:23 ]. (admin). (Entered: 08/29/2024) |
| 11/13/2024 | | 24 | Minute Entry RE: Hearing – Continued (AP) (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Appearances: James Sadowski, Maurice VerStandig. Motion to Remand Scheduled for Decision, Supplemental Briefs Due by 11/27/2024, Responses Due 12/4/2024. Remaining Matters Continued for Status, Hearing scheduled for 12/18/2024 at 12:00 PM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 11/13/2024) |
| 11/15/2024 | | 25 | PDF with attached Audio File. Court Date & Time [ 11/13/2024 11:43:57 AM ]. File Size [ 4904 KB ]. Run Time [ 00:10:13 ]. (admin). (Entered: 11/16/2024) |
| 11/27/2024 | | 26 | Supplemental Brief *in Support of Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Attachments: # 1 Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors)(Sadowski, James) (Entered: 11/27/2024) |

| 12/04/2024 | | 27 | Reply Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:26 Brief.) (VerStandig, Maurice) (Entered: 12/04/2024) |
|---|---|---|---|
| 12/18/2024 | | 28 | Minute Entry RE: Hearing Held (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Denied, Order to be Submitted. Motion for Summary Judgment, Motion to Dismiss Filed by SF NU, LLC, Scheduling Order Motion, and Motion to Dismiss Counterclaim Continued, Remaining Pending Matters Disposed on Record. Hearing scheduled for 1/28/2025 at 09:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 12/19/2024) |
| 12/19/2024 | | 29 | PDF with attached Audio File. Court Date & Time [ 12/18/2024 12:22:38 PM ]. File Size [ 33184 KB ]. Run Time [ 01:09:08 ]. (admin). (Entered: 12/20/2024) |
| 01/17/2025 | | 30 | Opposition *to Motion for Summary Judgment* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:7 Motion for Summary Judgment.) (Attachments: # 1 Affidavit Declaration of Mel Negussie # 2 Exhibit No. 1 – April 7, 2023 Order from Judge Scott # 3 Exhibit No. 2 – July 24, 2023 Order Granting Injunctive Relief # 4 Exhibit No. 3 – Order Memorializing TRO Decision # 5 Exhibit No. 4 – Exhibit S from DevRE1 TRO Hearing (Loan Payment Records) # 6 Exhibit No. 5 – Huertas Deposition Excerpts) (Sadowski, James) (Entered: 01/17/2025) |
| 01/28/2025 | | 31 | Order Granting Defendant SF NU, LLC's Motion to Dismiss With Leave to Amend and Denying Plaintiff Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund 1 LLC'S Counterclaim Without Prejudice (Re: Related Document(s)1 Notice of Removal.) Order entered on 1/28/2025. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 32 | Minute Entry RE: Hearing Held (RE: related document(s)3 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment) Appearances: James Sadowski, Maurice VerStandig. Motion to Dismiss Complaint Granted, Amended Complaint Due by 2/25/2025, Answer Due by 3/11/2025. Motion for Summary Judgment Under Advisement. Scheduling Conference Scheduled for 4/2/2025 at 10:00 AM via Zoom. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/28/2025 | | 33 | Hearing Scheduled (AP) (Re: Related Document(s) #:1 Notice of Removal.) Scheduling Conference scheduled for 4/2/2025 at 10:00 AM Via Zoom–contact Gunn_Hearings@dcb.uscourts.gov for Meeting Code. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/30/2025 | | 34 | PDF with attached Audio File. Court Date & Time [ 1/28/2025 9:03:41 AM ]. File Size [ 48640 KB ]. Run Time [ 01:41:20 ]. (admin). (Entered: 01/31/2025) |
| 02/11/2025 | | 35 | Order Denying Motion to Remand (Related Document #: 13) Entered on 2/11/2025. (Bleskoski, Megan) (Entered: 02/11/2025) |

| | | | |
|---|---|---|---|
| 02/13/2025 | | 36 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)35 Order on Motion For Remand) No. of Notices: 1. Notice Date 02/13/2025. (Admin.) (Entered: 02/14/2025) |
| 02/25/2025 | | 37 | Consent Motion to Extend Time Period *to File Amended Complaint*. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:31 Order – Generic.) (Attachments: # 1 Proposed Order Consent Order Extending Deadline to File Amended Complaint) (Sadowski, James) (Entered: 02/25/2025) |
| 02/25/2025 | | 38 | Consent Order Granting Motion to Extend Time to File Amended Complaint (Related Document #: 37) Entered on 2/25/2025. (Bleskoski, Megan). (Entered: 02/25/2025) |
| 02/27/2025 | | 39 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)38 Order on Motion to Extend Time) No. of Notices: 0. Notice Date 02/27/2025. (Admin.) (Entered: 02/28/2025) |
| 03/05/2025 | | 40 | Amended Complaint by 423 Kennedy St Holdings LLC, Developer RE1 LLC against DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 03/05/2025) |
| 03/16/2025 | | 41 | Draft Summons (Re: Related Document(s) #:40 Amended Complaint.) (Sadowski, James) (Entered: 03/16/2025) |
| 03/17/2025 | | 42 | Summons Issued on Shaheen Sairi. Number of Summons Issued: 1. Answer due by: 4/16/2025. YOU MUST PRINT YOUR ISSUED SUMMONS, WHICH IS ATTACHED TO THIS DOCUMENT. PAPER COPIES WILL NOT BE MAILED. (Re: Related Document(s) #:40 Amended Complaint.) Status Hearing to be held on 4/2/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 03/17/2025) |
| 03/18/2025 | | 43 | Answer to Complaint *(Counterclaim of WCP Fund I LLC)* Filed by Developer RE1 LLC (Sadowski, James) (Entered: 03/18/2025) |
| 03/19/2025 | | 44 | Motion to Dismiss Adversary Proceeding *or, in the Alternative,*, Motion For Summary Judgment Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Attachments: # 1 Exhibit A – DRL First Promissory Note # 2 Exhibit B – DRL Second Promissory Note # 3 Exhibit C – DRL First Deed of Trust # 4 Exhibit D – DRL Second Deed of Trust # 5 Exhibit E – 423 Kennedy First Promissory Note # 6 Exhibit F – 423 Kennedy Second Promissory Note # 7 Exhibit G – 423 Kennedy First Deed of Trust # 8 Exhibit H – 423 Kennedy Second Deed of Trust # 9 Exhibit I – Declaration of Christina Araujo # 10 Exhibit J – Water and Sewer Lien # 11 Exhibit K – Tax Payment History # 12 Exhibit L – Department of Buildings Lien # 13 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/19/2025 | | 45 | Notice of Hearing Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44,. (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/25/2025 | | 46 | |

| | | | |
|---|---|---|---|
| | | | Motion for Remand *(Renewed)* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Attachments: # 1 Exhibit Ex. 1 – Transcript Meeting of Creditors – JPK NewCo LLC # 2 Exhibit Ex. 2 – Unanimous Consent – Charles Paret (5515 1st St Holdings LLC) # 3 Exhibit No. 3 – Unanimous Consent (Charles Paret – 71 Kennedy St Holdings LLC) # 4 Exhibit No. 4 – Affidavit of Charles Paret (423 Kennedy St Holdings LLC)) (Sadowski, James) (Entered: 03/25/2025) |
| 03/25/2025 | | 47 | Notice of Hearing *and Objection Deadline* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:46 Motion for Remand.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46,. (Sadowski, James) (Entered: 03/25/2025) |
| 04/01/2025 | | 48 | Consent Order Rescheduling Hearings and Deadlines. (Re: Related Document(s)44 Motion to Dismiss Adversary Proceeding, 45 Notice of Hearing (Original or Amended) filed by Defendant DP Capital LLC, Defendant WCP Fund I LLC, Defendant Daniel Huertas, Defendant SF NU, LLC, Defendant Russell Drazin, Defendant JPK NewCo LLC, 46 Motion for Remand.) Order entered on 4/1/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44, Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46, . (Bleskoski, Megan). (Entered: 04/01/2025) |
| 04/02/2025 | | 49 | Notice of Returned Mail Undeliverable as to Shaheen Sairi – Incomplete Address. (RE: related document(s) 48 Hearing Continued) (Alde, Claude) (Entered: 04/02/2025) |
| 04/03/2025 | | 50 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)48 Hearing Continued) No. of Notices: 5. Notice Date 04/03/2025. (Admin.) (Entered: 04/04/2025) |
| 04/12/2025 | | 51 | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:46 Motion for Remand.) (VerStandig, Maurice) (Entered: 04/12/2025) |
| 04/16/2025 | | 52 | Consent Motion *to Extend Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment, 46 Motion for Remand.) (Attachments: # 1 Proposed Order Proposed Order Granting Motion to Extend Deadlines) (Sadowski, James) (Entered: 04/16/2025) |
| 04/17/2025 | | 53 | Consent Order Granting Motion To Extend Deadlines. (Related Document #: 52) Entered on 4/17/2025. (Bleskoski, Megan) (Entered: 04/17/2025) |
| 04/18/2025 | | 54 | Opposition Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment.) (Attachments: # 1 Exhibit Response to Statement of Material Facts in Dispute # 2 Exhibit Declaration of Mel Negussie # 3 Exhibit DC Code Section 28–3104 # 4 Exhibit DC Code Section 28–3105 # 5 Exhibit First TRO Order # 6 Exhibit Second TRO Order # 7 Exhibit Developer RE1 Loan history # 8 Exhibit 423 Kennedy Loan History # 9 Exhibit Huertas Transcript Excerpts # 10 Exhibit 4–7–23 Order # 11 Exhibit DEV RE Scheduling Conference Transcript) (Sadowski, James) (Entered: 04/18/2025) |

| | | | |
|---|---|---|---|
| 04/19/2025 | | 55 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)53 Order on Motion) No. of Notices: 0. Notice Date 04/19/2025. (Admin.) (Entered: 04/20/2025) |
| 05/06/2025 | | 56 | Order Requiring Supplemental Briefing By May 7, 2025. (Re: Related Document(s)40 Amended Complaint.) Order entered on 5/6/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 40, . (Bleskoski, Megan) (Entered: 05/06/2025) |
| 05/06/2025 | | 57 | Motion *for Leave to File Fourth Amended Complaint* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:40 Amended Complaint.) (Attachments: # 1 Exhibit Fourth Amended Complaint) (Sadowski, James) (Entered: 05/06/2025) |
| 05/06/2025 | | 58 | Brief *Regarding Lack of Mootness of Summary Judgment Motion* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (VerStandig, Maurice) (Entered: 05/06/2025) |
| 05/07/2025 | | 59 | Notice of Returned Mail as Undeliverable to Shaheen Sairi, Incomplete Address. (RE: related document(s)56 Hearing Scheduled) (Bleskoski, Megan) (Entered: 05/07/2025) |
| 05/07/2025 | | 60 | Brief *Regarding Mootness* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (Sadowski, James) (Entered: 05/07/2025) |
| 05/08/2025 | | 61 | Minute Entry RE: Hearing Held (BK) (RE: related document(s)44 Motion to Dismiss Adversary Proceeding, 46 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Granted, Order to be Submitted. (Mathewes, Aimee) (Entered: 05/08/2025) |
| 05/08/2025 | | 62 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)56 Hearing Scheduled) No. of Notices: 10. Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | | 63 | PDF with attached Audio File. Court Date & Time [ 5/8/2025 10:06:13 AM ]. File Size [ 40808 KB ]. Run Time [ 01:25:01 ]. (admin). (Entered: 05/10/2025) |
| 05/12/2025 | | 64 | Order Granting Renewed Motion To Remand (Re: Related Document(s)46 Motion for Remand.) Order entered on 5/12/2025. (Bleskoski, Megan) (Entered: 05/12/2025) |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. _____ |
| | ) | |
| | ) | State Court Case 2022-CAB-005935 |
| v. | ) | |
| | ) | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; | ) | |
| SF NU, LLC; and WCP Fund I LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | State Court Case 2022-CAB-005935 |
| Plaintiff, | ) | (State Court Cases Consolidated) |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; | ) | |
| and WCP Fund I LLC | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF REMOVAL**

Come now WCP Fund I LLC ("WCP"), DP Capital LLC ("DPCL"), SF NU, LLC ("SNL"),

Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (the "Defendants"), by and

through undersigned counsel, pursuant to Section 1452 of Title 28 of the United States Code,

Section 1334 of Title 28 of the United States Code, and Federal Rule of Bankruptcy Procedure

1

==9027==, and hereby give notice of the removal of the above-captioned consolidated matters from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia (which, as noted *infra*, results in the referral of the matter to the United States Bankruptcy Court for the District of Columbia), and in support thereof note as follows:

### The Removed Cases

1.     These are civil actions commenced in the Superior Court of the District of Columbia by Developer RE1 LLC ("DRL"), on or about December 16, 2022, and by 423 Kennedy St Holdings LLC ("423 Kennedy"), on or about July 13, 2023, with the two cases being subsequently consolidated less than a month ago, on or about June 11, 2024.

2.     DRL owns the real property located at 5501 First Street, NW, Washington, DC 20011 (the "DRL Property").

3.     423 Kennedy owns the real property located at 423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property").

4.     WCP loaned monies to both DRL and 423 Kennedy, securing such loans with deeds of trust fixed upon the DRL Property and the 423 Kennedy Property, respectively.

5.     WCP declared both loans to be in default following the occurrence of various breaches of the promissory notes and deeds of trust; despite such defaults, WCP permitted each borrower until the maturity date of the loans to pay off the underlying promissory notes.

6.     When neither 423 Kennedy nor DRL paid their correlative loans at maturity, WCP commenced the process of foreclosing upon the respective properties.

7.     These cases were brought by 423 Kennedy and DRL in an effort to (i) enjoin WCP from foreclosing; (ii) assert WCP did not have the right to declare defaults under the promissory

notes and deeds of trust; and (iii) seek various forms of damages, including forfeiture and monetary damages.

8.      423 Kennedy and DRL are also suing (i) Mr. Drazin, the substitute trustee under the deeds of trust, on a theory of breach of fiduciary duty; and (ii) Mr. Huertas, DPCL, and SF NU, on various theories (though SF NU is only a party to one of the two consolidated cases), some of which are pegged to ownership of the promissory notes and holding rights under the deeds of trust.

9.      Certain promissory notes and correlative deeds of trust, implicated in these two consolidated cases, are now held by JPK NewCo LLC ("JPK"), a party to whom certain debt instruments were transferred earlier this year. 423 Kennedy and DRL have refused to join JPK, the holder of such instruments, despite the economic and property rights of JPK being implicated by these proceedings.

10.     The core litigation goals in these two cases, on the parts of DRL and 423 Kennedy, appear to be frustrating the collection efforts of the Defendants and JPK, challenging the indebtedness owed to various Defendants and JPK, and seeking relief from the terms of commercial loan documents.

### The Alleged Partnership

11.     On July 2, 2024, Wendell Webster ("Mr. Webster" or the "Trustee") filed an amended complaint (the "Amended Complaint"), in connection with the Chapter 7 bankruptcy of Charles Paret ("Mr. Paret" or the "Debtor"), alleging, *inter alia*, the existence of a partnership between Messrs. Paret and Huertas that "involve[s]" 423 Kennedy and myriad other companies and real estate assets. *See In re Paret*, Case No. 23-217-ELG at DE #132, ¶ 45.[1]

---

[1] The Amended Complaint was subsequently also docketed in the adversary proceeding captioned *Webster v. Huertas, et al.*, Case No. 23-10025, at DE #39.

3

12. The Amended Complaint further alleges, *inter alia*, that Mr. Huertas "used" DRL "to purchase foreclosed properties belonging" to the partnership between Messrs. Paret and Huertas. *Id.* at ¶ 46.[2]

13. While the Amended Complaint suffers myriad flaws, a plain reading of the document reveals the Trustee is asserting that 423 Kennedy is a part of the partnership the Trustee alleges to exist and, further, that the same partnership has an interest in the property owned by DRL. *Id.*, *passim*.

14. The Amended Complaint seeks "imposition of a constructive trust on" the properties comprising the alleged partnership, "transfer" of the alleged partnership's properties "to the trust," and injunctive relief, among myriad other remedies. *Id.* at pp. 17- 20.

15. Stated otherwise: the Trustee is asserting that Mr. Huertas and Mr. Paret have a partnership that owns some combination of 423 Kennedy, DRL, the 423 Kennedy Property, the DRL Property, WCP's interest in the 423 Property, and/or WCP's interest in the DRL Property.

<div align="center"><strong>Debtor Allegations</strong></div>

16. The assertions in the Amended Complaint are consistent with theories the Debtor has espoused in connection with his bankruptcy proceedings.

17. Specifically, less than a week ago, on June 25, 2024, a meeting of creditors was held in the Debtor's bankruptcy case (the "Meeting of Creditors").

18. At the Meeting of Creditors, the following colloquy touched upon the interplay of (i) the alleged partnership, (ii) 423 Kennedy, and (iii) the DRL Property:

MR. SADOWSKI: Okay. One second, Mr. Gardner (sic).

---

[2] The manner in which this allegation is worded is such that it is not clear if the Trustee is alleging DRL was used to purchase multiple properties or a single property; the Defendants do not mean to suggest the Trustee is alleging multiple properties to have been acquired by DRL, especially insofar as it is believed DRL has only ever owned the DRL Property.

Now, when you were being asked some questions by Mr. VerStandig, you gave some answers that things were currently in debate. I'm not going to debate you over your answers, but would it be fair to sum it up that -- all right. Let me ask it this way. Do you currently own a membership interest in 423 Kennedy Street Holdings, LLC?

MR. PARET: I believe I do.

MR. SADOWSKI: Okay. And is that belief based upon this theory that WCP was a partner with you? Is that what the basis for that belief is?

MR. PARET: That is correct.

MR. SADOWSKI: Okay. And would the same hold true for 5501? Excuse me. I don't have the address right in front of my face here. 5501 First Street Holdings, LLC, you indicated that it's -- there's a debate over whether you have a membership interest in that. And my understanding from your testimony is that the date is -- that the belief that you have, you have a membership interest is on this partnership theory with the WCP. Is that right?

MR. PARET: That is correct, along with the fact that the LLCs that were in ownership, the investor group have ownership in those LLCs. That's -- that's -- it's still unclear. But that is the -- that's the theory.

Transcript of Meeting of Creditors, attached hereto as Exhibit A, at 46:19-47:17.

19. The theories espoused by Mr. Paret at the Meeting of Creditors appear to be consistent with those promoted by the Trustee in the Amended Complaint.

### Core and "Related To" Status

20. If the Trustee is correct (i) that 423 Kennedy is part of the putative partnership between the Debtor and Mr. Huertas; and (ii) that Mr. Huertas has wrongfully "used" DRL to foreclose an asset belonging to the alleged partnership, the disposition of these cases will directly impact the administration of the Debtor's bankruptcy estate without regard to whether 423 Kennedy and DRL prevail, the Defendants prevail, or some combination thereof.

21. Should the Defendants prevail in these actions, the the lone asset of 423 Kennedy— an alleged part of the partnership the Trustee is seeking to establish—will be foreclosed.

22. Should 423 Kennedy and/or DRL prevail in these actions, 423 Kennedy—an entity the Trustee insists to be part of the alleged partnership—will retain its eponymous asset, and/or

5

DRL (an entity the Trustee alleges to have been "used" by Mr. Huertas to take a partnership property) will retain its sole asset.

23.     Stated more simply: the Trustee is alleging a vast partnership, concerning myriad properties and interests therein; these cases concern the disposition of two such properties and security interests.

24.     The relief sought by DRL and 423 Kennedy in these cases includes, *inter alia*, a determination of the validity and extent of liens; to the extent that the Trustee is correct that one or both of those liens are partnership assets, this is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code.

25.     Equally, the Trustee asserts a partnership interest in assets titled in the name of both 423 Kennedy and DRL; to the extent the Trustee is correct in such assertion, these two cases will directly affect the liquidation of the assets of the Debtor's estate, thereby rendering this a core proceeding under Section 157(b)(2)(O) of Title 28 of the United States Code.

26.     Further, in light of the various allegations set forth in the Amended Complaint, these two cases are most certainly "related to" the administration of Mr. Paret's bankruptcy estate.

### General Denial

27.     For the avoidance of doubt or ambiguity, Mr. Huertas and WCP deny—in the most vehement terms possible—that there ever existed a partnership with Mr. Paret.

28.     The removal of these cases is not based upon any theory in which the Amended Complaint ought to be credited as true or legally proper but, rather, solely upon the relatively uncontroversial theory that the Amended Complaint ought to be credited as constituting the current allegations of a bankruptcy trustee in connection with the administration of the estate that he has been charged with liquidating for the benefit of creditors.

## Formalistic Recitations

29. If the Trustee's allegations in the Amended Complaint are correct, the proceedings in these two cases are subject to the automatic stay set forth in Section 362 of Title 11 of the United States Code, and such stay has never been terminated.

30. Pursuant to DCt.LBR 5011-1, these consolidated cases are automatically referred to the United States Bankruptcy Court for the District of Columbia upon being removed from the Superior Court of the District of Columbia.

31. Attached hereto as Exhibit B is "a copy of all process and pleadings," together with all docket entries, in the consolidated cases.

32. A copy of this notice is being docketed in the Superior Court of the District of Columbia, in a manner substantially contemporaneous with its filing herein, sans Exhibits A and B.

33. The Defendants consent to the entry of final orders or judgments of the United States Bankruptcy Court for the District of Columbia.

Respectfully submitted,

Dated: July 4, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

*[Certificate of Service on Following Page]*

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of July, 2024, a copy of the foregoing is being

tendered to a third party commercial mailing vendor to be sent, via first class mail, postage prepaid,

on July 5, 2024, to:

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, NW
Suite 1000
Washington, DC 20006
*Counsel for Developer RE1 LLC and*
*423 Kennedy St Holdings LLC*

Alexandria J. Smith, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, NW
Suite 1000
Washington, DC 20006
*Counsel for Developer RE1 LLC and*
*423 Kennedy St Holdings LLC*

423 Kennedy St Holdings, LLC
1629 K Street, NW
Suite 300
Washington, DC 20006

Developer RE1 LLC
1629 K Street, NW
Suite 300
Washington, DC 20006

A copy is also being sent to each of the foregoing lawyers, electronically, through the docketing

of this notice in the consolidated Superior Court case.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

8

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

In Re:                                    . Case No. 23-00217-ELG
                                          . Chapter 7
CHARLES PAXTON PARET,                     .
                                          . Washington, D.C.
            Debtor.                       . June 25, 2024
. . . . . . . . . . . . . . . . .

341 MEETING OF THE CREDITORS
BEFORE WENDELL WEBSTER
CHAPTER 7 TRUSTEE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Martin Law Group, P.C. |
| | By: ELIZABETH KORBUT, ESQ. |
| | 8065 Leesburg Pike |
| | Suite 750 |
| | Vienna, VA 22182 |
| | |
| For the Chapter 7 | McNamee Hosea, P.A. |
| Trustee: | By: JUSTIN PHILIP FASANO, ESQ. |
| | 6404 Ivy Lane |
| | Suite 820 |
| | Greenbelt, MD 22070 |
| | |
| For WCP Fund I LLC, DP | The VerStandig Law Firm, LLC |
| Capital LLC, 1Sharpe | By: MAURICE BELMONT VERSTANDIG, ESQ. |
| Opportunity Intermediate | 9812 Falls Road |
| Trust: | #114-160 |
| | Potomac, MD 20854 |
| | |
| For Manik Chamarthy: | Greenstein DeLorme & Luchs, P.C. |
| | By: JAMES SADOWSKI, ESQ. |
| | 801 17th Street, N.W. |
| | Suite 1000 |
| | Washington, DC 20006 |
| | |
| For Welch Family Limited | By: TODD LEWIS, ESQ. |
| Partnership Group: | |

Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.



Case 24-11987-TMH Doc 151-1 Filed 09/04/25 Entered 09/04/25 09:38:14 Desc Exhibit A - Meeting of Creditors (Part 4) of Page 33 of 220

Colloquy

(Proceedings commenced at 10:30 a.m.)

(Witness sworn.)

MR. WEBSTER:  All right.  State your full name for the record.

MR. PARET:  Charles Paxton Paret.

MR. WEBSTER:  Did you read the bankruptcy petition and bankruptcy schedules and the forms that were filed in this case on your behalf?

MR. PARET:  I did.

MR. WEBSTER:  And are you personally familiar with that information?

MR. PARET:  I am.

MR. WEBSTER:  And it is true and accurate, correct?

MR. PARET:  Yes.  There's some edits and additions that were -- that we're making that I found going back through, items that are missing that I still -- that I still believe that I have ownership in that haven't been discontinued or haven't been -- are not part of my larger claims.

MR. WEBSTER:  I understand, but you can continue to clarify that, correct, going forward?

MR. PARET:  Yes, of course.

MR. WEBSTER:  All right.  Now, is there any reason why you can't answer the questions this morning?

MR. PARET:  Why would there not be a reason why I can't answer the questions?

Colloquy

MR. WEBSTER: Well, no. I'm just required to ask you that question. But I take it there is no reason you can't answer, correct? You're ready to proceed, right?

MR. PARET: Unless I don't know the answer to the question.

MR. WEBSTER: Very good. Very good. I understand. All right. So do the bankruptcy schedules identify all of your assets and creditors in the case?

MR. PARET: They identify -- there are some missing creditors. There's some missing -- not -- nobody that had filed anything, but there's missing creditors, I believe. And there's missing -- there's a few missing properties that I still have ownership in that were not included in there.

MR. WEBSTER: All right. So I'm going to make a note of that, and we'll follow back up on that. All right?

MR. PARET: Absolutely.

MR. WEBSTER: You may need to update the schedules at some point to complete them. Now, do you still live at the same address that you lived at when the bankruptcy petition was filed?

MR. PARET: Well, you're saying 343 First Street?

MR. WEBSTER: Is that the address, 343 First Street?

MR. PARET: It's where I live now.

MR. WEBSTER: 343 First Street. North. What? Northwest? Northeast?



Colloquy

MR. PARET:  No, no.  Berryville, Virginia.

MR. WEBSTER:  343 First Street.  Varityville, Virginia.

MR. PARET:  Berryville, Virginia.

MR. WEBSTER:  Berryville.  Berryville, Virginia

MR. PARET:  22611.  And when the bankruptcy was filed I was moving around between my house in DC where I lived with my ex-wife and our other house here.

MR. WEBSTER:  I got you.  So now, let me ask you.  How long did you live in the District of Columbia before you moved to Berryville?

MR. PARET:  We haven't.  We've always been in Virginia, but we've -- we've -- we've had a house in DC.  My wife's had a house in DC we'd go back and forth to quite frequently.

MR. WEBSTER:  How long did you have that house?

MR. PARET:  I never had it.  My wife had it for, maybe, eight, seven -- seven, six years, something like that.

MR. WEBSTER:  Oh, I see.  So that never really was your address, the DC house.  Your address was always the Virginia house, correct?

MR. PARET:  Yes, sir.

MR. WEBSTER:  All right.  How long did you live in Virginia?

MR. PARET:  I've lived in Virginia for, maybe, six --



six years.  Six, seven years.  I had another address before that in DC.  I lived in an apartment before I was married.

MR. WEBSTER:  So hold on then.  You lived in Virginia for six years.

MR. PARET:  Let me give you -- let me give you the -- I would say 2018.  2018, 2019 I started going out more to Virginia.  That's correct.

MR. WEBSTER:  All right.  And you still live there now.  You still live in Virginia now, correct?

MR. PARET:  Yes.

MR. WEBSTER:  All right.

MR. PARET:  Between here and Atlanta, where my wife has a business, and we go back and forth.

MR. WEBSTER:  And the property that you live in in Virginia, is that your residence, or are you renting it?

MR. PARET:  It is.

MR. WEBSTER:  Your residence?

MR. PARET:  It is my residence.

MR. WEBSTER:  All right.

MR. PARET:  Okay.

MR. WEBSTER:  Are you planning on buying any real estate in the next 120 days?

MR. PARET:  No.

MR. WEBSTER:  Do you have a mobile phone number you can give me?

Colloquy

MR. PARET:  Yes.  202-834-7673.

MR. WEBSTER:  And do you have an email address?

MR. PARET:  Yes.

MR. WEBSTER:  Go ahead.

MR. PARET:  C as in Charlie, P as in Paul, P as in Paul.

MR. WEBSTER:  Is that two P's?

MR. PARET:  Yeah.

MR. WEBSTER:  Is that two P's?

MR. PARET:  Yeah.  Two P's.

MR. WEBSTER:  Okay.  Go ahead.

MR. PARET:  @colomariver.com.

MR. WEBSTER:  Spell that.

MR. PARET:  C-O-L-O-M-A-R-I-V-E-R.com.

MR. WEBSTER:  Thank you.  Are you currently single, married or separated?

MR. PARET:  I just have a partner.  I'm not married.

MR. WEBSTER:  All right.  Single.  Do you have any dependents?

MR. PARET:  I have a daughter.

MR. WEBSTER:  One daughter.  Are you currently employed?

MR. PARET:  Yes.  I'm working as an advisor in putting together real estate transactions.

MR. WEBSTER:  Do you have an employment address



Case 24-11007-MBK Doc 15-1 Filed 07/04/25 Entered 07/04/25 09:29:14 Desc
Exhibit A - Meeting Creditors Transcript page 49 of 205

Colloquy

different from your home?

MR. PARET: No.

MR. WEBSTER: Okay. Your home address. Have you ever filed for bankruptcy before?

MR. PARET: No, I never filed for bankruptcy. I was involuntary, put into it.

MR. WEBSTER: I see. I understand. Have you purchased a car within the last six months?

MR. PARET: No.

MR. WEBSTER: All right. You currently own a vehicle?

MR. PARET: I do.

MR. WEBSTER: Is it insured?

MR. PARET: It is.

MR. WEBSTER: All right. You have any life insurance with cash surrender value?

MR. PARET: No.

MR. WEBSTER: Were you expecting any tax refunds at the time you filed the bankruptcy case -- at the time the bankruptcy case was filed?

MR. PARET: No, but there could be. We've engaged a tax company, and there could be substantial refunds that we're in the process of working through.

MR. WEBSTER: All right. In the process. Okay.

MR. PARET: I can give you the name of that accountant if you need that.

Case 24-11967-JKS Doc 1511 Filed 05/04/25 Entered 05/04/25 00:33:24 Desc
Exhibit A - Meeting of Creditors (Transcript) Page 50 of 2073

Colloquy

MR. WEBSTER:  Please do.

MR. PARET:  It's Bobby Bhatia.

MR. WEBSTER:  Bobby?

MR. PARET:  Bhatia LLP or is it Bhatia, CPA & Consultants.

MR. WEBSTER:  Spell it for me.  Bobby?

MR. PARET:  B --

MR. WEBSTER:  Wait a minute.  I'm sorry.  Bobby, B-O-B-B-Y?

MR. PARET:  Yes, sir.

MR. WEBSTER:  All right.

MR. PARET:  B-H-A-T-I-A.

MR. WEBSTER:  CPA?

MR. PARET:  Yes, sir.

MR. WEBSTER:  All right.  And is there a phone number?

MR. PARET:  I don't -- I don't have it on me at the moment, but I can have it emailed to you at another time.

MR. WEBSTER:  Very good.  Very good.  All right.  Does anyone owe you any money, including wages?

MR. PARET:  Yeah.  There's probably a long.  I have to go through that list.  Yeah.

MR. WEBSTER:  Okay.  And that would be added to your schedules, correct, monies that are owed?

MR. PARET:  You would think -- I think one is, I mean, there's some people that I can't really find that owe me an



Colloquy

exorbitant amount of money. I don't know where they're located. I looked into hiring a private investigator, and I can't seem to -- seem to locate one of the individuals. The other individual is based in DC. Owes me probably about $75,000. He used my money to buy a personal residence instead of an investment. And he's based in DC.

MR. WEBSTER: All right. Do you own any antique collectibles?

MR. PARET: I did for -- I had -- I had a bunch of stuff under consignment on a store that I used to manage, but I no longer -- I've been -- I no longer have that property anymore or any of the antiques that were in there other than what's in my house, my furniture and stuff --

MR. WEBSTER: All right.

MR. PARET: -- now.

MR. WEBSTER: So all of your property though, is listed in the bankruptcy schedules now; is that correct?

MR. PARET: That's correct.

MR. WEBSTER: All right. Do you have any domestic support obligations that you're required to pay?

MR. PARET: Other than taking care of my daughter and my wife, no, I don't have any other.

MR. WEBSTER: But I mean, not -- that's not in the form of a domestic support obligation. Is that right?

MR. PARET: No, I don't.



Case 24-10632-CTG    Doc 451-1    Filed 07/04/25    Entered 07/04/25 00:33:24    Desc
Exhibit A A Meeting of Creditors (Part 2) cf Page 4 of 20753

10

Colloquy

MR. WEBSTER:  Okay.  All right.

MR. PARET:  But --

MR. WEBSTER:  Have you --

MR. PARET:  I have to take care of my family.

MR. WEBSTER:  I understand.  I understand.  Have you transferred any property out of your name in the last four years?

MR. PARET:  No.  No.

MR. WEBSTER:  All right.  Have you sold a house or business in the last four years?

MR. PARET:  You know, I've had -- no.  I've had some properties taken from me, but I haven't had any -- I haven't sold or exited.

MR. WEBSTER:  I understand.  Has anyone passed away that you would expect to inherit property from?

MR. PARET:  No.

MR. WEBSTER:  Have you been involved in an automobile accident where you might have a claim against someone?

MR. PARET:  No.

MR. WEBSTER:  And now, are you currently involved in any litigation where you're suing anyone?

MR. PARET:  Yes.

MR. WEBSTER:  All right.  And is that information in the schedules?

MR. PARET:  It should be.



Case 25-10697-JTD Doc 45-1 Filed 07/24/25 Entered 07/24/25 09:33:24 Desc
Exhibit A Meeting of Creditors (Transcript) Page 53 of 53

Colloquy

MR. WEBSTER: All right. We'll follow up if it's not. Now, you said you're -- are you in the process of finalizing your personal taxes, or are these business taxes? You said you have an accountant that's looking into the tax issues.

MR. PARET: It will be a combination of personal and business.

MR. WEBSTER: All right. So you're in the process of doing that?

MR. PARET: Yes.

MR. WEBSTER: All right. And we need to speak to speak to Bobby Bhatia about that.

MR. PARET: (Indiscernible).

MR. WEBSTER: All right.

MR. PARET: And I spoke to my agent at the IRS, and she's aware that we're amending the -- there's some tax obligations that are incorrect that date back to 2019. So hopefully, by the time we're done with these taxes, all of that will be amended.

MR. WEBSTER: I understand. Now, did you list all of your bank accounts in the schedules?

MR. PARET: I did.

MR. WEBSTER: All right. Do you have a stock account or mutual fund account?

MR. PARET: I do not.

MR. WEBSTER: All right. And have you paid anyone



Case 24-11057-JKS Doc 151 Filed 07/04/25 Entered 07/04/25 09:33:24 Desc
Exhibit A Meeting of Creditors (Part 4) Page 43 of 53

Colloquy

more than $600 in bills in the past three months?

MR. PARET:  Other than my current obligations, mortgages, car payments --

MR. WEBSTER:  All right.  And that information is reflected in the schedules.  Correct?

MR. PARET:  Correct.  All right.

MR. WEBSTER:  Do you have a college education fund for your daughter?

MR. PARET:  I do not.

MR. WEBSTER:  Have you owned or had any interest in an LLC or a business in the past four years?

MR. PARET:  Yes, of course.

MR. WEBSTER:  And that's reflected in the schedules too, correct?

MR. PARET:  Yeah, there's a lot of LLCs.  Now, the problem is most of those LLCs are either defunct or I'm not renewing them.  So either they're -- they're part of the current litigation, or I've just let them go because I can't pay to renew them.

MR. WEBSTER:  I understand.  But they are listed in your schedules.

MR. PARET:  Yes.

MR. WEBSTER:  All right.

MR. PARET:  There are some that are missing or that have properties attached to them that were not in the schedules

Colloquy

that I did not think that I would have a claim to, but the LLCs are still active and the properties are still active, and these are assets that are outside of the current litigation with one of my creditors.

MR. WEBSTER: Okay. So we may have to follow up with you on that. Have you been involved in any type of trust in the last three years?

MR. PARET: No. There was a trust that was set up in Virginia that never went -- it was never actually set up. It was meant to be for a project. I think it was called the Paret Family Limited Partnership Trust, but it never was set up, and there's nothing attached to it. And it just -- it should have gone defunct at this point.

MR. WEBSTER: All right. Do you own any cryptocurrency?

MR. PARET: I did, and it's one of the ongoing litigations. I'm trying to find one of my -- the gentleman who ran off with it is one of my debtors that ran off with quite -- quite a large sum of it.

MR. WEBSTER: All right. And is that referred to in the schedules?

MR. PARET: It should be, yes.

MR. WEBSTER: All right. What about a Venmo account? Do you have a Venmo account?

MR. PARET: I personally do not, but I think, like,



Colloquy

one of my -- my retail businesses did for a while.

MR. WEBSTER:  All right.  How about a PayPal account?

MR. PARET:  No.

MR. WEBSTER:  And have you made any electronic transfers to any parties from any of these accounts in the past year?

MR. PARET:  To what accounts?

MR. WEBSTER:  From any of those electronic accounts in the past year.

MR. PARET:  Yeah, I think for my -- it's set up under my house payments where renters can -- people that rent my little cottages that are at my house and properties that I manage, they pay through -- they can pay through Venmo.  It's mostly where they pay.  If they don't pay through Venmo, they'll pay through, like, just an online processing.

MR. WEBSTER:  So but --

MR. PARET:  That goes to --

MR. WEBSTER:  That's the Venmo account, though, that's listed for your business.

MR. PARET:  That's correct, Your Honor.  Yes.

MR. WEBSTER:  Yeah, you said you said you didn't have one personally, but your business -- you have a business name.

MR. PARET:  Yeah.

MR. WEBSTER:  All right.

MR. PARET:  It should be at least.  I mean, I have an



Case 24-11987-JKS Doc 1451-1 Filed 09/04/25 Entered 09/04/25 09:33:24 Desc Exhibit A Meeting of Creditors (Part 2) of 2 Page 15 of 53

15

Colloquy

admin that manages all of that.

MR. WEBSTER: All right. All right.

MR. PARET: I'll double check with you.

MR. WEBSTER: Oh. Very good. Okay. I don't have any more 341 interrogatory questions right now, but we may have to follow up once we review your schedules. All right?

MR. PARET: Okay.

MR. WEBSTER: All right. The attorneys on the line beginning with Attorney Fasano. Do you have any follow-up questions?

MR. FASANO: Yeah. All right. Mr. Paret, I saw you listed, it looked like forty or fifty, maybe eighty or ninety LLCs. I know those LLCs are involved in litigation, but did any of those LLCs still own any property in --

MR. PARET: Yes.

MR. FASANO: Yes. Which ones are those?

MR. PARET: 1114 8th Street Holdings L.L.C.

MR. FASANO: Okay. And does that one own the property at that address?

MR. PARET: Correct. And I'm a fifty percent owner of that address of that company. Yes.

MR. FASANO: Okay.

MR. PARET: There was a very, you know, the partner in that deal, in order to avoid a claim against the property by one of our investors, he made me sign, like, a small release,



Case 24-10087-JKS Doc 151-1 Filed 07/04/25 Entered 07/04/25 09:33:14 Desc Exhibit A Meeting of Creditors (part 5) of 8 Page 47 of 73

Colloquy

but I've had my counsel look at it, and he said, that's invalid. There's been no dissolution of the partnership, and there's been no dissolving of the asset, and it's worth probably $2 million. And I think we have about a $900,000 first position trust that's on that.

MR. FASANO: All right. Is there any second position trust on it?

MR. WEBSTER: I don't think so. No.

MR. FASANO: Okay. Who's the other fifty percent owner?

MR. PARET: I believe Easy Loans (phonetic). Ryan Shandell.

MR. FASANO: Ryan. How do you spell his last name?

MR. PARET: S-H-A-N-D-E-L-L.

MR. FASANO: Okay. Are there any other --

MR. PARET: Go ahead.

MR. FASANO: Are there any other companies that still own property that you have an interest in?

MR. PARET: Yes. There was 729 Kennedy Street Holdings. It's not a party to the WCP litigation.

MR. FASANO: Okay. And what does that own? I mean, does that own 729 Kennedy Street?

MR. PARET: Yes.

MR. FASANO: So what? Fifty percent interest?

MR. PARET: 1,000,003, and it's -- I think it has a

Case 24-10837-JKS  Doc 451-1  Filed 09/04/25  Entered 09/04/25 09:39:24  Desc
Exhibit A Meeting Transcript (Part 9) of 22  Page 17 of 53

17

Colloquy

$550,000 first position.

MR. FASANO:  You own --

MR. PARET:  No, I own sixty-five percent.  Sixty-three percent, something like that.  I don't know the exact amount.

MR. FASANO:  Who's the other owner?

MR. PARET:  That's a group of small investors that are part of the litigation.

MR. FASANO:  Okay.  And WCP has no lien on that?

MR. PARET:  No.

MR. FASANO:  Okay.  Who has the lien on that?  .

MR. PARET:  Dave McClure (phonetic).  I forget the name of the lender.  It's something, Hive Lending (phonetic).  Hive lending.

MR. FASANO:  Hive lending?  Like a beehive.

MR. PARET:  Yes.

MR. FASANO:  Okay.  Anything else?

MR. PARET:  Well, there's a property in question that I signed a release for, but it may be a little gray.  There was a property in southeast DC, a fairly sizable site, where we made a deal with a developer that we could close on the land, but in order for him to close on the land he had -- we had to lower our purchase price, and he would give us a concession.  I don't think there's any -- if either -- I mean, I could try to litigate it, but I'm not sure it's worth going after, because we did sign, sort of, a release.  But there was an agreement

Case 25-10997-JKS Doc 151-1 Filed 07/04/25 Entered 07/04/25 09:33:24 Desc Exhibit A A Meeting of Creditors (Read) (Part) Page 49 of 2053

Colloquy

between us and the other party. It's just a single individual, but we sold them a property for a million dollars, and the -- it ended up being, like, more like 300,000, because we couldn't get the appraisal done. But I don't know if I have any real claim to it at this point, but -- I forgot. I forgot about --

MR. FASANO: What is the entity and what is the property?

MR. PARET: I have to send it to you. It's -- it's just lots. It's just empty lots. There's no property.

MR. FASANO: Okay. And it's not in your company's name right now?

MR. PARET: No, it was in a company that I established. I think it was reassigned to a new -- it was sold to a new entity, but it was sold for no money. It was just -- we just lowered the price and to get -- to get him approved for the loan, so he could close on it quickly. It's slightly complicated, but I can -- I can -- it's worth a lot of money now. It's probably worth maybe $3 million now, but this is five, six, seven years ago, something like that.

MR. FASANO: So you lowered the price and that he would qualify for a loan because he couldn't get the appraisal?

MR. PARET: And we were supposed to -- we were supposed to work together on the property to get the entitlements, which we did work on after he closed and get it, you know, get the financing together. It was being held in his



Case 24-11837-MG Doc 151 Filed 09/04/25 Entered 09/04/25 09:33:24 Desc
Exhibit A Meeting Proceedings (Part 1) of 2 Page 50 of 73      19

Colloquy

name during that time.  But a lot of things happened between now and then, and we just sort of.

MR. FASANO:  And what is his name?

MR. PARET:  His name's Peter Corbett (phonetic).  Or wait, wait.  I'm sorry.  Let me make sure of this.  Corbetts.  It's not Peter Corbett.  It's Corbett-Daly (phonetic).

MR. FASANO: Corbett-Daly.   Is that his last name is Corbett-Daly or is --

MR. PARET:  Yeah.

MR. FASANO:  Okay.

MR. PARET:  And the name of the LLC  The name of the LLC was 15th Place Holdings, LLC.

MR. FASANO: UU:  Got it.  And do you know, is that within the last four years?

MR. PARET:  2019, sort of.

MR. FASANO:  Sort of.

MR. PARET:  Maybe.

MR. FASANO:  Okay.

MR. PARET:  Maybe.  I mean, I think it went into -- hold on.  Let me see.  Yeah.  This is all in 2018 from -- we closed in -- it -- the purchase price that we were selling it to the entity, I believe, was for 800,000.  I'm looking at the details now.  We actually ended up settling for 300 or something very way below market value, so he could close on the loan.  But you can build thirty units in --

Colloquy

MR. FASANO: You mean like, a second note on the property? Second deed of trust.

MR. PARET: No it was -- I think it was more of a -- I have somewhere in an email, I think we -- the structure of how we did it. I'd have to share it with you. I'd have to find it.

MR. FASANO: Right. Any other properties, any other LLCs that still have property?

MR. PARET: I'd have to go back through that list again. I know it was a lot, but I think there was, like, one or two more that were slightly outstanding. I'll go -- I don't want to say no, and then have there be another one and me -- me being questioned as regarding of what my you know. I just, I don't know off the top of my head. I'd have to go back through to look.

MR. FASANO: Marlin Mead (phonetic), that is the guy who owes you 75,000?

MR. PARET: I mean, it's accruing interest heavily. Yeah.

MR. FASANO: So what? What happened with that?

MR. PARET: He bought a house using that money, and it's worth quite a lot of money now, I think. I think it's worth quite substantially. I can send you the -- I mean, as of it was a $40,000 principal as of July 18th, 2019, accruing three percent a month since that date.



Case 24-11987-EPK Doc 151-1 Filed 08/04/25 Entered 08/04/25 09:38:21 Desc
Exhibit A Making the Debtor (Teach) of page 52 of 2053

Colloquy

MR. FASANO: So he took your money. He bought a house with it. Was there a loan document between you?

MR. PARET: There was a -- there was a promissory note. And a few other things, I believe. Yes. I can -- I can share that with you.

MR. FASANO: Okay.

MR. PARET: But I knew he used that money to buy a house. And the house is, I think, has 300 or $400,000 in equity in it.

MR. FASANO: Is he living there?

MR. PARET: I believe so. James Lomax (phonetic). The name of the -- the name of the -- the name of the address that he used to acquire the property was -- can I give you the address?

MR. FASANO: Yeah.

MR. PARET: 6017 Seat Pleasant Drive in Capital Heights, Maryland. But he never he never used that money to buy that house. He used it to buy something else. To buy another house that he was developing, and then ended up moving in as a personal residence.

MR. FASANO: Right. Have you sued?

MR. PARET: I have been emailing him consistently. I haven't filed suit yet. But I had enough of other things and other things I'm dealing with regarding filings.

MR. FASANO: Okay. And James Lomax, IV, that's the



Case 24-10979-TMH Doc 1511 Filed 09/04/25 Entered 09/04/25 00:33:14 Desc
Exhibit A Meeting of Creditors (Pard 4) Page 53 of 2053

Colloquy

guy you can't find?

MR. PARET:  Correct.

MR. FASANO:  And he sold 320 bitcoin?

MR. PARET:  Something like that.

MR. FASANO:  I just went online.  That looks like it's valued around $60,000 right now.  Does that seem right?

MR. PARET:  Something like that.

MR. FASANO:  Okay.

MR. PARET:  Yeah, if I could find him.  If you look up, there was an LLC, a Coloma River LLC that he had registered in Florida.  He went ghost on me probably, maybe, five years ago.  We had a total of, like, 500 and something bitcoin, something like that.  I think at the time where it began to disappear was somewhere around 300.  At the time they were, like, $300 a coin or something like -- it wasn't substantial the way it is now, but I've tried to hire people to find him.

MR. FASANO:  What else?

MR. PARET:  Right.  Keep going.  I think that's about it.

MR. FASANO:  Give me two seconds.  The consigned goods.  Were you running a store in Clark County?

MR. PARET:  Yeah, I was.  I mean, it was a -- just a hobby project.  Called Neatoville (phonetic).  It was an asset that I was trying to buy over -- over time through, like, a lease to own structure.  And the guy went back on his offer,

Case 24-10997-CTG   Doc 451-1   Filed 07/04/25   Entered 07/04/25 09:35:24   Desc
Exhibit A - Meeting of Creditors (Transcript) Page 22 of 53

23

Colloquy

and I couldn't keep staff there to manage it, and just ended up walking away from the store and everything in it.  There was a lot of, you know, assets and things that were being sold under that, under that LLC, but I didn't have time to manage it, and it didn't really make any money.

MR. FASANO:  What was the LLC?

MR. PARET:  Neatoville LLC.  N-E-A-T-O.  It doesn't have any value now.  I mean, it's nothing.

MR. FASANO:  You would buy goods on consignment?  Or not buy goods.  People would consign goods to it?

MR. PARET:  Yeah.  I never was involved in it.  I don't have time to.  I mean, it's not my business.  It was more of a way to, you know, grow community, and it was a hobby, if any.

MR. FASANO:  All right.  So you're living at 343 First Street?

MR. PARET:  Yeah.

MR. FASANO:  Okay.  What is 98 East Fairfax?

MR. PARET:  It's part of 343 First Street.  It's just a separate -- a separate parcel.  And I'm here now.  It's the house.  I live on a farm.  I, you know, I have animals.  I take care of the animals, and 98 East Fairfax is the rear entrance of my farm.  It's the main farmhouse that attaches to this parcel.

MR. FASANO:  So First Street is the house.  Fairfax is



Case 24-11037-HLG Doc 151 Filed 05/04/25 Entered 05/04/25 08:32:14 Desc
Exhibit A Meeting of Creditors (Transcript) Page 24 of 53

Colloquy

the farm.

MR. PARET: Fairfax is the farm. It's all connected. And I have a guest house on that property as well. But it used to be, originally, in the early days, about 100, 150 years ago, It used to be all one parcel. It was subdivided, and I reconnected them.

MR. FASANO: Are you actively farming there?

MR. PARET: I am.

MR. FASANO: What are you farming?

MR. PARET: I have cows, and I think, a couple of ducks.

MR. FASANO: Any crops?

MR. PARET: No, minus the hay. That's it.

MR. FASANO: How many cows? Do you know?

MR. PARET: Eight.

MR. FASANO: And how many ducks?

MR. PARET: Four or six.

MR. FASANO: Are these milk cows?

MR. PARET: Yeah, they're -- they're Angus beef.

MR. FASANO: Angus beef. So are they (indiscernible) cows?

MR. PARET: I guess they're cows, but they're -- they're not, I mean, I'm not breeding them.

MR. FASANO: Right.

MR. PARET: I mean, the guy who manages it all does


www.escribers.net | 800-257-0885

Case 25-10837-JKS Doc 45-1 Filed 09/04/25 Entered 09/04/25 09:33:24 Desc
Exhibit A Meeting of Creditors (Part 1) Transcript Page 25 of 53

Colloquy

it, but we just.  I just do it for food.

MR. FASANO:  Right.

MR. PARET:  I don't do it for money.

MR. FASANO:  You don't sell the cows?  You just --

MR. PARET:  No cows.

MR. FASANO:  Yeah.  Got it.  Okay.

That's going to be all my questions for now.  I'll open up the floor to everyone else.

MR. WEBSTER:  Well does Attorney VerStandig have any questions?

MR. VERSTANDIG:  Yes.  And just as a sort of preliminary matter, can we keep the 341 open until such a time as amended schedules are filed?

UNIDENTIFIED SPEAKER:  I think we're going to need to, yeah.

MR. WEBSTER:  Yes, we'll do that.

MR. VERSTANDIG:  Mr. Paret, earlier today you indicated that you have a partner, but you're not married.  And then subsequently, you made a reference to your wife.  What is your marital status?

MS. KORBUT:  You're muted.

MR. PARET:  When I was talking about my wife, I meant my ex-wife.

MR. VERSTANDIG:  Okay.  Do you have a support obligation to your ex-wife?

Colloquy

MR. PARET:  No, I do not.

MR. VERSTANDIG:  Do you send your ex-wife money?

MR. PARET:  No.

MR. VERSTANDIG:  I'm sorry.  Say that one more time.

MR. PARET:  No.

MR. VERSTANDIG:  Okay.  So when you talked about supporting your child and your wife, what did you mean by supporting your wife?

MR. PARET:  Oh, I'm sorry.  I mean, supporting my partner.  I'm not married.  I'm engaged.  I'm not married.

MR. VERSTANDIG:  Do you have a wedding date?

MR. PARET:  No.

MR. VERSTANDIG:  Did you present your partner with an engagement ring?

MR. PARET:  I did.

MR. VERSTANDIG:  When did you become engaged?

MR. PARET:  It's like, I think, October of last year.

MR. VERSTANDIG:  October of 2023?

MR. PARET:  Correct.

MR. VERSTANDIG:  Okay.  Where did you procure the engagement ring?

MR. PARET:  I got it through -- well, I got it from -- I think I got it from an estate, like, an estate sale.

MR. VERSTANDIG:  It's a used engagement ring?

MR. PARET:  Yes, absolutely.



Colloquy

MR. VERSTANDIG:  How much did you pay for it?

MR. PARET:  I think I paid, like, 2 or $3,000.

MR. VERSTANDIG:  Are you familiar with the property known as 4910 Georgia Avenue?

MR. PARET:  Yes.

MR. VERSTANDIG:  Okay.  You're currently being sued in federal court over your involvement with that property, correct?

MR. PARET:  Yes.

MR. VERSTANDIG:  Do you claim, through partnership or otherwise, to have any ownership interest in that property, as we sit here today?

MR. PARET:  Is that pertinent to this conversation?

MR. VERSTANDIG:  Yes.

MR. PARET:  I mean, can I answer this question without my other counsel?

MR. VERSTANDIG:  Mr. Paret, you're under oath, and it's your meeting of creditors.  Unless someone instructs you otherwise, you're going to answer my questions today.  So do you claim to have an ownership interest in 4910 Georgia Avenue?

MR. PARET:  I do.

MR. VERSTANDIG:  What is the nature of your ownership interest?

MR. PARET:  I think that's currently in debate.

MS. KORBUT:  Considering it's an ongoing proceeding,

Colloquy

is this something that can be updated as the proceeding continues?

MR. VERSTANDIG:  Mr. Paret has certainly changed answers in the past.  He's welcome to change them in the future.

All right.  Mr. Paret, are you familiar with a property known as 423 Kennedy Street in Washington, DC?

MR. PARET:  Yes.

MR. VERSTANDIG:  Okay.  Do you claim to have an ownership interest in that property?

MR. PARET:  That's currently in debate.

MR. VERSTANDIG:  I understand you're saying it's in debate.  What is your position in the debate?  Do you maintain that you have an interest, or do you maintain that you don't have an interest?

MR. PARET:  We maintain that we have an interest.

MR. VERSTANDIG:  Okay.  When you say we, who is we?

MR. PARET:  My LLC, 423 Kennedy Street Holdings.

MR. VERSTANDIG:  Okay.  Do you own an interest in 423 Kennedy Street Holdings LLC?

MR. PARET:  That's currently in debate.

MR. VERSTANDIG:  Okay.  But you maintain that you do?

MR. PARET:  It's currently in debate.

MR. VERSTANDIG:  No.  Mr. Paret, I'm not asking you if there's a debate.  I'm asking you what your position is.  And I



Colloquy

understand.  Judges can tell you that you're wrong.  Other people can argue with you.  Is it your position that you own an interest in 423 Kennedy Street, the property in Washington, DC?

MR. PARET:  It's currently in debate.

MR. VERSTANDIG:  Mr. Paret, that's not an acceptable answer.  If you don't know, you can tell me that you don't know, and we can talk about the facts.  And if you'd rather do this for 4910 Georgia or one of the other sixty-some odd properties, that's fine.  I picked a few properties at random.  But I want to understand.  Is it your position -- and look.  A judge may say otherwise.  Lawyers may say otherwise.  Other people may say otherwise.  But is it your position, Charles Paxton Paret, that you own an interest in the real property situated at 423 Kennedy Street in the District of Columbia?

MR. PARET:  It's currently in debate.

MS. KORBUT:  Mac, I think you got the answer you're going to get on this one.  I think he understood.

MR. PARET:  I can go -- I can go all day, Mac.  Let's, you know, you're going to get the same thing out of me.

MR. VERSTANDIG:  Okay.

MR. PARET:  Let's move on.  In the interest of time.

MR. VERSTANDIG:  Mr. Paret, what is your position in that debate?  Do you believe that you own an interest, or do you not believe that you own an interest?  I'm sorry.  I didn't hear an answer.



Case 25-11037-ELG Doc 45-1 Filed 05/04/25 Entered 05/04/25 09:38:14 Desc
Exhibit A Meeting Parties (Part 2) of 2 Page 61 of 73

30

Colloquy

MR. PARET:  I didn't give one.

MR. VERSTANDIG:  Chuck, please answer the question.

MR. PARET:  I -- I believe that my investors have an ownership interest in that property.  And our LLC, our LLC has an ownership interest in that property.  And I'm not going to speak on behalf of my interest.

MR. VERSTANDIG:  Why are you not going to speak on behalf of your interest?

MR. PARET:  Because it's currently in debate.

MR. VERSTANDIG:  Only for the record at this point, because obviously a contempt admission's forthcoming.

Mr. Trustee, would you please direct the debtor to answer the question?

MR. WEBSTER:  Well, I believe he's saying that he doesn't -- he's not able to answer it, because it's unclear.  That's my understanding.

MR. PARET:  That is correct, Mr. Webster.

MR. VERSTANDIG:  But Mr. Paret, now, it is your position that an entity you own owns an interest in that property?

MR. PARET:  I mean, you're trying to get me to answer that question the way you want me to answer the question.  And as Mr. Webster stated, it is currently unclear.  My only position that I'm stating on record is that the LLC that we own had interest in that property, and my investors had interest in

Colloquy

that property.  And that is all at this time that I will say.

MR. VERSTANDIG:  Well, Mr. Paret, you've sued my

client for, I believe, half a billion dollars on the theory

that you have an interest in that property and fifty some odd

others, correct?

MR. PARET:  That is correct.

MR. VERSTANDIG:  Did you voluntarily file that

lawsuit, or were you forced to do so?

MR. PARET:  Force?  Force by who?

MR. VERSTANDIG:  Well, I just want to make sure, since

you're not answering today, that you at least understood what

you were doing when you filed that lawsuit.

MR. PARET:  I mean, we were filing that lawsuit on

behalf of, you know, the other partners and investors that were

in that project.

MR. VERSTANDIG:  So you filed it on behalf of them.

The lawsuit is Charles Paret v. Daniel Huertas, correct?  You

don't have any co-plaintiffs?

MR. PARET:  No, there's -- it's currently myself and

the LLCs, I believe.

MR. VERSTANDIG:  I'm sorry.  It's your position that

the LLCs are your co-plaintiffs?

MR. PARET:  No.  I'm sorry.  I misspoke.

MS. KORBUT:  Mr. VerStandig, is any of this calculated

towards finding out whether or not the estate has any assets?

Colloquy

MR. VERSTANDIG:  Yeah.  It appears the estate's only asset, other than things that haven't been scheduled and several hundred million dollars in stolen bitcoin is a litigation claim against my client.  I'm trying to gently explore whether or not he even understands the litigation claim he filed

MS. KORBUT:  Mac, currently, we're not discussing the litigation claim, and he doesn't have his attorneys present that are representing him in that litigation claim, so I can't really speak to it, nor could I cover what should or shouldn't be disclosed in this meeting under that proceeding.  So this seems like something that needs to be sorted out in the litigation proceedings and not in these ones.

MR. VERSTANDIG:  Well, he's not represented in the litigation, because it's an asset of the estate.  So we don't need to worry about him having litigation counsel present.  I'm simply asking for his understanding of what he's asserting.  I'm not asking him to make legal conclusions.  I'm not asking him to play judge.

MR. PARET:  If my attorneys are present that are representing me, I'm going to give the same response, that it's unclear.

MR. VERSTANDIG:  Okay.  Who are the attorneys that are representing you, Mr. Paret?

MR. PARET:  Blank Rome, Donald Temple.



Colloquy

MR. VERSTANDIG:  When did you engage the services of Blank Rome?

MR. PARET:  I currently -- I think they currently are being engaged now, I believe.

MR. VERSTANDIG:  So they're not your attorneys at the moment.  They're yet to be engaged?

MR. PARET:  I believe so.  They -- they were engaged with me on a -- on a matter of, the OAG matter, which is not related to this.

MR. VERSTANDIG:  Well, let me ask you a different question.  Since you were placed into bankruptcy, have you hired any attorney other than the Martin Law Group without the permission of the bankruptcy court?

MR. PARET:  No.

MR. VERSTANDIG:  Okay.  So if Blank Rome is still being engaged, are you saying that they represented you since before the bankruptcy, even though there is --

MR. PARET:  No.  They haven't been formally engaged yet?

MR. VERSTANDIG:  Okay.  What about Mr. Temple?  When did you formally engage Mr. Temple?

MR. PARET:  I think May or May or April, May, March of 2023, somewhere around that time.

MR. VERSTANDIG: Is Mr. Temple holding a retainer for you?

Case 24-10023-ELG Doc 45-1 Filed 05/04/25 Entered 05/04/25 16:28:14 Desc
Exhibit A Meeting of Creditors (Part 6) Transcript Page 34 of 53

34

Colloquy

MR. PARET:  He is not.

MR. VERSTANDIG:  You paid him somewhere between 10 and $20,000, correct?

MR. PARET:  That's correct.

MR. VERSTANDIG:  Okay.  And that was to represent you in connection with the litigation against my client, correct?

MR. PARET:  Correct.

MR. VERSTANDIG:  Okay.  And he did not complete that representation, did he?

MR. PARET:  He has not as of yet.

MR. VERSTANDIG:  Okay.  So is it your position that he owes you some of that money back?

MR. PARET:  No.

MR. VERSTANDIG:  You believe he earned all of it, even though he didn't finish the representation?

MR. PARET:  I mean, he's still working on the representation, so I believe so.

MR. VERSTANDIG:  So he represents you?

MR. PARET:  I mean, currently, on paper, yes, I believe so.

MR. VERSTANDIG:  Do you know when he filed his employment application with the bankruptcy court?

MR. PARET:  I don't know if he -- I don't think he was representing me in the bankruptcy court.  It -- Jeff Martin was representing me in the bankruptcy court.



Case 24-10078-ELG Doc 151-1 Filed 09/04/25 Entered 09/04/25 09:37:14 Desc Exhibit A Meeting of Creditors (Part 2) Transcript Page 35 of 53

35

Colloquy

MR. VERSTANDIG:  But we can agree that the litigation is in the bankruptcy court, correct?

MR. PARET:  Correct.  And we're trying to -- we're waiting on the direction.  And I believe he was entering his office to employ or whatever the language that's used shortly with the trustee.

MR. VERSTANDIG:  So it's your understanding that the trustee is going to be engaging Donald Temple?

MR. PARET:  And Blank Rome.

MR. VERSTANDIG:  Mr. Trustee, subject to the meeting being held up, I have nothing further at this time.  Thank you.

MR. WEBSTER:  All right.  Ms. can I have your attorney identify herself?  I see it's listed as Elizabeth.  Can you give me your full name for the record, ma'am?

MS. KORBUT:  Elizabeth Korbut.  K-O-R-B as in boy-U-T as in Tom.

MR. WEBSTER:  K-O-R-B as in boy.  What else?

MS. KORBUT:  U-T as in Tom.

MR. WEBSTER:  All right.  Thank you very much.  Any other party on the line have any questions of the debtor?

MR. SADOWSKI:  Mr. Gardner (sic), this is Jim Sadowski.  I do.

MR. WEBSTER:  All right, Mr. Sadowski.  First of all, what is your connection with the case?

MR. SADOWSKI:  I entered an appearance on behalf of



Case 24-10023-ELG Doc 45-1 Filed 09/04/25 Entered 09/04/25 09:23:14 Desc
Exhibit A Meeting of Creditors (Part 3) of 2025 Page 62 of 53

Colloquy

Manik Chamarthy --

MR. WEBSTER:  All right.

MR. SADOWSKI:  -- as a creditor or potential creditor.

MR. WEBSTER:  All right.

MR. SADOWSKI:  -- related to money that was invested in 4910 Georgia Avenue.

MR. FASANO:  Jim, can you spell that?

MR. SADOWSKI:  Sure.  Manik Chamarthy?

MR. FASANO:  Yeah.

MR. SADOWSKI:  Justin, I think I entered an appearance.

MR. FASANO:  I'll look it up.  I'll look it up.

MR. SADOWSKI:  Yeah.  Mr. Gardner (sic), did you want me to proceed, or are we waiting for Ms. Korbut?

UNIDENTIFIED SPEAKER:  You can go ahead.

MR. SADOWSKI:  Okay.  Mr. Gardner (sic), am I able to share my screen to pull up the schedules?  It's disabled currently.  I don't have to, but it might be helpful.

MR. WEBSTER:  Is there a technical problem?

MR. SADOWSKI:  It says the host has disabled participant screen sharing, so I don't think the option is available.

MR. WEBSTER:  Hold on a second.  Screen sharing.  I just checked on it.  Let's see if it's available now.

MR. SADOWSKI:  It is.  Thank you.



Case 24-10997-ELG Doc 151 Filed 07/04/25 Entered 07/04/25 09:29:14 Desc
Exhibit A Meeting of Creditors (Part 9) of 2020 Page 3 of 53

Colloquy

MR. WEBSTER:  All right.

MR. SADOWSKI:  Permission to share my screen?

MR. WEBSTER:  Certainly.

MR. SADOWSKI:  Now, Mr. Paret, I can't see what's being shared, but do you see some color-coded numbers and entities on the screen?

MR. PARET:  I do.

MR. SADOWSKI:  Yeah.  I'll represent to you that this is your schedules, page 10 of 46.  Sure.

MR. PARET:  Yeah.

MR. SADOWSKI:  Mr. Paret, is there any reason why these things are color coded the way they are?

MR. PARET:  I actually have no idea why they were like that.  No idea.

MR. SADOWSKI:  Okay.  All right.  And I take it, is this, like, this page is prepared in some sort of Excel file?

MR. PARET:  Yes.

MR. SADOWSKI:  And does the same holds true for page 12, which has some color coding on it.

MR. PARET:  Yeah.

MR. SADOWSKI:  Is that an Excel file?

MR. PARET:  Yes.

MR. SADOWSKI:  Okay.  Going back to page 10, I'm looking -- I don't see on page 10.  Maybe I missed it.  I don't see any reference to 4910 Georgia.  Did I miss that or?

Colloquy

MR. PARET: Should be. It should be in there. There's a -- there's a -- there is a bunch of missing ones that were not listed in here for some reason. Most of these are defunct, but there is a lot of them that were missing in here.

MR. SADOWSKI: So do you recall what the -- when I say 4910 Georgia Avenue, we're talking about the property in DC at that address, right?

MR. PARET: Correct.

MR. SADOWSKI: Yeah. Do you remember the entity that was associated with that property as an owner?

MR. PARET: Yeah. It was 4910 Georgia Avenue Holdings LLC.

MR. SADOWSKI: Okay. Were there any other LLCs involved with the ownership of that property? .

MR. PARET: I think there was 4910 Georgia Avenue Partners LLC. Does that ring a bell?

MR. SADOWSKI: It does. It's actually on my list. And what was that partner's entity relationship to that property?

MR. PARET: That was the property -- that was the ownership structure for their percentage of our ownership.

MR. SADOWSKI: And do you remember what the percentage was?

MR. PARET: Not off the top of my head.

MR. SADOWSKI: Have you heard of an entity called, and

Colloquy

I'll spell this.  G4910 LLC.

MR. PARET:  Yes.

MR. SADOWSKI:  That's G as in go.

MR. PARET:  That's correct.

MR. SADOWSKI:  How was that entity, G4910 LLC, involved with 4910 Georgia Avenue?

MR. PARET:  They were the financing arm of the 4910 Georgia Avenue Partners that was then a member of 4910 Georgia Avenue Holdings.  That was the LLC that financed that finance deal.  That was -- I didn't have any ownership of that.  That was the Manik and their group's of ownership.

MR. SADOWSKI:  Okay.  Do you remember who else besides you mentioned Manik?  That's Mr. Chamarthy, right?

MR. PARET:  Correct.

MR. SADOWSKI:  Yeah.  Besides Manik.  I'll just use that name.

It's M-A-N-I-K, for those listening.

Do you know who else was involved in the financing arm.

MR. PARET:  Lala Shore (phonetic), and I think a number of other individuals.  I don't know.  I couldn't -- I couldn't say their names if I -- if you asked me to.  I don't know I can pronounce them.

MR. SADOWSKI:  Let me see if I can help you with that.  Can you now see on my screen a word file that has Manik number



Case 24-10847-MFW Doc 151-1 Filed 07/04/25 Entered 07/04/25 09:33:14 Desc Exhibit A Meeting Transcript (Part 2) of 5 Page 42 of 53

Colloquy

one at the top?  Manik Chamarthy?

MR. PARET:  Correct.

MR. SADOWSKI:  Okay.  And there's your spelling.  Let me make this a little bit bigger.  Okay.  Records that I have indicate that Mr. Chamarthy paid $320,000 on September 27th, 2018 to District Title.  Do you know what that money was for?

MR. PARET:  Yes.  That was the funds that were sent to the closing that WCP requested for the settlement of 4910 Georgia Avenue.

MR. SADOWSKI:  Okay.  And then how about -- I have a similar questions for some others?  I'm going to scroll down.  There's a name here that even I can't pronounce.  It's Venugopal Cheegarama (phonetic).

MR. PARET:  Yes.  Yeah.

MR. SADOWSKI:  Yeah.

MR. PARET:  Correct.

MR. SADOWSKI:  And then there's a reference to $180,000 also being paid to District Title on September 27th, 2018.  Do you recall what that money was for?

MR. PARET:  That was for the settlement.  That was to WCP for the settlement of 4910.  That went into the WCP escrow account.  Both of those did.

MR. SADOWSKI:  Okay.  All right.  And then when you say WCP, can you help me out?  There's a whole lender there.

MR. PARET:  They're the lender for 4910 Georgia



Case 24-10102-ELG  Doc 151  Filed 09/24/25  Entered 09/24/25 16:32:41  Desc
Exhibit A Making the Record (Transcript) Page 42 of 53

41

Colloquy

Avenue.

MR. SADOWSKI:  And is that Washington Capital Partners?

MR. PARET:  That's right.

MR. SADOWSKI:  Do you know if that lender had another name besides WCP, like WCP Fund I or Fund II or Fund V?

MR. PARET:  I don't know what their escrow account is at District Title or what their -- what the -- what -- I believe it was WCP Fund I or DP Capital.

MR. SADOWSKI:  Okay.  And now let me just scroll to the next one, Mr. Paret.  By the way, Mr. Paret, is it Paret or Parae?

MR. PARET:  It's Paret.

MR. SADOWSKI:  Paret.  Okay.  I'm sorry about that.  I always pronounced it with a t, but like that, but I'll change that.  Now, there's another name here on the screen.  Ravinder (phonetic), E-E-R-A- --

MR. PARET:  Yeah.

MR. SADOWSKI:  -- V-E-N-I.  It says $100,000 is paid to District Title on January 10th, 2019.  What was that money for?

MR. PARET:  It was for 4910 George Avenue.

MR. SADOWSKI:  Okay.  Do you know why this payment came in a couple of months behind the others that I've showed you?



Case 24-10381-JTD   Doc 151-1   Filed 08/04/25   Entered 08/04/25 09:33:14   Desc
Exhibit A Meeting Transcript (Part 4) of 12    Page 42 of 53

42

Colloquy

MR. PARET:  I think it's because there was more funds that were needed for closing.  I'm not a hundred percent sure.

MR. SADOWSKI:  Okay.  That's fair.  And you can scroll down to the next one, which is -- give me a second.  We're having a little slow internet connection here.  Okay.  This one I can't pronounce either.  Srikanth.  That's S-R-I-K-A-N-T-H, Tangedipali, T-A-N-G-E-D-I-P-A-L-I and it indicates $50,000 was sent to District Title on January 10th, 2019.  Do you know what those funds were for?

MR. PARET:  I believe 4910 Georgia Avenue, but I'd have to -- I'd have to confirm.

MR. SADOWSKI:  Okay.  And then the seventh one I have, which would be the last one, indicates -- well, no.  That's only six.  Okay.  So we did this one.  Let me just track back.  Going up.  Back to the top, Mr. Paret.  Oh, yeah.  Sorry.

(Indiscernible)

MR. SADOWSKI:  Yup.  Number 5. 29 C-H-I-N-N-A-R-I LLC. It indicates $200,000 paid to District Title on January 8th, 2019.  Do you see that?

MR. PARET:  Yes, yes.  These were all -- that's the G4910.  That's Bala Shore (phonetic) wire transfer of 200,000.

MR. SADOWSKI:  Okay.  And do you know the collective number?  Sorry, I skipped this one too, Mr. Paret.  I was scrolling too fast.  Number four, Tanuja Vedere.  That's T-A-N-U-J-A.  And then last name capital V-E-D-E-R-E, $150,000.

escribers
www.escribers.net | 800-257-0885

Colloquy

Now, this was paid, it looks like, a day earlier than some of the others. January 9, 2019 to District Title. What was this money for?

MR. PARET: That was for G4910.

MR. SADOWSKI: Okay. Let's see if I skipped that. I did that one. Okay. So of these seven different payments I asked you questions about, what ultimately came of that collective amount of money?

MR. PARET: Well, I mean, it went to the -- it went to WCP for the closing of 4910 Georgia Avenue.

MR. SADOWSKI: Okay. Thank you. And now let me go back, if I may. I'm just going to minimize that transfer list. And other than the group of investors, the investing arm that I told you about, that you testified about, that the investing arm, which was G4910 LLC, who else invested money in 4910 Georgia Avenue?

MR. PARET: Along with myself, and I think there is, like, two or three other investors. Halmer Name (ph.) invested, I think, around 250,000. And there was a couple of others. I don't have the capital stack in front of me.

MR. SADOWSKI: Okay. And do you remember what your investment was?

MR. PARET: I believe somewhere in the realm of 900,000 or a million dollars, somewhere in that realm.

MR. SADOWSKI: And what -- see, what they're closing



Case 24-10837-MFW Doc 151-1 Filed 05/04/25 Entered 05/04/25 09:38:24 Desc Exhibit A Meeting of Entities (Read) Script Page 44 of 53

Colloquy

online with WCP, the loan closed. Then what happened to that project?

MR. PARET: The project went on for quite some time. There were tremendous delays in the construction, and we weren't able to get our construction funds in time. I think that that date, I believe, of January 2020 was the beginning of COVID. At that point of time, WCP Funds began to get assaulted, and it just was a very slow process for the next couple of years of getting construction done on that property. And eventually WCP foreclosed on the property. A group of the investors, Manik included, made an offer to buy out the portfolio for $2.5 million, to buy out Georgia Avenue for $2.5 million more than our debt position, and WCP refused. And then they foreclosed on the property.

MR. SADOWSKI: Okay. Now --

MR. PARET: We have a debt position of roughly 7.3 million with --

MR. SADOWSKI: Okay.

MR. PARET: -- construction and acquisition, along with their fees. But because they said the properties were cross-collateralized, they refused to take a lesser number, because they were trying to pay down debt across the portfolio with the money from Georgia Avenue.

MR. SADOWSKI: Now, along -- how do you know that? How did you learn of that fact that you just talked about, why



Case 24-10097-JCG  Doc 451-1  Filed 09/04/25  Entered 09/04/25 00:33:26  Desc
Exhibit A Meeting Transcript (Part 3) of 929  Page 45 of 53

Colloquy

WCP was doing that?  Did they tell you that?  Did WCP tell you that, or did you learn that from the grapevine?

MR. PARET:  Yeah.  They do.  And they would tell most of the other investors that because of their -- because of the interlacings of my other properties, they had cross-collateralized the debt instruments and they said that the -- they needed -- it wasn't enough to pay down the loan overall.

MR. SADOWSKI:  And the person you were dealing with at WCP was whom?

MR. PARET:  Jared and Daniel Huertas.

MR. SADOWSKI:  And does Jared have a name?  Last name?

MR. PARET:  Fasnot (phonetic) or something.  I can't pronounce it.

MR. SADOWSKI:  Okay.  I'm getting near the end, Mr. Gardner (sic), just FYI.  Now I have up on my screen, Mr. Paret, page 12 of 46.  Do you see it?  It's really hard to see, because it's teeny-weeny print.  Do you know why the -- and I'm going to go down to the line for 419 to 423 Kennedy Street.  And I'm squinting at this.  It looks like line 50.  It lists Brighton KSD (phonetic), LLC.  Why is Brighton KSD, LLC listed there?

MR. PARET:  Because they were an investor in that property.

MR. SADOWSKI:  Okay.

MR. PARET:  And I thought they were okay.



Case 24-10831-KBO Doc 1151 Filed 09/04/25 Entered 09/04/25 09:38:24 Desc
Exhibit A Meeting Deleatities (Feb.) Transcript Page 42 of 53

Colloquy

MR. SADOWSKI:  So is this -- what is this schedule here on page 12 designed to show the world?  What are you trying to -- what information are you trying to convey here, generally?

MR. PARET:  I mean, this is just showing -- whatchamacallit.  This is basically showing -- I think this is an estimated.  A lot of these numbers are not correct.  So this was just an estimate of what the investors were going to put in and what they were committed to.  A lot of these numbers changed, and some of these investors never even put money in that are on this list.  This list was to show, you know, what the investment start dates would be if they were going to invest, what the numbers would be, but nobody ever got removed from the list.  So this is just an ongoing list that we had.

MR. SADOWSKI:  Okay.  And who was maintaining this list?  Was this somebody over at Coloma River?

MR. PARET:  Yeah, the person left, like, five years ago.

MR. SADOWSKI:  Okay.  One second, Mr. Gardner (sic).

Now, when you were being asked some questions by Mr. VerStandig, you gave some answers that things were currently in debate.  I'm not going to debate you over your answers, but would it be fair to sum it up that -- all right.  Let me ask it this way.  Do you currently own a membership interest in 423 Kennedy Street Holdings, LLC?



Colloquy

MR. PARET:  I believe I do.

MR. SADOWSKI:  Okay.  And is that belief based upon this theory that WCP was a partner with you?  Is that what the basis for that belief is?

MR. PARET:  That is correct.

MR. SADOWSKI:  Okay.  And would the same hold true for 5501?  Excuse me.  I don't have the address right in front of my face here.  5501 First Street Holdings, LLC, you indicated that it's -- there's a debate over whether you have a membership interest in that.  And my understanding from your testimony is that the date is -- that the belief that you have, you have a membership interest is on this partnership theory with the WCP.  Is that right?

MR. PARET:  That is correct, along with the fact that the LLCs that were in ownership, the investor group have ownership in those LLCs.  That's -- that's -- it's still unclear.  But that is the -- that's the theory.

MR. SADOWSKI:  Okay.  And so I'm just -- should tell the world where I'm going and you, Mr. Krays (phonetic).  I'm currently representing those entities in litigation against the WCP, and the operating agreements that I have indicate that those entities are actually owned by members, not including yourself.  So I just want to make sure.  Do you have an operating agreement, a current operating agreement that shows that you have a membership interest in 423 Kennedy Street

Case 25-10837-MG Doc 15-1 Filed 09/04/25 Entered 09/04/25 09:38:14 Desc
Exhibit A Meeting Transcript (Redacted) Page 79 of 753

48

Colloquy

Holdings, LLC?

MR. PARET: Well, I have the old one. Yeah. I can share with you.

MR. SADOWSKI: When you say the old one, wasn't that before your membership interest was sold to Mel Noguchi (phonetic)?

MR. PARET: How much did it sell for?

MR. SADOWSKI: I don't have in front of me. But let me ask it. I'm just trying to find out, Mr. Paret, is there a current operating agreement that you have for 423 Kennedy Street Holdings, LLC? A current operating agreement, not an old one. Not one that was amended that shows --

MR. PARET: Yeah, I can -- I can share you the one -- I can share the one with you that was still signed. I mean --

MR. SADOWSKI: Let me finish my question. Yeah. Is there a current operating agreement that you have that shows that you have a membership interest in 423 Kennedy Street Holdings LLC?

MR. PARET: I'll have to check with you, and I'll send it to you.

MR. SADOWSKI: Okay. And the same question is, is there a current member -- current operating agreement that you're aware of that shows that you have a membership interest in 5501 First Street Holdings LLC?

MR. PARET: You'd have to check, and we can send it to



www.escribers.net | 800-257-0885

you.

MR. SADOWSKI: Okay. Mr. Fasano, these Excel files are really hard to review on screen. Is it possible you could get us a sanitized version of this in Excel? Both what's page 10 of 46 and 11, and then page 12 of 46 of the schedules.

MR. FASANO: Elizabeth, can you send that to us in Excel?

MS. KORBUT: Probably, as long as I -- I'm assuming that that's something that we have. I was just put on this not long ago, but assuming that we have the original Excel, that that's our document, yeah, we should be able to send that.

MR. SADOWSKI: All right. Thank you.

And Mr. Gardner (sic), just the last question.

Mr. Paret, are you intending to amend the schedules, particularly these color-coded charts here in blue, green, purple, to add the 4910 Georgia Avenue entity as one of those LLCs which you have an interest?

MR. PARET: Yes.

MR. SADOWSKI: Okay. Those are all the questions I have, Mr. Gardner (sic). Thank you very much.

Thank you, Mr. Paret.

MR. WEBSTER: Any other parties have any questions for the 341 meeting? All right. It didn't sound like anyone else has any questions for the 341 meeting.

MR. FASANO: Wendell?



Case 25-11037-JNP Doc 15-1 Filed 05/04/25 Entered 05/04/25 09:28:14 Desc Exhibit A Meeting of Creditors (Part 2) of 2 Page 5 of 20

Colloquy

MR. WEBSTER:  Yes.

MR. FASANO:  I'm just going to give Mr. Paret an instruction.

MR. WEBSTER:  Certainly.

MR. FASANO:  When the tax return is filed, we need to get a copy of it.

MR. WEBSTER:  Certainly.

MR. FASANO:  And potentially a turnover of the tax refund when received.

MR. WEBSTER:  Right.

MR. FASANO:  So I'm just putting you on notice.

MR. WEBSTER:  Right.  Actually, we're not -- we're not.  I'm sorry.  Go ahead.  Who was that?

MR. LEWIS:  This is attorney Todd Lewis, on behalf of Welch Family Limited Partnership Group.  I just want to be clear for the record here.  This meeting is going to be continued to a later date?

MR. WEBSTER:  Well, I'm not going to conclude it at this point in time, but it's unclear to what extent we'll need to keep it open.  Do you have any questions that need to be asked today?

MR. LEWIS:  Not today.  That's why I'm wondering whether the case is clear the 341 is being continued or being adjourned?

MR. WEBSTER:  Well, I'm going to keep it open to the

Case 24-10755-ELG Doc 151 Filed 07/04/25 Entered 07/04/25 09:28:14 Desc
Exhibit A Meeting of Creditors (Pt. 3) of 2025 Page 52 of 73

51

Case 24-10755-ELG Doc 151 Filed 07/04/25 Entered 07/04/25 09:28:14 Desc
Exhibit A Meeting of Creditors (Pt. 3) of 2025 Page 52 of 73

Colloquy

extent that there's some issues that we need to follow up on. But at this point in time, that hasn't been clarified.

MR. LEWIS: Okay. No.

MR. WEBSTER: All right. Any other parties? You have any questions? All right. I will.

UNIDENTIFIED SPEAKER: No other questions, but we would join in the request of both Mr. Lewis and Mr. VerStandig to leave it open in the event that additional schedules are filed that raise additional questions that we have for this debtor.

MR. WEBSTER: Well, actually, additional schedules are going to be filed. They're going to be additional information provided. So we'll decide at that point whether we need to hold another Zoom 341 meeting.

But let me just explain to everyone. Keep in mind, this is a 341 meeting for bankruptcy purposes, not a deposition. If you need to take a deposition or a 2004 exam, that's actually different from this 341 meeting. I just want to make sure everyone understands that. These are not -- this is not a deposition. Okay?

MR. LEWIS: Understood.

MR. WEBSTER: Very good. All right. So with that, we will adjourn the meeting for today and proceed accordingly. Anybody else have anything before we close out?

UNIDENTIFIED SPEAKER: Nothing, Mr. Webster.



Case 24-10837-KG Doc 151 Filed 09/04/25 Entered 09/04/25 09:33:26 Desc
Exhibit A Meeting of Creditors (Team) Transcript Page 52 of 53

MR. WEBSTER:  All right.  Thank you, all.

UNIDENTIFIED SPEAKER:  Thank you, all.

MR. WEBSTER:  Take care.

UNIDENTIFIED SPEAKER:  Thank you.

MS. KORBUT:  Thank you.

(Whereupon the hearing was adjourned)



Case 25-11037-JKS Doc 151-1 Filed 09/04/25 Entered 09/04/25 09:35:14 Desc
Exhibit A Meeting of Creditors (Trans of 925 2025) Page 53 of 53

53

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Hana Copperman

_____          Date: June 30, 2024
ESCRIBERS LLC



IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,
1629 K Street, N.W, Suite 300
Washington, DC  20006

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS,
8401 Greensboro Drive
Suite 960
McLean, VA  22102

  and

WCP FUND I, LLC
2815 Hartland Road
Suite 200
Falls Church, VA  22043

  and

DANIEL HUERTAS,
909 Chinquapin Road
McLean, VA  22102

  and

RUSSELL DRAZIN
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

    *Defendants.*

Case No. _2022-CAB-005935_

## COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

4877-9772-9348.v2

Fund I, LLC, Daniel Huertas, and Russell Drazin.  The Complaint includes claims for tortious interference with business relations, breach of the duty of good faith and fair dealing, and permanent injunctive relief.  The Complaint also seeks a declaratory judgment as to the meaning of certain provisions in two Deeds of Trust.  The Complaint also seek injunctive relief to prevent a foreclosure.  In support of its Complaint, Developer RE1 avers as follows:

<div align="center">THE PARTIES</div>

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners".  For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

6.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

<div align="center">2</div>

4877-9772-9348.v2

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"

7.  In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source: https://dc.capitolfile.com/power-players-dc (italic emphasis added).

8.  But in reality, the WCP does not have the highest ethical standards. The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, and the WCP Fund have engaged in unethical, outrageous conduct that was specifically designed to make one of their client's construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

9.  Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property").

10.  Developer RE1 is partially owned by Mr. Negussie.

11.  Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

12.  The Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the Property and any the improvements that Developer RE1 made to the Property.

3

4877-9772-9348.v2

13.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

14.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

15.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

16.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

17.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

18.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

19.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

20.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

21.     The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4

4877-9772-9348.v2

22.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

23.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

24.     The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

26.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

27.     The maturity date for the First Note and the Second Note is December 23, 2022.

28.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

29.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not Accede to His Demands Regarding Another, Unrelated Development</u>

30.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505." A copy of the November 3, 2022 email is attached as Exhibit E.

4877-9772-9348.v2

31.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email is attached as Exhibit F.

32.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

33.     By as early as November 15, 2022, the Defendants each knew that Developer RE1 had secured alternative financing for the Property with another lender named Main Street Bank, and that Developer RE1 expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

34.     As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

35.     On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by Developer RE1 to WCP is attached as Exhibit H.

36.     That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

37.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way

6

4877-9772-9348.v2

an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

38. On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000. Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million. Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

39. As of December 8, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

40. As of December 8, 2022, Developer RE1 had made all payments due under the First Note and the Second Note. By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

41. On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out. For convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

42. During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1. Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP

<div align="center">7</div>

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

43.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

44.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

45.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

46.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

4877-9772-9348.v2

47.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

48.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

49.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

50.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

51.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

52.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

53.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

54.     The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

55.     The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two

4877-9772-9348.v2

entities are not affiliates of one another, and that the two entities have no business relationship with each other.

56. The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

57. The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.</u>

58. Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email. A true copy of the email from Leslie Calderas is attached as Exhibit J. True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

59. The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

60. Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP. The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

61. Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

10

4877-9772-9348.v2

62.     The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

63.     Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

64.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

65.     In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

11

4877-9772-9348.v2

66.     In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

67.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

68.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.</u>

69.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

70.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

71.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid

12

4877-9772-9348.v2

182

basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

72.     The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

73.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and a another "commission" of 5.00% the proceeds of a foreclosure sale.

74.     There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

75.     As a result of their spite, their evil, improper motive, and their greed, the Defendants improperly alleged that Developer RE1 was in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

76.     The Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans that they knew that Developer RE1 had secured with Main Street Bank.

---

[1]     423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct.

13

4877-9772-9348.v2

188

77. The Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

78. The Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund).

79. The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

80. The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members. The Defendants' misconduct is a form of extortion.

The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

81. Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide. When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a) "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

14

4877-9772-9348.v2

(b)     Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."

A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

82.     For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

83.     Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

84.     On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

85.     On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

15

4877-9772-9348.v2

86. Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

87. Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

88. The only provision of the loan documents that Mr. Drazin cited a claimed basis for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

89. The First DOT and the Second DOT each have a Section 7.9 that are identical. Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT. Section 7.09 states:

> <u>Other Indebtedness</u>. Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness<u>, *or any of their affiliates, to Beneficiary,*</u> whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

90. The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

4877-9772-9348.v2

91.     The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.

92.     The late payment of taxes by Developer RE1 cased no harm whatsoever to the WCP Fund.

93.     The First DOT and the Second DOT contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

94.     No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

95.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

96.     The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

97.     The Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

17

4877-9772-9348.v2

98.     In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

99.     The First DOT and the Second DOT do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

100.     Developer RE1 does not control 423 Kennedy and vice versa.

101.     Developer RE1 is not controlled by 423 Kennedy and vice versa.

102.     There is also no common control of Developer RE1 and 423 Kennedy.

103.     Mr. Negussie does have a "controlling" interest in 423 Kennedy.

104.     Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

105.     Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

106.     The Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure.  There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated." *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

4877-9772-9348.v2

188

<u>Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked</u>

107. The Defendants have threatened to foreclose on the Property even though they know that they have no legal right to foreclose on the Property.

108. There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property.

109. If the Defendants follow through on their threat to foreclose on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

110. The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally and willfully disregarding Developer RE1's rights under the loan documents and under the law. The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

111. The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022. The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property.

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against All Defendants Except Mr. Drazin

112. Paragraphs 1-111 of the Complaint are incorporated by reference.

113. Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

4877-9772-9348.v2

114.    The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

115.    As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

116.    As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

117.    The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

118.    Developer RE1 has been damaged by the Defendants'' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for:  (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $1 million if the closing on the refinancing does not take place this year); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $500,000.00; (d) costs; and (d) pre- and post-judgment interest.

4877-9772-9348.v2

<div align="center">

COUNT II

BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP and WCP Fund Only

</div>

119.    Paragraphs 1–118 of the Complaint are incorporated by reference.

120.    Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

121.    The First Note is a contract between Developer RE1 and the WCP Fund.

122.    The First DOT is a contract between Developer RE1 and the WCP Fund.

123.    The Second Note is a contract between Developer RE1 and the WCP Fund.

124.    The Second DOT is a contract between Developer RE1 and the WCP Fund.

125.    Through its improper conduct, the WCP and the WCP Fund have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners and the WCP Fund 1, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional interference with contracts (currently estimated to be $1 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT  III

DECLARATORY  JUDGMENT
Count III Is Asserted Against Defendants WCP and WCP Fund Only

</div>

126.    Paragraphs 1–125 of the Complaint are incorporated by reference.

127.    The First DOT is a contract between Developer RE1 and the WCP Fund.

128.    The Second DOT is a contract between Developer RE1 and the WCP Fund.

<div align="center">

21

</div>

4877-9772-9348.v2

129. There is an actual and justiciable controversy between Developer RE1 and the WCP Fund as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

130. It is settled law in the District that "equity abhors forfeitures ... [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

131. There is an actual and justiciable controversy between Developer RE1 and the WCP Fund as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a default by Developer RE1 after the fact, after the alleged default has already been cured (or is in the process of being adjudicated), and without providing any notice to the borrower or any opportunity to cure, and that results in either (i) additional interest and penalties entirely disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is unconscionable and enforceable as a matter of public policy.

4877-9772-9348.v2

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

132. Paragraphs 1–131 of the Complaint are incorporated by reference.

133. Unless enjoined, the Defendants will continue to improperly claim that Developer RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

134. The Defendants unethical, outrageous, and illegal conduct, as described in this Complaint, is causing irreparable harm to Developer RE1. The Property is unique, and Developer RE1 could lose its entire interest in the Property.

135. If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter an injunction prohibiting the Defendants from invoking any remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including, without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the First Note, the First DOT, the Second Note, and the Second DOT that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's claims in Counts I, II and III of the Complaint have been decided.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the Complaint for which a jury trial is allowed under the law.

4877-9772-9348.v2

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  December 16, 2022

James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

24

4877-9772-9348.v2

Case 24-10036-DLG Doc 152 Filed 06/30/25 Entered 06/30/25 16:33:14 Desc
Exhibit B - All Pleadings And Exhibits to Objection (Part 1) Page 25 of 307

# EXHIBIT A

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                                        Page 2 of 25

192

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                 Page 3 of 25

198

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016

Page 4 of 25

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

### 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

### 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

### 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

### 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016                                                    Page **6** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

### 4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016                                                                                   Page 7 of 25

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016                                                                 Page 8 of 25

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

### ARTICLE V

### NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

## 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

## 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

## ARTICLE VII

## EVENTS OF DEFAULT

</div>

### 7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

### 7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

### 7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

### 7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

### 7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

Page **11** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

### 7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

</div>

### 8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

### 8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

**8.2 Conveyance by Trustee.**

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

**8.3 Purchase by Beneficiary.**

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

**8.4 Waiver of Redemption - Exemptions Waived.**

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016 | Page **14** of **25**

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

Page 15 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016                                                        Page **17** of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016                                                        Page 19 of 25

139

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016

Page **20** of 25

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

Rev 5.2016                                                                 Page 22 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

(SEAL)

By:      Mel Melaku Negussie
Its:      Managing Member

COUNTY OF *District of Columbia* ) SS:
STATE OF *City of Washington* )

I hereby certify on this **24** day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 5.2016                                                      Page **23** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Page 25 of 25

# EXHIBIT B

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.     BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                        Page 1 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.   **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3.   **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                                                   Page **2** of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

Page 3 of 9

Case 23-10086-ELG Doc 115-2 Filed 03/31/25 Entered 03/31/25 00:38:21 Desc
Exhibit B - All Pleadings And Exhibits at Edgewood Washington Page 200 of 1716

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015 Page 4 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                                                   Page 5 of 9

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015 Page 7 of 9

Case 24-10087-ELG Doc 15-2 Filed 05/03/25 Entered 09/04/25 00:33:24 Desc
Exhibit B - All Pleadings And Docket Entries Before A US Bankruptcy Court Page 259 of 1716

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

**[SIGNATURE PAGE TO FOLLOW]**

Rev 12.2015

Page **8** of **9**

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:    Solomone Abebaw Desta
Its:    Member

COUNTY OF _____
STATE OF _____

    I hereby certify on this 24 day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 12.2015

Page **9** of **9**

# EXHIBIT C

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

132

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">

## ARTICLE I

### DEFINITIONS

</div>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Rev 5.2016

Page 4 of 25

LOAN-006182

2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016

Page 5 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Rev 5.2016

Page 6 of 25

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

Rev 5.2016                                                                 Page 7 of 25

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Rev 5.2016

Page **8** of **25**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

Rev 5.2016                                                                 Page 9 of 25

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

Rev 5.2016

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

### 7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

### 7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

### 7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

### 7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

### 7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page 12 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

ARTICLE VIII

DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016                                                                                  Page **15** of **25**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Case 24-10048-BLS Doc 152 Filed 07/31/25 Page 78 of 1716

Exhibit B - All Pleading And Enclosures Under Seal
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016                                                        Page 17 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

      (a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

      (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

      (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

      In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

      (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

      (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016                                             Page **18** of **25**

Case 24-10006-HCG Doc 15-2 Filed 08/04/25 Entered 08/04/25 00:33:14 Desc
Exhibit B - All Pleadings And Disclosure Agreements (Part 1) Page 80 of 1716
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016

Page 19 of 25

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

Rev 5.2016

Page 21 of 25

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF,** the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

Rev 5.2016

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:     Mel Melaku Negussie
Its:     Managing Member

COUNTY OF _____ ) SS:
STATE OF _____ )

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 5.2016                                                                 Page 23 of 25

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

# EXHIBIT A

## LEGAL DESCRIPTION

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**     **December 23, 2021**

**Borrower(s):**     **Developer RE1 LLC**

**Property Address:**     **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.

File No.: 21-1983

PROPERTY DESCRIPTION

Page 1 of 1

```
Doc #: 2022000482
Filed & Recorded
01/03/2022 12:42 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $150.00
  SURCHARGE               $6.50
  RECORDATION TAX FEES    $13,100.00
TOTAL:                    $13,256.50
```

# EXHIBIT D

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                        **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                      Page 1 of 9

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2. INTEREST

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

## 3. PAYMENTS

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                                      Page 2 of 9

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a. If default be made in any payment due under this Note;

    b. If default be made in the performance of any other covenant contained in this Note;

    c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

    d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

Page 3 of 9

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                                 Page 4 of 9

5501 1st St NW Washington DC 20011

LOAN-006182
2nd Trust

 

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                     Page 5 of 9

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page 6 of 9

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                                              Page 7 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

Page **8** of **9**

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability Company

_____(SEAL)

By:     Mel Melaku Negussie

Its:     Managing Member


COUNTY OF _City of Washington_ )SS:

STATE OF _District of Columbia_ )

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____

NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 12.2015                                                     Page 9 of 9

Case 24-10036-BLG0-DnA152 DoFiled 05/31/25 Filed 06/30/25 Page 33 of 149 Desc
Exhibit B - All Pleading And All Docket Entries (Part 3) Page 33 of 2307 Page 99 of 1716

# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:**   Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:**   Daniel Huertas

**To:**     mel negussie

**CC:**     Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project

**Date:**    Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time

**From:**    Daniel Huertas

**To:**    mel negussie

**CC:**    Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time

**From:** mel negussie

**To:** Daniel Huertas

**CC:** Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone

> On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:

HI Daniel,

My apologies for the delayed response.

Yes, we are working and making progress to refinance both projects out of WCP.

Regards,
Mel

---

# EXHIBIT H

Case 24-10036-BLG-60-DM A15-2 Document 65-1 Filed 05/31/25 Entered 09/04/25 00:33:26 Desc
Exhibit B - All Pleadings Ad Hoc Docket Entries, Report Al Page 25 of 207 Page 106 of 1716

**Subject:** 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time

**From:** mel negussie

**To:** Cara Farley, Leslie Calderas

**CC:** Darralyn Brown

**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time

**From:** Cara Farley

**To:** mel negussie

**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown <darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:

Hi Mel,

Payoff requests received. What good through date would you like?

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 11:58 AM
**To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
**Cc:** Darralyn Brown <darralyn@districttitle.com>
**Subject:** 71 Kennedy (5505 1st Street)

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT J

| **Subject:** | Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
|---|---|
| **Date:** | Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time |
| **From:** | Leslie Calderas |
| **To:** | mel negussie |
| **CC:** | Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas |
| **Attachments:** | image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf |

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**


## Leslie Calderas  |  Servicing Manager

Washington Capital Partners
www.washingtoncapitalpartners.com
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

# EXHIBIT K



Case 24-10023-ELG Doc 15-2 Filed 07/30/25 Entered 07/30/25 03:33:14 Desc
Exhibit B - All Pleadings and Related Documents (Part 07) Page 112 of 716

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

Re:     **NOTICE OF DEFAULT**

5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - servicing@wcp.team**

Case 24-10023-ELG Doc 15-2 Filed 07/30/25 Entered 07/30/25 03:33:14 Desc
Exhibit B - All Pleadings and Related Documents (Part 07) Page 112 of 716

# EXHIBIT L



8401 Greensboro Dr Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**


Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

Re:      **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT M





# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT postclosing@wcp.team.**

Payable to:  WCP Servicing LLC                          Bank Name: United Bank
             8401 Greensboro Dr Suite 960               Routing Number: ▮▮▮▮▮
             McLean, VA  22102                          Account Number: ▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006120 and borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

Case 24-10083-EPK Doc 15-2 Filed 05/30/25 Entered 05/30/25 00:33:21 Desc
Exhibit B - All Pleadings and Discovery Package Albertson Inc 207 Page 117 of 1716

# EXHIBIT N




# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| Payable to: | WCP Servicing LLC | Bank Name: United Bank |
|---|---|---|
| | 8401 Greensboro Dr Suite 960 | Routing Number: ▮▮▮▮▮▮ |
| | McLean, VA  22102 | Account Number: ▮▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006182 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

Case 24-10036-BLC60-DhcA15-2D oFileneU6/031/245 iEnteredd0403/0225 00:3221f 1249sc
Exhibit B - All Pleadings A- All Docket atEntued Saintall AlbD2ag620 1unfe2207 Page 119 of 1716

# EXHIBIT O

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |

| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

**5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))**

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

**423 Kennedy Street, NW (Lot 0056 in Square 3260)**

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** I **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document. Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default". Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy. As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today. I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400, x5407
Fax: 202.452.1410
E-mail: jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/

8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT P

| **Subject:** | PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute |
|---|---|
| **Date:** | Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time |
| **From:** | mel negussie |
| **To:** | Administrative.Hearings@dcwater.com |
| **BCC:** | Chapman Paret |
| **Priority:** | High |
| **Attachments:** | 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf |

Dear Administrative Hearing Officer,
Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from February to June 2022.
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.
Thank you.

Mel Negussie
(202)271-5046 cell



David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY  |  1385 CANAL STREET, SE  |  WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

| | | | | |
|---|---|---|---|---|
| Case Number: | 22-594546 | | | |
| Account Name: | 2002583-9 | | Account Number: | 2002583-9 |
| Service Address: | 5501 1st St NW | | Bill Class: | Commercial |
| Dispute Date: | 09/22/22 | | CCF: | 2,156.99 |
| Bill Period (Start): | 01/20/22 | | Bill Period (End): | 06/16/22 |
| Meter Size: | 1" | | Read Type: | Act |
| Bill Date(s): | 02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22 | | | |

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

**PETITION FOR ADMINISTRATIVE HEARING**

**Indicate your relationship to the property:** Owner___ Legal/Rep___ Tenant___ 3rd Party/Non-Occupant___ Mgt Company___
**Indicate the property occupancy status during the dispute period** Vacant___ Occupied___(Number of Occupants _____)
**Daytime/Best Contact Phone Number:** 202-271-5046 **Email:** mel@ntconstruction.net

Please provide a statement of facts concerning the disputed charges. Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges. Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because: We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

Signature _____*Mel Negussie*_____   Date 09/22/22

# EXHIBIT Q

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

SSL:              3389- -0138
Amount Paid:     $16,522.89
Submitted Date: 16-Oct-2022

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

# EXHIBIT R

Case 24-10077-BLS Doc 152 Filed 03/04/25 Entered 03/04/25 08:33:27 Desc
Exhibit B - All Pleadings Ad Ask Docket Engagement Repo Exh Dat 25 09 2014 Eastern Standard Time

**Subject:** Payment request submitted

**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time

**From:** DoNotReply_MyTax@dc.gov

**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**
Your request confirmation code is: **dmgcxd**

Payment Amount: $222.28
Payment Date: 19-Oct-2022
Submitted Date: 19-Oct-2022

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

Superior Court of the District of Columbia
CIVIL DIVISION
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Developer RE1, LLC
_____
                                                     Plaintiff
                    vs.

                                                                            Case Number    **2022-CAB-005935**

Daniel Huertas
_____
                                                     Defendant

## SUMMONS

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
                                         Deputy Clerk

Date    December 27, 2022
_____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면,(202)879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                            Super. Ct. Civ. R. 4

DO NOT COMPLETE

# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov



Developer RE1, LLC

Demandante

contra

Número de Caso:

Daniel Huertas

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635

*SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000

Por:

Dirección

Subsecretario

Washington, DC 20006

(202) 452-1400

Fecha

Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

반역을 원하시면 (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Developer RE1, LLC
_____
                                                Plaintiff
                            vs.

                                                            Case Number    2022-CAB-005935

DP Capital, LLC d/b/a Washington Capital Partners
_____
                                                Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC 20006
_____
(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
                                    Deputy Clerk

Date    December 27, 2022
_____

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면,(202)879-4828로 전화주실세요.     የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                            Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Developer RE1, LLC
_____
                                        Demandante
                contra

                                                        Número de Caso: _____

DP Capital, LLC d/b/a Washington Capital Partners
_____
                                Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____          Por: _____
Dirección                                                                      Subsecretario
Washington, DC  20006
_____

(202) 452-1400
_____          Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                      Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Developer RE1, LLC
_____
Plaintiff

vs.

Case Number ___2022-CAB-005935___

Russell Drazin
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC 20006

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date ___December 27, 2022___

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면,(202)879-4828로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Developer RE1, LLC

                                                  Demandante
                        contra

                                                           Número de Caso: _____

Russell Drazin

                                                  Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635                          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000                     Por: _____
Dirección                                                        Subsecretario
Washington, DC  20006

(202) 452-1400                                      Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 연락하십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                         Super. Ct. Civ. R. 4

Superior Court of the District of Columbia
CIVIL DIVISION
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Developer RE1, LLC
_____
                                    Plaintiff
            vs.

                                                    Case Number    2022-CAB-005935
                                                                   _____

WCP Fund, I, LLC
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney                                     _Clerk of the Court_

801 17th Street, NW, Suite 1000
_____          By _____
Address                                                                         Deputy Clerk
Washington, DC  20006

(202) 452-1400
_____          Date    December 27, 2022
Telephone

如需翻译，请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시요.          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                           Super. Ct. Civ. R. 4

Case 24-10023-BLS Doc 15-1 Filed 05/04/25 Entered 09/04/25 00:38:26 Desc
Exhibit B - All Pleadings Ad-Ask Document Forth Bargain 3 Album 522 num 207 Page 140 of 1716



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Developer RE1, LLC
_____

                                    Demandante

contra

Número de Caso: _____

WCP Fund, I, LLC
_____

                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC 20006
_____

(202) 452-1400
_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
                                Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 연락하십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                 Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Developer RE1, LLC

Case Number: **2022-CAB-005935**

vs

Date: December 16, 2022

DP Capital, LLC d/b/a Washington Capital Partners, et al.

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* <br> James D. Sadowski | Relationship to Lawsuit <br> ☒ Attorney for Plaintiff |
| Firm Name: <br> Greenstein DeLorme & Luchs, P.C. | ☐ Self (Pro Se) |
| Telephone No.:     Six digit Unified Bar No.: <br> (202) 452-1400     446635 | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury     ☐ 6 Person Jury     ☒ 12 Person Jury

Demand: $ 1 Million     Other: Punitive Damages - $500,000

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: related case # not issued yet     Judge: _____     Calendar #: _____

Case No.: _____     Judge: _____     Calendar#: _____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**          **COLLECTION CASES**

Breach of Duty of Good Faith and Fair Dealing

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
    Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
    Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
    Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
    Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
    Under $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

**C. PERSONAL TORTS**

Tortious Interference with Business Relations

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☒ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE     IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

☐ 01 Accounting  
☐ 02 Att. Before Judgment  
☐ 05 Ejectment  
☐ 09 Special Writ/Warrants  
  (DC Code § 11-941)  
☐ 10  Traffic Adjudication  
☐ 11 Writ of Replevin  
☐ 12 Enforce Mechanics Lien  
☒ 16 Declaratory Judgment  

☐ 17 Merit Personnel Act (OEA)  
  (D.C. Code Title 1, Chapter 6)  
☐ 18 Product Liability  

☐ 24 Application to Confirm, Modify,  
  Vacate Arbitration Award (DC Code § 16-4401)  
☐ 29 Merit Personnel Act (OHR)  
☐ 31 Housing Code Regulations  
☐ 32 Qui Tam  
☐ 33 Whistleblower  

And a Request for Injunctive Relief to Stop a Foreclosure

## II.

☐ 03 Change of Name  
☐ 06 Foreign Judgment/Domestic  
☐ 08 Foreign Judgment/International  
☐ 13 Correction of Birth Certificate  
☐ 14 Correction of Marriage  
  Certificate  
☐ 26 Petition for Civil Asset Forfeiture (Vehicle)  
☐ 27 Petition for Civil Asset Forfeiture (Currency)  
☐ 28 Petition for Civil Asset Forfeiture (Other)  

☐ 15 Libel of Information  
☐ 19 Enter Administrative Order as  
  Judgment [ D.C. Code §  
  2-1802.03 (h) or 32-151 9 (a)]  
☐ 20 Master Meter (D.C. Code §  
  42-3301, et seq.)  

☐ 21 Petition for Subpoena  
  [Rule 28-I (b)]  
☐ 22 Release Mechanics Lien  
☐ 23 Rule 27(a)(1)  
  (Perpetuate Testimony)  
☐ 24 Petition for Structured Settlement  
☐ 25 Petition for Liquidation  

## D.  REAL PROPERTY

☐ 09 Real Property-Real Estate  
☐ 12 Specific Performance  
☐ 04 Condemnation (Eminent Domain)  
☐ 10 Mortgage Foreclosure/Judicial Sale  
☐ 11 Petition for Civil Asset Forfeiture (RP)  

☐ 08 Quiet Title  
☐ 25 Liens: Tax / Water Consent Granted  
☐ 30 Liens: Tax / Water Consent Denied  
☐ 31 Tax Lien Bid Off Certificate Consent Granted  

/s/ James D. Sadowski
_____

Attorney's Signature

December 16, 2022
_____

Date

CV-496/ June 2015

eFiled
12/23/2022 4:48:06 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

---

DEVELOPER RE1 LLC,
1629 K Street, N.W, Suite 300
Washington, DC  20006

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2022 CAB 005935
Judge Ebony Scott

---

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

The Plaintiff, Developer RE1 LLC ("Developer RE1") by counsel, hereby requests that the Court enter a Temporary Restraining Order enjoining all of the Defendants in this case from exercising any remedy that they have under certain loan documents, including the remedy of foreclosure, to preserve the status quo and to prevent irreparable harm to Developer RE1.  The Defendants have engaged in an improper scheme to try to extort money from Developer RE1 (and others), to prevent Developer RE1 from obtaining a refinancing loan, and to foreclose on valuable real property without any valid basis.

### I.    FACTUAL BACKGROUND

#### A.    Developer RE1 and the Property

Developer RE1 is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property").  Compl. ¶ 9.  The sole purpose of Developer RE1 is to own and develop the Property.  *Id.* ¶ 11. Developer RE1 is partially owned by Mel Negussie.  *Id.* ¶ 10.

1

GDL Documents\4887-8420-9222.v1-12/23/22

238

B.     The Defendants and Their Roles

There are four defendants in this case.  DP Capital, LLC ("DP Capital"), is a Virginia company that uses the trade name "Washington Capital Partners".  *Id.* ¶ 2.  For convenience, this motion refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".  The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending business in the District.  *Id.* ¶ 3.  Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia.  *Id.* ¶ 5.  Mr. Huertas controls WCP, and WCP controls the WCP Fund.  *Id.* ¶¶ 4-5.  Russell Drazin ("Mr. Drazin"), is an individual and counsel to the WCP and the WCP Fund.  *Id.* ¶ 6.  Mr. Drazin is also the Trustee under two deeds of trust that he drafted.  *Id.*

C.     The Loan Documents

On December 23, 2021, the WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the Property, which original loan was later refinanced.  *Id.* ¶¶ 13-14.  As part of that refinancing, Developer RE1 signed the following documents:

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

- a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.

- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.

- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 14, 17, 20, and 23.  True copies of the First DOT, the First Note, the Second DOT, and the Second Note were attached to the Complaint and are attached to this motion as Exhibits A, B, C, and D, respectively.  These documents are sometimes referred to together as the "loan documents".  The loan documents were for documents prepared by Mr. Drazin that Developer RE1 was not allowed to modify.  *Id.* ¶¶ 15-16, 18-19, 21-22, and 24-25.  The loan documents

2

GDL Documents\4887-8420-9222.v1-12/23/22

provided security for the construction financing loans that Developer RE1 needed to develop the Property.

D. Mr. Huertas Threatens to Make Trouble for Developer RE1 Unless Developer RE1 Accedes to His Demands Regarding Another, Unrelated Development.

As of November 3, 2022, Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note. *Id.* ¶ 29. On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1. *Id.* ¶ 30. Mr. Huertas wrote that: "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505." *Id.* A copy of the November 3, 2022 correspondence was attached to the Complaint and is attached as Exhibit E. On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects." *Id.* ¶ 31. A true copy of the November 15, 2022 email was attached to the Complaint and is attached as Exhibit F.

E. The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default" Under Any of the Loan Documents

By as early as November 15, 2022, the Defendants knew that Developer RE1 had secured alternative financing for the Property with another lender named Main Street Bank, and that Developer RE1 expected to close on the new refinancing loans in December of 2022. *Id.* ¶ 33. A true copy of a November 17, 2022 email sent by Mr. Huertas was attached to the Complaint and is attached as Exhibit G. As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT. *Id.* ¶ 34.

On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the Property. *Id.* ¶ 35. A copy of the November 30, 2022 email sent by Developer RE1 to WCP was attached to the Complaint and is attached as Exhibit H. That same

3

day (November 30, 2022) Developer RE1 requested, and WCP agreed, to provide the payoff

figures for both loans as of December 23, 2022.  *Id.* ¶ 36.  A copy of the second November 30,

2022 email exchange between Developer RE1 and WCP was attached to the Complaint and is

attached as Exhibit I.

On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP

about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note

and the Second Note for six to twelve months.  *Id.* ¶ 37.  Mr. Huertas replied that the only way

an extension of the maturity date would be granted would be if Developer RE1 paid down the

First Note and the Second Note by $1 million to $1.5 million (in principal).  *Id.*  On or about

December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be

willing to extend the maturity date for the First Note and the Second Note loans for six to twelve

months if Developer RE1 paid down the notes by $500,000 to $750,000.  *Id.* ¶ 38.  Mr. Huertas

reiterated that, at a minimum, the notes needed to be paid down by $1 million.  *Id.*  Mr. Negussie

then told Mr. Huertas that he would try to raise that amount ($1 million) from additional

investors.  *Id.*  As of December 8, 2022 there was still no claim made that any default be

Developer RE1 existed under any of the loan documents.  *Id.* ¶ 39.

F.      Mr. Huertas Then Demands that Either Developer RE1 or Mr. Negussie Resolve
        Another Debt Owed to the WCP for Another, Unrelated Project, "Or  Else".

By December 8, 2022, Developer RE1 had made all payments due under the

Notes ($332,319.03 in interest payments).  *Id.* ¶ 40.  That day, Mr. Huertas told Developer RE1

that the Defendants and an unnamed investor were displeased with how the development of

another, unrelated property (located at 2507 I Street, NW) had turned out.  *Id.* ¶ 41.  For

convenience, the unrelated development project will be referred to as the "2507 I Street Project".

During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff

<div align="center">4</div>

statements recently issued and that he was defaulting all loans that Mr. Negussie was associated with at WCP, including Developer RE1." *Id.* ¶ 42. Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done". *Id.* Mr. Huertas further stated that the Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on 423 Kennedy and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on that project." *Id.* Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects". *Id.* ¶ 43.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or to any development projects were improper. *Id.* ¶ 44. After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all prior Payoff Statements that were sent "were withdrawn" and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their loan documents. *Id.* ¶ 45.[1]

The Defendants knew that Developer RE1 was not involved in the 2507 I Street Project, that there is no legal or other business relationship between Developer RE1 and either the developer for the 2507 I Street Project or 423 Kennedy, and that 423 Kennedy was a sole

---

[1] 423 Kennedy has filed a similar lawsuit against the Defendants. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners et al.*, 2022-CAB-005903 (D.C. Super. Ct.).

<div align="center">5</div>

Case 24-10077-BLS Doc 15-2 Filed 09/30/25 Entered 09/30/25 00:28:24 Desc

purpose entity involved with a development project at 5501 1st Street, NW. *Id.* ¶¶ 46-50, and 52-57. Mr. Huertas provided no basis for why or how the Defendants could put Developer RE1 in default under the loan documents. *Id.* ¶ 51.

G. Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email. *Id.* ¶ 58. A true copy of each "Notice of Default" was attached to the Complaint and are attached as Exhibits J, K, and L. Each "Notice of Default" was unsigned and failed to include either a description of the alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A". *Id.* ¶¶ 60-61. Email is also not listed as a permissible means to send a default notice. *Id.* ¶¶ 64-65; Ex. A (First DOT) at pages 17-18 and Compl. Ex. C (Second DOT) at pages 17-18.

With the December 8, 2022 email, the WCP included two Payoff Statements for Developer RE1. *Id.* ¶ 66. A true copy of the two Payoff Statement that were included with that email were attached to the Complaint and are attached to as Exhibits M and N. *Id.* ¶¶ 66-68. The Payoff Statement for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00, while the Payoff Statement for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty". *Id.*

H. Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default" claims. *Id.* ¶ 69. Mr. Huertas refused to disclose that basis and told Mr. Negussie that

6

he had to contact the WCP's counsel.  *Id.*  Developer RE1 believes that Mr. Huertas then instructed Mr. Drazin to review every provision of the loan documents to try to find a reason to justify the decision to declare that Developer RE1 was in "default".  *Id*. ¶¶ 70-71.  Developer RE1 also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real reason why Developer RE1 was improperly placed in default -- because the Defendants were angry about the 2507 I Street Project.  *Id.* ¶¶ 71-72.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a "commission" of 2.50% of the "total amount then due", and a another "commission" of 5.00% of the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts that are claimed to be due.  *Id.* ¶¶ 73-74.  The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan.  *Id*. ¶¶ 75-77.  The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing.  *Id*. ¶ 77.  The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project).  *Id* ¶ 78.  The Defendants also knew that they had no right to demand that someone else either correct, or pay for, any problems at the 2507 I Street Project.  *Id.*  ¶ 79.  The Defendants are trying to inflict damages upon Developer RE1, and their misconduct is a form of extortion.  *Id*. ¶ 80.

<div align="center">7</div>

I.      The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

After being asked by counsel for Developer RE1 to provide a basis for the "default" claims, Mr. Drazin sent the cover story that Mr. Huertas had asked for.  In a reply email, Mr. Drazin claimed that Developer RE1 was in "default" because:

- "There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW";

- The "Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022.";

- Developer RE1 was not entitled to any notice of any default;

- there was "no right to cure", "no right to deceleration", no right to reinstatement, and that the 'Loans are in default and are accelerated."; and that

- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

A true copy of Mr. Drazin's email was attached to the Complaint and is attached as Exhibit O (italics and underlined emphasis in original).  *Id.* ¶ 81.  For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim." *Id.* ¶ 82

Developer RE1 first learned that there may be outstanding DC Water invoices on or about August 31, 2022, because DC Water was sending the invoices for the Property to the wrong address.  *Id.* ¶ 83. The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  *Id.*  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water

8

claimed was due.  *Id.*  On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  *Id.*  ¶ 84.  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.  *Id.*  That same day, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  *Id.*  ¶ 85.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  *Id.*  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

Under Section 7.6 of the First and Second DOT, Developer RE1 arguably has a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").  *Id.* ¶ 86.  Developer RE1 is still waiting for an administrative hearing to be scheduled on the appeal.  *Id.*

The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.  *Id*. ¶ 90.  Developer RE1 paid property taxes in the amount of $16,522.89 on October 16, 2022, and property taxes in the amount of $222.28 on October 19, 2022.  *Id*. ¶ 91.  True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.  There are currently no outstanding property taxes owed by Developer RE1, and the late payment of taxes caused no harm whatsoever to the WCP Fund.  *Id*. ¶ 92.

The defaults by Developer RE1 that have been alleged were all claimed after-the-fact as a pre-text.  No claim of default was made by WCP against Developer RE1 until after WCP became

9

aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank. *Id.* ¶ 94. The property taxes have now been paid, and Developer RE1, a sole purpose entity, has no affiliates. *Id.* ¶¶ 100-114. Even though there is no valid, legal basis under any provision of either the First or the Second DOT that would permit the Defendants to foreclose on the Property, they have threatened to take that step. *See* Ex. L ("our legal counsel will commence foreclosure proceedings"); *Id.* ¶ 117. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to. *Id.* ¶ 96.

J.       Developer RE1 Risks Losing the Property

The Defendants have threatened to foreclose on the Property even though they know they do not have any legal basis for doing so. *Id.* ¶ 107. There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property. *Id.* ¶ 108. The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022. The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property. *Id.* ¶ 111. If the Defendants follow through on their threat to foreclose on the Property, Developer RE1, will be irreparably harmed and could lose its entire investment due to the Defendants' misconduct and improper lending practices. *Id.* ¶¶ 109-10.

II.      PROCEDURAL HISTORY

On December 16, 2022, Developer RE1 filed a Complaint against the Defendants. The Complaint includes claims for tortious interference with business relations (Count I) and breach

10

of the duty of good faith and fair dealing (Count II). The Complaint also seeks a declaratory judgment as to the meaning of certain provisions in two Deeds of Trust (Count III) and injunctive relief (Count IV). Because the Defendants have threatened foreclosure, Developer RE1 asks this Court to preserve the status quo by issuing a temporary injunction that prevents the Defendants from trying to enforce any remedy under the loan documents, including the remedy of foreclosure.

## III.   LEGAL ARGUMENT

### A.   The Legal Standard for a Temporary Restraining Order

In determining whether to grant a temporary restraining order or a preliminary injunction, the Court must consider four factors: (1) the likelihood of irreparable harm in the absence of the requested injunction; (2) the likelihood of success on the merits on the underlying action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the public interest would be served by granting the injunction. *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995). The most important inquiry is that concerning irreparable injury. *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993). These four injunctive relief factors, which are discussed in more detail below, weigh heavily in favor of Developer RE1.

### B.   Developer RE1 Will Be Irreparably Harmed if the Defendants Follow-Though on Their Threat to Foreclose on the Property

Absent an injunction, the Defendants could foreclose on the Property. If those Defendants foreclose on the Property, Developer RE1 will lose its interest in the Property and the improvements to the Property, which has a current value of almost $4 million. The law considers property to be unique, so the possibility that Developer RE1 could lose its interest in the Property is sufficient, to show irreparable harm. *See Peterson v. D.C. Lottery & Charitable*

<div align="center">11</div>

GDL Documents\4887-8420-9222.v1-12/23/22

*Games Control Bd.*, No. 94-1643, <mark>1994 U.S. Dist. LEXIS 10309, 1994 WL 413357</mark>, at *4

(D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of

property is considered to be unique, and its loss is always an irreparable injury."). Accordingly,

this first injunctive relief factor weighs heavily in favor of Developer RE1.

      C.      <u>Developer RE1 Is Likely to Succeed on the Merits as to Its Claims</u>

      (1)      <u>Developer RE1 is Likely to Succeed on its Intentional Interference with a Business Relationship Claim</u>

To prevail on a claim of tortious interference with business relations,

Developer RE1 must establish: (1) the existence of a valid contractual or other business

relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with

that relationship by the defendant; and (4) damages. *See Onyeoziri v. Spivok*, <mark>44 A.3d 279</mark> (D.C.

2012). Developer RE1 has alleged sufficient facts to how that the Defendants actions amount to

a tortious interference with business relations. The conduct alleged to have occurred here show

that the Defendants are attempting to extort money from Developer RE1 (and others) by raising

pre-textual defaults at a time when Developer RE1was on the verge of closing on a refinancing

loan. Developer RE1 has easily demonstrated the elements of a tortious interference with

business relations claim.

      (2)      <u>Developer RE1 is Likely to Succeed on its Breach of the Duty of Good Faith and Fair Dealing Claim</u>

In the District of Columbia, all contracts contain an implied duty of good

faith and fair dealing. *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006). In

essence, "neither party shall do anything which will have the effect of destroying or injuring the

right of the other party to receive the fruits of the contract." *White v. WCP Fund I, LLC (In re

ETS of Wash., LLC)*, Nos. 20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr.

D.D.C. Jan. 14, 2022) (quoting *id.*). Here, Developer RE1 has alleged facts showing that WCP

<p style="text-align:center">12</p>

and the WCP Fund breached the implied duty of good faith and fair dealing. Making up defaults after the fact in order to put pressure on someone, whether that pressure is to pay someone else's debt, or to extract exorbitant "default" fees and penalties, are textbook examples of bad faith. Developer RE1 has also shown that the Defendants are taking improper actions under the loan documents for the purpose of injuring the rights of Developer RE1 (and others) and to try to deprive Developer RE1 of the value of the Property.

(3) <u>Developer RE1 Is Likely to Prevail on Its Claims that the Defendants' Allegations of Default Are Pretextual – and that the Alleged Defaults Cannot Form a Valid Basis Upon Which to Foreclose on the Property</u>

The facts alleged by Developer RE1 demonstrate that Mr. Huertas declared Developer RE1 in default for pre-textual reasons. More importantly, the default claims that were alleged are either incorrect as a matter of law, or are so trivial in nature that they cannot be used as a basis upon which to effectuate a forfeiture.

(4) <u>Developer RE1 is Likely to Prevail on Its Claim that It Is Not an Affiliate of 423 Kennedy (or Any Other Entity).</u>

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of in the First DOT and the Second DOT allow them to declare a default because they claim that Developer RE1 is an "affiliate" of 423 Kennedy – a separate entity that is only partially owned by Mr. Negussie. Section 7.9 in each deed of trust states:

> <u>Other Indebtedness</u>. Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness*, or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

13

GDL Documents\4887-8420-9222.v1-12/23/22

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

Although the First DOT and the Second DOT do not define the term "affiliate", under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code §6809(6). But Developer RE1, a sole purpose entity, is not under common control with 423 Kennedy or any other entity. There is no business or other relationship between 423 Kennedy and Developer RE1. Although Mr. Negussie does have a partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy.[2] Developer RE1 does not control 423 Kennedy and vice versa. Both entities are sole purpose limited liability companies whose businesses are separate. Cross-default provisions have also been found to be inherently suspect. *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs. Operating, LLC (In Re Charter Communs.),* 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY 2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing them, a court should carefully scrutinize the facts and circumstances surrounding the particular transaction . . .."). The Defendants cannot rely upon the "affiliate" language in the cross-default provision (Section 7.9) to declare a default by Developer RE1.

      (5)    <u>Developer RE1 is Likely to Prevail on Its Argument that a Fine That Caused No Damages, and Has Since Been Paid, Cannot Be Used as a Basis to Foreclose on the Property.</u>

It is settled law in the District that "equity abhors forfeitures . . . [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted). As the

---

    [2]    The Complaint contained a typographical error in paragraph 103. The word "not" was mistakenly omitted. Paragraph 103 should have stated: "Mr. Negussie does not have a controlling interest in 423 Kennedy." Developer RE1 will be correcting this mistake in an amended complaint.

<div align="center">14</div>

Court of Appeals explained in *Tsintolas Realty* by using a sports (basketball) analogy, technical violations of a contract that cause no harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule." To paraphrase an analogous passage in *In re DiMartino*, 108 B.R. 394, 403 (D.R.I.1989),
>
> [t]he no-harm-no-foul rule of the basketball court should be applied in this law court. Since [the landlord] has suffered no monetary harm from any alleged breach [of the settlement agreement], the [tenants are] not liable and there can be no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty,* 984 A.2d at 186-97 (citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

Here, just like the landlord in *Tsintolas Realty,* the Defendants are claiming a technical default (nonpayment of a $500.00 fine) to justify the forfeiture of property, after the fact, for which they could not have suffered any actual damages. As the *Tsintolas Realty* court further explained:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira,* 107 F.3d at 473 (citing *Brock v. Robbins,* 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of monetary loss is *injuria absque dam-no,*" *Cagle v. Southern Bell Tel. & Tel. Co.,* 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977*) i.e.,* "a wrong which results in no loss or damage, and thus cannot sustain an action." *Mira,* 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)).

*Tsintolas Realty,* 984 A.2d at 187.

Developer RE1 is likely to prevail on its argument that technical defaults that caused no harm cannot serve as a basis for the foreclosure on a Property worth almost $4 million. *See Allen v. United States,* 603 A.2d 1219, 1227 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227 (1992) ("Proportionality is of consummate importance in judicious adjudication[.]")" [.]")". Other courts have also refused to allow a forfeiture based upon an inconsequential breach of a contract.

15

In *Miller v. Cain Partnership, Ltd.,* No. 1993 Tenn. App. LEXIS 485, (Tenn. Ct. App. July 20, 1993), the court noted several, general rules regarding forfeitures, such as: "Every reasonable presumption is against forfeiture and every intendment or presumption is against the party seeking to enforce the forfeiture", (citing 17A C.J.S. Contracts § 407 (1963)) and that "[f]orfeitures are not favored in equity and unless the penalty is fairly proportionate to the damages suffered by the breach, relief will be granted when the [party seeking forfeiture] can, by compensation or otherwise, be placed in the same condition as if the breach had not occurred.") (quoting *Hooten v. Nacarto GMC Truck, Inc.,* 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989)); *see also Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.,* 1998 U.S. Dist. Lexis 1327, \*39-42 ("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one.") (issuing an injunction to prevent the termination of a Joint Venture agreement based upon inconsequential violations and when there was substantial performance under the contract). Because of the longstanding rule that equity abhors a forfeiture, especially when the party trying to effectuate the forfeiture has suffered no damages, the third injunctive relief factor -- the likelihood of success on the merits -- weighs heavily in Developer RE1's favor.

    D.    <u>The Balance of the Injuries is Tipped Decidedly in Developer RE1's Favor</u>

The irreparable harm to Developer RE1 greatly outweighs any potential injury to the Defendants, who really can prove no injury because, but for their improper conduct, Developer RE1 would have gone to closing and repaid the amounts owed in full. The Defendants have suffered no identifiable injuries to date, and any harm that the WCP or the WCP Fund could arguably claim that Developer RE1 has caused them are wounds that are self-inflicted. By refusing pre-textually placing Developer RE1 in default, trying to improperly extort money from Developer RE1 (and others), and by directly interfering with, and delaying indefinitely, Developer RE1's closing on a refinance loan, the Defendants have effectively shot

<p align="center">16</p>

themselves in the foot. The third injunctive relief factor, the "balance of the injuries", also weighs heavily in favor of Developer RE1.

      E.    <u>The Public Interest is Firmly in Favor of Preventing Foreclosure</u>

The public interest will be served by stopping a foreclosure where the borrower was not in default and had abided by the terms of its loan documents. The public interest is served by ensuring that those who adhere to the terms of loan documents are rewarded, not penalized. The public interest is not served by rewarding wrongdoers. Here, Developer RE1 had paid all amounts owed to the WCP and the WCP Fund before they issued Payoff Statements demanding $727,598.77 "default" penalties. At best, the defaults alleged by the Defendants were technical violations of the First and Second DOT. The public interest will not be served if the Court, using another sports (tennis) analogy, were to allow what are basically "foot faults" to decide an entire tennis match, especially in a case like this one where the Defendants have, acting in concert, engaged in predatory lending practices. Allowing the Defendants to move forward with a foreclosure under these circumstances would actually harm the public as it would encourage the Defendants to engage in even more deceitful, predatory lending practices. The "public interest" factor also favors Developer RE1.

## IV.   C<small>ONCLUSION</small>

Based on the facts presented and the attached exhibits, the Court should enter a Temporary Restraining Order that prevents to Defendants from taking any further action to foreclose on the Property. For these reasons and for any reasons that may be advanced at a hearing on this motion, the Plaintiff, Developer RE1 LLC, requests that this Honorable Court: (a) schedule an emergency hearing on this motion; (b) enter the attached proposed order; and award such other and further relief as the Court may deem just and proper.

<div align="center">17</div>

GDL Documents\4887-8420-9222.v1-12/23/22

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.


Dated:  December 23, 2022         /s/ James D. Sadowski
         Alexandria J. Smith (D.C. Bar. No. 1781067)
         James D. Sadowski (D.C. Bar No. 446635)
         801 17th Street, NW, Suite 1000
         Washington, DC 20006
         Telephone:  (202) 452-1400
         Email:  jds@gdllaw.com
         *Counsel for Plaintiff Developer RE1 LLC*


## REQUEST FOR EMERGENCY ORAL HEARING

Plaintiff requests that this Motion for Temporary Restraining Order be set for an oral

hearing before the Judge in Chambers on an expedited basis.

         /s/ Alexandria J. Smith
         Alexandria J. Smith

18

<h3 style="text-align:center">CERTIFICATE OF SERVICE</h3>

I HEREBY CERTIFY that a copy of this Motion for a Temporary Restraining Order was served by the Court's electronic filing system this 23rd day of December 2022, and a notice of filing should be served on all counsel of record. I also served a copy of this motion by email (as indicated) and by FedEx on the following persons:

| | |
|---|---|
| DP Capital d/b/a Washington<br> Capital Partners<br>8401 Greensboro Drive - Suite 960<br>McLean, VA 22102<br>rdrazin@pardodrazin.com | WCP Fund I, LLC<br>c/o National Registered Agents Inc. –<br>Registered Agent<br>1015 15th Street, NW, Suite 1000<br>Washington, DC 20005 |
| Daniel Huertas<br>909 Chinquapin Road<br>McLean, VA 22102 | Russell S. Drazin<br>4400 Jenifer Street, NW - Suite 2<br>Washington, DC 20015 |
| Pardo & Drazin, LLC<br>4400 Jenifer Street, NW - Suite 2<br>Washington, DC 20015<br>Attn: Russell S. Drazin | |

/s/ Alexandria J. Smith
Alexandria J. Smith

<h3 style="text-align:center">CERTIFICATE REGARDING CONSENT</h3>

The Plaintiff attempted to seek consent to the relief requested in this motion by sending an email to Russell Drazin, Esq., a Defendant who is also believed to be counsel for the other Defendants, on December 22, 2022. Mr. Drazin replied that the Defendants did not consent.

/s/ Alexandria J. Smith
Alexandria J. Smith

<div style="text-align:center">19</div>

GDL Documents\4887-8420-9222.v1-12/23/22

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

<table>
<tr><td>

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DPA CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

</td><td>

Case No. 2022 CAB 005935
Judge Ebony Scott

</td></tr>
</table>

## [PROPOSED] ORDER

Upon Consideration of Plaintiff Developer RE1 LLC's Motion for Temporary Restraining Order, any response thereto, the facts and arguments presented at the hearing, and a review of the record of this case, this Court finds that the Plaintiff has met the standards required for the issuance of injunctive relief. Accordingly, it is this ___ day of December, 2022, hereby

ORDERED that the Plaintiff's Motion for Temporary Restraining Order is hereby GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to: (a) exercise any right or remedy that they have under the First DOT, the Second DOT, the First Note, and/or the Second Note; (b) foreclose on the Property (5501 1st Street, N.W., Lot 138, Square 3389); and/or (c) collect any amounts that are claimed to be due under the First Note and the Second Note pending further order of this Court.

SO ORDERED.

                                          _____

                                          The Honorable Ebony Scott
                                          Superior Court of the District of Columbia

GDL Documents\4887-8420-9222.v1-12/23/22

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Daniel Huertas
DPA Capital, LLC d/b/a Washington Capital Partners
The WCP Fund 1, LLC
Russel Drazin, Esq.

2

Case 23-10086-BLS Doc 157-2 Filed 07/30/25 Entered 09/30/25 00:33:26 Desc
Exhibit B - All Pleadings Ad- Ask Docket Entries (Point 9) Albania Entries Page 164 of 1716

# EXHIBIT A

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

      **THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

      WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

      WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

266

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

# ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                           Page 3 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

## ARTICLE II

## GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016                                                                 Page 4 of 25

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                                 Page 5 of 25

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

## 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

### 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

### 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

### 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

Page 6 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016

Page **8** of **25**

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

ARTICLE V

NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016                                                                 Page 9 of 25

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

## 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

## 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016                                                                 Page **10** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

## ARTICLE VII

## EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

## 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

## 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

## 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

## 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

## 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page 12 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

Page 13 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

## 8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

## 8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

## 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

## 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016        Page 16 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016                                                                 Page **18** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016                                                        Page 19 of 25

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

Rev 5.2016                                                                 Page 21 of 25

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

## GRANTOR:

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____ (SEAL)

By: Mel Melaku Negussie

Its: Managing Member

COUNTY OF ~~District of Columbia~~ ) SS:

STATE OF ~~City of Washington~~

    I hereby certify on this ___ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____

NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 5.2016

Page 23 of 25

282

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Case 23-10078-BLS Doc 15-2 Filed 05/31/25 Entered 09/30/25 10:33:14 Desc
Exhibit B - All Pleadings and Exhibit A - All Docket Entries (Point Albion) Page 190 of 1716

# EXHIBIT B

Case 24-10044-ELG60-DHA15-2 Doc 166-08/04/25 Filed 10/09/30/25 08:23:24 Desc
Exhibit B - All Pleadings Ad Ask Docket Entry Bag e 5501 1st St NW Washington DC 20011 Page 191 of 1716

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                        **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1. BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.   **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                    Page 1 of 9

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2. <u>INTEREST</u>

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

## 3. <u>PAYMENTS</u>

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.    BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.    BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;

b. If default be made in the performance of any other covenant contained in this Note;

c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of 24% per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                              Page 3 of 9

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015 Page 4 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

Page **5** of **9**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015                                                                    Page 6 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015            Page 7 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

**[SIGNATURE PAGE TO FOLLOW]**

Rev 12.2015

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:     Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:     Solomone Abebaw Desta
Its:    Member

COUNTY OF _____

STATE OF _____

    I hereby certify on this 24 day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 12.2015                                                        Page **9** of **9**

# EXHIBIT C

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

     **THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

     WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

     WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

Rev 5.2016

Page 3 of 25

Case 24-10077-BLS Doc 15-2 Filed 01/31/25 Entered 01/31/25 00:00:00 Desc
Exhibit B - All Pleadings and Docket Entries (Part 10) Page 204 of 1716
5501 1st St NW Washington DC 20011

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

ARTICLE II

GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016

Page 5 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Rev 5.2016

Page 6 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

Rev 5.2016                                                                              Page 7 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Rev 5.2016                                                                 Page 8 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

Case 24-10082-BLG Doc A15-2 Document Filed 06/30/25 Entered 06/30/25 09:33:24 Desc
Exhibit B - All Pleadings And Docket Entries (Part 6) Page 210 of 1716

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

<div align="center">

### ARTICLE VI

### EMINENT DOMAIN – CONDEMNATION

</div>

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

305

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

**7.0 Events of Default.**

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

**7.1 Payment of Indebtedness.**

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

**7.2 Performance of Obligations.**

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

**7.3 Appointment by Receiver.**

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

**7.4 Voluntary Bankruptcy.**

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                                 Page 12 of 25

Case 23-10006-ELG Doc 115-2 Filed 08/04/25 Entered 08/04/25 00:33:21 Desc
Exhibit B - All Pleadings And Dockets From Bankruptcy Docket Page 213 of 1716
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

### ARTICLE VIII

### DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## 8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

## 8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

## 8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## ARTICLE IX

## THE TRUSTEE

**9.0 Acceptance - Standard of Conduct**

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

**9.1 Fees and Expenses.**

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

**9.2 Commissions on Sale.**

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

**9.3 Commission on Advertisement.**

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

**9.4 Resignation.**

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

**9.5 Acts of Trustee.**

Rev 5.2016

286

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

ARTICLE X

RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

ARTICLE XI

MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

Page **17** of **25**

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016                                          Page 18 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016

Page 19 of 25

### 11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

### 11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

### 11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

### 11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016 <span style="float:right">Page **20** of 25</span>

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

### 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

### 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

### 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

Rev 5.2016

Page **21** of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

Rev 5.2016                                                                                     Page 22 of 25

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _____ ) SS:
STATE OF _____ )

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024



Rev 5.2016

Page 23 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## EXHIBIT A

## LEGAL DESCRIPTION

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Rev 5.2016

Page **25** of **25**

# EXHIBIT "A"
## Property Description

**Closing Date:**      **December 23, 2021**

**Borrower(s):**      **Developer RE1 LLC**

**Property Address:**   **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.

File No.: 21-1983                    PROPERTY DESCRIPTION                    Page 1 of 1

```
Doc #: 2022000482
Filed & Recorded
01/03/2022 12:42 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $150.00
  SURCHARGE               $6.50
  RECORDATION TAX FEES    $13,100.00
TOTAL:                    $13,256.50
```

# EXHIBIT D

Case 23-10006-ELG Doc 15-2 Filed 06/03/25 Entered 06/03/25 00:33:26 Desc
Exhibit B - All Pleadings And Docket Entries (Bank) Page 1 of 1716

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                          **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                      Page 1 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2.    INTEREST

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

## 3.    PAYMENTS

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.    **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;

b. If default be made in the performance of any other covenant contained in this Note;

c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                                                                   Page 3 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                                 Page 4 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at: 1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

Page 5 of 9

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a) Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b) Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c) Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page 6 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                                                    Page 7 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

Page **8** of **9**

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)

By: Mel Melaku Negussie
Its: Managing Member

COUNTY OF _City of Washington_ )SS:
STATE OF _District of Columbia_ )

 I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 12.2015

Page 9 of 9

332

# EXHIBIT E

Case 24-10037-BHG-DnA-15-2 Doc 115-2 Filed 05/30/25 Entered 09/30/25 08:33:14 Desc
Exhibit B - All Pleadings and Adv Docket Entries (Part 5) Page 239 of 1716

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:**     Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:**    Daniel Huertas

**To:**        mel negussie

**CC:**        Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

Case 24-10036-DMG Doc 15-2 Filed 05/30/25 Entered 09/30/25 00:33:14 Desc

**Subject:** RE: Payoff status of 5505 1st and Kennedy project

**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

Case 24-10036-BLG Doc 15-2 Filed 05/30/25 Entered 09/30/25 00:35:14 Desc
Exhibit B - All Pleadings and Docket Entries (Part 37 Albuquerque) Page 242 of 1716

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time

**From:** mel negussie

**To:** Daniel Huertas

**CC:** Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone


On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:

HI Daniel,

My apologies for the delayed response.

Yes, we are working and making progress to refinance both projects out of WCP.

Regards,
Mel

---

# EXHIBIT H

**Subject:** 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time

**From:** mel negussie

**To:** Cara Farley, Leslie Calderas

**CC:** Darralyn Brown

**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time

**From:** Cara Farley

**To:** mel negussie

**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown <darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

> On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:

Hi Mel,

Payoff requests received. What good through date would you like?

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 11:58 AM
**To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
**Cc:** Darralyn Brown <darralyn@districttitle.com>
**Subject:** 71 Kennedy (5505 1st Street)

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT J

| **Subject:** | Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
|---|---|
| **Date:** | Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time |
| **From:** | Leslie Calderas |
| **To:** | mel negussie |
| **CC:** | Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas |
| **Attachments:** | image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf |

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


<span style="color:red">**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.</span>

<span style="color:red">**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.</span>


## Leslie Calderas | Servicing Manager

Washington Capital Partners
www.washingtoncapitalpartners.com
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

# EXHIBIT K

Case 24-10023-ELG   Doc 15-2   Filed 07/30/25   Entered 07/30/25 03:32:34   Desc
Exhibit B - All Pleadings and Docket From Bankr Alb Page 251 of 716



8401 Greensboro Dr Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

     Re:    **NOTICE OF DEFAULT**

     5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.  I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

Case 24-10023-ELG   Doc 15-2   Filed 07/30/25   Entered 07/30/25 03:32:34   Desc
Exhibit B - All Pleadings and Docket From Bankr Alb Page 251 of 716

# EXHIBIT L



8401 Greensboro Dr Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

Re:     **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - servicing@wcp.team**

# EXHIBIT M

Case 23-10037-ELG Doc 15-1 Filed 05/04/25 Entered 05/04/25 00:33:14 Desc
Exhibit B - All Pleadings and Docket Entries (Part A) Page 319 of 2207 Page 255 of 1716




# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | WCP Servicing LLC | **Bank Name: United Bank** |
| | **8401 Greensboro Dr Suite 960** | **Routing Number:** ▉▉▉▉▉ |
| | **McLean, VA 22102** | **Account Number:** ▉▉▉▉▉ |

When sending the wire please reference our loan number, LOAN-006120 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT N




# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| Payable to: | WCP Servicing LLC | Bank Name: United Bank |
|---|---|---|
| | 8401 Greensboro Dr Suite 960 | Routing Number: ▮▮▮▮▮▮ |
| | McLean, VA 22102 | Account Number: ▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006182 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT O

**James D. Sadowski**

---

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |

**Importance:** High

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

**5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))**

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

**423 Kennedy Street, NW (Lot 0056 in Square 3260)**

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** ǀ **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

356

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document. Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default". Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy. As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today. I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400, x5407
Fax: 202.452.1410
E-mail: jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**


**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**


## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/

8401 Greensboro Dr Suite 960

McLean, VA 22102

(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

5

# EXHIBIT P

| **Subject:** | PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute |
| --- | --- |
| **Date:** | Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time |
| **From:** | mel negussie |
| **To:** | Administrative.Hearings@dcwater.com |
| **BCC:** | Chapman Paret |
| **Priority:** | High |
| **Attachments:** | 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf |

Dear Administrative Hearing Officer,
Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from February to June 2022.
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.
Thank you.

Mel Negussie
(202)271-5046 cell



David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 CANAL STREET, SE | WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

Case Number:       22-594546
Account Name:     2002583-9                                    Account Number:    2002583-9
Service Address: 5501 1st St NW                           Bill Class:                Commercial
Dispute Date:        09/22/22                                       CCF:                        2,156.99
Bill Period (Start): 01/20/22                                   Bill Period (End):      06/16/22
Meter Size:            1"                                               Read Type:              Act
Bill Date(s):          02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

**PETITION FOR ADMINISTRATIVE HEARING**

Indicate your relationship to the property: Owner___ Legal/Rep___ Tenant___ 3rd Party/Non-Occupant___ Mgt Company___
Indicate the property occupancy status during the dispute period: Vacant___ Occupied___(Number of Occupants _____)
Daytime/Best Contact Phone Number: 202-271-5046          **Email:**        mel@ntconstruction.net

Please provide a statement of facts concerning the disputed charges. Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges. Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because: We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

Signature ___*Mel Negussie*___ Date 09/22/22

# EXHIBIT Q

Case 24-10086-BLS Doc 152 Filed 05/01/25 Entered 05/01/25 00:33:24 Desc
Exhibit B - All Pre-Exhibit A - Additional Future Repair 364 Page 35 of 820 Page 260 of 1716

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

SSL:              3389- -0138
Amount Paid:    $16,522.89
Submitted Date: 16-Oct-2022

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

# EXHIBIT R

Case 24-10021-BLS Doc 15-2 Filed 03/04/25 Entered 03/04/25 00:33:14 Desc
Exhibit B - All Pleadings Ad Hoc Committee Enforcing Bond as Part of Page 271 of 1716

**Subject:** Payment request submitted

**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time

**From:** DoNotReply_MyTax@dc.gov

**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**
Your request confirmation code is: **dmgcxd**

Payment Amount: $222.28
Payment Date: 19-Oct-2022
Submitted Date: 19-Oct-2022

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| 423 KENNEDY ST HOLDINGS LLC, *Plaintiff*, v. DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL., *Defendants*. | Case No. 2022 CAB 005903 Judge Robert Rigsby |
| DEVELOPER RE1 LLC, *Plaintiff*, v. DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL., *Defendants*. | Case No. 2022 CAB 005935 Judge Ebony Scott |

## NOTICE OF RELATED CASES

Pursuant to D.C. Super. Ct. Civ. R. 40-I.(f)(2)(B), Counsel for 423 Kennedy St Holdings LLC and Developer RE1, LLC notifies the judges that the above-captioned cases are related within the meaning of Rule 40-I.(f). The two cases, the earliest of which (2022 CAB 005903), involve common issues of facts, i.e., the Defendants alleged that the Plaintiffs were in default under similar loan documents. The claims in both cases are also the same, and refer to similar events and transactions. The related cases also have the same Defendants.

4869-3825-6710.v1

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:    December 23, 2022

/s/ Alexandria J. Smith

James D. Sadowski, #446635
Alexandria J. Smith, #1781067
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone:  (202) 452-1400
Facsimile:  (202) 452-1410
E-mail:  jds@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings,
LLC* and *Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of December, 2022, a true copy of the

foregoing Notice of Related Cases was filed in both of the above-captioned cases (2022 CAB

005903 and 2022 CAB 005935) using eFileDC and that a notice of filing should be sent

electronically to counsel of record in both cases.  Before filing this notice, I also added all

counsel of record in the older case to the service list for the newer case.

/s/ Alexandria J. Smith

Alexandria J. Smith

2

4869-3825-6710.v1

Case 24-10023-BLS   Doc 152   Filed 05/01/25   Entered 05/01/25 09:33:14   Desc
Exhibit B - All Pleadings And Ask Docket Entries (Part 6) Albums 5 of 207   Page 274 of 1716



# Superior Court of the District of Columbia
## Civil - Civil Division
### 500 Indiana Ave NW, Room 5000, Washington DC 20001
### (202) 879-1120 | www.dccourts.gov

**Case Number:** 2022-CAB-005935

**Case Caption:** Developer RE1, LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| 03/24/2023 | 9:30 AM | Remote Courtroom 219 |

**Please see attached instructions for remote participation.**

Your case is assigned to Associate Judge Ebony M Scott.

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) When you are ready, click "Join Meeting".

3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.

2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

For case questions, call the Civil Division Clerk's Office at (202) 879-1120.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጽሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.

## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

📞 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
**(Click here for more information)**

- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

Case 25-10037-BCG- Doc 15-7 Doc 07/30/25 Filed 06/09/04/25 00:38:24 Desc
Exhibit B - All Pleadings Ad- All Docket Entries Part 7A Page 362 of 2207 Page 278 of 1716

District of Columbia Courts

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:



**Remote Site - 1**
Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

**Remote Site - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

**Remote Site - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

**Remote Site - 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**Remote Site - 5**
Reeves Center
2000 14th Street, NW, 2nd Floor
Community Room
Washington, DC 20009

**Remote Site - 6**
Reeves Center
2000 14th Street, NW, Suite 300N
Office of the Tenant Advocate
Washington, DC 20009
*** *No walk-ins at this location*** *

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.
4. A facial covering will be required for entry into the remote hearing location; if you do not have a facial covering one will be provided.

 **\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov

Case 24-10077-EWC Doc 1-2 Filed 07/01/25 Entered 09/04/25 16:26:14 Desc
Exhibit B - All Pleadings And Attachments (part A) Page 363 of 2207 Page 279 of 1716

## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

**Los centros de acceso remoto son:**



| | |
|---|---|
| **Sitio Remoto - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sitio Remoto - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Sitio Remoto - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sitio Remoto - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.** Si necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

4. Para ingresar al sitio de la audiencia remota deberá llevar una mascarilla facial; si no tiene mascarilla facial, se le proporcionará una.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
01/12/2023 3:43:00 PM
Superior Court
of the District of Columbia

Case 2022-CAB-005935 Document 15-1 Filed 01/04/25 Entered 01/04/25 00:33:26 Desc
Exhibit B - All Pleadings and Docket Entries (Part 7) Page 280 of 1716

## AFFIDAVIT OF SERVICE

| Case: 2022-CAB-005935 | Court: Superior Court of the District of Columbia-Civil Division-Civil Actions Branch | County: District of Columbia, DC | Job: 8179498 |
|---|---|---|---|
| Plaintiff / Petitioner: Developer RE1 LLC | | Defendant / Respondent: WCP Fund, I, LLC, et al. | |
| Received by: CPI - Columbia Process and Investigative Services LLC | | For: Greenstein DeLorme & Luchs, P.C. | |
| To be served upon: Russell Drazin | | | |

I, Marquis Harris, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Russell Drazin, 4400 Jenifer Street NW, Suite 2, Washington, DC 20015

**Manner of Service:** Personal

**Documents:** Summons, Complaint, Exhibits, Initial Order , Information Sheet

**Additional Comments:**
On January 03, 2023 at 4:28 PM, I served the Defendant, Russell Drazin, the referenced documents at the referenced address.

Russell Drazin is a White Male with grey hair. Mr. Drazin is approximately 5'9", 170 pounds, and in his 50's.

I do solemnly declare and affirm under the penalty of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

_____  1/10/23
Marquis Harris            Date

CPI - Columbia Process and Investigative Services LLC
5406 Connecticut Avenue, N.W. Suite 108
Washington, DC 20015

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

1/10/23      August 20, 2025
Date         Commission Expires

SUZANNE E CRONIN
Notary Public - State of Maryland
Harford County
My Commission Expires Aug 20, 2025

eFiled
01/12/2023 3:29:40 PM
Superior Court
of the District of Columbia

## AFFIDAVIT OF SERVICE

| Case: 2022-CAB-005935 | Court: Superior Court of the District of Columbia-Civil Division-Civil Actions Branch | County: District of Columbia, DC | Job: 8179485 |
|---|---|---|---|
| Plaintiff / Petitioner: Developer RE1 LLC | | Defendant / Respondent: WCP Fund, I, LLC, et al. | |
| Received by: CPI - Columbia Process and Investigative Services LLC | | For: Greenstein DeLorme & Luchs, P.C. | |
| To be served upon: DP Capital, LLC d/b/a Washington Capital Partners | | | |

I, Marquis Harris, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** DP Capital, LLC d/b/a Washington Capital Partners, 8401 Greensboro Drive, Suite 960, McLean, VA 22102

**Manner of Service:**

**Documents:** Summons, Complaint, Exhibits, Initial Order , Information Sheet

**Additional Comments:**
On January 04, 2023 at 4:50 PM, I served the Defendant, DP Capital, LLC c/b/a Washington Capital Partners, the referenced documents at the referenced address via service upon Intake Specialist, Donna Evans, who is authorized to accept service on behalf of the Defendant.

Donna Evans is a Black Female with black hair. Ms. Evans is approximately 5'4", 190 pounds, and in her 50's.

I do solemnly declare and affirm under the penalty of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

_____     1/10/23
Marquis Harris                              Date

CPI - Columbia Process and Investigative Services LLC
5406 Connecticut Avenue, N.W. Suite 108
Washington, DC 20015

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

1/10/23     August 20, 2025
Date          Commission Expires

SUZANNE E CRONIN
Notary Public - State of Maryland
Harford County
My Commission Expires Aug 20, 2025

eFiled
01/12/2023 10:11:22 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

---

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Initial Scheduling Conference
03/24/23 at 9:30 a.m.

---

## FIRST AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, and Russell Drazin. The First Amended Complaint includes

claims for tortious interference with business relations, breach of the duty of good faith and fair

dealing, and permanent injunctive relief. The First Amended Complaint also seeks a declaratory

judgment as to the meaning of certain provisions in two Deeds of Trust. The First Amended

Complaint also seek injunctive relief to prevent a foreclosure. In support of its First Amended

Complaint, Developer RE1 avers as follows:

### THE PARTIES

1. The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia

limited liability company that is authorized to do business in the District.

2. The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited

liability that does business under the trade name "Washington Capital Partners". For

convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as

"WCP".

4881-0911-2136.v1

3. The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4. The WCP controls the WCP Fund.

5. The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6. The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

<div align="center">STATEMENT OF FACTS APPLICABLE TO ALL COUNTS</div>

The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"

7. In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source: https://dc.capitolfile.com/power-players-dc (italic emphasis added).

8. But in reality, the WCP does not have the highest ethical standards. The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, and the WCP Fund have engaged in unethical, outrageous conduct that was specifically designed to make one of their client's construction projects fail.

<div align="center">2</div>

4881-0911-2136.v1

The Ownership of Developer RE1, Its Purpose, and the Property.

9.     Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property").

10.    Developer RE1 is partially owned by Mr. Negussie.

11.    Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

12.    The Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the Property and any the improvements that Developer RE1 made to the Property.

13.    On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

14.    As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

15.    The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

16.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

17.    On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

18.    The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

3

4881-0911-2136.v1

19.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

20.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

21.     The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

22.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

23.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

24.     The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

26.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

27.     The maturity date for the First Note and the Second Note was December 23, 2022.

28.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

4

4881-0911-2136.v1

29.     As of November 3, 2022, Developer RE1 had made all payments to the WCP

Fund that were due under the First Note and the Second Note.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development</u>

30.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.

Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas

wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of

5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

31.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via

Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the

November 15, 2022 email is attached as Exhibit F.

32.     As of November 15, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

33.     By as early as November 15, 2022, the Defendants each knew that Developer

RE1 had secured alternative financing for the Property with another lender named Main Street

Bank, and that Developer RE1 expected to close on the new refinancing loans in December of

2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

34.     As of November 30, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

35.     On November 30, 2022, Developer RE1 made a request by email to WCP for the

payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.

5

4881-0911-2136.v1

386

36.     That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

37.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

38.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

39.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

40.     As of December 7, 2022, Developer RE1 had made all payments due under the First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

41.     On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the

6

4881-0911-2136.v1

development of another, unrelated property (located at 2507 I Street, NW) had turned out. For

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the

"2507 I Street Project".

42.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the

payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was

associated with at WCP," including Developer RE1. Mr. Huertas further stated that the 2507 I

Street Project has "turned out very bad and that the person who lent the money to WCP

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the

quality of the work done," and that this Investor Lender "is very wealthy and will make life hard

for you", and "has now bought the notes" on Developer RE1 and another project financed by

WCP, and that WCP is "defaulting the loans." Mr. Huertas also said: "why don't you do the

honorable thing and have your investors buy 2507 I St to make things right" or have them "take

care of the $700,000" shortfall on the 2507 I Street Project.

43.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"

by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to

the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the

Defendants and the unnamed investor "would make trouble for you on all of your other

projects".

44.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it

was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1

or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it

was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or

to be making threats to any other development project that Mr. Negussie was involved with.

7

4881-0911-2136.v1

388

45.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

46.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

47.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

48.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

49.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

50.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

51.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

52.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

8

4881-0911-2136.v1

53.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

54.     The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

55.     The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

56.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

57.     The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

> <u>Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment  of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.</u>

58.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

59.     The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

<div align="center">9</div>

385

60.     Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

61.     Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

62.     The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

63.     Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

64.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

10

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

65.     In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

66.     In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

67.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

68.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.

69.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

70.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

11

4881-0911-2136.v1

default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

71. On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

72. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

73. The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and a another "commission" of 5.00% the proceeds of a foreclosure sale.

74. There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

75. As a result of their spite, their evil, improper motive, and their greed, the Defendants improperly alleged that Developer RE1 was in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

---

[1] 423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2022-CAB-005903.

12

76.     The Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans that they knew that Developer RE1 had secured with Main Street Bank.

77.     The Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

78.     The Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund).

79.     The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

80.     The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

81.     Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument

13

4881-0911-2136.v1

No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the

Deeds of Trust encumbering 5501 1st Street, NW.

(b)      Second-Half 2022 Real Estate Taxes were due and payable no later than

September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not

made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the

alleged defaults by Developer RE1 is attached as Exhibit O.

82.      For convenience, the alleged DC Water Debt will be referred to as the "DC Water

Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property

Tax Late Payment Claim."

83.      Developer RE1 first became aware of that there may be outstanding DC Water

invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for

the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22,

04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water

claimed was due.

84.      On September 22, 2022, DC Water stated in an email that "the dispute deadline

date for these charges has expired" and that "[b]ills must be paid or disputed by their respective

due dates."  Because Developer RE1 did not receive an invoice until on or about August 31,

2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already

expired by about sixty days.

85.      On September 22, 2022, Developer RE1 submitted (by email) a Petition for

Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for

14

4881-0911-2136.v1

an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the

Petition for Administrative Hearing are attached together as Exhibit P.

86.     Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1

reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim

"within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in

violation of the covenant in Section 7.6 (entitled "Judgments").

87.     Developer RE1 cannot be declared in "default" based upon the first pre-textual

basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because

cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section

7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

88.     The only provision of the loan documents that Mr. Drazin cited a claimed basis

for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

89.     The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations*
> *secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any*
> *of their affiliates, to Beneficiary,* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

4881-0911-2136.v1

90.     The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

91.     The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.

92.     The late payment of taxes by Developer RE1 cased no harm whatsoever to the WCP Fund.

93.     The First DOT and the Second DOT contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

94.     No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

95.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

96.     The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

16

4881-0911-2136.v1

97. The Defendants apparently claim that Section 7.9 is a cross-default provision. A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

98. In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred: (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

99. The First DOT and the Second DOT do not define the term "affiliate." Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code §6809 (6).

100. Developer RE1 does not control 423 Kennedy and vice versa.

101. Developer RE1 is not controlled by 423 Kennedy and vice versa.

102. There is also no common control of Developer RE1 and 423 Kennedy.

103. Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

104. Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

105. Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

106. The Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that: "There is no right to cure. There is no right to

17

4881-0911-2136.v1

deceleration.  <u>There is no right to reinstatement</u>.  <u>The Loans are in default and are accelerated</u>."

*See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the

Second Note, and the Second DOT).

<u>Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending
Practices Are Left Unchecked</u>

107.    The Defendants have threatened to foreclose on the Property even though they

know that they have no legal right to foreclose on the Property.

108.    There is no valid, legal basis under any provision of either the First DOT or the

Second DOT that would permit the Defendants to foreclose on the Property.

109.    If the Defendants follow through on their threat to foreclose on the Property,

Developer RE1 and its members will be irreparably harmed and they could lose their entire

investment.

110.    The Defendants' conduct shows that they have an evil motive, that they are acting

with actual malice to impose damages on Developer RE1 and others, and they are intentionally

and willfully disregarding Developer RE1's rights under the loan documents and under the law.

The Defendants' misconduct and improper lending practices also constitute outrageous conduct

further justifying an award of punitive damages.

111.    The Defendants knew that the First Note and the Second Note list a maturity date

of December 23, 2022.  The Defendants deliberately timed their improper interference with

Developer RE1's business relations -- right before a holiday period -- to make it close to

impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to

tie up any refinancing indefinitely so that they can try to foreclose on the Property

18

112.     As of January 11, 2023, none of the Defendants have sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

<div align="center">

COUNT I

TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Count I is Asserted Against All Defendants Except Mr. Drazin

</div>

113.     Paragraphs 1-112 of the First Amended Complaint are incorporated by reference.

114.     Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

115.     The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

116.     As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

117.     As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

118.     The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

119.     Developer RE1 has been damaged by the Defendants'' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

<div align="center">

19

</div>

4881-0911-2136.v1

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $1 million if the closing on the refinancing does not take place this year); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $500,000.00; (d) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT II
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP and WCP Fund Only

</div>

120. Paragraphs 1–119 of the First Amended Complaint are incorporated by reference.

121. Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

122. The First Note is a contract between Developer RE1 and the WCP Fund.

123. The First DOT is a contract between Developer RE1 and the WCP Fund.

124. The Second Note is a contract between Developer RE1 and the WCP Fund.

125. The Second DOT is a contract between Developer RE1 and the WCP Fund.

126. Through its improper conduct, the WCP and the WCP Fund have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners and the WCP Fund 1, LLC: (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional

<div align="center">20</div>

4881-0911-2136.v1

interference with contracts (currently estimated to be $1 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

## COUNT III
### DECLARATORY JUDGMENT
Count III Is Asserted Against Defendants WCP and WCP Fund Only

127.     Paragraphs 1–126 of the First Amended Complaint are incorporated by reference.

128.     The First DOT is a contract between Developer RE1 and the WCP Fund.

129.     The Second DOT is a contract between Developer RE1 and the WCP Fund.

130.     There is an actual and justiciable controversy between Developer RE1 and the WCP Fund as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

131.     It is settled law in the District that "equity abhors forfeitures ... [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.")).

132.     There is an actual and justiciable controversy between Developer RE1 and the WCP Fund as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that:  (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a

21

4881-0911-2136.v1

default by Developer RE1 after the fact, after the alleged default has already been cured (or is in

the process of being adjudicated), and without providing any notice to the borrower or any

opportunity to cure, and that results in either (i) additional interest and penalties entirely

disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is

unconscionable and enforceable as a matter of public policy.

<div align="center">

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

</div>

133.    Paragraphs 1–132 of the First Amended Complaint are incorporated by reference.

134.    Unless enjoined, the Defendants will continue to improperly claim that Developer

RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

135.    The Defendants unethical, outrageous, and illegal conduct, as described in this

First Amended Complaint, is causing irreparable harm to Developer RE1.  The Property is

unique, and Developer RE1 could lose its entire interest in the Property.

136.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

<div align="center">22</div>

<u>DEMAND FOR A JURY TRIAL</u>

Developer RE1, LLC demands a trial by jury as to all claims asserted in the First

Amended Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  January 12, 2023

/s/ James D. Sadowski

James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

4881-0911-2136.v1

Exhibit B - All Pleadings Ad Ask Docket attached

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this First Amended Complaint was filed

through eFileDC this 12th day of January, 2023, and a notice of filing should be sent by eFileDC

to all counsel of record in the case. I also checked that the email address listed below each

Defendant was listed as a service contacts for the Defendants when filing the First Amended

Complaint with eFileDC. In addition, I sent a copy of the First Amended Complaint to the

following persons by first class mail, postage prepaid:

>
> DP Capital, LLC d/b/a Washington Capital Partners
> c/o Russell S. Drazin – Registered Agent
> 4400 Jenifer Street, NW, Suite 2
> Washington, DC 20015
> rdrazin@pardodrazin.com
>
> WCP Fund I, LLC
> c/o Corporation Service Company – Registered Agent
> 1090 Vermont Avenue, NW
> Washington, DC 20005
> mac@mbvesq.com
> rdrazin@pardodrazin.com
>
> Daniel Huertas
> 909 Chinquapin Road
> McLean, VA 22102
> rdrazin@pardodrazin.com
>
> Russell Drazin
> 4400 Jenifer Street, NW, Suite 2
> Washington, DC 20015
> rdrazin@pardodrazin.com

<div align="right">

/s/ James D. Sadowski
_____
James D. Sadowski

</div>

4881-0911-2136.v1

# EXHIBIT A

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

### DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                      Page 2 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                 Page 3 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016

Page 4 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                                 Page 5 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

### 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

### 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

### 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

### 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

407

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

## 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

## 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016 Page 7 of 25

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

386

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

## 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

## 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

### 7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

### 7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

### 7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

### 7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

### 7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

Page **11** of **25**

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page 12 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

Page 13 of 25

## 8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

## 8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

## 8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

### 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

### 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

Case 23-10078-ELG Doc 15-2 Filed 06/04/25 Entered 06/04/25 00:43:24 Desc
Exhibit B - All Pleadings Also Docketed in the Bankruptcy Also Filed in Washington DC Page 392 of 1716

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

392

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

      (a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

      (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

      (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

## 11.2 Severability.

      In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

## 11.3 Successors and Assigns.

      (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

      (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016

399

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016

Page 19 of 25

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

Rev 5.2016                                                                 Page 21 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

Rev 5.2016                                                                     Page **22** of **25**

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited   Liability Company

_____ (SEAL)

By:    Mel Melaku Negussie

Its:    Managing Member


COUNTY OF _District of Columbia_ ) SS:

STATE OF _City of Washington_

I hereby certify on this __24__ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 5.2016

Page **23** of **25**

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

# EXHIBIT B

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                       **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                              Page 1 of 9

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a.  If default be made in any payment due under this Note;
b.  If default be made in the performance of any other covenant contained in this Note;
c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                                                                    Page 3 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                                 Page 4 of 9

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                                                           Page **5** of **9**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a) Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b) Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c) Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015 Page 6 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                    Page 7 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

**[SIGNATURE PAGE TO FOLLOW]**

Rev 12.2015                                                              Page **8** of **9**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:    Solomone Abebaw Desta
Its:    Member

COUNTY OF _____
STATE OF _____

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 12.2015                                                           Page **9** of **9**

# EXHIBIT C

Doc #: 2023000482
01/02/2022 12:42 PM

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016

Page 5 of 25

442

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Rev 5.2016

Page 6 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

426

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

Rev 5.2016

Page 9 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

Rev 5.2016

Page **10** of **25**

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

## ARTICLE VII

## EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

### ARTICLE VIII

### DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016 Page 13 of 25

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

Page 14 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016                                                                 Page 15 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016 Page 17 of 25

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**11.7 Applicable Law.**

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

**11.8 Time of Essence.**

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

**11.9 Business Purpose.**

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

**11.10 Tenant Leases and Rents.**

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016

Page **20** of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

458

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">

## ARTICLE XII

## STATUTORY PROVISIONS

</div>

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">

**[Signature Page to Follow]**

</div>

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability Company

_____ (SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _____ ) SS:
STATE OF _____ )

I hereby certify on this ___ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 5.2016

Page 23 of 25

Case 24-10036-BLG0-DhA15-2 Doc Filed 06/04/25 Filed 06/04/25 00:23:21 Desc
Exhibit B - All Pleading Ad Disclosure Forgedbargain All Pages 3 entries On Page 506 of 1716

## EXHIBIT A

## LEGAL DESCRIPTION

461

Case 24-10036-ELG Doc 15-2 Filed 05/31/25 Entered 05/31/25 00:26:21 Desc

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**      **December 23, 2021**

**Borrower(s):**      **Developer RE1 LLC**

**Property Address:**  **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.

File No.: 21-1983

PROPERTY DESCRIPTION

Page 1 of 1

488

Doc #: 2022000482
Filed & Recorded
01/03/2022 12:42 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $150.00
  SURCHARGE             $6.50
  RECORDATION TAX FEES    $13,100.00
TOTAL:               $13,256.50

# EXHIBIT D

Case 23-10086-ELG Doc 15-2 Filed 08/04/25 Entered 08/04/25 00:43:24 Desc
Exhibit B - All Pleadings Ad Hoc Docketed Parties (Sealed) Page 371 of 1716

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                             **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                        Page 1 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2.   INTEREST

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

## 3.   PAYMENTS

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015

Page 2 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;

b. If default be made in the performance of any other covenant contained in this Note;

c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

Page 3 of 9

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

Page 4 of 9

5501 1st St NW Washington DC 20011

<div align="right">

LOAN-006182

2nd Trust

</div>

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.   Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.   Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.   Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**).   Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.   Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page 6 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                          Page 7 of 9

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015  Page 8 of 9

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

## BORROWER:

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)

By: Mel Melaku Negussie

Its: Managing Member

COUNTY OF _City of Washington_ )SS:
STATE OF _District of Columbia_ )

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 12.2015

Page 9 of 9

Case 23-10316-BLS Doc 15-1 Filed 05/30/25 Entered 09/30/25 00:33:14 Desc
Exhibit B - All Pleadings Ad - Ask Docket Entries (Part 7) Page 54 of 207

# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project

**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project

**Date:**    Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time

**From:**   mel negussie

**To:**      Daniel Huertas

**CC:**     Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone


> On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:
>
> HI Daniel,
>
> My apologies for the delayed response.
>
> Yes, we are working and making progress to refinance both projects out of WCP.
>
> Regards,
> Mel

---

Case 24-10056-BLS Doc 15-2 Filed 05/30/25 Entered 06/30/25 00:33:21 Desc
Exhibit B - All Pleadings and Docket Entries (Part 8) Page 547 of 2207 Page 386 of 1716

# EXHIBIT H

**Subject:** 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time

**From:** mel negussie

**To:** Cara Farley, Leslie Calderas

**CC:** Darralyn Brown

**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time

**From:** Cara Farley

**To:** mel negussie

**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown <darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

> On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:
>
>
> Hi Mel,
>
> Payoff requests received. What good through date would you like?
>
> Thanks!
>
> ---
> **From:** mel negussie <mel@ntconstruction.net>
> **Sent:** Wednesday, November 30, 2022 11:58 AM
> **To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Darralyn Brown <darralyn@districttitle.com>
> **Subject:** 71 Kennedy (5505 1st Street)
>
> HI Leslie/Cara,
>
> Can you please send the payoffs for 5505 1st Street as soon as you are able?
>
> Thanks,
> Mel
>
> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT J

| **Subject:** | Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
|---|---|
| **Date:** | Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time |
| **From:** | Leslie Calderas |
| **To:** | mel negussie |
| **CC:** | Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas |
| **Attachments:** | image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf |

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**


## Leslie Calderas | Servicing Manager

Washington Capital Partners
www.washingtoncapitalpartners.com
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

Case 24-10036-BLS Doc 151-2 Filed 05/30/25 Entered 05/30/25 00:33:24 Desc
Exhibit B - All Pleadings and Dockets Entered (Part 8) Page 547 of 1207

# EXHIBIT K



12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**


Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

Re:      **NOTICE OF DEFAULT**

5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT L



8401 Greensboro Dr Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

Re: **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.  I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT M



# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **8401 Greensboro Dr Suite 960** | **Routing Number:** ▮▮▮▮ |
| | **McLean, VA 22102** | **Account Number:** ▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006120 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT N

Case 23-10027-ELG Doc 152-1 Filed 05/01/25 Entered 05/01/25 00:33:14 Desc
Exhibit B - All Pleadings Ad Hoc Docket Entries (Part 9) Albidgebr549 of 2207 Page 399 of 1716



# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **8401 Greensboro Dr Suite 960** | **Routing Number:** ▇▇▇▇▇ |
| | **McLean, VA  22102** | **Account Number:** ▇▇▇▇▇ |

When sending the wire please reference our loan number, LOAN-006182 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT O

## James D. Sadowski

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

-----------------------------------------

### 5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

### 423 Kennedy Street, NW (Lot 0056 in Square 3260)

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** ∣ **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document. Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default". Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy. As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today. I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400, x5407
Fax: 202.452.1410
E-mail: jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/

8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT P

| **Subject:** | PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute |
|---|---|
| **Date:** | Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time |
| **From:** | mel negussie |
| **To:** | Administrative.Hearings@dcwater.com |
| **BCC:** | Chapman Paret |
| **Priority:** | High |
| **Attachments:** | 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf |

Dear Administrative Hearing Officer,
Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from February to June 2022.
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.
Thank you.

Mel Negussie
(202)271-5046 cell



David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY  |  1385 CANAL STREET, SE  |  WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

| | | | | |
|---|---|---|---|---|
| Case Number: | 22-594546 | | | |
| Account Name: | 2002583-9 | | Account Number: | 2002583-9 |
| Service Address: | 5501 1st St NW | | Bill Class: | Commercial |
| Dispute Date: | 09/22/22 | | CCF: | 2,156.99 |
| Bill Period (Start): | 01/20/22 | | Bill Period (End): | 06/16/22 |
| Meter Size: | 1" | | Read Type: | Act |
| Bill Date(s): | 02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22 | | | |

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

**PETITION FOR ADMINISTRATIVE HEARING**

Indicate your relationship to the property: Owner____  Legal/Rep____  Tenant____  3rd Party/Non-Occupant____  Mgt Company____
Indicate the property occupancy status during the dispute period Vacant____  Occupied__(Number of Occupants _____)
Daytime/Best Contact Phone Number: 202-271-5046        Email: mel@ntconstruction.net

Please provide a statement of facts concerning the disputed charges.  Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges.  Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because:  We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

Signature _____*Mel Negussie*_____ Date 09/22/22

# EXHIBIT Q

Case 24-10021-LG-01-DR-A-15-1 Doc 100-01/24-25 File 00/04-25 Page 356 f 1449
Exhibit R - All Pleadings Ad-Exhibit2-Future Rate(Part06) Page495 of 820 Page 411 of 1716

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

SSL:                3389- -0138
Amount Paid:    $16,522.89
Submitted Date: 16-Oct-2022

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

# EXHIBIT R

**Subject:** Payment request submitted

**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time

**From:** DoNotReply_MyTax@dc.gov

**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**
Your request confirmation code is: **dmgcxd**

Payment Amount:   $222.28
Payment Date:       19-Oct-2022
Submitted Date:     19-Oct-2022

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:

(202) 759-1946

e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

eFiled
01/24/2023 7:22:02 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

　　*Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

　　*Defendants.*

2022-CAB-005935
Judge Ebony Scott
Next Event: Scheduling Conference
03/24/23 – 9:30 a.m.

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

The entry of a Temporary Restraining Order is appropriate and necessary. As set forth more fully below, the Plaintiff, Developer RE1, LLC ("Developer RE1"), has more than demonstrated the irreparable harm that it will suffer if the Defendants move forward on their threat to foreclose on the Property. Moreover, the Defendants have not substantively opposed Developer RE1's arguments regarding likelihood of success on the merits. The balance of hardship and public policy factors lean decidedly towards Developer RE1 due to the law's abhorrence of forfeitures. Finally, the Defendants have not articulated a sufficient basis to support their request for a bond, and a hearing is likely necessary to determine whether a bond is appropriate, and if so, what the value of that bond should be.

## I.　DEVELOPER RE1 HAS DEMONSTRATED IRREPARABLE HARM.

The Defendants do not contest that they have threatened to proceed with a foreclosure on the Property. Opp'n to Mot. for TRO ("Opp'n") at 4. The threatened sale of real estate, which is unique, amounts to irreparable harm—the most important factor in the analysis of whether to grant injunctive relief. *See, e.g., Zirkle v. District of Columbia*, 830 A.2d 1250, 1256 (D.C.

4862-8483-1308.v1

509

2003) ("The basis of injunctive relief . . . has always been irreparable harm and inadequacy of legal remedies."); *see also Peterson v. D.C. Lottery & Charitable Games Ctrl. Bd.*, 1994 U.S. Dist. LEXIS 10309 at *4 (D.D.C. July 28, 1994); *Bashi v. Wells Fargo Home Mortg, Inc.*, 2009 U.S. Dist. LEXIS 96427 (E.D. Mich. Sept. 22, 2009) ("Plaintiff correctly asserts that irreparable harm may flow to him by the reason the sale of his real estate. It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. Because a piece of real property is unique, however, its loss has been considered irreparable") (internal citations omitted); *cf. Hongkong & Shanghai Bank. Corp. v. Kallingal*, 2005 Guam 13, 25-26 (Guam 2005) (using a fact-specific inquiry to determine that irreparable harm would result from the loss of real estate rights); *see also Mitchell v. Century 21 Rustic Realty*, 223 F. Supp. 2d 418, 431 (E.D.N.Y. 2002) ("Loss of an interest in real property is generally considered irreparable harm. Loss of an interest in real property is not presumed to be irreparable harm however.").

Plainly, Developer RE1 will be irreparably harmed if the Defendants foreclose on the Property. If the Defendants follow through on their threat to foreclose, Developer RE1 could lose its entire investment. *See* Mot. for TRO ("Mot.") at 9-10.

The Defendants' assertion that a foreclosure sale is not imminent does not undermine Developer RE1's request for injunctive relief. In *Bashi*, *supra*, the Court noted that, the harm threatened to the plaintiff was not imminent because he could avoid the loss of his property by exercising his right of redemption under the Michigan Foreclosure Statute, and determined that "[n]onetheless, I consider this factor favors the Plaintiff." 2009 U.S. Dist. LEXIS 96427 at *10-11. Here the Defendants here have already threatened to foreclose on the Property. Mot. for TRO, Ex. K (". . . our legal counsel *will* commence foreclosure proceedings.") (emphasis added). Notably, Defendants cite no cases in support of their proposition that the filing of a petition for

2

4862-8483-1308.v1

bankruptcy relief amounts to an "adequate legal remedy."[1]  Plainly, Developer RE1 would suffer irreparable harm if the Defendants were to follow through on their threat to foreclose on the Property.

## II. DEVELOPER RE1 IS LIKELY TO SUCCEED ON THE MERITS.

The Defendants do not cite any authority or make any substantive arguments in their opposition to Developer RE1's request for a Temporary Restraining Order but rather state that such arguments will be made and substantiated in a Motion to Dismiss.  For the reasons set forth in the Motion for a Temporary Restraining Order, Developer RE1 is likely to succeed on the merits.  *See* Mot. for TRO at 11-16.  Further, the Defendants misstate Developer RE1's position.  Developer RE1 does not acknowledge being in default of a valid provision of the loan documents but rather asserts that such a "default" was manufactured as a pretext to conceal unlawful, predatory lending conduct.  Mot. for TRO at 12-16.  Further, to the extent any alleged defaults occurred, those defaults have been cured and cannot be used as a valid basis to foreclose on the Property.  *Id.* at 16-17.

## III. THE BALANCE OF INJURIES FAVORS THE DEVELOPER RE1.

The Defendants do not address the issue of balance of injuries to the Developer RE1.  For the reasons stated in the Motion, this factor favors Developer RE1 as well.  *See* Mot. at 16.

---

[1]     The cases by Defendants in this portion of their opposition are wholly inapposite and do not mention bankruptcy.  *See, Bill Barret Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 336 (D.C. 2009) (pertaining to oxygen contamination caused by exploratory drilling); *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n.4 (D.C. 1993) (pertaining to the issuance of a TRO for a zoning permit where the United States Secret Service determined a planned zoning application had not adequately proposed measures to address the protection of the Vice President's home); *Dist. of Columbia v. N. Washington Neighbors, Ins.*, 367 A.2d 143, 144 (D.C. 1976) ("The basic issue in this case is whether the District has the authority to require individual citizens to bear the cost of repair of the piped connecting their individual water systems to the District's water mains when they break or whether the District itself must bear that cost").

3

## IV. THE LAW ABHORS A FORFEITURE.

The Defendants argue that allowing a debtor under a loan to obtain injunctive relief to protect its investment with result in a "slippery slope." First, Defendants provide no authority for this proposition. Second, such relief is plainly available. *See, e.g.*, *Peterson*, 1994 U.S. Dist. LEXIS 10309 at *4. Additionally, the Defendants rely again, without citation to relevant authority, on their proposition that filing for bankruptcy represents an adequate remedy at law. Opp'n at 5-6. For the reasons cited *supra*, Sec. I, this argument is without support. Moreover, the Defendants' argument that Developer RE1 has "nothing to lose" is contrary to common sense. Developer RE1 has invested extensive resources undertaking improvements to the property and stands to lose its entire investment. Compl. § 109.

## V. DEFENDANTS HAVE NOT ARTICULATED A SUFFICIENT BASIS FOR THEIR BOND COMPUTATION

The Defendants state, without support that "it would be accordingly appropriate to set a bond herein at $870,890.00 - being one year of interest that will accrue while an injunction pends." Opp'n at 6-7. First, this argument overlooks the permissive language of Rule 65(c), which states: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security *in an amount that the court considers proper* to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." D.C. Super. Ct. R. Civ. P. 65(c) (italic emphasis added); *L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.*, 354 A.2d 233, 236-37 (D.C. 1976) ("Whether this discretion enables a judge to dispense with the requirement of a security is an unsettled question . . . . However, if in a rare case a trial court in the exercise of its discretion wishes to dispense with the security requirement, it is imperative that it state its reasons for so doing."). Second, this amount is arbitrary as it appears to set the bond at interest assessed against the full indebtedness claimed by

4

the Defendants, including default penalties, rather than any payment against principal.  Opp'n at 7-8.  Third, the bond requested by the Defendants also appears to be set so high as to make it impossible for Developer RE1 to pay it.  Fourth, the current value of the Property (approximately $4,772,000) exceeds the current alleged indebtedness ($4,139,852.46) by more than $632,000, so the Defendants already have adequate protection.  For these reasons, the Court should exercise its discretion to not require that any bond be posted.  Alternatively, as Developer RE1 requested in its Motion, a separate hearing should be set to determine whether a bond is appropriate and, if so, what the appropriate bond amount would be.

## VI.   CONCLUSION

For the foregoing reasons, the reasons in the Motion, and any reason that may be articulated at any hearing on the Motion, Developer RE1 requests that its Motion for a Temporary Restraining Order be granted and that no bond should be required.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  January 24, 2023

/s/ James D. Sadowski
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

4862-8483-1308.v1

<div align="center">

CERTIFICATE OF SERVICE

</div>

I HEREBY CERTIFY that on this 24th day of January, 2023, a true and correct copy of the

foregoing was served using eFileDC and a notice of service should be sent electronically by

eFileDC to all counsel or record in this case.

/s/ James D. Sadowski

James D. Sadowski

4862-8483-1308.v1

Case 24-10086-ELG Doc 15-1 Filed 05/30/25 Entered 09/30/25 00:33:21 Desc
Exhibit B - All Pleadings Ad Adk Docket Proceedings Foil Alb Page 504 of 207 Page 420 of 1716

eFiled
01/26/2023 1:52:02 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

    Plaintiff,

v.

DP Capital, LLC, et al.

    Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12(b)(6), and move to dismiss the First Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), and in support thereof state as follows:

### I. Introduction

The Plaintiff failed to timely make payments under a promissory note. The Plaintiff also breached various covenants under a deed of trust by not paying monies due and owing to the Washington, DC water and sewer authority ("DC Water") and thereby permitting a senior lien to accrue on encumbered property. The Plaintiff again breached various covenants by not timely paying taxes due and owing on the same property. Yet the Plaintiff – despite tacitly admitting each of these breaches in its Complaint – suggests that DPCL and WCP have done tortious harm by observing the subject defaults and, further, now seeks a permanent injunction prohibiting the Defendants from enforcing any remedies whatsoever.

1

The Complaint accordingly merits dismissal for various reasons. First, the Plaintiff patently fails to state a claim for which relief may be granted; the pleading acknowledges the Plaintiff's own breaches yet suggests the plain language of governing loan documents should be cast aside so as to prohibit the Defendants from enforcing those loan documents. Second, the Complaint fails to allege any damages; the Complaint does not allege any foreclosure to have been noticed, advertised or otherwise afoot – the Plaintiff just does not want to have to repay the monies it borrowed. Third, the Complaint violates the economic loss doctrine, by seeking to collect tort-based damages in connection with the breakdown of a purely contractual relationship. Fourth, the lone cause of action alleged against Mr. Drazin – who is sued solely by virtue of being an attorney representing the other Defendants – is for "Permanent Injunctive Relief," which is a remedy but not a cognizable cause of action. Fifth, the claim for injunctive relief fails because the complained-of harm (foreclosure) remains purely hypothetical in nature, with the Complaint not alleging any such proceeding to have been noticed, much less scheduled. Sixth, the injunctive claim also fails because the Plaintiff has two adequate remedies at law, inasmuch as it can either (i) repay the monies due and owing to DPCL and WCP; or (ii) utilize the legal provisions of Title 11 of the United States Code (the "Bankruptcy Code") to stay any foreclosure, should one ever be noticed. And, seventh, the declaratory relief claim fails as a matter of law because the at-issue note and deed of trust are neither procedurally nor substantively unconscionable and the Complaint does not allege facts that would give rise to such a finding.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Complaint be dismissed.

2

## II.       Standard

As noted by the District of Columbia Court of Appeals – in its embrace of the federal pleading standard clarified by the Supreme Court of the United States – a pleading must contain more than merely conclusory, threadbare allegations to survive the scrutiny of a motion to dismiss:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. ... To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Potomac Dev. Corp. v. Dist. of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009)).

## III.      Factual Allegations

Taking the Plaintiff's various allegations as true for the expressly limited purpose of this motion,[1] the Complaint makes the following core contentions:

1.       On December 23, 2021, the Plaintiff borrowed $3,579,000.00 from WCP. Complaint at ¶ 17.

2.       On the same date, the Plaintiff borrowed an additional $524,000.00 from WCP. *Id.* at ¶ 23.

---

[11] *See, e.g., Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 137 (D.C. 2006) ("In deciding a motion to dismiss, the court accepts as true all allegations in the Complaint and views them in a light most favorable to the non-moving party.") (quoting *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62 (D.C. 2005) (citing *Owens v. Tiber Island Condo. Ass'n*, 373 A.2d 890 (D.C. 1977))).

3

3.      Both obligations were memorialized in promissory notes and secured by liens against the real property commonly known as 5501 1st Street, NW, Washington, D.C. (the "Property"). *Id*. at ¶¶ 9, 14, 20.

4.      While the Plaintiff does not affirmatively acknowledge its failure to make timely payments on the notes in the Complaint, the pleading is notably bereft of any allegation that timely payments were made. *Id.*, *passim*.

5.      Both promissory notes matured on December 23, 2022. *Id.* at ¶ 27.

6.      Both deeds of trust require the Plaintiff to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

First Deed of Trust, Complaint at Exhibit A ("Ex. A"), § 4.2; Second Deed of Trust, Complaint at Exhibit C ("Ex. C"), § 4.2. *See also*, *Id.* at § 1.0(d) (defining "Impositions" to include "real estate taxes" and "water and sewer rents and charges," among other obligations).

7.      The deeds of trust cannot be changed, nor can their provisions be waived, except through a signed writing. Complaint, Ex. A at § 11.4; Complaint, Ex. C at § 11.4.

8.      The Plaintiff failed to pay its water and sewer bills, causing a $44,857.93 lien to be placed upon the Property (with the subject lien being superior to that of WCP and DPCL). Complaint at ¶ 81(a).

9.      The Plaintiff also failed to timely pay more than $16,700.00 in taxes on the Property for the second half of 2022. *Id.* at ¶ 81(b), 91.

4

10. Neither of the deeds of trust require written notice of a default, nor of acceleration upon default, being commercial loan instruments governed by District of Columbia law. Complaint at Ex. A, *passim*; Commercial Deed of Trust Note, Complaint at Exhibit B ("Ex. B"), *passim*; Complaint at Ex. C, *passim*; Commercial Deed of Trust Note, Complaint at Exhibit D ("Ex. D"), *passim*.

11. On or about December 8, 2022, WCP and DPCL declared both loans to be in default by virtue of the foregoing breaches. *Id.* at ¶ 59.

12. Even if WCP had not declared the loans to be in default on December 8, 2022, both would have matured fully just over two weeks later, on December 23, 2022 (*Id.* at ¶ 27), and nowhere does the Plaintiff allege the obligations to have been paid on or before that date.

13. While not expressly alleged in the Complaint, the promissory notes do contain provisions for late fees and other monies to come due upon a default and acceleration. Complaint at Ex. B, § 5; Complaint at Ex. D, § 5.

To be sure, the Complaint is rife with other allegations – one entire section is titled "Money is the Root of All Evil" (*Id.* at p. 12), and the Plaintiff is not shy to accuse the Defendants of being "spite[ful]," "evil," improperly motivated, and "greed[y]." *Id.* at ¶ 75. But neither the relevance nor pertinence of these allegations is immediately apparent, with allegations of money being the root of all evil striking as particularly inane in the context of a suit brought by a party that admits to having borrowed $4 million without repaying the funds when the notes came due.

## IV. Argument: The Complaint Merits Dismissal

### a. The Notes and Deeds of Trust Appended to the Complaint Defeat the Plaintiff's Claims

Notwithstanding a broad swath of colorful language, the Complaint ultimately alleges that (i) the Plaintiff breached promissory notes and deeds of trust; (ii) WCP and DPCL declared defaults

of the loan documents following these breaches; and (iii) the Plaintiff now wishes to be free of the default provisions (and, indeed, ordinary repayment provisions) to which it agreed. These allegations are not the fodder of a cognizable cause of action, much less four; these allegations are merely the altogether common laments of a borrower that ran afoul of its promises and finds itself wishing to be rid of its monetary obligations.

As noted *infra*, the Plaintiff never actually alleges any cognizable damages, much of the relief sought herein violates the economic loss rule, and the Complaint comes nowhere close to asserting allegations that would support a finding of unconscionability. But before addressing these issues with the Plaintiff's elected causes of action, some attention is properly addressed to the macroscopic problems that plague the Complaint: what the Plaintiff complains of is nothing more than WCP and DPCL honoring their obligations under a series of contracts and then declaring defaults when the Plaintiff failed to honor its obligations under the same documents.

Under governing law, a contract "must be construed within its four corners." *Moore v. Jones*, 542 A.2d 1253, 1254 (D.C. 1988) (citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235–237 (1975); *Baker v. District of Columbia*, 494 A.2d 1299, 1302 (D.C. 1985); *Dart Drug Corp. v. Schering Corp.*, 320 F.2d 745, 749 (D.C. Cir. 1963)).

Here, the Plaintiff makes much hullabaloo about the timing of when it was sent a default notice. But the promissory notes and deeds of trust appended to the Complaint are conspicuously absent of any provision the Plaintiff be given notice of a default for late payments, much less an opportunity to cure a default correlative to late payments. These are commercial agreements, not residential mortgages, and District of Columbia law is notably without any requirement that notice and a cure opportunity be given to a commercial borrower.

Vis a vis the three separate areas of default, each is appreciably material in nature and falls well within the ambit of default events contemplated by the notes and deeds of trust. The Plaintiff's failure to make timely payments is a direct breach of Section 5(a) of the promissory notes. As observed above, the Plaintiff's failure to allege the making of timely payments is quite telling, as such is an allegation the Plaintiff cannot make in good faith.

Equally, however, the defaults openly acknowledged by the Plaintiff give rise to the same contractually-bargained events and remedies. The Plaintiff's failure to timely pay real estate taxes is a breach of Section 4.2 of both deeds of trust, with taxes being an "Imposition" expressly defined by Section 1.0(d) of both deeds of trust. The same goes for the Plaintiff's failure to timely pay water and sewer charges, with such being a default under Section 4.2 of the deeds of trust and being an expressly defined "Imposition" in section 1.0(d) of both deeds of trust.

Real estate taxes assessed against the Property for the second-half of 2022 were due and payable on September 15, 2022. *See* D.C. Code § 47-811(b) ("Real property taxes shall be due and payable semiannually in 2 equal installments, the first installment to be paid on or before March 31st, and the second installment to be paid on or before September 15th . . . ."). The failure to pay is an immediate default and gives rise to a lien upon the assessed real estate. *See* D.C. Code § 47-1331(a) ("A tax shall automatically become a lien on the real property on the date the tax was due and unpaid . . . ."). That lien enjoys superior priority to all other liens, including pre-existing deeds of trust. *See* D.C. Code § 47-1331(b) ("The lien for a tax shall be a prior and preferred claim over all other liens and shall be perpetual.").

In light of the resulting lien, the Plaintiff was also in manifest breach of Section 5.1 of both deeds of trust, which provides, *inter alia*:

> Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any … lien … [or] encumbrance … with respect to

7

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary…

Ex. A at § 5.1; Ex. B at § 5.1.

A similar lien arises on account of the monies owed to DC Water. *See* D.C. Code § 34-2407.02(a) (providing that a certificate of delinquency for unpaid water and sewer charges "shall constitute a continuing lien against the real property"); D.C. Code § 34-2407.02(b) (providing "A lien for water and sanitary sewer charges shall have priority over any other lien, except a lien for District taxes"). And that lien does, too, constitute a breach of both Section 4.2 and Section 5.1 of each deed of trust.

Stated otherwise, the Plaintiff has breached its obligations under the promissory notes by not timely making payments, and has also breached its obligations under the deeds of trust by (i) not timely paying real estate taxes; (ii) not timely paying DC Water obligations; and (iii) allowing liens to encumber the Property on account of these unpaid obligations. Per the Complaint's own allegations, it was not until *after* this occurred that WCP and DPCL declared a default. Yet the Plaintiff now suggests it ought not be construed as being in default and, instead, that somehow WCP and DPCL have done wrong by endeavoring to enforce the bargained-for terms of the loans they extended to the Plaintiff.

In short, this is not a cogent narrative. The legal flaws with the Plaintiff's various claims are discussed in greater detail below, but the whole Complaint necessarily suffers by virtue of its allegations not actually amounting to anything more than "the Plaintiff borrowed money, breached its obligations under the loan documents, and was held in default on account of the breach." No matter how many names the Defendants are called in the pleading, nothing about that narrative invites legal redress, much less redress through the drastic remedies petitioned for in the Complaint.

8

Case 24-10034-BLG0-Dnc-152-Doc-150-Filed-05/04/25 Filed-05/04/25 Page 234 of 1449
Exhibit B - All Pleadings - Ad-Pik-Docket-Forged-Bank-621A-Page 512 nof 2207 Page 428 of 1716

#### b. The Plaintiff Has Not Alleged Damages

A fundamental issue encompasses the whole of the Complaint: while the Plaintiff does an ample job affixing pejorative labels to the Defendants and accusing commercial lenders of being greedy, the Plaintiff never actually alleges any cognizable form of damages. As of the filing of the Complaint (and, indeed, as of present), the Plaintiff has both (i) borrowed more than $4 million; and (ii) retained the property it pledged as collateral for those loans. Aside from modest interest and monies paid for property taxes, the Complaint does not actually allege the Plaintiff to have lost any funds or any property. The Plaintiff appears to be currently both having its cake and eating it too; it is thusly exceedingly difficult to surmise just what form of damages can be found in the operative pleading.

As a starting point, each of the two monetary causes of action set forth in the Complaint require an elemental showing of damages. *See, e.g., NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890, 900 (D.C. 2008) ("We have held that to establish a prima facie case of tortious interference with contractual or other business relationships in the District of Columbia, a plaintiff must prove four elements: (1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages."); *Window Specialists, Inc. v. Forney Enterprises, Inc.*, 106 F. Supp. 3d 64, 89 (D.D.C. 2015) ("Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith and damages may be recovered for its breach as part of a contract action.") (quoting *Choharis v. State Farm Fire & Cas. Co.*, 961 A.3d 1080, 1087 (D.C. 2008)).

Here, the Plaintiff only alleges damages in the sort of threadbare and conclusory manner shunned by *Iqbal* and *Twombly*, theorizing "Developer RE1 has been damaged by the Defendants'

9

tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped." Complaint at ¶ 119. The claim for breach of the implied covenant of good faith and fair dealing, while expressly incorporating previous allegations, does not even contain a stand-alone allegation of damages.

To be sure, this is not merely an issue of damages being excluded from the count-specific allegations. There are no damages to be discerned from the face of the Complaint. The Plaintiff often bemoans its need to refinance the at-issue debt facilities, but nowhere is it alleged any of the Defendants have done anything to stop the Plaintiff from refinancing. To the contrary, if the Plaintiff can refinance the at-issue monetary obligations, WCP and DPCL would love nothing more than to be paid off and regain their capital.

Equally, while the Complaint seems to imply the Plaintiff is deeply concerned about the Property being foreclosed, nowhere is it alleged WCP or DPCL have actually commenced a foreclosure proceeding, much less scheduled a sale or run newspaper advertisements. The Plaintiff remains in full helm of the Property; the Defendants are not so much as alleged to have entered the premises, commenced endeavoring to foreclose on their collateral, or done anything more than send default notices. And there is surely no cannon of law whereby the receipt of a commercial foreclosure notice can, unto itself, constitute the suffering of redressable damages.

### c. The Tort Claims are Barred by the Economic Loss Rule

The Plaintiff's claims for tortious interference and breach of the implied covenant of good faith and fair dealing are also non-colorable pursuant to the District of Columbia's economic loss rule. The Plaintiff acknowledges the subject relationships are governed by promissory notes and deeds of trust, but nonetheless endeavors to seek relief in tort for putative wrongs. One cannot, as

a matter of law, recover in tort for purely economic damages, especially where a relationship is contractual in nature. And Counts I and II are thusly meritorious of dismissal.

As noted by the District of Columbia Court of Appeals, "'Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort.'" *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014) (quoting *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995)). Specifically, "as a matter of longstanding policy in courts around the country, '[w]here pure economic loss is at issue[,] not connected with any injury to one's body or property, ... the reach of legal liability is quite limited.'" *Aguilar*, 98 A. 3d at 983 (quoting *In re Exxon Valdez*, 1994 WL 182856, at *8 (D. Alaska 1994) aff'd, 104 F.3d 1196 (9th Cir. 1997); citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927)).

This rationale has been tidily expounded upon by the United States District Court for the District of Columbia:

> Under the economic loss rule, "a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort." The D.C. Court of Appeals adopted the economic loss doctrine in Aguilar, observing that it has been a "longstanding policy in courts around the country" that where "pure economic loss is at issue, not connected with any injury to one's body or property, the reach of legal liability is quite limited."

*William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 19 (D. D.C. 2018) (quoting *Aguilar v. RP MRP Wash. Harbour, LLC*, 98 A.3d 979, 982-983 (D.C. 2014) (quoting *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995))).

As observed by the *Arguilar* Court, this doctrine is not unique to the District of Columbia; in fact, it is the same rule relied upon by a majority of states. *Jefferson v. Collins*, 210 F. Supp. 3d 75, 85 (D. D.C. 2016) ("In *Aguilar*, the District of Columbia Court of Appeal joined a majority of states that have adopted the economic loss rule"). And the economic loss rule has long been held

11

to apply to cases centered upon the ownership of real estate. *See, e.g., Singer v. Bulk Petroleum Corp.*, 9 F. Supp. 2d 916, 921 (N.D. Ill. 1998) ("The economic loss doctrine applies to cases which are predicated on real estate transactions.") (citing *NBD Bank v. Krueger Ringier, Inc.*, 686 N.E.2d 704, 708 (Ill. App. 1997)); *Metal Processing Co., Inc. v. Amoco Oil Co.*, 1996 WL 288279 (E.D. Wis. 1996) (applying the economic loss doctrine to "a real estate transaction involving allegedly contaminated property"); *Reighard v. Yates*, 285 P. 3d 1168, 1174 (Utah 2012) ("The economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute. Thus, we hold that under the economic loss rule the Reighards may not recover economic damages to their house but may recover damages due to bodily injury."); *Palco Linings, Inc. v. Pavex, Inc.*, 1990 WL 260746 (M.D. Pa. 1990) ("We have previously shown that the economic loss rule extends to real estate and construction projects").

Here, the Plaintiff's claim for tortious interference is one that manifestly sounds in tort – not contract. And the claim for breach of the implied covenant of good faith and fair dealing, because not presented as one for contractual breach (as urged by the *Window Specialists, Inc.* Court), does, too, sound in tort.[2] *See, e.g., Smith v. Chamber of Commerce of U.S.*, 645 F. Supp. 604, 611 (D.D.C. 1986) (characterizing breach of the implied covenant of good faith and fair dealing as an "alleged tort claim").

To be sure, it appears the Plaintiff has refrained from bringing a claim for breach of contract because the Plaintiff is cognizant that it cannot show where WCP or DPCL have violated any contractual provisions, while it is abundantly clear that the Plaintiff has – on at least three separate

---

[2] The Defendants do not dispute that an allegation of violation of the implied covenant of good faith and fair dealing, if presented in the prism of a claim for breach of contract, would not be subject to the economic loss rule. But such would require the Plaintiff to actually allege specific breaches and damages resulting therefrom, something the Plaintiff has as-yet failed to endeavor to do.

12

occasions – run afoul of its obligations under the promissory notes and deeds of trust. Yet District of Columbia law simply does not condone this tactical approach to litigation; tort claims for purely pecuniary harm are forbade under the economic loss rule.

### d. The Lone Claim Against Mr. Drazin Must be Dismissed as to All Defendants

Somewhat inexplicably, the Plaintiff has not only sued WCP, DPCL, and their principal but, too, their lawyer. The sole claim for relief against Mr. Drazin, however, is not actually a cognizable claim for relief – it is merely a remedy available in connection with other claims for relief. And it accordingly cannot be said the Plaintiff has succeeded in stating a viable cause of action against Mr. Drazin.

Case law has long made clear that one cannot sue solely for injunctive relief but, rather, may request such relief only in connection with a separate, freestanding cause of action. *See, e.g.*, *Equitas Disability Advocates, LLC v. Bryant*, 134 F. Supp. 3d 209, 222 (D.D.C. 2015) ("…the claim for injunctive relief must also be dismissed as injunctive relief is a type of remedy, not a freestanding cause of action.") (citing *Base One Techs., Inc. v. Ali*, 78 F.Supp.3d 186, 199 (D.D.C. 2015); *Johnson v. District of Columbia*, 49 F.Supp.3d 115, 117 n. 1 (D.D.C. 2014); *Guttenberg v. Emery*, 41 F.Supp.3d 61, 70 & n. 5 (D.D.C. 2014)); *Butler v. Georgetown Univ.*, 2022 WL 1773479, at *2 (D.D.C. 2022) ("A request for injunctive relief is 'a remedy and does not assert any separate cause of action.'") (quoting *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 341 (D.D.C. 2016)); *C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*, 308 F. Supp. 3d 145, 152 (D.D.C. 2018) ("Injunctive relief, however, ' 'is not a freestanding cause of action, but rather ...a form of relief to redress' ' a plaintiff's other claims.") (quoting *Johnson v. Mao*, 174 F.Supp.3d 500, 523–524 (D.D.C. 2016) (quoting *Base One Techs., Inc.*, 78 F.Supp.3d at 199))).

13

Since Mr. Drazin is not a named defendant to any other cause of action, dismissal of this count will necessarily result in his dismissal from the instant proceeding. And even if the Plaintiff were to somehow assert a claim for relief that could be accompanied by a prayer for injunctive relief, there would be no cause to join Mr. Drazin as a defendant. Nothing actionable is alleged of Mr. Drazin, with it appearing the Plaintiff has dragged him into court and made him a defendant herein solely to stop him from taking any legal actions on behalf of the other Defendants. Yet under the rules of this Honorable Court, the attorney of an enjoined party is, too, bound by the injunction, so long as they are given notice of the same. *See* D.C. Super. Ct. R. Civ. P. 65(d)(2)(B).

### e. The Claim for Injunctive Relief Also Fails on the Merits

Even if, *arguendo*, a claim for injunctive relief was cognizable under District of Columbia law as a standalone cause of action, and even if, *arguendo*, the Plaintiff could sue the Defendants' lawyer (something that wreaks mightily of bad faith gamesmanship), the claim for injunctive relief would still fail for two simple reasons. First, the law is clear that an injunction cannot be granted for a solely theoretical harm. And, second, the Plaintiff has multiple adequate remedies at law.

As a starting point, nowhere amongst the myriad allegations made in the Complaint is any claim that a foreclosure has been scheduled or is otherwise in process or underway. While two of the Defendants do, no doubt, have the right to proceed with the foreclosure process, they are not alleged to have commenced that process (nor have they done so).

This distinction is of appreciable import since, as noted by the United States District Court for the District of Columbia, "No matter the stakes and no matter the cause, courts may not grant the 'extraordinary remedy' of an injunction 'based only on a possibility of irreparable harm.'" *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 2021 WL 2036662 (D.D.C. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

14

Indeed, the harm the Plaintiff seeks to enjoin is, as of present, wholly hypothetical in nature. There is no foreclosure sale to enjoin, nor even advertisements of a foreclosure sale to stop from hitting the local newspapers. The putative harm is thusly nonjusticiable at this juncture in time or, in the words of the *Winter* and *Standing Rock* Courts, there is "only … a possibility of irreparable harm." And that, unto itself, is *per se* insufficient to justify the entry of injunctive relief.

Second, even if a foreclosure were scheduled, the Plaintiff would have an adequate remedy at law. And, under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Bill Barrett Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 336 (D.D.C. 2009) ("Accordingly, because the injury BBC asserts is of a monetary nature and because BBC has failed to establish by a clear showing that it has no other adequate remedy, BBC's motion for a preliminary injunction must be denied on this basis as well."); *Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367 A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

The Plaintiff's most simple remedy is the obvious one: it can repay the monies it borrowed. For all the ballyhoo in the Complaint about the Plaintiff not being able to refinance its debts to WCP and DPCL, the Complaint never actually explains why such is the case, nor does logic invite any discernable answer. To be sure, however, WCP and DPCL will most certainly accept payment of the now-fully-matured (and defaulted) promissory notes; and they will, too, release their liens upon receipt of payment of the underlying indebtedness.

Equally, the Plaintiff, if unable to pay the sums due and owing to WCP and DPCL, has ample legal recourse under the Bankruptcy Code. Even if a foreclosure were scheduled, the Plaintiff could stay such by filing a petition for bankruptcy relief. <mark>11 U.S.C. § 362</mark>. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### f.    The Loan Documents Are Not Unconscionable

Finally, the Plaintiff seeks a declaratory judgment that WCP and DPCL's loan documents are "unconscionable and enforceable [sic] as a matter of public policy." Complaint at p. 22. In so doing, what the Plaintiff really asserts is that any commercial loan document without a cure provision to the subjective liking of a borrower should be invalidated. District of Columbia law does not support this position and, to the contrary, permitting such an elastic expansion of law would only serve to render every commercial contract a non-final, non-binding bare outline of terms that can be later stalled in the judicial process through vague allegations of buyer's remorse.

To succeed on a claim of unconscionability, a party must prove a document is both procedurally *and* substantively unconscionable. *See, e.g.*, *Song fi, Inc. v. Google Inc.*, <mark>72 F. Supp.</mark>

<mark>16</mark>

3d 53, 62 (D.D.C. 2014) ("[u]nder D.C. law, a court can void a contract on the grounds that it is unconscionable if the party seeking to avoid the contract proves that the contract was both procedurally and substantively unconscionable.") (quoting *Fox v. Computer World Servs. Corp.*, 920 F.Supp.2d 90, 97 (D.D.C. 2013)).

In addressing procedural unconscionability, "Whether or not an agreement 'is procedurally unconscionable turns on whether a party 'lacked meaningful choice as to whether to enter the agreement.'"" *Song fi, Inc.*, 72 F. Supp. 3d at 62 (quoting *White v. Four Seasons Hotels & Resorts*, 999 F.Supp.2d 250, 257 (D.D.C. 2013) (quoting F*ox v. Computer World Services Corp.*, 920 F.Supp. 2d at 97)).

Here, while the Plaintiff certainly alleges that it was not permitted to change the terms of the promissory notes or deeds of trusts, the Plaintiff never actually alleges that it was without a meaningful choice as to whether to enter into these agreements. To the contrary, the Complaint contains contradicting allegations about whether the Property was already owned by the Plaintiff and merely being refinanced (Complaint at ¶ 14) or whether the loan was to aid the Plaintiff in acquiring the Property (Complaint at ¶ 13). If made to clarify this inconsistency, it is believed the Plaintiff would allege the odd language is reflective of the Plaintiff having acquired the Property from its owner, Mr. Neguisse, for declared consideration of "ZERO DOLLARS."

Even if the Plaintiff was purchasing the Property from a complete stranger, however, the Complaint does nothing to explain why the Plaintiff was without a meaningful choice as to whether to borrow monies from WCP and DPCL on the indicated terms. Nowhere does the Plaintiff allege that no other lender would do business with the Plaintiff or its principal. Nowhere does the Plaintiff allege some temporal exigency compelled it to immediately buy the Property from its owner, without time to investigate the offers of other loan agents and brokers. And certainly nowhere does

17

the Plaintiff allege a proverbial firearm was placed against its head in electing to do business with WCP and DPCL.

This is necessarily the end of the analysis; in the absence of procedural unconscionability, there can be no unconscionability under *Fox* and its progeny. But even if the analysis continued, the Complaint does not make any allegations that would give rise to substantive unconscionability *sub judice*.

As noted by the *Song Fi* Court, "'A contract is substantively unconscionable if the contract terms are unreasonably favorable to one party' such that they are 'so outrageously unfair as to shock the judicial conscience.'" *Song fi, Inc.*, ==72 F. Supp. 3d at 62== (quoting *Fox*, ==920 F. Supp. 2d at 99==).

The contractual provisions with which the Plaintiff takes issue herein are (i) a clause requiring taxes to be paid on the real estate serving as the lenders' collateral; (ii) that clause also being utilized to prohibit the Plaintiff from permitting water liens to accrue on the Property; and (iii) the ability of WCP and DPCL to declare a breach to have occurred when that clause is violated. Also, if the Plaintiff is to receive relief herein, it would need to show that the maturity date of the loan is, too, substantively unconscionable, since there is no dispute but that the loan has now matured in full and yet gone without repayment.

These are not clauses that shock the judicial conscious. The Plaintiff has been free to refinance its debt at any time. The Plaintiff is equally free to consider selling the Property to repay the debt. And the Plaintiff is, of course, free to raise capital through other means. More pointedly, though, these are standard terms in commercial loan agreements; WCP and DPCL have not imposed some exotic term whereby a default occurs if something beyond the Plaintiff's control comes to pass. They have, rather, simply required the Plaintiff to not permit WCP and DPCL's

18

liens to be eroded from above by tax and utility liens, and noted that allowing such to happen –

even if subsequently and belatedly cured after much back-and-forth – constitutes a default.

It is not unreasonable for WCP and DPCL to wish their borrowers to be attentive, especially

inasmuch as the maintenance of collateral is concerned. Here, the Plaintiff has admitted to not

paying water bills for months on end, missing no less than five invoices before WCP and DPCL

flagged the issue. Complaint at ¶ 83. Even if, as claimed, this was because bills went to an errant

address, such still begs the question of what commercial operator does not have a monthly budget

for water bills and does not notice when that budget is going wholly unspent. The same goes for

tax payments (where the Plaintiff does not feign a "wrong address" excuse for its delinquency).

Stated otherwise, it is wholly reasonable for WCP and DPCL to expect their borrowers to

be responsible stewards of the collateral protecting loans. Allowing water bills and taxes to go

unpaid for months on end is the anthesis of responsibility. And the lenders are thusly well justified

including a clause in their loan documents that renders such a material breach.

Critically, though, even upon the occurrence of a material breach, the Property is not

instantly foreclosed or forcibly overrun through self-help. The loan documents simply provide the

Plaintiff must then repay the debt (with the notice of default allegedly being sent scantly two weeks

before the maturity date, in any event). If the loan is not repaid, myriad remedies – from collecting

rents, to seeking appointment of a receiver, to – yes – beginning a legally-prescribed foreclosure

process – become available. But due process attaches to each such remedy, with the Plaintiff having

ample time to refinance the debt, raise capital, sell the asset, or make other arrangements.

What is claimed to be substantively unconscionable here is, in reality, altogether common.

These are commercially reasonable terms in a set of commercial loan documents. So it necessarily

follows that even if some procedural unconscionability were present (and none can be said to arise from the allegations of this Complaint), there is no accompanying substantive unconscionability.

## V.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) dismiss the Complaint with prejudice as to Count III and without prejudice as to all other counts; and (ii) afford such other and further relief as may be just and proper.

Dated: January 26, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 26th day of January 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

20

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

        Plaintiff,

v.

        Case No. 2022 CAB 005935
        Judge Ebony Scott

DP Capital, LLC, et al.

        Defendants.

## [PROPOSED] ORDER

Upon consideration of the Motion to Dismiss First Amended Complaint (the "Motion")

filed by the defendants herein, any opposition thereto, the authorities cited therein, and the record

herein, it is, this _____ day of _____, 2023, by the Superior Court of the District of

Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED; and it is further

ORDERED, that Count III of the First Amended Complaint be, and hereby is, DISMISSED

WITH PREJUDICE; and it is further

ORDERED, that Counts I, II and IV of the First Amended Complaint be, and hereby are,

DISMSISED without prejudice.

So Ordered.

               _____
               The Honorable Ebony Scott
               Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

eFiled
01/31/2023 10:31:47 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Motion for Temporary Restraining Order (the "Motion," with the plaintiff being known as the "Plaintiff") state as follows:

### I.    Introduction

The Plaintiff herein seeks to enjoin a foreclosure sale that has not been scheduled, noticed, advertised or otherwise set into motion. In so doing, the Plaintiff overlooks the existence of an adequate remedy at law for the thus-far-hypothetical harm it seeks to avoid and, more pointedly, overlooks that it is seeking judicial intervention into a commercial foreclosure where the Plaintiff itself tacitly acknowledges having defaulted under the governing loan documents. The Plaintiff seems to thusly miss that the gravity of the relief being sought is not, in any way, appropriate for the situation at hand.

To be sure, if real estate holding companies could decry the threat of irreparable harm every time their breach of loan documents begets a mere possibility of foreclosure, this Honorable

1

Court's docket would grind to a screeching halt. The District of Columbia has a longstanding tradition of permitting commercial foreclosures to proceed through non-judicial avenues, and Congress has installed in the Bankruptcy Code specific and specialized provisions meant to both halt pending foreclosures and address the qualms raised by debtors facing such remedies. To disturb that tradition and overlook that more-than-adequate legal remedy would be to fundamentally upend the secured lending industry in the District of Columbia and to send the markets for commercial paper into unfettered chaos. Yet that is precisely what the Plaintiff proposed *sub judice* and, as extrapolated upon *infra*, that is just one of many reasons the Motion merits denial.

## II.     Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009) (noting the overlapping elements of the two forms of relief); *Campbell v. U. S.*, 295 A.2d 498, 501 (D.C. 1972) (noting federal rules may be used to offer guidance where similar to the rules of this Honorable Court).

Specifically, a four prong test controls any request for non-final injunctive relief, with a "sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, 665 A.2d 185, 187–88 (D.C. 1995) (quoting *In re Antioch Univ.*, 418 A.2d 105, 109 (D.C.1980)).

Importantly, "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar.*

2

*Corp.*, <mark>571 F.3d 1288, 1292</mark> (D.C. Cir. 2009) (citing *CFGC v. England*, <mark>454 F.3d 290, 297</mark> (D.C. Cir. 2006)).

### III. Argument: The Motion Merits Rejection

#### a. The Plaintiff is Not Likely to Succeed on the Merits

Prior to the scheduled hearing in this matter, and in accord with the governing deadline for filing a responsive paper, the Defendants will be docketing herein a motion to dismiss the Defendant's First Amended Complaint. For myriad reasons, the operative pleading fails to state a claim for which relief may be afforded and the Defendants incorporate those arguments, as extrapolated upon in their forthcoming filing, herein.

While brief in nature, the weight of this argument is significant. As will be shown in a motion to dismiss, the Plaintiff acknowledges being in default under loan documents yet implores a subjective standard – for which no precedent exists – be introduced to permit that default deemed somehow-inconsequential in nature. The Plaintiff also runs roughshod over the economic loss rule; sues at least one party (Mr. Drazin) for "injunctive relief," which is a remedy but not a cognizable cause of action; and fails utterly to actually plead facts supporting the elements of the various causes of action identified in the operative pleading.

To be sure, the Plaintiff does not have any measurable likelihood of succeeding on the merits of its case herein. And it is accordingly appropriate to deny injunctive relief.

#### b. The Motion Does Not Demonstrate Irreparable Harm

The crux of the Motion is a contention that the Plaintiff – convinced its breach of a deed of trust is not sufficiently grave to merit recourse – will suffer irreparable harm if a foreclosure occurs. In making this argument, however, the Plaintiff misses that (i) no foreclosure is alleged to have been scheduled; and (ii) the Plaintiff has an adequate remedy at law.

3

As a starting point, nowhere amongst the myriad allegations made in the Motion is any claim that a foreclosure has been scheduled or is otherwise in process or underway. While two of the Defendants do, no doubt, have the right to proceed with the foreclosure process, they are not alleged to have commenced that process (nor have they done so).

This distinction is of appreciable import since, as noted by the United States District Court for the District of Columbia, "No matter the stakes and no matter the cause, courts may not grant the 'extraordinary remedy' of an injunction 'based only on a possibility of irreparable harm.'" *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 2021 WL 2036662 (D.D.C. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Indeed, the harm the Plaintiff seeks to enjoin is, as of present, wholly hypothetical in nature. There is no foreclosure sale to enjoin, nor even advertisements of a foreclosure sale to stop from hitting the local newspapers. The putative harm to be enjoined is purely hypothetical in nature or, in the words of the *Winter* and *Standing Rock* Courts, there is "only … a possibility of irreparable harm." And that, unto itself, is *per se* insufficient to justify the entry of injunctive relief.

Second, even if a foreclosure were scheduled, the Plaintiff would have an adequate remedy at law. And, under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g., Bill Barrett Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 336 (D.D.C. 2009) ("Accordingly, because the injury BBC asserts is of a monetary nature and because BBC has failed to establish by a clear showing that it has no other adequate remedy, BBC's motion for a preliminary injunction must be denied on this basis as well."); *Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367

A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I(A). No tangential or other operations are alleged, nor does the Plaintiff purport to have any other assets or affairs. *Id.* Thusly, even if a foreclosure were scheduled, the Plaintiff could stay such by filing a petition for bankruptcy relief. 11 U.S.C. § 362. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### c. Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra,* the longstanding

5

alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. And to permit otherwise, and afford injunctive relief in a case where (i) there is no foreclosure scheduled; and (ii) the Plaintiff tacitly acknowledges a breach of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

This is all the more true where, as here, the defaulting party is an entity literally without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

IV. **Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond**

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not

6

receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* was $4,139,852.46, as of December 8, 2022. *See* Motion at Exhibit M. The per diem on that obligation is $2,386.00. *Id.* And that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $870,890.00 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

The Defendants are aware this number may seem palpably large in nature. But so, too, is the injunction the Plaintiff seeks herein. The Plaintiff is not merely asking that a foreclosure be enjoined (despite having not been so much as scheduled); the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies literally in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to

<div align="center">7</div>

ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial

peril of the parties against whom they seek relief.

## V.      Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion;

(ii) alternatively, condition an injunction upon the posting of a bond in the amount of $870,890.00;

and (iii) afford such other and further relief as may be just and proper.


Dated: January 17, 2023                                   Respectfully Submitted,

                                                          /s/ Maurice B. VerStandig
                                                          Maurice B. VerStandig, Esq.
                                                          DC Bar #1034066
                                                          The VerStandig Law Firm, LLC
                                                          9812 Falls Road, #114-160
                                                          Potomac, Maryland 20854
                                                          Telephone: 301-444-4600
                                                          Facsimile: 301-444-4600
                                                          Electronic Mail: mac@mbvesq.com
                                                          *Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 17th day of January 2023, and a notice of filing should be served on all counsel

of record.


                                                          /s/ Maurice B. VerStandig
                                                          Maurice B. VerStandig, Esq.


8

eFiled
02/09/2023 11:36:16 AM
Superior Court
of the District of Columbia

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

    *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Scheduling Conference
03/24/23 – 9:30 a.m.

## CONSENT MOTION TO EXTEND DEADLINE FOR PLAINTIFF TO RESPOND TO THE MOTION TO DISMISS

Plaintiff Developer RE1 LLC ("Developer RE1") and DP Capital, LLC d/b/a Washington Capital Partners, WCP Fund I, LLC, Daniel Huertas, and Russell Drazin (collectively, "Defendants") jointly move this Court to extend the deadline for Developer RE1 to respond to the Motion to Dismiss First Amended Complaint ("Motion to Dismiss"). In support of this Consent Motion, the parties represent to the Court as follows:

1.    Lead counsel for Developer RE1 is currently facing a family medical emergency.

2.    On January 22, 2023, lead counsel for Developer RE1 tested positive for COVID-19 and was quarantined in a hotel room out of the country the date the Moton to Dismiss was filed on January 26, 2023.

3.    Although lead counsel has since returned to the country and has recovered, his wife tested positive for COVID-19 on or about February 1, 2023.

4.    Developer RE1's lead counsel and his wife are the primary caregivers for lead counsel's wife's parents, who are in a high risk category as they are eighty-four and eighty-five year's old, respectively. Both parents have pre-existing medical conditions -- vestibular

4864-9254-5104.v1

imbalance (father), and early onset Alzheimer's (mother) -- that require them to be constantly supervised.

5. Lead counsel's wife's parents have now tested positive for COVID-19 on February 6 and 7, 2023. One parent (the mother) is currently hospitalized while the other (the father) is now being cared for by Developer RE1's lead counsel at an extra bedroom in his home.

6. The medical emergency facing Developer RE1's lead counsel this past week, which is ongoing, has prevented Developer RE1's lead counsel from being able to devote the time needed to respond to the Motion to Dismiss by the deadline of February 9, 2023.

7. No party will be prejudiced by giving Developer RE1 more time to respond to the Motion to Dismiss.

8. Good cause exists to extend the deadline for Developer RE1 to respond to the Motion to Dismiss.

9. The parties request that the Court extend the time for Developer RE1 to respond to the Motion to Dismiss to February 16, 2023. A proposed consent order is attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date: February 9, 2023

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar. #446635)
Alexandria J. Smith (D.C. Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

2

4864-9254-5104.v1

THE VERSTANDIG LAW FIRM, LLC

Date:  February 9, 2023

/s/ Maurice B. VerStandig
Maurice B. VerStandig (D.C. Bar #1034066)
9812 Falls Road, #114-160
Potomac, MD  20854
Telephone:  (301) 444-4600
Email:  mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a*
*Washington Capital Partners, WCP Fund I,*
*LLC, Daniel Huertas, and Russell Drazin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February, 2023, a true and correct copy of the foregoing Consent Motion was served using eFileDC and a notice of service should be sent electronically by eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

3

4864-9254-5104.v1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

|  |  |
|---|---|
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS, ET AL.<br><br><br>    *Defendants*. | 2022-CAB-005935<br>Judge Ebony Scott<br>Next Event: Scheduling Conference<br>03/24/23 – 9:30 a.m. |

## ORDER

Upon consideration of the parties' Consent Motion to Extend Deadline for Plaintiff to

Respond to the Motion to Dismiss ("Consent Motion"), it is this _____ day of February, 2023

hereby:

ORDERED, that the Consent Motion is GRANTED; and it is further

ORDERED, that the Plaintiff must file its response to the Motion to Dismiss by February

16, 2023.

---

                      Honorable Judge Ebony Scott
                      Associate Judge

Copies electronically to:

James D. Sadowski, Esq.
Maurice B. VerStandig, Esq.

4864-9254-5104.v1

eFiled
02/16/2023 5:16:45 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

    *Defendants.*

2022-CAB-005935
Judge Ebony Scott
Next Event: Scheduling Conference
03/24/23 – 9:30 a.m.

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by and through undersigned counsel, submits its Opposition to the Defendants' Motion to Dismiss. If the facts pled by Developer RE1 are accepted as true, as they must be at this stage, Developer RE1 has more than alleged plausible claims, so the motion should be denied. In support of its Opposition, Developer RE1 states as follows:

### I. THE FACTS IN THE FIRST AMENDED COMPLAINT

Developer RE1 is a limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property"). Compl. ¶ 9.[1] Developer RE1 is partially owned by Mel Negussie. *Id.* ¶ 10. The four defendants in this case are: DP Capital, LLC, a company that uses the trade name "Washington Capital Partners" ("WCP"); the WCP Fund I, LLC ("WCP Fund"), a company that lends money in the District and is controlled by WCP; Daniel Huertas ("Mr. Huertas"), an individual that controls WCP; and Russell Drazin ("Mr.

---

[1] All "Compl." references are to the First Amended Complaint filed on January 12, 2023.

4877-8748-6289.v1

Drazin"), counsel to the WCP and the WCP Fund and the Trustee under two deeds of trust that he drafted. *Id.* ¶¶ 2-6.

On December 23, 2021, the WCP helped Developer RE1 obtain an acquisition finance loan for the Property, which original loan was later refinanced. *Id.* ¶¶ 13-14. As part of that refinancing, Developer RE1 signed the following documents:

(1)    a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

(2)    a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund;

(3)    a second Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee; and

(4)    a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 14, 17, 20, and 23 (collectively the "loan documents"). The loan documents were form documents prepared by Mr. Drazin that Developer RE1 was not allowed to modify. *Id.* ¶¶ 15-16, 18-19, 21-22, and 24-25. The loan documents provided security for the construction financing loans that Developer RE1 needed to develop the Property. As of November 3, 2022, Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note. *Id.* ¶ 29.

By November 15, 2022, the Defendants knew that Developer RE1 had secured alternative financing for the Property with Main Street Bank, and that Developer RE1 expected to close on a refinancing loan in December of 2022. *Id.* ¶ 33. By November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed under any of the loan documents. *Id.* ¶ 34. On November 30, 2022, Developer RE1 made a request to WCP for the payoff figures for both loans for the Property, and that same day WCP agreed to provide the requested payoff figures. *Id.* ¶¶ 35-36.

2

4877-8748-6289.v1

Around December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months. *Id.* ¶ 37. Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal). *Id.* On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000. *Id.* ¶ 38. Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million. *Id.* Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors. *Id.* As of December 8, 2022, there was still no claim made that any default by Developer RE1 existed under any of the loan documents. *Id.* ¶ 39.

By December 8, 2022, Developer RE1 had made all payments due under the Notes ($332,319.03 in interest payments). *Id.* ¶ 40. That same day by phone, Mr. Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out (the "2507 I Street Project"). *Id.* ¶ 41. Mr. Huertas further stated that unnamed investor "is very wealthy and will make life hard for you", and "has now bought the notes" on the Property and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them take care of the "$700,000 shortfall" on that project. *Id.* ¶ 42. Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor

3

"would make trouble for you on all of your other projects". *Id.* ¶ 43. Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to try to force Developer RE1 or Mr. Negussie to pay for the debts owed for another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to any other development project involving Mr. Negussie.

After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all prior Payoff Statements under the loan documents "were withdrawn" and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their loan documents. *Id.* ¶ 45. Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy, and Developer RE1 by arranging for an employee at WCP (Leslie Calderas) to send two letters, each called a "Notice of Default" to Mr. Negussie by email. *Id.* ¶ 58. Each "Notice of Default" was unsigned and failed to include either a description of the alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A". *Id.* ¶¶ 60-61. Email is not as a permissible means to send a default notice under the loan documents. *Id.* ¶¶ 64-65. WCP also sent two Payoff Statements to Developer RE1. The Payoff Statement for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00, while the Payoff Statement for the second loan included a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty". *Id.* ¶¶ 66-68.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default" claims. *Id.* ¶ 69. Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to contact the WCP's counsel. *Id.* Developer RE1 believes that Mr. Huertas then instructed Mr.

4

4877-8748-6289.v1

Drazin to review every provision of the loan documents to try to find a reason to justify the decision to declare that Developer RE1 was in "default". *Id*. ¶¶ 70-71. Developer RE1 also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real reason why Developer RE1 was improperly placed in default, *i.e.,* because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 71-72.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a "commission" of 2.50% of the "total amount then due", and another "commission" of 5.00% of the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts that are claimed to be due. *Id.* ¶¶ 73-74. The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. *Id*. ¶¶ 75-77. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 77. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project). *Id.* ¶ 78.

After Developer RE1 asked WCP to provide for a basis for the "default" claim, Mr. Drazin sent the cover story that Mr. Huertas had asked for. Mr. Drazin claimed that Developer RE1 was in "default" because of: a balance due to DC Water ($44,857.93) that resulted in a lien (the "DC Water Alleged Debt Claim"); the late payment of real estate taxes (the "Property Tax Late Payment Claim"); and that "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default". *Id.* ¶ 82.

5

Developer RE1 first learned that there may be outstanding DC Water invoices on or about August 31, 2022, because DC Water sent its invoices to the wrong address. *Id.* ¶ 83. After learning of the DC Water invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was owed. *Id.* ¶ 84. Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days. *Id.* That same day, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices. *Id.* ¶ 85. Developer RE1 is currently waiting for an administrative hearing to be scheduled. *Id.* Under Section 7.6 of the First and Second DOT, Developer RE1 arguably has a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments"). *Id.* ¶ 86.

The Property Tax Late Payment Claim involves the payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022. *Id*. ¶ 90. Developer RE1 paid property taxes in the amount of $16,522.89 on October 16, 2022, and property taxes in the amount of $222.28 on October 19, 2022. *Id*. ¶ 91. There are no outstanding property taxes owed by Developer RE1, and the late payment of taxes caused no harm whatsoever to the WCP Fund. *Id*. ¶ 92. Developer RE1 and 423 Kennedy are also not affiliates of each other, so the claim that there was a cross-default by an affiliate of Developer under Section 7.9 also has no merit as alleged by Mr. Drazin. *Id*. ¶ 100-04.

All of the "defaults" that have been alleged were all claimed after-the-fact as a pre-text. *Id*. ¶ 87 and 96. The property taxes were paid, and Developer RE1 has no affiliates. *Id*. ¶¶ 100-14. There is no legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property. *Id*. ¶¶ 107-08. The Defendants also

6

4877-8748-6289.v1

knew that the First Note and the Second Note list a maturity date of December 23, 2022. The

Defendants deliberately timed their improper interference with Developer RE1's business

relations to make it almost impossible for Developer RE1 to close on the refinancing loan prior

to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on

the Property. *Id*. ¶ 111. If the Defendants follow through on their threat to foreclose on the

Property, Developer RE1 will be irreparably harmed because it could lose its entire investment.

*Id*. ¶ 109.

II.       LEGAL ARGUMENT

      A.       The Legal Standard for A Motion To Dismiss

          A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of

a complaint. *See Luna v. A.E. Eng'g Servs*., 938 A.2d 744, 748 (D.C. 2007). A complaint must,

at a minimum, contain a short and plain statement of the claim showing that the plaintiff is

entitled to relief. D.C. Super. Ct. R. Civ. P. 8(a)(2). Such a statement must give the opposing

party fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Bolton v.

Bernabei & Katz, PLLC*, 954 A.2d 953, 963 (D.C. 2008). In reviewing the complaint, the Court

must accept all allegations as true, and construe all facts and inferences in a light most favorable

to the non-moving party. *See Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1023 (D.C.

2007). "Factual allegations must be enough to raise a right to relief above the speculative level."

*Clampitt v. Am Univ.*, 957 A.2d 23, 29 (D.C. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)). Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must

provide more than a formulaic recitation of the elements of a cause of action or labels and legal

conclusions couched as fact. *See Grayson*, 980 A.2d at 1144. "'Rule 8 . . . does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

<div align="center">7</div>

harmed-me accusation.'" *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543–44 (D.C. 2011) (quoting and adopting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In the breach of contract context, to survive a 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach. *See Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015).

B.    The Notes and Deed Of Trust Do Not Defeat Developer RE1's Claims.

Defendants misstate Developer RE1's position. *See* Mot. to Dismiss at 5-6.[2] Developer RE1 does not acknowledge that any valid defaults exist to support the "death penalty" remedy of a foreclosure, but rather that the Defendants asserted "default" claims after-the-fact to intentionally interfere with a closing and as a pretext to conceal unlawful, predatory lending conduct. *See, e.g.*, Mot. for TRO at 12-16. Further, to the extent any alleged defaults occurred, those defaults have either been cured, or an appeal was pending, so they cannot be used as a valid basis to foreclose on the Property. *Id.* at 16-17. The foreclosure sale provisions in the Deeds of Trust are provisions that must be construed against the Defendants. *See 1901 Wyoming Avenue Cooperative Assoc. v. Lee*, 345 A.2d 456, 463 (1975) (any ambiguities in a contract will be construed strongly against the drafter). Section 8.0(a) states in plain terms that a foreclosure sale is conditioned upon "*the continuance of* any such Event of Default . . .". Compl. Ex. A and C (First and Second DOT) at page 13, Section 8.0(a) (italic emphasis added).

In their motion the Defendants further engage in argument over the merits of their claimed defaults of the loan documents by Developer RE1. *See* Mot. to Dismiss at 5-8. This is

---

[2]    The Motion to Dismiss claims that "[n]otwithstanding a broad swath of colorful language, the Complaint ultimately alleges that (i) the Plaintiff breached promissory notes and deeds of trust; (ii) WCP and DPCL declared defaults of the loan documents following these breaches; and (iii) the Plaintiff now wishes to be free of the default provisions . . . to which it agreed.").

8

4877-8748-6289.v1

not the applicable standard at this stage.  As shown *infra,* Developer RE1 has plainly pled facts

which, if true, state valid causes of action.

        C.       <u>Developer RE1 Has Plausibly Alleged Damages.</u>

Defendants overstate the pleading standard for damages.  *See* Mot. to Dismiss at 9-10.

Pursuant to *Silverberg v. Becker,* <mark>191 A.3d 324</mark> (D.C. 2018):  "[W]hile under some statutory

schemes plaintiffs are required 'to plead with particularity actual damages caused,' under the

*Twombly/Iqbal* standard applicable to most claims, 'the lack of detail in the complaint is not a

basis for dismissing a claim for damages at [an] early stage of the litigation[,] as plaintiffs are

under no obligation to plead damages with particularity.'" *Silverberg*, <mark>191 A.3d at 338-39</mark> (D.C.

2018) (reversing a grant of a dismissal where the trial court reasoned that Plaintiff's claim that

they had been "financially damaged" was "bare and conclusory.").

Developer RE1 has met its pleading burden as to damages.  Developer RE1 has generally

pled damages, and those damages are not required to be itemized with particularity.[3]  Compl. at

20 and 21 (estimating damages at $1 million); *see id* (citing *Democracy Partners v. Project

Veritas Action Fund*, <mark>285 F. Supp. 3d 109, 126</mark> (D.D.C. 2018); *Alemayehi v. Abere*, <mark>199 F. Supp.

3d 74, 86</mark> (D.D.C. 2016); *NCB Mgmt. Servs., Inc. v. FDIC*, <mark>843 F. Supp. 2d 62, 70</mark> (D.D.C.

2012)).  Developer RE1 has also plausibly alleged that it has been "financially damaged" by the

Defendants' tortious interference. *See* Compl. ¶ 112 (incorporating by reference the preceding

paragraphs); ¶ 111 (explaining how Defendants made it impossible for Developer RE1 to close

on a refinancing loan); ¶¶ 117-18.  Further, Developer RE1 has pled damages for its breach of

---

[3]    Developer RE1's damages were not capable of being itemized with particularity at the time the Complaint was filed because: (a) the new closing date had not yet been established; (b) it was not known at that time when a new closing date would be scheduled; and (c) it was not known how long the construction of the Project would be delayed.

<div align="center">9</div>

4877-8748-6289.v1

the covenant of good faith and fair dealing claim. *See id.* ¶ 119; ¶ 111; ¶ 125. Accordingly, the

dismissal of Developer RE1's claims based upon a failure to plead damages is not appropriate.

        D.      <u>The Economic Loss Doctrine Does Not Apply to Intentional Torts</u>

The Defendants also overstate the scope of the economic loss doctrine. *See* Mot. to

Dismiss at 10-13. The economic loss doctrine prohibits claims of *negligence* where a claimant

seeks to recover purely economic losses sustained as a result of an interruption in commerce

causes by a third party. *See Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 204 (D.C. 2017).

The only binding case cited by the Defendants stands for this same proposition. *Aguilar v. RP

MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014) ("This means that in

jurisdictions that have adopted the [economic loss] doctrine, claimants are barred from

recovering lost profits or lost wages due to the *negligent* interruption of commerce caused by a

third-party") (emphasis added). The six, non-binding cases cited by the Defendants also all

involved negligence claims.[4]

Here Developer RE1 has not sued for negligence, but rather for an intentional tort --

tortious interference with business relations. *See* Compl. ¶¶ 112-18. Taking Developer RE1's

allegations as true, Developer RE1 has more than sustained its burden to plausibly allege a claim

---

[4]    *See William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 19 (D.D.C. 2018) ("Because the economic loss doctrine bars the College's *negligence* claim, the Court will dismiss Count V."); *Jefferson v. Collins*, 210 F. Supp. 3d 75, 84 (D.D.C. 2016) ("Furthermore, the economic loss doctrine, which has been adopted by the District, bars a plaintiff from recovering for purely economic losses under a theory of negligence."); *Singer v. Bulk Petro. Corp.*, 9 F. Supp. 2d 916, 921-22 (N.D. Ill. 1997) ("[T]hus, [plaintiff's] negligence claim is barred by the economic loss doctrine"); *Metal Processing Co., Inc. v. Amoco Oil Co.*, 946 F. Supp. 828, 832 (E.D. Wis. 1996) ("Under the economic loss doctrine, a commercial purchaser of a product cannot recover from the manufacturer under *negligence or strict liability theories*.") (emphasis added); *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah, 2012) ("The economic loss rule prevents recovery of economic damages under a theory of *nonintential tort* when a contract covers the subject matter of the dispute.") (emphasis added); *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1271-72 (M.D. Pa. 1990) (involving claims for negligence and negligent misrepresentation).

<div align="center">10</div>

4877-8748-6289.v1

for tortious interference with business relations.  Developer RE1 has plausibly alleged:  (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship; and (4) resulting damages. *See, e.g.*, *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (listing the elements of a claim for tortious interference with business relations); *see also* Compl. ¶¶ 112-18.

Moreover, Developer RE1's breach of the covenant of good faith and fair dealing cause of action is contractual in nature.  *Compare* Mot. to Dismiss at 12 ("And the claim for breach of the implied covenant of good faith and fair dealing, because not presented as one for contractual breach . . . does, too, sound in tort.") *with* Compl. ¶ 125 ("Through its improper conduct, the WCP and the WCP Fund have breached the implied covenant of good faith and fair dealing *contained in* the First Note, the First DOT, the Second Note, and the Second DOT") (emphasis added); *see, e.g.*, *Wright v. Howard Univ.*, 60 A.3d 749, 754-55 (D.C. 2013) ("Every contract includes an implied covenant of good faith and fair dealing.").  Further, Developer RE1 has plausibly alleged each element of the cause of action.  *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015), which states:

> To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either 'bad faith or conduct that is arbitrary or capricious.' . . . If a party 'evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the covenant of good faith and fair dealing.

*See also* Compl. ¶¶ 119-25.  The economic loss rule does not foreclose Developer RE1's claims for intentional interference with business relations and for breach of the covenant of good faith and fair dealing.  Because facts supporting both causes of action have been plausibly alleged by Developer RE1, dismissal is not appropriate.

4877-8748-6289.v1

E. Injunctive Relief Pled as to Mr. Drazin

Developer RE1 agrees that Injunctive Relief is not a standalone cause of action. However, the Complaint does set forth detailed allegations related to Mr. Drazin's participation in the improper conduct. *See, e.g.*, Compl. ¶¶ 90, 95, 105, 106. Mr. Drazin is also listed as the Trustee under both the First DOT and the Second DOT. Compl. Exs. A and C, at page 1 (second full paragraph). While the full extent of Mr. Drazin's participation in the improper conduct will not become known until the discovery phase, the allegations in the Complaint indicate that he has breached the fiduciary duty that he owes to Developer RE1 as Trustee. *See S&G Inv., Inc. v. Home Fed. Sav. & Loan Ass'n,* 505 F.2d 370, 377-78 n.21 (D.C. Cir. 1974) (citations omitted) (noting that trustees owe fiduciary duties to both the noteholder and the borrower).

The Defendants' claim that Mr. Drazin must be dismissed as to the request for injunctive relief downplays the text of Rule 65, which indicates that Mr. Drazin is a necessary party to any order imposing injunctive relief. Rule 65 requires that the Court may only issue a temporary restraining order only upon notice to the adverse party, and that the temporary restraining order "binds only the following who receive actual notice of it by personal service or otherwise: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) *other persons* who are *in active concert or participation with* anyone described in Rule 65(d)(2)(A) or (B). D.C. Super. Ct. Civ. R. 65(a)(1) and (2)(A)-C) (emphasis added). Developer RE1 has alleged that Mr. Drazin actively participated in misconduct with the other named defendants. Compl. ¶¶ 70, 81, 95, and 109 (alleging that Mr. Drazin agreed helped come up with a cover story and participated with other Defendants in alleging pre-textual defaults). If the Court determines that Mr. Drazin should be dismissed as to Count IV, Developer RE1 will likely later

12

4877-8748-6289.v1

seek leave to amend its Complaint to add Mr. Drazin as a Defendant to Counts I and II, and/or to add new count for breach of the fiduciary duty that he owed to Developer RE1 as Trustee.

F.      Developer RE1's Claim For Injunctive Relief Is Sufficiently Pled

Defendants misstate the applicable standard under Rule 12(b)(6). *See* Mot. to Dismiss at 14 (arguing that injunctive relief "Fails on the Merits."). First, Developer RE1 does not need to "prevail on the merits" at the Motion to Dismiss stage, but rather must plausibly allege facts that, if true, would entitle Developer RE1 to relief. Second, the threatened sale of real estate, which is unique, amounts to irreparable harm -- the most important factor in the analysis of whether to grant injunctive relief. *See, e.g., Zirkle v. District of Columbia*, 830 A.2d 1250, 1256 (D.C. 2003) ("The basis of injunctive relief . . . has always been irreparable harm and inadequacy of legal remedies.").[5]

The Defendants' assertion that a foreclosure sale is not imminent does not undermine Developer RE1's request for injunctive relief. In *Bashi*, *supra*, the Court noted that, the harm threatened to the plaintiff was not imminent because he could avoid the loss of his property by exercising his right of redemption under the Michigan Foreclosure Statute, and determined that "[n]onetheless, I consider this factor favors the Plaintiff." 2009 U.S. Dist. LEXIS 96427 at *10-11. Here the Defendants have already threatened to foreclose on the Property. Compl. Ex. K (". . . our legal counsel *will* commence foreclosure proceedings.") (emphasis added).

---

[5]     *See also Peterson v. D.C. Lottery & Charitable Games Ctrl. Bd.*, 1994 U.S. Dist. LEXIS 10309 at *4 (D.D.C. July 28, 1994); *Bashi v. Wells Fargo Home Mortg, Inc.*, 2009 U.S. Dist. LEXIS 96427 (E.D. Mich. Sept. 22, 2009) ("Plaintiff correctly asserts that irreparable harm may flow to him by the reason the sale of his real estate. . . . Because a piece of real property is unique, however, its loss has been considered irreparable") (internal citations omitted); *cf. Hongkong & Shanghai Bank. Corp. v. Kallingal*, 2005 Guam 13, 25-26 (Guam 2005) (using a fact-specific inquiry to determine that irreparable harm would result from the loss of real estate rights); *see also Mitchell v. Century 21 Rustic Realty*, 223 F. Supp. 2d 418, 431 (E.D.N.Y. 2002) ("Loss of an interest in real property is generally considered irreparable harm. Loss of an interest in real property is not presumed to be irreparable harm however.").

13

Notably, Defendants cite no cases in support of their proposition that a petition for bankruptcy relief amounts to an "adequate legal remedy." The cases by Defendants in this portion of their opposition do not mention bankruptcy. *See, Bill Barret Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 336 (D.C. 2009) (pertaining to oxygen contamination caused by exploratory drilling); *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n.4 (D.C. 1993) (pertaining to the issuance of a TRO for a zoning permit where the United States Secret Service determined a planned zoning application had not adequately proposed measures to address the protection of the Vice President's home); *Dist. of Columbia v. N. Washington Neighbors, Ins.*, 367 A.2d 143, 144 (D.C. 1976) ("The basic issue in this case is whether the District has the authority to require individual citizens to bear the cost of repair of the piped connecting their individual water systems to the District's water mains when they break or whether the District itself must bear that cost"). Accordingly, dismissal is inappropriate.

G.    Developer RE1 Has Plausibly Alleged That the Loan Documents Contain Unconscionable Provisions

The Defendants conflate the standard for succeeding on a claim of unconscionability at trial with the standard at the pleading stage. *See* Mot. to Dismiss at 16 ("To succeed on a claim of unconscionability, a party must prove a document is both procedurally *and* substantively unconscionable.") (emphasis added). But a contract may be found unconscionable either because of the manner in which it was made or because of the substantive terms of the contract or, more frequently, because of a combination of both factors. *See Jeter v. Cash*, 2014 D.C. Super. LEXIS 6, *34-35 (D.C. Super. Ct. April 21, 2014) (citing *Urban Invest., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983)). Here, at a minimum, Developer RE1 has alleged substantive unconscionability. Compl. at 21-22 (pointing out the gross unfairness in the contractual

14

4877-8748-6289.v1

provisions regarding additional interest and penalties that are entirely disproportionate to the harm).

Finally, unconscionability is just one portion of Developer RE1's claim for declaratory relief, which includes several other requests. *See* Compl. at 21-22 (the request for relief in Count III). For example, Developer RE1 seeks a declaratory judgment that the Defendants are trying to improperly collect default "penalties" from Developer RE1 as liquidated damages. In the District, a liquidated damages provision in a contract that is found to be a penalty is unenforceable. *See S. Brooke Purll, Inc. v. Vailes,* 850 A.2d 1135, 1138 (D.C. 2004) (noting the rules for the enforceability of a liquidated damages provision).

III. CONCLUSION

For the foregoing reasons, and for any reasons that may be advanced at a hearing on the motion, Developer RE1 respectfully requests that the Count deny the Defendants' Motion to Dismiss. A proposed order is attached.

<div style="text-align:right">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Dated: February 16, 2023

/s/ James D. Sadowski
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

<div style="text-align:center">15</div>

4877-8748-6289.v1

Case 24-10023-BLG0-Dkt-A15-1 Document 06/31/25 Filed 04/24/25 06:36:14 Desc
Exhibit B - All Pleadings in Ark Docket Forbearance (Joint) Albrecht nr 2207 Page 468 of 1716

<u>ORAL HEARING REQUESTED</u>

Developer RE1, LLC requests an oral hearing pursuant to D.C. Super. Ct. Civ. R. 12-I(h).

/s/ James D. Sadowski
James D. Sadowski

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of February, 2023, a true and correct copy of the foregoing Opposition to Defendants' Motion to Dismiss was served using eFileDC and a notice of service should be sent electronically by eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

16

4877-8748-6289.v1

588

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

     *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Scheduling Conference
03/24/23 – 9:30 a.m.

## [PROPOSED] ORDER DENYING MOTION TO DISMISS

Upon consideration of the Defendants' Motion to Dismiss ("Motion"), the Plaintiff's

Opposition thereto, and any reply, it is this _____ day of _____, 2023 hereby:

ORDERED, that the Motion is DENIED.

_____
Honorable Judge Ebony Scott
Associate Judge

Copies electronically to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
*Counsel for Plaintiff*

Maurice B. VerStandig, Esq.
*Counsel for Defendants*

17

4877-8748-6289.v1

Case 24-10077-BLS   Doc 152-1   Filed 05/03/25   Entered 09/04/25 00:33:14   Desc
Exhibit B - All Pleadings Ad - Ask Docket for Hearing(s) Albumen 51 of 220   Page 470 of 1716

**Case Caption:**   Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.

**To:**   Maurice B. Verstandigm                     **Case Number:**     2022-CAB-005935

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) Remote Initial Scheduling Conference on 03/24/2023 at 9:30 AM in **Remote Courtroom 219**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

#### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

#### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

#### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Maurice B. Verstandigm
THE VERSTANDIG LAW FIRM LLC
9812 Falls Road #114-160
POTOMAC MD  20854

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

Case 24-10023-BLS Doc 15-1 Filed 05/02/25 Entered 05/02/25 09:36:24 Desc
Exhibit B - All Pleadings Ad-Filed in Underlying Action Albarell-2207 Page 472 of 1716

<table>
<tr><td>

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS, ET AL.

    *Defendants*.

</td><td>

2022-CAB-005935
Judge Ebony Scott
Next Event:  Scheduling Conference
03/24/23 – 9:30 a.m.

</td></tr>
</table>

## CONSENT PRAECIPE
## <u>WITHDRAWING MOTION FOR TEMPORARY RESTRAINING ORDER</u>

The Plaintiff, Developer RE1 LLC ("Developer RE1"), without objection from the

Defendants, DP Capital, LLC d/b/a Washington Capital Partners, WCP Fund I, LLC, Daniel

Huertas, and Russell Drazin (collectively, "Defendants"), hereby withdraws, without prejudice,

the Motion for Temporary Restraining Order filed by Developer RE1 on December 23, 2023.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:  February 28, 2023

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar. #446635)
Alexandria J. Smith (D.C. Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

4888-7930-6833.v1

THE VERSTANDIG LAW FIRM, LLC

Date:  February 28, 2023

/s/ Maurice B. VerStandig
Maurice B. VerStandig (D.C. Bar #1034066)
9812 Falls Road, #114-160
Potomac, MD  20854
Telephone:  (301) 444-4600
Email:  mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a*
*Washington Capital Partners, WCP Fund I,*
*LLC, Daniel Huertas, and Russell Drazin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of February, 2023, a true and correct copy of the foregoing Consent Praecipe was served using eFileDC and a notice of service should be sent electronically by eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

2

4888-7930-6833.v1



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**2022-CAB-005935**

**Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.**

## TRACK II SCHEDULING ORDER

This Order may not be modified except by leave of Court upon a showing of good cause. Stipulations by counsel will not be effective to change any deadlines in the Order without court approval. Failure to comply with this Order and the deadlines set forth herein may result in dismissal, default judgment, refusal to let witnesses testify, refusal to admit exhibits, or the assessment of costs and expenses, including attorney's fees, or other sanctions.

A Joint Pretrial Statement is required unless otherwise ordered by the Court.

**Pretrial Deadlines**

| | |
|---|---|
| Exchange Lists of Fact Witnesses: | 05/28/2023 |
| Proponent's Rule 26(a)(2)(B) Report: | 06/04/2023 |
| Opponent's Rule 26(a)(2)(B) Report: | 06/27/2023 |
| Discovery Requests: | 07/11/2023 |
| Close of Discovery[1]: | 08/10/2023 |
| Filing Motions[2]: | 09/09/2023 |
| Dispositive Motions Decided: | 10/09/2023 |
| Mediation Date: | 10/24/2023 - 11/23/2023 |
| Pretrial Date[3]: | (To be set upon completion of Mediation) |

Date: 03/29/2023

Ebony M Scott, Associate Judge

---

[1] No motion relating to discovery and no deposition or other discovery may be had after this date, except by leave of court. Notices of deposition must be served not less than 5 days before the date scheduled for the deposition, and no deposition may be noticed to take place after the close of discovery date.

[2] This deadline does not apply (1) to motions relating to discovery, which must be filed by the close of discovery, or (2) to motions in limine, motions to bifurcate, or any other motion respecting the conduct of the trial, which must be filed at least 3 weeks prior to the pretrial conference.

[3] A Joint Pretrial Statement is required unless otherwise ordered by the Court.

Page 1 of 1

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,**<br><br>     **Plaintiff,**<br><br>     **v.**<br><br>**DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*,<br><br>     **Defendants.** | **Case No.     2022-CAB-005935**<br><br>**Judge Ebony M. Scott**<br><br><br>**Next Court Event: Mediation<br>November 16, 2023 at 1:30 p.m.** |

## ORDER

This matter was before the Court on March 24, 2023 for a Scheduling Conference Hearing. At the hearing, the Court denied Defendants' Motion to Dismiss First Amended Complaint, filed on January 26, 2023, and the Court placed the matter on a Track 2 Scheduling Order.

Accordingly, on this **7th day of April, 2023**, it is hereby:

**ORDERED** that Defendants' Motion to Dismiss First Amended Complaint is **DENIED**; and it is further

**ORDERED** that this matter is placed on a Track 2 Scheduling Order, which shall issue under separate Order.

**SO ORDERED**.

_____
**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

Page **1** of **2**

**Copies via Odyssey to**:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandigm, Esq.
mac@mbvesq.com
*Counsel for Defendants*

eFiled
06/24/2023 11:13:16 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

    Plaintiff,

v.

DP Capital, LLC, et al.

    Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## ANSWER AND AFFIRMATIVE DEFENSES

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 8, and in answer to the First Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), as well as the assertion of affirmative defenses thereto, state as follows:

### Answer

1. Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants generally deny all allegations in the Complaint except for those specifically admitted herein.

2. Pursuant to District of Columbia Rule of Civil Procedure 8(b)(5), the Defendants lack information or knowledge sufficient to form a belief about the truth of the allegations set forth in paragraph 1 of the Complaint.

3. Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants admit the allegations set forth in paragraphs 2-4, 7, 9-14, 17-18, 20, 23, 27, 30-31, 35-36, 46-47, 52-53, 64-68, 73, 89-91, 97, 122-125, and 128-129 of the Complaint.

1

4.      The allegations of paragraph 58 of the Complaint are generally denied, *except* it is acknowledged that the referenced e-mail was sent and that the copy appended to the Complaint is a true and genuine copy thereof.

5.      The Defendants generally deny that "money is the root of all evil," as alleged on page 12 of the Complaint.

6.      Paragraphs 82, 113, 120, 127 and 133 of the Complaint do not set forth contentions that call for an admission or denial.

7.      Various paragraphs in the Complaint set forth assertions that are contentions of law; an answer is an improper vehicle to admit or deny assertions of law. To the extent a further answer is required, the Defendants deny the same.

8.      Certain allegations in the Complaint speculate about the existence of privileged attorney/client communications; the Defendants do not specifically answer those allegations herein but, instead, generally note that (i) they will not waive the attorney/client privilege; (ii) the invocation of such privilege ought not be construed as an admission of any of the allegations in the Complaint; and (iii) to the extent necessary to preserve said privilege, the Defendants generally deny the subject allegations.

### Affirmative Defenses

1.      The Complaint fails to state a claim for which relief may be granted.

2.      The plain language of the promissory notes and deeds of trust appended to the Complaint control the relationship between the Plaintiff and the Defendants.

3.      The Complaint fails to plead damages in a legally cognizable manner.

4.      The Plaintiff is barred from recovering herein by the economic loss rule.

5.      Injunctive relief is not a stand-alone cause of action in the District of Columbia.

2

6.      The Plaintiff is barred from recovering herein by the doctrine of unclean hands.

7.      The Plaintiff is barred from recovering herein by the doctrine of setoff.

8.      The Plaintiff is barred from recovering herein by the doctrine of recoupment.

9.      The Plaintiff is barred from recovering herein by the doctrine of first breach.


Dated: June 24, 2023                                    Respectfully Submitted,

                                                        /s/ Maurice B. VerStandig
                                                        Maurice B. VerStandig, Esq.
                                                        DC Bar #1034066
                                                        The VerStandig Law Firm, LLC
                                                        9812 Falls Road, #114-160
                                                        Potomac, Maryland 20854
                                                        Telephone: 301-444-4600
                                                        Facsimile: 301-444-4600
                                                        Electronic Mail: mac@mbvesq.com
                                                        *Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 24th day of June 2023, and a notice of filing should be served on all counsel of record.

                                                        /s/ Maurice B. VerStandig
                                                        Maurice B. VerStandig, Esq.


3

Case 24-10086-BLS Doc 15-1 Filed 08/04/25 Entered 08/04/25 00:33:14 Desc
Exhibit B - All Pleadings Ad Ask Docket Entries Report Album Page 54 of 207 Page 480 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

2022-CAB-005935

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
                 8/10/2023

## PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

The Plaintiff, Developer RE1 LLC ("Developer RE1"), requests that the Court enjoin the Defendants from moving forward with a scheduled foreclosure sale to preserve the status quo and prevent irreparable harm to Developer RE1. The Defendants have engaged in an improper scheme to try to extort money from Developer RE1 (and others). The Defendants also deliberately prevented Developer RE1 from obtaining a refinancing loan, and they now seek to further their misconduct by foreclosing on real property owned by Developer RE1 on July 25, 2023 -- before Developer RE1 can complete discovery in this case to expose the full extent of their misconduct. The Court should issue a temporary restraining order stopping any foreclosure sale to prevent an injustice.

## I.    DETAILED FACTUAL BACKGROUND

### Developer RE1 and the Property.

Developer RE1 is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property"). Am. Compl.

1

4878-8731-9407

¶ 9. The sole purpose of Developer RE1 is to own and develop the Property. *Id.* ¶ 11.

Developer RE1 is partially owned by Mel Negussie. *Id.* ¶ 10.

The Defendants and Their Roles.

There are four defendants in this case. DP Capital, LLC ("DP Capital"), is a Virginia

company that uses the trade name "Washington Capital Partners". *Id.* ¶ 2. For convenience, this

motion refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP". The WCP

Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending business in the

District. *Id.* ¶ 3. Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia. *Id.* ¶

5. Mr. Huertas controls WCP, and WCP controls the WCP Fund. *Id.* ¶¶ 4-5. Russell Drazin

("Mr. Drazin"), is an individual and counsel to the WCP and the WCP Fund. *Id.* ¶ 6. Mr. Drazin

is also the Trustee under two deeds of trust that he drafted. *Id*.

The Loan Documents.

On December 23, 2021, the WCP helped facilitate Developer RE1 in obtaining an

acquisition finance loan for the Property, which original loan was later refinanced. *Id.* ¶¶ 13-14.

As part of that refinancing, Developer RE1 signed the following documents:

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

- a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund;

- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee; and

- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 14, 17, 20, and 23.

<div align="center">2</div>

4878-8731-9407

True copies of the First DOT, the First Note, the Second DOT, and the Second Note are attached to this motion as Exhibits A, B, C, and D.[1]  These documents are sometimes referred to together as the "loan documents".  The loan documents were for documents prepared by Mr. Drazin that Developer RE1 was not allowed to modify.  *Id.* ¶¶ 15-16, 18-19, 21-22, and 24-25.  The loan documents provided security for the construction financing loans that Developer RE1 needed to develop the Property.

> Mr. Huertas Threatens to Make Trouble for Developer RE1 Unless Developer RE1 Accedes to His Demands Regarding Another, Unrelated Development.

As of November 3, 2022, Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note.  *Id.* ¶ 29.  On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  *Id.* ¶ 30.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505."  *Id.*  A copy of the November 3, 2022 email is attached as Exhibit E.  On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  *Id.* ¶ 31.  A true copy of the November 15, 2022 email is attached as Exhibit F.

> The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default" Under Any of the Loan Documents.

By as early as November 15, 2022, the Defendants knew that Developer RE1 had secured alternative financing for the Property with another lender named Main Street Bank, and that Developer RE1 expected to close on the new refinancing loans in December of 2022.  *Id.* ¶ 33.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

---

[1]  All but three of the Exhibits attached to this Emergency Motion (Exhibit S, T, and U) were also attached to the Amended Complaint.

3

4878-8731-9407

As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed under either the First Note, the Second Note, the First DOT, or the Second DOT. *Id.* ¶ 34.

On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the Property. *Id.* ¶ 35. A copy of the November 30, 2022 email sent by Developer RE1 to WCP is attached as Exhibit H. That same day (November 30, 2022) Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022. *Id.* ¶ 36. A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I. On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months. *Id.* ¶ 37. Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal). *Id.* On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000. *Id.* ¶ 38. Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million. *Id.* Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors. *Id.* As of December 8, 2022 there was still no claim made that any default by Developer RE1 existed under any of the loan documents. *Id.* ¶ 39.

4

4878-8731-9407

<u>Mr. Huertas Then Demands that Either Developer RE1 or Mr. Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".</u>

By December 8, 2022, Developer RE1 had made all payments due under the Notes ($332,319.03 in interest payments). *Id.* ¶ 40; *see also* Exhibit S (payment history and screenshots from the WCP web site showing interest payments marked "Paid"). That day, Mr. Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out. *Id.* ¶ 41. For convenience, the unrelated development project will be referred to as the "2507 I Street Project". During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans that Mr. Negussie was associated with at WCP, including Developer RE1." *Id.* ¶ 42. Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done". *Id.* Mr. Huertas further stated that the Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on 423 Kennedy and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000 shortfall on that project." *Id.* Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects". *Id.* ¶ 43.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or to any development projects were improper. *Id.* ¶ 44. After Mr. Negussie refused to accede to Mr. Huertas' threats over the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all prior

5

4878-8731-9407

Payoff Statements that were sent "were withdrawn" and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their loan documents. *Id.* ¶ 45.[2] The Defendants knew that Developer RE1 was not involved in the 2507 I Street Project, that there is no legal or other business relationship between Developer RE1 and either the developer for the 2507 I Street Project or 423 Kennedy, and that 423 Kennedy was a sole purpose entity involved with a development project at 5501 1st Street, NW. *Id.* ¶¶ 46-50, and 52-57. Mr. Huertas provided no basis for why or how the Defendants could put Developer RE1 in default under the loan documents. *Id.* ¶ 51.

> <u>Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.</u>

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email. *Id.* ¶ 58. A true copy of that email and each "Notice of Default" are attached as Exhibits J, K, and L. Each "Notice of Default" was unsigned and failed to include either a description of the alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A". *Id.* ¶¶ 60-61. Email is also not listed as a permissible means to send a default notice. *Id.* ¶¶ 64-65; Ex. A (First DOT) at pages 17-18 and Compl. Ex. C (Second DOT) at pages 17-18. With the December 8, 2022 email, the WCP included two Payoff Statements for Developer RE1. *Id.* ¶ 66. A true copy of the two Payoff Statements that were included with that email are attached as

---

[2] 423 Kennedy filed a similar lawsuit against the Defendants in *423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners et al.*, 2022-CAB-005903 (D.C. Super. Ct.) (the "*423 Kennedy* Case").

6

4878-8731-9407

Exhibits M and N.  *Id.* ¶¶ 66-68.  The Payoff Statement for the first loan included a demand that

Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00,

while the Payoff Statement for the second loan included a demand that Developer RE1 pay

$40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".  *Id.*

> Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default"

claims.  *Id.* ¶ 69.  Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to

contact the WCP's counsel.  *Id.*  Developer RE1 believes that Mr. Huertas then instructed Mr.

Drazin to review every provision of the loan documents to try to find a reason to justify the

decision to declare that Developer RE1 was in "default".  *Id.* ¶¶ 70-71.  Developer RE1 also

believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact

that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real

reason why Developer RE1 was improperly placed in default -- because the Defendants were

angry about the 2507 I Street Project.  *Id.* ¶¶ 71-72.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a

"commission" of 2.50% of the "total amount then due", and another "commission" of 5.00% of

the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts

that are claimed to be due.  *Id.* ¶¶ 73-74.  The Defendants knew that by improperly alleging that

Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default

Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the

refinance loan.  *Id.* ¶¶ 75-77.  The Defendants deliberately interfered with the refinancing loan to

prevent Developer RE1 from being able to go to closing.  *Id.* ¶ 77.  The Defendants also sent a

"Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr.

Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project).  *Id.* ¶ 78.  The

<div align="center">7</div>

Defendants also knew that they had no right to demand that someone else either correct, or pay for, any problems at the 2507 I Street Project. *Id.* ¶ 79. The Defendants are trying to inflict damages upon Developer RE1, and their misconduct is a form of extortion. *Id*. ¶ 80.

> The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.

After being asked by counsel for Developer RE1 to provide a basis for the "default" claims, Mr. Drazin sent the cover story that Mr. Huertas had asked for. In a reply email, Mr. Drazin claimed that Developer RE1 was in "default" because:

- "There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW";

- The "Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.";

- Developer RE1 was not entitled to any notice of any default;

- There was "<u>no right to cure</u>", "<u>no right to deceleration</u>", <u>no right to reinstatement</u>, and that the '<u>Loans are in default and are accelerated</u>."; and that

- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

A true copy of Mr. Drazin's email is attached as Exhibit O (emphasis in original). *Id.* ¶ 81. For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim." *Id.* ¶ 82

Developer RE1 first learned that there may be outstanding DC Water invoices on or about August 31, 2022, because DC Water was sending the invoices for the Property to the wrong address. *Id.* ¶ 83. The dates of the DC Water invoices were 02/23/22, 03/18/22,

8

4878-8731-9407

04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). *Id.* Upon learning of the Disputed

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water

claimed was due. *Id.* On September 22, 2022, DC Water stated in an email that "the dispute

deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their

respective due dates." *Id.* ¶ 84. Because Developer RE1 did not receive an invoice until on or

about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed

Invoices had already expired by about sixty days. *Id.* That same day, Developer RE1 submitted

(by email) a Petition for Administrative Hearing to contest the Disputed Invoices. *Id.* ¶ 85. At

the time the Complaint was filed Developer RE1, was waiting for an administrative hearing to be

scheduled. *Id.* A true copy of the September 22, 2022 email and the Petition for Administrative

Hearing are attached as Exhibit P.

Under Section 7.6 of the First and Second DOT, Developer RE1 arguably had a right to

either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment

or lien without being in violation of the covenant in Section 7.6 (entitled "Judgments"). *Id.* ¶ 86.

The DC Water Alleged Debt Claim was resolved with DC Water and the lien filed by DC Water

was released on June 12, 2023. A copy of the lien release filed by DC Water is attached as

Exhibit T.

The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax

Late Payment Claim) involves the delayed payments of property taxes by Developer RE1 on

October 16 and 19, 2022 instead of on September 15, 2022. *Id.* ¶ 90. Developer RE1 paid

property taxes in the amount of $16,522.89 on October 16, 2022, and property taxes in the

amount of $222.28 on October 19, 2022. *Id.* ¶ 91. True copies of the receipts for the property

tax payments are attached as Exhibit Q and Exhibit R, respectively. There are currently no

9

4878-8731-9407

outstanding property taxes owed by Developer RE1, and the delayed payment of taxes caused no harm whatsoever to the WCP Fund. *Id*. ¶ 92.

The defaults by Developer RE1 that have been alleged were all claimed after-the-fact as a pre-text. No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank. *Id*. ¶ 94. The DC Water Alleged Debt Claim was resolved, all property taxes have now been paid, and Developer RE1 has no affiliates. *Id*. ¶¶ 100-114. Even though there was no valid, legal basis under any provision of either the First or the Second DOT that would permit the Defendants to foreclose on the Property, they initially threatened to take that step. *See* Ex. L ("our legal counsel will commence foreclosure proceedings"); *Id*. ¶ 117. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives were angry that the 2507 I Street Project did not turn out the way that they wanted it to, and/or because the Defendants want to force Developer RE1 to pay unenforceable penalties. *Id*. ¶ 96. *See also* Part III, C.(6), *infra*.

<u>Developer RE1's Initial Motion for a Temporary Restraining Order.</u>

Developer RE1 initially filed a motion for a temporary restraining order on December 23 2022 ("First TRO Motion"), but the First TRO Motion was withdrawn by consent after a judge determined in another case involving similar facts that a threat of foreclosure did not rise to the level of imminent harm warranting injunctive relief. *See* Order dated February 7, 2023 in the

10

4878-8731-9407

*423 Kennedy* case.[3]  The First TRO Motion was also withdrawn due to ongoing settlement

negotiations.[4]

<u>The Harm to Developer RE1 is Now Imminent</u>.

The Defendants' initial threat of foreclosure in December 2022 has now turned into a

reality.  On June 23, 2023, an unknown company called "SF NU, LLC"[5] sent to Developer RE1

a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").  A

copy of the Foreclosure Notice is attached as Exhibit U.  The Foreclosure Notice sets the date of

the foreclosure sale on July 25, 2023 at 2:00 p.m.  There was no valid, legal basis under any

provision of either the First DOT or the Second DOT that would have permitted the Defendants

to foreclose on the Property.  Compl. ¶ 108.  The Defendants knew that the First Note and the

Second Note listed a maturity date of December 23, 2022, so they deliberately timed their

improper interference with Developer RE1's business relations -- right before a holiday period --

to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the

maturity date, and to tie up any refinancing indefinitely so that they could foreclose on the

Property.  *Id*. ¶ 111.  As will be shown in Part IV.A, *infra,* if the Property is sold at the July 25,

2023 foreclosure sale, Developer RE1 will be irreparably harmed.  *Id*. ¶¶ 109-10.

---

[3]     While the finding of a lack of imminent harm in the 423 Kennedy case is not binding on this Court, the Defendants raised "lack of imminent harm" as a defense to the First TRO Motion. *See* Opp. to First TRO Motion at 3-4, Part III.b.

[4]     Developer RE1 and the Defendants were engaged in settlement discussions since this case was first filed.  Unfortunately, the lengthy settlement discussions reached an impasse last month after Developer RE1's final settlement proposal was rejected.

[5]     A search of the D.C. Department of Licensing and Consumer Protection's website shows that SF NU, LLC is not authorized to do business in the District.  On July 6 and 8, 2023 Developer RE1 served discovery requests on three of the Defendants in this case to try to find out the relationship between SF NU, LLC and the Defendants in this case, and how SF NU, LLU has the right to enforce any of the loan documents.

11

4878-8731-9407

## II.    PROCEDURAL HISTORY

On December 16, 2022, Developer RE1 filed its Complaint.  On January 12, 2023, Developer RE1 filed a First Amended Complaint ("Amended Complaint") to correct a few errors in the Complaint.  The Amended Complaint includes claims for tortious interference with business relations (Count I) and breach of the duty of good faith and fair dealing (Count II).  The Amended Complaint also seeks a declaratory judgment as to the meaning and enforceability of certain provisions in two Deeds of Trust (Count III) and injunctive relief (Count IV).  On January 26, 2023, the Defendants filed a motion to dismiss the Amended Complaint, which was opposed by Developer RE1.  No reply to that opposition was filed.  At the initial conference on March 24, 2023, the Court denied the motion to dismiss orally from the bench and issued a Track II Scheduling Order.[6]

Discovery in the case is ongoing and is not complete.  Only one Defendant (DP Capital, LLC) has served written discovery responses to date, and those responses were incomplete.  Developer RE1 served additional discovery responses on the other three Defendants on July 6 and 8, 2023.  Responses to those discovery requests are not due until early August.  No depositions have been taken.  The current date for the close of discovery is August 10, 2023.  Because the Defendants are now trying to foreclose on the Property, Developer RE1 asks this Court to preserve the status quo by issuing a temporary restraining order that prevents the Defendants from proceeding with the foreclosure sale.  The Property has a current value of $4 million, which exceeds by sixfold the claimed loan balance due at foreclosure ($655,554.78), so a delay of the foreclosure sale will cause no harm to any of the lender Defendants.

---

[6]    The Court memorialized its oral decision denying the Motion to Dismiss in an Order dated April 7, 2023.

12

4878-8731-9407

III. THE LEGAL STANDARD FOR INJUNCTIVE RELIEF

In determining whether to grant injunctive relief, the Court considers four factors: (1) the likelihood of irreparable harm in the absence of the requested injunction; (2) the likelihood of success on the merits on the underlying action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the public interest would be served by granting the injunction. *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995). The most important inquiry is that concerning irreparable injury. *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993). The four injunctive relief factors each weigh in favor of Developer RE1.

IV. LEGAL ARGUMENT

A. Developer RE1 Will Be Irreparably Harmed if the Property is Sold at a Foreclosure Sale.

The foreclosure sale is scheduled for July 25, 2023. Without a restraining order, the Property will be sold and Developer RE1 will lose all its interest in the Property and the improvements to the Property (valued at $4 million). The law considers property to be unique, so Developer RE1's potential loss of the Property is sufficient, without more, to show irreparable harm. *See Peterson v. D.C. Lottery & Charitable Games Control Bd.*, No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury."). Since a foreclosure sale is scheduled for July 25, 2023, there is an imminent need for injunctive relief to prevent Developer RE1 from losing its ownership interest in the Property. *See Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 74 (D.D.C. 2008) ("First, the injury must be both certain and great, actual and not theoretical . . . [t]he court must bear in mind whether the movant has substantiated the claim that

13

4878-8731-9407

irreparable injury is "likely" to occur."). The first injunctive relief factor weighs heavily in favor

of Developer RE1.

> **B.** **Developer RE1 Is Likely to Succeed on the Merits of Its Claims.**
>
> **(1)** **Developer RE1 is Likely to Succeed on its Intentional Interference with a Business Relationship Claim.**

To prevail on a tortious interference with business relations claim, Developer RE1

must establish: (1) the existence of a valid contractual or other business relationship; (2) the

defendant's knowledge of the relationship; (3) intentional interference with that relationship by

the defendant; and (4) damages. *See Onyeoziri v. Spivok*, 44 A.3d 279 (D.C. 2012). Developer

RE1 has alleged sufficient facts to how that the Defendants actions amount to a tortious

interference with business relations. The conduct alleged to have occurred here shows that the

Defendants attempted to extort money from Developer RE1 (and others) by raising pre-textual

defaults at a time when Developer RE1 was on the verge of closing on a refinancing loan. By

denying the Defendants' motion to dismiss, the Court has already confirmed that the elements of

a tortious interference with business relations claim are present here.

> **(2)** **Developer RE1 is Likely to Succeed on its Breach of the Duty of Good Faith and Fair Dealing Claim.**

In the District, all contracts contain an implied duty of good faith and fair dealing.

*See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006). In essence, "neither party shall

do anything which will have the effect of destroying or injuring the right of the other party to

receive the fruits of the contract." *White v. WCP Fund I, LLC (In re ETS of Wash., LLC)*, Nos.

20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr. D.D.C. Jan. 14, 2022).

Developer RE1 has alleged facts showing that WCP and the WCP Fund breached the implied

duty of good faith and fair dealing. Making up defaults after the fact in order to put pressure on

someone, whether that pressure is to pay someone else's debt, or to extract exorbitant "default"

<div align="center">14</div>

4878-8731-9407

fees and unenforceable penalties, are textbook examples of bad faith.  Developer RE1 has also shown that the Defendants are taking improper actions under the loan documents for the purpose of injuring the rights of Developer RE1 (and others) and to try to deprive Developer RE1 of the value of the Property.

        (3)    <u>Developer RE1 Is Likely to Prevail on Its Claims that the Defendants' Allegations of Default Were Pretextual – and that any of the Alleged Defaults Could Not Support a Valid Basis for a Foreclosure Sale</u>.

The facts alleged by Developer RE1 demonstrate that Mr. Huertas declared Developer RE1 in default for pre-textual reasons.  More importantly, the default claims that were alleged were either incorrect as a matter of law, or were subsequently cured, so they could not be used as a basis upon which to invoke the "death penalty" remedy of a foreclosure.  The loan documents themselves support Developer RE1's position because a foreclosure sale is expressly conditioned upon the "continuance of" an Event of Default.  *See* Exs. A and C (Deeds of Trust) at page 13, Section 8.0 (a) ("During *the continuance of* any Event of Default, the Trustee [may conduct a foreclosure sale]" and Section 8.0 (b) (also conditioning the exercise of other remedies upon "*the continuance of* any Event of Default") (italic emphasis added).

        (4)    <u>Developer RE1 is Likely to Prevail on Its Claim that It Is Not an Affiliate of 423 Kennedy (or Any Other Entity)</u>.

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of the First DOT and the Second DOT allow them to declare a default because they claim that Developer RE1 is an "affiliate" of 423 Kennedy – a separate entity that is only partially owned by Mr. Negussie.  Section 7.9 in each deed of trust states:

15

> Other Indebtedness.  Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Exs. A and C (Deed of Trust) at pages 11-12 (emphasis added).  Although the First DOT and the Second DOT do not define the term "affiliate", under federal banking law the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code § 6809(6).  But Developer RE1, a sole purpose entity, is not under common control with 423 Kennedy or any other entity.  There is no business or other relationship between 423 Kennedy and Developer RE1.  Although Mr. Negussie does have a partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy.  Developer RE1 does not control 423 Kennedy and vice versa.  Both entities are sole purpose limited liability companies whose businesses are separate.  Cross-default provisions have also been found to be inherently suspect.  *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs. Operating, LLC (In Re Charter Communs.),* 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY 2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing them, a court should carefully scrutinize the facts and circumstances surrounding the particular transaction . . .").  The Defendants cannot rely upon the "affiliate" language in the cross-default provision (Section 7.9) to declare a default by Developer RE1.

> (5)     Developer RE1 is Likely to Prevail on Its Argument that any Alleged Defaults that Were Cured Cannot Be Used as a Basis to Foreclose on the Property.

In the District, "equity abhors forfeitures . . . [and] so indeed does the law."

*Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads*

16

*v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted). As the *Tsintolas Realty* decision

explained by using a sports (basketball) analogy, technical violations of a contract that cause no

harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule." To paraphrase an analogous passage in *In re DiMartino,* 108 B.R. 394, 403 (D.R.I.1989),
>
> [t]he no-harm-no-foul rule of the basketball court should be applied in this law court. Since [the landlord] has suffered no monetary harm from any alleged breach [of the settlement agreement], the [tenants are] not liable and there can be no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty,* 984 A.2d at 186-97 (citing with approval *Mira v. Nuclear Measurements*

*Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

Just like the landlord in *Tsintolas Realty,* the Defendants here are claiming technical

defaults that have all been cured to justify the forfeiture of property, after the fact, for which they

did not suffer actual damages. As the *Tsintolas Realty* court further elaborated:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira,* 107 F.3d at 473 (citing *Brock v. Robbins,* 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of monetary loss is *injuria absque dam-no,*" *Cagle v. Southern Bell Tel. & Tel. Co.,* 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977*) i.e.,* "a wrong which results in no loss or damage, and thus cannot sustain an action." *Mira,* 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)).

*Tsintolas Realty,* 984 A.2d at 187.

Developer RE1 is likely to prevail on its argument that any technical defaults that caused

no harm cannot serve as a basis for the foreclosure on a Property. *See Allen v. United States,* 603

A.2d 1219, 1227 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227 (1992) ("Proportionality is of

consummate importance in judicious adjudication[.]"). Other courts have also refused to allow a

forfeiture based upon an inconsequential breach of a contract. In *Miller v. Cain Partnership,*

*Ltd.,* No. 1993 Tenn. App. LEXIS 485, (Tenn. Ct. App. July 20, 1993), the court noted several,

general rules regarding forfeitures, such as: "Every reasonable presumption is against forfeiture

17

4878-8731-9407

and every intendment or presumption is against the party seeking to enforce the forfeiture",

(citing 17A C.J.S. Contracts § 407 (1963)) and that "[f]orfeitures are not favored in equity and

unless the penalty is fairly proportionate to the damages suffered by the breach, relief will be

granted when the [party seeking forfeiture] can, by compensation or otherwise, be placed in the

same condition as if the breach had not occurred.") (quoting *Hooten v. Nacarto GMC Truck,*

*Inc.,* 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989)).[7]  Because equity abhors a forfeiture, especially

when the party trying to effectuate the forfeiture has suffered no damages, the third injunctive

relief factor weighs in Developer RE1's favor.

> (6)    Developer RE1 is Likely to Prevail on Its Argument that the Claimed
> "Default Penalties" Are Unenforceable.

"The common law views liquidated damages clauses with a gimlet eye." *District*

*Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 723 (D.C. 2003).  The D.C. Court of Appeals

has generally upheld the enforcement of a liquidated damages provision "unless it is found to be

a penalty". *Burns v. Hanover Ins. Co.,* 454 A.2d 325, 237 (D.C. 1982).  And if the agreement

"to pay fixed sums plainly [is] without reasonable relation to any probable damage which may

follow a breach [, the provision] will not be enforced". *Order of AHEPA v. Travel Consultants,*

*Inc.,* 367 A.2d 119, 126 (D.C. 1976).  Here, the lender Defendants have admitted that part of the

amounts that the lender is trying to force Developer RE1 to pay to avoid a foreclosure sale are, in

fact, a penalty because they have actually described those charges as such.  *See* Ex. M (seeking

payment of a "Default Penalty" of $357,900.00 under the First DOT) and Ex. N (seeking a

---

[7]    *See also Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.,* 1998 U.S. Dist. Lexis 1327, *39-42 ("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one." ) (issuing an injunction to prevent the termination of a Joint Venture agreement based upon inconsequential violations and when there was substantial performance under the contract).

18

"Default Penalty" of \$52,400.00 under the Second DOT).[8]  Given these two admissions, Developer RE1 is likely to prevail on part of its declaratory judgment claim in Count III, *i.e.,* that the loan documents contain identical liquidated damage provisions that are unenforceable as a matter of law, and that the nonpayment of an unenforceable penalty cannot be used as the basis for a foreclosure sale.

C.      The Balance of the Injuries is Tipped Decidedly in Developer RE1's Favor.

The irreparable harm to Developer RE1 greatly outweighs any potential injury to the Defendants, who really can prove no injury because, but for their improper conduct, Developer RE1 would have gone to closing in December of 2022 and repaid the amounts owed in full.  The Defendants have suffered no identifiable injuries to date, and any harm that the WCP or the WCP Fund could arguably claim that Developer RE1 has caused them are wounds that are self-inflicted.  By pre-textually placing Developer RE1 in default, trying to improperly extort money from Developer RE1 (and others), trying to collect unenforceable penalties, and by directly interfering with, and delaying indefinitely, Developer RE1's closing on a refinance loan, the Defendants have effectively shot themselves in the foot.  The third injunctive relief factor also weighs in favor of Developer RE1.

D.      The Public Interest is Firmly in Favor of Stopping a Wrongful Foreclosure.

The public interest will be served by stopping a foreclosure when a lender has engaged in bad faith, predatory loan practices like those present here.  The public interest is also served by ensuring that debtors who are on a clear path try to repay their debts are rewarded, not penalized.  The public interest is not served by rewarding wrongdoers.  Here, Developer RE1 had

---

[8]      The "Default Penalty" is ten percent (10%) of the principal loan balance.  The loan documents also provide for a twenty-four percent (24%) default interest rate, the highest interest rate allowed by law.

19

4878-8731-9407

paid all amounts owed to the WCP and the WCP Fund before they issued Payoff Statements

demanding $727,598.77 in "default" penalties. At best, the defaults alleged by the Defendants

were technical violations of the First and Second DOT that caused no damages. The public

interest is not served if the Court, using another sports (tennis) analogy, allows "foot faults" to

decide a tennis match, especially in a case involving predatory lending practices. Allowing the

Defendants to move forward with a foreclosure under these circumstances would harm the public

as it would embolden the Defendants to engage in even more predatory lending practices. The

fourth and last injunctive relief factor also favors Developer RE1.

## V.     CONCLUSION

For these reasons, and for any reasons that may be advanced at a hearing on this motion,

the Plaintiff, Developer RE1 LLC, requests that this Honorable Court: (a) schedule an

emergency hearing on this motion; (b) enter the attached proposed order enjoining any

foreclosure sale, and (c) award such other and further relief as the Court may deem just and

proper.

<div style="margin-left:50%">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Dated:  July 11, 2022

/s/ James D. Sadowski
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

<div style="text-align:center">20</div>

4878-8731-9407

## REQUEST FOR AN EMERGENCY ORAL HEARING

The Plaintiff requests that its Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale be set for a hearing on an expedited basis prior to July 25, 2023.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by sending an email to counsel for the Defendants on July 11, 2023.  Counsel for Defendants did not consent to this motion.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale was served by the Court's electronic filing system this 11th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Alexandria J. Smith
Alexandria J. Smith

21

4878-8731-9407

Case 24-10023-ELG Doc 152-1 Filed 05/01/25 Entered 05/01/25 00:33:14 Desc
Exhibit B - All Pleadings Ad Ask Docket Forum Ref 9 Al Page 585 of 2207 Page 501 of 1716

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DPA CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2022 CAB 005935
Judge Ebony Scott

## [PROPOSED] ORDER

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale ("Emergency Motion"), any opposition thereto, the facts and arguments presented at the hearing, and a review of the record of this case, this Court finds that the Plaintiff has met the standards required for the issuance of temporary injunctive relief.  Accordingly, it is this _____ day of July, 2023, hereby

ORDERED that the Emergency Motion is GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, and it is

FURTHER ORDERED, that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order.

 

 

The Honorable Ebony Scott
Superior Court of the District of Columbia

1

4878-8731-9407

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

2

# EXHIBIT A

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                    Page 2 of 25

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                Page 3 of 25

Case 23-10078-ELG Doc 15-2 Filed 08/04/25 Entered 08/04/25 00:33:21 Desc
Exhibit B - All Pleadings And Docket Entries (part 2) Page 301 of 1716

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016                                                     Page 4 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                          Page 5 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

## 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

### 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

### 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

### 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

Page 6 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**4.3 Repairs and Waste.**

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

**4.4. Insurance.**

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

**4.5 Restoration Following Casualty.**

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

Page 7 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

606

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

ARTICLE V

NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016                                                                 Page 9 of 25

Case 24-10088-ELG Doc 1-2 Filed 03/30/25 Entered 03/30/25 00:33:14 Desc
Exhibit B - All Pleadings and Docket Entries (Part 2) Page 915 of 1716

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

## 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

## 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Case 23-10066-ELG Doc 115-2 Filed 06/04/25 Entered 06/04/25 00:33:21 Desc
Exhibit B - All Pleadings Ad filed Docket Entries Bates(part 0) Page 9 of 1716

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

### 7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

### 7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

### 7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

### 7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

### 7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                                                    Page 12 of 25

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

## 7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

## 8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

## 8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

## 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

## 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Case 23-10086-ELG Doc 115-2 Filed 09/04/25 Entered 09/04/25 00:35:21 Desc
Exhibit B - All Pleadings Also Docketed Independently (Bold) Page 920 of 1716

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

Page **17** of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016                                                      Page 18 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016                                                                 Page 19 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016

Page 20 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

Rev 5.2016                                                          Page 21 of 25

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

(SEAL)

By:     Mel Melaku Negussie
Its:     Managing Member


COUNTY OF *District of Columbia* ) SS:
STATE OF *City of Washington*

     I hereby certify on this **24** day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 5.2016

Page **23** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

622

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

698

# EXHIBIT B

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

December 23, 2021                                         $3,579,000.00

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.  **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                      Page 1 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.  **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3.  **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                         Page **2** of **9**

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.     <u>BORROWER'S RIGHT TO PREPAY</u>

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.     <u>BORROWER'S FAILURE TO PAY AS REQUIRED</u>

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;

b. If default be made in the performance of any other covenant contained in this Note;

c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of 24% per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                          Page 3 of 9

Case 23-10006-BH-G0-DH-A15-2 Document 00-1 Filed 09/30/25 Entered 09/30/25 08:33:14 Desc
Exhibit B - All Pleadings And Docket Entries Related To 5501 1st St NW Washington Page 200 of 1716

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                                                    Page 4 of 9

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                                 Page 5 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015                                                                 Page 6 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 10.  SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

## CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                                 Page 7 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015                                                          Page **8** of **9**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:    Solomone Abebaw Desta
Its:    Member

COUNTY OF _____
STATE OF _____

I hereby certify on this 24 day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 12.2015                                    Page **9** of **9**

608

# EXHIBIT C

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

     **THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

     WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

     WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

Case 24-10006-ELG Doc 15-2 Filed 08/30/24 Entered 09/30/24 08:33:24 Desc
Exhibit B - All Pleadings And Attachments Included (Part 3) Page 541 of 1716

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

636

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

Rev 5.2016

Page 3 of 25

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Rev 5.2016

Page 4 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016                                                                 Page 5 of 25

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

### 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

### 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

### 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

### 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

### 4.3 Repairs and Waste.

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

ARTICLE V

NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

Rev 5.2016                                                                 Page 9 of 25

Case 23-10086-BLS Doc 15-2 Filed 06/30/25 Entered 04/30/25 00:33:26 Desc
Exhibit B - All Pleadings And Miscellaneous Document(s) Page 549 of 1716

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

### 7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

### 7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

### 7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

### 7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

### 7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016                                                                 Page 11 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                                 Page 12 of 25

Case 24-10003-ELG Doc 115-2 Filed 08/04/25 Entered 08/04/25 00:33:24 Desc
Exhibit B - All Pleadings and Docket Entries (Bank of Anacostia) Page 552 of 1716

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

ARTICLE VIII

DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

647

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016                                                                 Page **15** of **25**

Case 24-10023-ELG Doc 152 Filed 06/04/25 Entered 06/04/25 00:33:27 Desc
Exhibit B - All Pleadings and Docket Entries (Part 4) Page 555 of 1716

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.


## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016                                                        Page **17** of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

      (a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

      (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

      (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

## 11.2 Severability.

      In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

## 11.3 Successors and Assigns.

      (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

      (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016                                     Page **18** of **25**

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

656

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">

### ARTICLE XII

### STATUTORY PROVISIONS

</div>

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">

**[Signature Page to Follow]**

</div>

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)

By:      Mel Melaku Negussie

Its:      Managing Member

COUNTY OF _____ ) SS:

STATE OF _____ )

    I hereby certify on this __24__ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 5.2016

Page 23 of 25

632

## EXHIBIT A

## LEGAL DESCRIPTION

Case 24-10023-ELG Doc 150-1 Filed 07/31/25 Entered 07/31/25 00:33:27 Desc
Exhibit B - All Pleadings Ad- Ask Docket Entries (good) Page 504 of 1716

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**      **December 23, 2021**

**Borrower(s):**      **Developer RE1 LLC**

**Property Address:**  **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.

Doc #: 2022000482
Filed & Recorded
01/03/2022 12:42 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $150.00
  SURCHARGE               $6.50
  RECORDATION TAX FEES    $13,100.00
TOTAL:                    $13,256.50

# EXHIBIT D

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.  BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property.  So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property.  However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.  **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion.  Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                              Page 1 of 9

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2.    INTEREST

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

## 3.    PAYMENTS

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                                                                     Page 2 of 9

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

  a. If default be made in any payment due under this Note;
  b. If default be made in the performance of any other covenant contained in this Note;
  c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
  d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015 Page 4 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof.  "Presentment" means the right to require the Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                                 Page 5 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.   SUCCESSORS AND ASSIGNS

(a)   Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)   Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)   Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015                                                                                           Page 6 of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                                 Page 7 of 9

Case 24-10036-BLG0-DnA152 Doc Filed 05/31/25 Filed 10/30/25 00:33:21 Desc
Exhibit B - All Pleadings Ad Diskenatoru bargain 7010 Page 575 of 1716

5305 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011

LOAN-006182
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

Page **8** of 9

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF *City of Washington* )SS:
STATE OF *District of Columbia* )

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 12.2015                                                        Page 9 of 9

# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:**   Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:**   Daniel Huertas

**To:**     mel negussie

**CC:**     Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project

**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

Case 23-10597-BLS Doc 152 Filed 05/01/25 Entered 04/04/25 09:33:14 Desc
Exhibit B - All Pleadings Ad Hoc Docketed Bar (Part 7) Page 565 of 2207 Page 581 of 1716

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time

**From:** mel negussie

**To:** Daniel Huertas

**CC:** Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone


> On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:
>
> HI Daniel,
>
> My apologies for the delayed response.
>
> Yes, we are working and making progress to refinance both projects out of WCP.
>
> Regards,
> Mel

---

Page 1 of 3

677

# EXHIBIT H

Case 24-10036-BLS Doc 15-2 Filed 05/01/25 Entered 09/04/25 00:33:14 Desc
Exhibit B - All Pleadings Ad Hoc Protective Body (Joint) December 2022 to Page 584 of 1716

**Subject:** 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time

**From:** mel negussie

**To:** Cara Farley, Leslie Calderas

**CC:** Darralyn Brown

**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time

**From:** Cara Farley

**To:** mel negussie

**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown <darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

> On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:

Hi Mel,

Payoff requests received. What good through date would you like?

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 11:58 AM
**To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
**Cc:** Darralyn Brown <darralyn@districttitle.com>
**Subject:** 71 Kennedy (5505 1st Street)

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Page 1 of 2**

# EXHIBIT J

| **Subject:** | Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
|---|---|
| **Date:** | Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time |
| **From:** | Leslie Calderas |
| **To:** | mel negussie |
| **CC:** | Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas |
| **Attachments:** | image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf |

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**


## Leslie Calderas  l  Servicing Manager

Washington Capital Partners
www.washingtoncapitalpartners.com
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

# EXHIBIT K

Case 24-10077-ELG Doc 15-2 Filed 07/30/25 Entered 07/30/25 03:33:24 Desc
Exhibit B - All Pleadings And All Docket Together (Part 8) Page 590 of 716



12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

Re:     **NOTICE OF DEFAULT**

5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT L



8401 Greensboro Dr Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**


Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

Re:    **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.    I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners
Servicing Department
8401 Greensboro Dr Suite 960
McLean, VA 22102
Office - (703)-348-0549 ext. 924
Email - servicing@wcp.team**

# EXHIBIT M

Case 23-10037-ELG Doc 15-2 Filed 05/01/25 Entered 05/01/25 00:33:14 Desc
Exhibit B - All Pleadings And Attached Exhibits (Part 8) Page 678 of 2207
Case 23-10037-ELG Doc A15-1 Document 05/01/25 Entered 05/01/25 00:33:21 Desc
Exhibit B - All Docket Future Balance (Part 8) Page 594 of 1716




# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | |
|---|---|
| **Payable to:** WCP Servicing LLC | **Bank Name: United Bank** |
| 8401 Greensboro Dr Suite 960 | **Routing Number:** ▮▮▮▮▮▮ |
| McLean, VA 22102 | **Account Number:** ▮▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006120 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

Case 24-10056-CTG Doc 15-2 Filed 06/04/25 Entered 06/04/25 00:38:14 Desc
Exhibit B - All Pleadings Ad Hoc Docketed Bar (joint) Album 5679 univ 207 Page 595 of 1716

# EXHIBIT N




# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| Payable to: | WCP Servicing LLC | Bank Name: United Bank |
|---|---|---|
| | 8401 Greensboro Dr Suite 960 | Routing Number: ▇▇▇▇▇▇ |
| | McLean, VA 22102 | Account Number: ▇▇▇▇▇▇ |

When sending the wire please reference our loan number, LOAN-006182 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

Case 24-10084-BLS  Doc A15-1  Filed 07/21/25  Entered 04/04/25 00:33:27  Desc

# EXHIBIT O

## James D. Sadowski

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |

| | |
|---|---|
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

### 5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

### 423 Kennedy Street, NW (Lot 0056 in Square 3260)

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

---------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

---------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

---------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

---------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** ǀ **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document.  Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default".  Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy.  As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today.  I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400, x5407
Fax:  202.452.1410
E-mail:  jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING:  administrator@gdllaw.com. THANK YOU.  FOR MESSAGES TO CONSUMER DEBTORS:  THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

3

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners
https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT P

| **Subject:** | PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute |
|---|---|
| **Date:** | Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time |
| **From:** | mel negussie |
| **To:** | Administrative.Hearings@dcwater.com |
| **BCC:** | Chapman Paret |
| **Priority:** | High |
| **Attachments:** | 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf |

Dear Administrative Hearing Officer,

Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from February to June 2022.
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.

Thank you.

Mel Negussie
(202)271-5046 cell



David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY  |  1385 CANAL STREET, SE  |  WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

Case Number:      22-594546
Account Name:     2002583-9                              Account Number:   2002583-9
Service Address:  5501 1st St NW                          Bill Class:             Commercial
Dispute Date:       09/22/22                               CCF:                    2,156.99
Bill Period (Start): 01/20/22                              Bill Period (End):    06/16/22
Meter Size:          1"                                    Read Type:            Act
Bill Date(s):        02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

**PETITION FOR ADMINISTRATIVE HEARING**

Indicate your relationship to the property: Owner___  Legal/Rep___  Tenant___  3rd Party/Non-Occupant___  Mgt Company___
Indicate the property occupancy status during the dispute period: Vacant___  Occupied___ (Number of Occupants _____)
Daytime/Best Contact Phone Number: 202-271-5046          Email: mel@ntconstruction.net

Please provide a statement of facts concerning the disputed charges.  Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges.  Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because:  We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

Case 24-10036-BLG 60-Dkt 15-1 Doc Filed 05/30/25 Filed 04/30/25 Page 263 of 149 Desc
Exhibit B - All Pleadings Ad Risk Docket Eq Bar Part 10 A Page 59 of 2207 Page 606 of 1716

Signature _____*Mel Negussie*_____ Date 09/22/22

# EXHIBIT Q

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

SSL:            3389- -0138
Amount Paid:    $16,522.89
Submitted Date: 16-Oct-2022

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

Case 23-10063-KHS Doc 152 Filed 05/31/25 Entered 09/04/25 00:23:14 Desc
Exhibit B - All Pleadings and Docket Entries (Part 10) Page 609 of 1716

# EXHIBIT R

**Subject:** Payment request submitted

**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time

**From:** DoNotReply_MyTax@dc.gov

**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**
Your request confirmation code is: **dmgcxd**

Payment Amount: $222.28
Payment Date: 19-Oct-2022
Submitted Date: 19-Oct-2022

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:

(202) 759-1946

e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

# EXHIBIT S

Case 24-10036-BLG-0 Doc A15-1 Doc 60 Filed 05/30/25 Filed 04/30/25 Page 263 of 1449
Exhibit B - All Pleadings and Ad Ask Docket Entries (Part 7) Albert 695 of 2207 Page 612 of 1716

| Property: | 5501 1st St NW Washington DC 20011-5207 | |
|---|---|---|

### Interest Payments

| Date | DOT1 | DOT2 |
|---|---|---|
| 12/23/2021 | $ 7,149.05 | $ 1,570.69 |
| 2/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 3/1/2022 | $ 22,241.50 | $ 4,886.59 |
| 4/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 5/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 6/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 7/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 8/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 9/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 10/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 11/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 12/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 1/1/2023 | $ 24,624.51 | $ 5,410.15 |
| TOTAL | $ 297,082.84 | $ 65,270.85 |

| GRAND TOTAL | | $ 362,353.69 |
|---|---|---|



https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem





https://payment-link.azurewebsites.net/p/wemncil6kzuufc2oho5fnlwrca

| 5505 1st St NW Washington DC 20011-5207 | Paid ⊘ |
| Payment Amount: $7,149.05, Due Date: 12/23/2021 | |



https://payment-link.azurewebsites.net/p/f2q5h2herzzexmcuhjyifqmxly



Case 24-10023-BLS Doc 152 Filed 05/24/25 Entered 05/24/25 00:23:24 Desc
Exhibit B - All Pleadings - Ad Hoc Noteholders (Part 1A) Page 670 of 2207



https://payment-link.azurewebsites.net/p/ksvjeak4y55e7cxwx7xoozkb64





https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i

5505 1st St NW Washington DC 20011-5207
Payment Amount: $22,241.50, Due Date: 03/01/2022

Paid ✓



https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu

| 5505 1st St NW Washington DC 20011-5207 | Paid ⊘ |
|---|---|
| Payment Amount: $4,886.59, Due Date: 03/01/2022 | |



https://payment-link.azurewebsites.net/p/yzpa3n44h5zejfqrsleyyhmrym

5505 1st St NW Washington DC 20011-5207
Payment Amount: $24,624.51, Due Date: 04/01/2022

Paid ⊘



https://payment-link.azurewebsites.net/p/d3w2fql27mfunejlkvllizumfm

---

**5505 1st St NW Washington DC 20011-5207**
Payment Amount: $5,410.15, Due Date: 04/01/2022       Paid ⊘



https://payment-link.azurewebsites.net/p/r6erh7x535yezhylap6ou3otiy

5505 1st St NW Washington DC 20011-5207                                    Paid ⊘
Payment Amount: $23,830.18, Due Date: 05/01/2022



https://payment-link.azurewebsites.net/p/d2pcoslb46gutkikkqyxzbyvca





https://payment-link.azurewebsites.net/p/y34iwxninxauporpzmnk2brfqm

5505 1st St NW Washington DC 20011-5207                                                          Paid ⊘
Payment Amount: $5,410.15, Due Date: 06/01/2022



https://payment-link.azurewebsites.net/p/4xvy3ths7e7uxec57jkuh2544e

| 5505 1st St NW Washington DC 20011-5207 | Paid ⊘ |
|---|---|
| Payment Amount: $24,624.51, Due Date: 06/01/2022 | |

Case 24-10097-BLS Doc 152-1 Filed 05/01/25 Entered 05/01/25 00:23:21 Desc
Exhibit B - All Pleadings Ad Hoc Docket Entries (Part 2) Albageo. 709 of 2207 Page 625 of 1716



https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44

| 5505 1st St NW Washington DC 20011-5207 | Paid ✓ |
| Payment Amount: $23,830.18, Due Date: 07/01/2022 | |



https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim



Case 24-10023-BLS0-DHA 152 Doc 150-1 Filed 05/08/25 Entered 05/08/25 09:23:14 Desc
Exhibit B - All Pleadings Ad-Ask Docket Entries (Part 2) Albuquerque Entries Page 628 of 1716



https://payment-link.azurewebsites.net/p/pr5kz57aym4enmaunbtelaaoay

5505 1st St NW Washington DC 20011-5207
Payment Amount: $24,624.51, Due Date: 08/01/2022

Paid ⊘



https://payment-link.azurewebsites.net/p/72zj23dwy3befj2t3zmubm5q5y



Case 24-10023-BLS-DSC-DPA-15-1 Doc 4 Filed 05/24/25 Filed 04/24/25 08:33:14 Desc
Exhibit B - All Pleadings Ad Ad Docket Entries (part 2) Album 571 Page 1 of 2207 Page 630 of 1716



https://payment-link.azurewebsites.net/p/lfj6ok6ibw4ebdueuaf25oq3pm





https://payment-link.azurewebsites.net/p/gbn36foeqtbena46chwbddcc4u





https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4





https://payment-link.azurewebsites.net/p/g4vp4rd6blvutaqdul7uqcrtu4



Case 24-10036-BLS Doc 1157 Filed 06/04/25 Entered 04/04/25 00:33:14 Desc
Exhibit B - All Pleadings Ad Pick Docket Entries Part 2 Album 2571 nf 2207 Page 634 of 1716



https://payment-link.azurewebsites.net/p/5meblfjkux6exb2vetchavxs44





https://payment-link.azurewebsites.net/p/5tztzp34yqbupnd4zml3jkvvkm

5505 1st St NW Washington DC 20011-5207
Payment Amount: $23,830.18, Due Date: 12/01/2022                    Paid ⊘

Case 24-10023-ELG Doc 15-2 Filed 05/01/25 Filed 04/04/25 Page 636 of 1716
Exhibit B - All Pleadings Ad Bk Docket together (Part 3A) Page 71 of 2207



https://payment-link.azurewebsites.net/p/sxtrel2sudcuteqpdscyz4wj4m

5505 1st St NW Washington DC 20011-5207                                    Paid ⊘
Payment Amount: $5,235.63, Due Date: 12/01/2022

Case 24-10023-BLS Doc 152 Filed 05/30/25 Filed/Entered 09/30/25 00:35:24 Desc
Exhibit B - All Pleadings and Ask Docket Enter Safari Print 3 Albany - Entries Page 637 of 1716



https://payment-link.azurewebsites.net/p/xk23at4ou5gedgfy7zmsatcely





https://payment-link.azurewebsites.net/p/o2wbn2jv7ktu5bujqmkfcihl6e



# EXHIBIT T

Doc#: 2023048713
Filed & Recorded
06/12/2023 08:51 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



Customer Service 202-354-3750

## DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 Canal Street, SE | Washington, DC 20003

### DELINQUENT ACCOUNTS SECTION

DC Water and Sewer Authority
vs.
DEVELOPER RE1 LLC
1629 K ST NW, STE 300
WASHINGTON, DC 20006

Date: 06/12/2023

Account No.: 2002583-9
Service Address: 5501 1ST ST NW
Square: 3389 Suffix: Lot: 0138

**RE: Document No: 2022090397**
**Date: August 29, 2022**

### RELEASE OF LIEN

 This release of lien is filed pursuant to Title 34, Chapter 24, Section 2407.02, of the District of Columbia Code. (2001 ed.). The above referenced lien has been released for the reason listed below. Accordingly, the Recorder of Deeds of the District of Columbia may record this release of lien.

Reason for Release: **PAID IN FULL**

**Recommended By:**

*Denise Page*

Supervisor, Credit & Collections Department
of Customer Service, DC Water & Sewer
Authority

**Approved By:**

*[signature]*

Manager, Credit & Collections Department
of Customer Service, DC Water & Sewer
Authority

**Acknowledged By:**

**Recorder of Deeds**
**Government of the District of Columbia**

DEVELOPER RE1 LLC
C/O
1629 K ST NW, STE 300
WASHINGTON, DC 20006

# EXHIBIT U

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

Square | 3389 | Suffix | | Lot | 0138

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: Developer RE1 LLC

See Exhibit A

FROM: SF NU, LLC  PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON July 25 , 20 23 , AT THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:00 P.M. THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on January 3 , 20 22 .

Liber: | Folio: | Instrument No: 2022000482

Maker(s) of the Note secured by the instrument: Developer RE1 LLC

See Exhibit A | See Exhibit A
Phone | Last Known Address

Description of Property: commercial building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 5501 1st Street, NW, Washington, DC 20011

Square: 3389 Lot: 0138 or Parcel No:

Holder of the Note (Name): SF NU, LLC
Phone: (703) 727-5464 Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 678,554.78 *
Minimum balance required to cure default obligation pursuant to D.C. Law 5-82
ìRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î
$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin
Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015 Phone: (202) 223-7900

** as of June 23, 2023

Affidavit of Non-Residential Mortgage Foreclosure recorded on June 22, 2023 as Instrument No. 2023052259

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374**

Square | 3389 |   Suffix |   |   Lot | 0138

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on | June 23 |  ,20 | 23 |; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

| 06/23/2023 |

Date   _____

(Signature of Noteholder or his agent)

I, | Deborah A. Stewart |  , a Notary Public in and for the

| District of Columbia |  ,

DO HEREBY CERTIFY THAT | Russell S. Drazin |

who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the | 23rd | day of | June |, 20| 23 |, personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be | his | act and deed.

Given under my hand and seal this | 23rd | day of | June |, 20| 23 |.

_____
Notary Public

My Commission Expires: | 09/30/2025 |
mmddyyyy



# EXHIBIT A

<u>Borrower, Grantor, Record Owner</u>:

**Developer RE1 LLC**, a District of Columbia limited liability company

5501 1st Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

4600 S. Four Mile Run Drive, Apt. 227, Arlington, VA 22204

8922 Tonbridge Terrace, Hyattsville, MD 20783

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

(202) 775-0457
(202) 244-4245
(571) 481-0289

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
202-223-7900

## TRUSTEE'S SALE
## OF REAL PROPERTY

5501 1st Street, NW
Washington, DC 20011

Lot 0138 in Square 3389

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000482 from Developer RE1 LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $524,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

## JULY 25, 2023 AT 2:00 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 5501 1st Street, NW, Washington, DC 20011 (Lot 0138 in Square 3389), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000481 from Developer RE1 LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $3,579,000.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $60,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at

the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374

Developer RE1 LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0138/3389
Lot/Square Number:

I, Christina Araujo [name], Vice President of Finance [title]

of WCP Fund I LLC, as servicer to SF NU, LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

5501 1st Street, NW, Washington, DC 20011

3. SF NU, LLC is the holder of the mortgage recorded as Instrument Number 2022000482 in the District of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

SSL:

3389/0138

Recording requested by:

Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on this 21st day of June, 20 23

by Christina Araujo (name of person) as

Vice President of Finance (type of authority, e.g. officer, trustee, etc.) of WCP Fund I LLC, as servicer to SF NU, LLC
(name of party on behalf of whom instrument was executed).

Notary Public

My Commission Expires:

*[Notary seal: MUHAMMAD T BILAL, NOTARY PUBLIC, REG. #7637841, MY COMMISSION EXPIRES JUNE 30, 2023, COMMONWEALTH OF VIRGINIA]*

```
Doc #: 2023052259
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $25.00
   SURCHARGE               $6.50
TOTAL:                    $31.50
```

eFiled
07/11/2023 10:34:10 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
               8/10/2023

### PLAINTIFF'S OPPOSED MOTION TO EXCEED THE PAGE LIMIT IN AN EMERGENCY MOTION

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, moves this Court to allow Developer RE1 to exceed the page limit in an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Emergency Motion") that will soon be filed by Developer RE1. In support of its Motion, Developer RE1 represents to the Court that:

1. This case primarily involves a dispute concerning improper allegations of defaults under mortgage loan documents and whether certain provisions of those loan documents include unenforceable liquidated damages provisions.

2. Developer RE1 filed this case because in December of 2022 its lender, the Defendant WCP Fund I, LLC ("WCP Fund I"), acting through its loan serving agent, Defendant DP Capital, LLC d/b/a Washington Capital Partners ("WCP"), had threatened to foreclose on the improved real property owned by Developer RE1 for improper reasons.

4874-6842-6607

3.      In Count IV of the First Amended Complaint, Developer RE1 seeks injunctive relief to prevent, among other things, any foreclosure under the loan documents while this case is being litigated. *See* First Am. Compl. at page 23 (subpart "(c)" of the request for relief).

4.      The December 2022 threat of foreclosure has now turned into a reality. In late June of 2023, Developer RE1 received a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice"). A copy of the Foreclosure Notice is attached as Exhibit A.

5.      The Foreclosure Notice sets the date of the foreclosure sale on July 25, 2023 at 2:00 p.m. – less than two weeks away. The foreclosure is being requested by an unknown company called "SF NU, LLC".

6.      SF NU, LLC is a New Mexico limited liability company that does not appear to have ever filed a certificate of authority to transact business in the District. SF NU, LLC is believed to be a company owned and controlled by one or more of the Defendants. Online research indicates that the phone number listed for SF NU, LLC on the Foreclosure Notice (703-727-5464) is linked to the WCP. That phone number is also the personal phone number of Defendant Daniel Huertas.

7.      Developer RE1 will be filing an opposed emergency motion that seeks the issuance of a temporary restraining order to stop the foreclosure sale on July 25, 2023 (the "Emergency Motion").

8.      The Emergency Motion contains a detailed factual background to assist the Court with understanding the factual background, the factual and legal basis for the claims, and the provisions of the loan documents that are being challenged. The factual background portion runs about nine pages.

2

4874-6842-6607

9.      The Emergency Motion also contains a thorough legal argument section that explains why Developer RE1 meets the standard for injunctive relief.

10.      Although the Court already has some knowledge of the factual background and legal claims in this case from reviewing the Defendants' Motion to Dismiss and Developer RE1's opposition to that motion, rather than incorporate all or part of its opposition by reference, Developer RE1 believes that the better practice is to include all of the information needed for the Court to make a decision as to the Emergency Motion in one, comprehensive filing.

11.      The Emergency Motion also includes multiple, important exhibits, some of which have been previously filed.  Those exhibits are included with the Emergency Motion so that the Court does not have to sift through or review any prior pleadings to find any of those important documents.

12.      Given the lengthy factual background, the number of claims in this case, the number of exhibits, and the exigency of the relief requested, the Emergency Motion will exceed fifteen pages by just four pages, excluding the signature page and required certifications.

13.      The Court's January 1, 2023, Supplemental General Order requires leave of court to file any motion or opposition with a legal memorandum exceeding fifteen (15) double-spaced pages in pages in length.

14.      No party will be prejudiced by the relief requested in this Motion.

15.      Good cause exists to allow Developer RE1 to file its Emergency Motion, which should not exceed nineteen pages, excluding the signature page, the required certifications, and the exhibits.

3

4874-6842-6607

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 11, 2023

/s/ Alexandria J. Smith
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by sending

an email to counsel for the Defendants on July 10, 2023. Counsel for the Defendants reply email

indicated that "I am not sure why the briefs would need to be that long, but I'm happy to

discuss", so consent was not obtained.[1]

/s/ Alexandria J. Smith
Alexandria J. Smith

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Opposed Motion to Exceed Page Limit in

an Emergency Filing was served by the Court's electronic filing system this 11th day of July

2023, and a notice of filing should be served on all counsel of record.

/s/ Alexandria J. Smith
Alexandria J. Smith

---

[1] Developer RE1 will supplement this consent certification after a meet and confer session is held over several discovery issues with Defendants' counsel. Developer RE1 notes that the Motion to Dismiss filed by the Defendants on January 26, 2023 was twenty pages in length.

4

4874-6842-6607

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DEVELOPER RE1 LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL., <br><br> *Defendants*. | Case No. 2022-CAB-005935 <br> Judge Ebony Scott <br> Next Event: Close of Discovery <br> 8/10/2023 |

## [PROPOSED] ORDER GRANTING PLAINTIFF'S OPPOSED MOTION TO EXCEED PAGE LIMIT

UPON CONSIDERATION of the Plaintiff's Opposed Motion to Exceed Page Limit in an Emergency Filing ("Motion"), and any opposition thereto, the Court funds good cause to grant the relief requested in the Motion.

Accordingly, it is this _____ day of _____, 2023, hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Plaintiff may file an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale that does not exceed twenty (20) pages, excluding from the page count the signature page, the request for a hearing, the certificate of consent, the certificate of service, and the Exhibits.

SO ORDERED.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

4874-6842-6607

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

4874-6842-6607

# EXHIBIT A

# NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square | 3389 | Suffix | | Lot | 0138

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: Developer RE1 LLC

See Exhibit A

FROM: SF NU, LLC    PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON  July 25  , 20 23 , AT THE OFFICE OF  Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:00  P.M.    THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052259

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on  January 3  , 20 22 .

Liber: | Folio: | Instrument No: 2022000482

Maker(s) of the Note secured by the instrument: Developer RE1 LLC

See Exhibit A    See Exhibit A
Phone    Last Known Address

Description of Property: commercial building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 5501 1st Street, NW, Washington, DC 20011

Square: 3389    Lot: 0138    or Parcel No:

Holder of the Note (Name): SF NU, LLC

Phone: (703) 727-5464    Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 678,554.78 **

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 ìRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î

$  N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin
Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015    Phone: (202) 223-7900

** as of June 23, 2023

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the District of Columbia**

Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
Phone (202)727-5374

Square | 3389 | Suffix | | Lot | 0138

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on | June 23 | ,20| 23 |; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

| 06/23/2023 |

Date

(Signature of Noteholder or his agent)

I, | Deborah A. Stewart | , a Notary Public in and for the

| District of Columbia |  ,

DO HEREBY CERTIFY THAT | Russell S. Drazin |

who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the | 23rd | day of | June | , 20| 23 |, personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be | his | act and deed.

Given under my hand and seal this | 23rd | day of | June | , 20| 23 |.

Notary Public

My Commission Expires: | 09/30/2025 |
mmddyyyy



# EXHIBIT A

<u>Borrower, Grantor, Record Owner</u>:

**Developer RE1 LLC**, a District of Columbia limited liability company

5501 1st Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

4600 S. Four Mile Run Drive, Apt. 227, Arlington, VA 22204

8922 Tonbridge Terrace, Hyattsville, MD 20783

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

(202) 775-0457
(202) 244-4245
(571) 481-0289

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
202-223-7900

## TRUSTEE'S SALE
## OF REAL PROPERTY

5501 1st Street, NW
Washington, DC 20011

Lot 0138 in Square 3389

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000482 from Developer RE1 LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $524,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

## JULY 25, 2023 AT 2:00 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 5501 1st Street, NW, Washington, DC 20011 (Lot 0138 in Square 3389), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000481 from Developer RE1 LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $3,579,000.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $60,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at

the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

------------------------------------------------------------------------------------------------

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374

## AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

Developer RE1 LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0138/3389
Lot/Square Number:

I, Christina Araujo [name], Vice President of Finance [title]

of WCP Fund I LLC, as servicer to SF NU, LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

5501 1st Street, NW, Washington, DC 20011

3. SF NU, LLC is the holder of the mortgage recorded as Instrument Number 2022000482 in the District of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on this 21st day of June, 20 23

by Christina Araujo (name of person) as

Vice President of Finance (type of authority, e.g. officer, trustee, etc.) of WCP Fund I LLC, as servicer to SF NU, LLC

(name of party on behalf of whom instrument was executed).

Notary Public

My Commission Expires:

SSL:

3389/0138

Recording requested by:

Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

MUHAMMAD T BILAL
NOTARY PUBLIC
REG. #7637841
MY COMMISSION
EXPIRES
JUNE 30, 2023
COMMONWEALTH OF VIRGINIA

Doc #: 2023052259
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $25.00
  SURCHARGE               $6.50
TOTAL:                    $31.50

eFiled
07/13/2023 4:05:05 PM
Superior Court
of the District of Columbia

### In the Superior Court of the District of Columbia
Civil Division

423 Kennedy St Holdings LLC,
1629 K Street, N.W - Suite 300
Washington, DC 20006

    *Plaintiff*,

v.

DP Capital, LLC d/b/a Washington
Capital Partners,
8401 Greensboro Drive - Suite 960
McLean, VA 22102,

WCP Fund I, LLC
2815 Hartland Road - Suite 200
Falls Church, VA 22043,

Daniel Huertas,
909 Chinquapin Road
McLean, VA 22102,

Russell S. Drazin
4400 Jenifer Street, NW - Suite 2
Washington, DC 20015,

  and

SF NU, LLC
1455 Research Boulevard - Suite 510
Rockville, MD 20850

    *Defendants*.

Case No: 2023-CAB-004260

### Verified Complaint

Comes Now The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, Russell Drazin, and SF NU, LLC.  This Verified Complaint

4884-5924-1840.v1

758

("Complaint") includes claims for breach of contract, tortious interference with business relations, breach of the duty of good faith and fair dealing, and breach of fiduciary duty by a Trustee. The Complaint also seeks a declaratory judgment as to the meaning of certain provisions in two Deeds of Trust, that certain provisions are unenforceable as a matter of law, that the Trustee has a conflict of interest that prevents him from serving as Trustee, and that actions taken by the Trustee are invalid and must be set aside or suspended. The Complaint also seeks injunctive relief to prevent a foreclosure. In support of its Complaint, 423 Kennedy avers as follows:

<div align="center">THE PARTIES</div>

1.      The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy") is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners". For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund and services its loans.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6.      The fourth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the

<div align="center">2</div>

4884-5924-1840.v1

District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU will be referred to as the "Lender Defendants".

7.      The fifth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP, the WCP Fund, and SFNU.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

<div align="center">STATEMENT OF FACTS APPLICABLE TO ALL COUNTS</div>

The WCP Claims that It Is a Company That Can be Trusted and That It Has an
"Unwavering Commitment to the Highest Ethical Standards"

8.      In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and
>
> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.      But in reality, the WCP does not have the highest ethical standards.  The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make one, if not more, of their clients' construction projects fail.

<div align="center">3</div>

4884-5924-1840.v1

The Ownership of 423 Kennedy, Its Purpose, and the Property.

10.     423 Kennedy is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "Property").

11.     423 Kennedy is a domestic, sole purpose, limited liability company, and the sole purpose of 423 Kennedy is to own and develop the Property.

12.     The Defendants all knew that 423 Kennedy was a sole purpose entity whose only asset was the Property and any the improvements that 423 Kennedy made to the Property.

13.     423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

14.     The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

15.     On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the Property with the WPC Fund.

16.     Due to unforeseen complications with the soil and water at the Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide Construction Draws to Fund the Project

17.     As part of the refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed.  The WCP and the WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing.

4

4884-5924-1840.v1

18.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

19.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing.  423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

<u>The Loan Documents with the WCP and the WCP Fund</u>

20.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

21.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

22.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First DOT before it was signed.

23.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

24.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First Note before it was signed.

5

4884-5924-1840.v1

26. On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee. A true copy of the Second DOT is attached as Exhibit C.

27. The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

28. The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second DOT before it was signed

29. On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $1,256.000.00, as "Borrower", a copy of which is attached as Exhibit D.

30. The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

31. The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second Note before it was signed.

32. As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

33. The new, refinanced loans were set to mature on March 31, 2023.

34. Beginning in April of 2022, the WCP and the WCP Fund started providing construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to closing.

35. The WCP Fund may have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment"). The Assignment lists Mr. Huertas as trustee, but

6

4884-5924-1840.v1

has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

36.     Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the Property with another lender.

37.     As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

38.     As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the Property by Starving 423 Kennedy of Construction Draw Funds.

39.     On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

40.     The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

41.     The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

42.     On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WEP Fund to retire the balances owed under the

7

4884-5924-1840.v1

First Note and to release the First DOT from the Property. A true copy of the October 24, 2022 Payoff Statement for the first loan is attached as Exhibit E.

43. On or about October 24, 2022, WCP transmitted a Payoff Statement for the Second Note listing the amounts required to pay the balance due to the WEP Fund under the Second Note and to release the Second DOT from the Property. A true copy of the Payoff Statement for the second loan is attached as Exhibit F.

44. As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

45. As of October 24, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

46. On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr. Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy. Mr. Huertas stated that WCP "would not provide any construction loan draws to 423 Kennedy". A copy of the November 3, 2022 email is attached as Exhibit G.

47. As of November 3, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

48. As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

49. On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws. A copy of the November 15, 2022 email is attached as Exhibit H.

8

50. As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

51. By as early as November 17, 2022, the Defendants each knew that 423 Kennedy had secured alternative financing for the Property with another lender named Main Street Bank, and that 423 Kennedy expected to close on the new refinancing loan with Main Street Bank in December of 2022.

52. On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WEP Fund under the First Note and to release the First DOT from the Property. A true copy of the November 21, 2022 Payoff Statement for the first loan is attached as Exhibit I.

53. On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WEP Fund under the Second Note and to release the Second DOT from the Property. A true copy of the November 21, 2022 Payoff Statement for the second loan is attached as Exhibit J.

54. As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

55. WCP sent all the Payoff Statements listed in paragraphs 42, 43, 52, and 53 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

56. None of the Payoff Statements that are referenced in paragraphs 42, 43, 52, and 53 included any request by any Defendant for the payment of default fees, default interest, or any

<div align="center">9</div>

other amount that was based upon any allegation that there was a "default" by 423 Kennedy

under either the First Note, the Second Note, the First DOT or the Second DOT.

> **After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr.
> Huertas Then Demands that Either 423 Kennedy or Mr. Negussie Resolve Another Debt
> Owed to the WCP for Another, Unrelated Project, "Or Else".**

57.     As of December 8, 2022, 423 Kennedy had made all payments due under the First

Note and the Second Note.  By that date, 423 Kennedy had paid $514,560.80 in interest

payments to the WCP Fund.  That interest amount is in addition to prior payments made by 423

Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

58.     On December 8, 2022, Mr. Huertas told 423 Kennedy during a telephone call with

Mr. Negussie that the Defendants and an unnamed investor were displeased with how the

development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the

"2507 I Street Project".

59.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

60.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the

payoff statements recently issued and that he was defaulting all loans that Mr. Negussie was

associated with at WCP, including 423 Kennedy." Mr. Huertas further stated that the 2507 I

Street Project has "turned out very bad and that the person who lent the money to WCP

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the

quality of the work done".  Mr. Huertas further stated that the Investor Lender "is very wealthy

and will make life hard for you", and "has now bought the notes" on 423 Kennedy and another

project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why

don't you do the honorable thing and have your investors buy 2507 I St to make things right" or

have them "take care of the $700,000" shortfall on the 2507 I Street Project.

<div align="center">10</div>

61. During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

62. During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force 423 Kennedy or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

63. After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements that were sent to 423 Kennedy were withdrawn and that he would place 423 Kennedy and the borrower on another, unrelated project named Developer RE1, LLC ("Developer RE1") in default under their loan documents with the WCP Fund.

64. The Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

65. The Defendants knew that the sole purpose of Developer RE1 is to develop the property located in the District at 5501 First Street, NW.

66. The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

67. The Defendants knew that 423 Kennedy does not control Developer RE1 and Developer RE1 does not control 423 Kennedy.

11

4884-5924-1840.v1

68. The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

69. Mr. Huertas provided no basis for why or how the Defendants could suddenly put 423 Kennedy in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put 423 Kennedy in "default" under two, unrelated loans because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

70. The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

71. The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

72. The Defendants knew that there is no legal or other business relationship between 423 Kennedy and 2507 Holdings.

73. The Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings. The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

74. The Defendants knew that Mr. Negussie does not have a controlling interest in either 423 Kennedy or 2507 Holdings.

75. The Defendants knew that 423 Kennedy has no interest in the 2507 I Street Project.

76. The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project.

<div align="center">12</div>

4884-5924-1840.v1

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to 423 Kennedy By
Improperly Demanding Payment of More than $1.5 Million in "Default Penalties" and
"Default Interest" and By Threatening 423 Kennedy With Foreclosure.</u>

77.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Mr. Negussie by email.  A true the "Notice of Default" is attached as Exhibit K.

78.      "Notice of Default" appears to reference either the First Note, the First DOT, the Second Note, and/or the Second DOT.

79.     The "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but it was not signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

80.     The "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to the notice.

81.     The lack of a signature on the "Notice of Default" and the failure by the WCP to include the referenced exhibit with the "Notice of Default" are indications that the notice was hastily prepared by either Mr. Huertas or by someone else at the WCP.

82.     The Notice of Default did not contain any legal basis or other explanation for how or why 423 Kennedy had defaulted under the terms of any of the loan documents.

83.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service,

13

4884-5924-1840.v1

charges prepaid, or three (3) calendar days after having been sent by
United States Registered or Certified Mail - Return Receipt Requested,
postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington
DC 20006

(b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls
Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn:
Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington,
DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200,
Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC,
Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2,
Washington, DC 20015

Any of the parties may designate a change of address by notice in writing
to the other.  Whenever in this Deed of Trust the giving of notice by mail
or otherwise is required, the giving of such notice may be waived in
writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

84.     In the First DOT and the Second DOT, email is not listed as a permissible means
to send notice.

85.     In the email that transmitted the letter purporting to be a "Notice of Default"
under one of the two loans, the WCP included two Payoff Statements.  A copy of the two Payoff
Statement that were included with the email transmitting each "Notice of Default" are attached
as Exhibits L and M.

86.     The new Payoff Statement sent by WCP for the first loan included a demand that
423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30.
Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423
Kennedy.

87.     The new Payoff Statement sent by WCP for the second loan including a demand
that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty".

14

4884-5924-1840.v1

Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by the WCP.

Mr. Huertas "Lawyers Up" and Asks Defendant Drazin to Come Up with A Cover Story.

88. After receiving the email with the Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the WCP and the WCP Fund were now claiming that 423 Kennedy was in default under any loan document. During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

89. On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to 423 Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that 423 Kennedy was in default of the loan documents when they each knew, in fact, that there were no defaults by 423 Kennedy under any of its loan documents.

90. On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring 423 Kennedy to be in default under any of the loan documents and to conceal the real reason why 423 Kennedy was improperly placed in default by the Defendants.

91. As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrower (423 Kennedy) and to the lender under the First DOT and the Second DOT.

92. As of December 8, 2022, Mr. Drazin knew that that his representation of the WCP and the WCP Fund as counsel created an actual conflict of interest with his fiduciary duty as Trustee to 423 Kennedy, as borrower. Nevertheless, Mr. Drazin willfully ignored the fiduciary

15

duty that he owed to 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

93.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to 421 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

94.     The real reason that the Lender Defendants improperly alleged that 423 Kennedy was in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

95.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

96.     There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from 423 Kennedy Street by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

97.     As a result of their evil, improper motive and their greed, the Defendants improperly alleged that 423 Kennedy was in default under the loan documents to try line their own pockets and to cause as much financial and reputational damage as possible to 423 Kennedy, to Mr. Negussie, and to Developer RE1.[1]

---

[1]     Developer RE1 filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct. *See Developer RE1, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al,* 2022-CAB-005935. That case is currently in the discovery phase.

4884-5924-1840.v1

98.     The Lender Defendants also caused WCP to issue each the "Notice of Default" to 423 Kennedy for the express purpose of trying to interfere with the refinancing of the loans that they knew that 423 Kennedy had secured with Main Street Bank.

99.     The Lender Defendants also caused WCP to issue the "Notice of Default" to 423 Kennedy for the express purpose of trying to prevent 423 Kennedy from being able to go to closing on the refinancing loan with Main Street Bank.

100.     The Lender Defendants also caused the WCP to issue the "Notice of Default" to 423 Kennedy for the express purpose of improperly pressuring either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or to SF NU).

101.     The Defendants knew that they had no legal right to demand that 423 Kennedy, Developer RE1, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

102.     The Defendants knew that they had no legal right, or factual basis, to claim that 423 Kennedy was in default of any loan document.

103.     The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon 423 Kennedy and its members.  The Defendants' misconduct is a form of extortion.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT</u>

104.     Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr. Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022

17

as Instrument No. 2022114185 ("Fine Certificate"). A copy of Mr. Drazin's reply email listing the alleged defaults is attached as Exhibit N.

105. The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00. A true copy of the NOI is attached at Exhibit O.

106. 423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

107. On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. A copy of the Final Order is attached as Exhibit P.

108. 423 Kennedy noted an appeal of the Final Order on September 12, 2022. A copy is 423 Kennedy's appeal is attached as Exhibit Q.

109. Pursuant to Section 7.6 of the First DOT and the Second DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

110. 423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI. However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that was sent to it by The Defendant was improper and was sent as a pretext, on December 10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was recorded as a result of the NOI. A copy of confirmation of the $1,657.34 payment to the District is attached as Exhibit R.

18

4884-5924-1840.v1

111.     December 10, 2022 is less than thirty days after November 17, 2022.

112.     On December 11, 2022, the District of Columbia Office of Administrative

Hearings (OAH) vacated the Final Order.  *See* Exhibit S.

113.     There are no outstanding fines owed by 423 Kennedy to the District.

114.     423 Kennedy cannot be declared in "default" based upon the first pre-textual basis

provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal

from, or to discharge (by payment), any lien filed by the District.

115.     The only provision of the loan documents that Mr. Drazin cited as a claimed basis

for a "default" by 423 Kennedy was Section 7.9 of the First DOT and the Second DOT.

116.     The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations
> secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any
> of their affiliates, to Beneficiary,* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

117.     The Defendants apparently claim that Section 7.9 is a cross-default provision.  A

cross-default provision in a contract is a provision that allows a "default" under one agreement to

constitute a "default" under another agreement.

118.     In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy,

two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document

<div align="center">19</div>

or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP

Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

119. The First DOT and the Second DOT do not define the term "affiliate." Under

federal banking law, the term "affiliate" means "any company that controls, is controlled by, or

is under common control with another company." 15 U.S. Code §6809 (6).

120. Developer RE1 does not control 423 Kennedy and vice versa.

121. Developer RE1 is not controlled by 423 Kennedy and vice versa.

122. There is also no common control of Developer RE1 and 423 Kennedy.

123. Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

124. Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the

Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred

by 423 Kennedy under either the First DOT or the Second DOT, even if Developer RE1 was

actually in "default" of any loan agreement with the WCP Fund.

125. Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover

story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that

423 Kennedy was in default of the First DOT and/or the Second DOT.

126. The Lender Defendants have, through their counsel Mr. Drazin, also improperly

claimed, without any legal right or justification that: "There is no right to cure. There is no right

to deceleration. There is no right to reinstatement. The Loans are in default and are

accelerated." *See* Ex. N (the use of "Loans" appears to be referring to the First Note, the First

DOT, the Second Note, and the Second DOT) (underlined emphasis in original).

20

4884-5924-1840.v1

<u>423 Kennedy Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices
Are Left Unchecked</u>

127.    On December 8, 2022, the Defendants threatened to foreclose on the Property even though they know that they had no legal right to foreclose on the Property.

128.    The Property has been improved by 423 Kennedy by constructing a mixed use, six level (including the lower cellar unit) building with thirty-three residential units and one commercial unit comprising 36,512 square feet.

129.    The improvements that 423 Kennedy made to the Property are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Defendants' misconduct.

130.    The Property has a current value of $11.9 million.

131.    There was no valid, legal basis under any provision of either the First DOT or the Second DOT that would have permitted the Defendants to foreclose on the Property.

132.    The Defendants deliberately sabotaged 423 Kennedy's ability to complete construction and its refinancing efforts.  But for the Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP Fund in full in December of 2022.

133.    The Defendants also deliberately timed their improper interference with 423 Kennedy's business relations during an approaching holiday period to make it impossible for 423 Kennedy to close on the refinancing loan with Main Street Bank prior to the end of this year, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property.

134.    On June 23, 2023, Mr. Drazin, apparently now acting on behalf of SF NU, sent to 423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").  A copy of the Foreclosure Notice is attached as Exhibit T.

21

4884-5924-1840.v1

135. The Foreclosure Notice sets the date and time of the foreclosure sale on July 25, 2023 at 2:10 p.m.

136. If the Defendants follow through on the scheduled foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors, will be irreparably harmed and they could lose their entire investment.

137. The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to inflict damages on 423 Kennedy and others, and they are intentionally and willfully disregarding 423 Kennedy's rights under the loan documents and under the law. The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

138. As of July 12, 2023, none of the Defendants have sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

<div align="center">

COUNT I

BREACH OF CONTRACT

Count I is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

</div>

139. Paragraphs 1-138 of the Complaint are incorporated by reference.

140. There was either an express contract or an implied-in-fact contract between 423 Kennedy and the WCP and the WCP Fund to fund construction draws.

141. The WCP and the WCP Fund breached the contract by unilaterally refusing to fund construction draws and due to no fault of 423 Kennedy.

142. To the extent that SF NU is found to have been assigned any rights in the contract from either the WCP or the WCP Fund, SF NU is bound by the contract and equally responsible for its breach.

<div align="center">

22

</div>

Case 24-10023-ELG Doc 15-1 Filed 05/01/25 Entered 09/04/25 00:23:14 Desc

143.    423 Kennedy has been damaged by the breach of contract by the WCP, the WCP Fund, and SF NU.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that under Count I this Honorable Court enter judgment in its favor and against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC for: (a) any and all damages (final amount to be determined) that 423 Kennedy has suffered and will suffer as a result of the Defendants' breach of contract (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## COUNT II
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count II is Asserted Against All Defendants Except Mr. Drazin

144.    Paragraphs 1-143 of the Complaint are incorporated by reference.

145.    423 Kennedy was in the process of closing on a refinancing loan with Main Street Bank.

146.    The Defendants each knew of the existence of 423 Kennedy's business relations with Main Street Bank.

147.    As a result of the Defendants' improper demand that 423 Kennedy pay Default Interest and Default Penalties, 423 Kennedy will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

148.    As a direct result of the Defendants' direct and continuing interference with 423 Kennedy's business relations with Main Street Bank, 423 Kennedy will not be able to go to closing on the refinancing loans with Main Street Bank or any other bank.

4884-5924-1840.v1

149.    The Defendants have intentionally interfered with 423 Kennedy's construction business and development of the Property and 423 Kennedy's refinancing of the loans with Main Street Bank without any valid justification.

150.    423 Kennedy has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that under Count II this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund I, LLC, Mr. Huertas, and SF NU, LLC for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with 423 Kennedy's business relations (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1 million; (d) costs; and (d) pre- and post-judgment interest.

## COUNT III
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count III Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

151.    Paragraphs 1- 150 of the Complaint are incorporated by reference.

152.    Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

153.    The First Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

154.    The First DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

24

155.    The Second Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

156.    The Second DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

157.    There was also either an express or implied-in-fact contract between 423 Kennedy and the WCP, the WCP Fund and/or SN FU to fund construction draws.

158.    Through their improper conduct, the WCP, the WCP Fund, and SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, the Second DOT, and the contract to fund construction draws.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count III this Honorable Court enter judgment in its favor against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the breaches of the duty of good faith and fair dealing (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

## COUNT IV
### DECLARATORY JUDGMENT
Count IV Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

159.    Paragraphs 1-158 of the Complaint are incorporated by reference.

160.    The First DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

161.    The Second DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

25

4884-5924-1840.v1

162.    The First Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

163.    The Second Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

164.    There is an actual and justiciable controversy between WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, as that term is used in the First DOT and the Second DOT, which controversy is ripe for adjudication.

165.    There is an actual and justiciable controversy between the Count IV Defendants as to whether the Developer RE1 is an "affiliate" of 423 Kennedy, as that term is used in the First DOT and the Second DOT, which controversy is ripe for adjudication.

166.    There is an actual and justiciable controversy between the WCP, the WCP Fund, and SF NU and 423 Kennedy as to whether the First DOT, the Second DOT, the First Note, and the Second Note contain unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count III this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, Developer REI, LLC is not an affiliate of 423 Kennedy St Holdings LLC; and (b) the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

26

4884-5924-1840.v1

## COUNT V
### INJUNCTIVE RELIEF
#### (TO STOP ENFORCEMENT OF THE FIRST DOT,
#### THE SECOND DOT, AND ANY FORECLOSURE)
Count V Is Asserted Against All Defendants

167.    Paragraphs 1-166 of the Complaint are incorporated by reference.

168.    Unless enjoined, the Defendants will continue to improperly claim that 423 Kennedy is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

169.    The Defendants unethical, outrageous, and illegal conduct, as described in this Complaint, is causing irreparable harm to 423 Kennedy.  The Property is unique, and 423 Kennedy could lose its entire interest in the Property.

170.    423 Kennedy does not have an adequate remedy at law.

171.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count V this Honorable Court enter an injunction prohibiting the Defendants from invoking any remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including, without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the First Note, the First DOT, the Second Note, and the Second DOT that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the Property until after 423 Kennedy's claims in the Complaint have been decided.

## COUNT VI
### BREACH OF FIDUCIARY DUTY
Count VI is Asserted Against Defendant Drazin Only

172.    Paragraphs 1-171 of the Complaint are incorporated by reference.

27

4884-5924-1840.v1

173.     As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and has, a fiduciary duty to both the lender and the borrower (423 Kennedy).

174.     Defendant Drazin has had an actual conflict of interest while serving simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the Second DOT.

175.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Lender Defendants.

176.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of 423 Kennedy, as borrower, under the First DOT and the Second DOT.

177.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to 423 Kennedy's rights as borrower.

178.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

179.     Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of 423 Kennedy and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

4884-5924-1840.v1

180.    Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that this Honorable Court enter judgment in its favor under Count VI against Defendant Russel S. Drazin for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT VII
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VII is Asserted Against All Defendants

</div>

181.    Paragraphs 1-180 of the Complaint are incorporated by reference.

182.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

183.    Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (423 Kennedy) as Trustee under the First DOT and the Second DOT.

184.    Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (423 Kennedy) and the lender under the First DOT and the Second DOT.

<div align="center">29</div>

4884-5924-1840.v1

185.    There is an actual and justiciable controversy between 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

186.    There is an actual and justiciable controversy between 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count VII this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrower (423 Kennedy) and the lender under the First DOT and the Second DOT.

## DEMAND FOR A JURY TRIAL

423 Kennedy St Holdings, LLC demands a trial by jury as to all claims asserted in the Complaint for which a jury trial is allowed under the law.

30

4884-5924-1840.v1

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 13, 2023

/s/ James D. Sadowskif

James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Phone:  (202) 452-1400; Fax: 202-452-1410
Email:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

4884-5924-1840.v1

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS *et al.*

    *Defendants.*

Case No: _____

## VERIFICATION OF MEL NEGUSSIE

I, Mel Negussie, declare under oath that:

1.    I am over the age of 18, I am otherwise competent to be a witness, and I am authorized to give this Verification on behalf of 423 Kennedy St Holdings, LLC, the Plaintiff in this case ("423 Kennedy").

2.    I have personal knowledge of the facts set forth in the Verified Complaint.

3.    The facts stated in the Verified Complaint are true and correct to the best of my knowledge, information, and belief.

4.    423 Kennedy will be irreparably harmed if a foreclosure sale that is scheduled for July 25, 2023 at 2:10 p.m., which sale was orchestrated by the Defendants in this case, is not stopped by the issuance of a temporary restraining order.

I declare under penalty of perjury that the foregoing facts are true to the best of my knowledge.

_____
Mel Negussie

4894-4804-5424.v1

Case 23-10336-JKS Doc A15-1 Filed 06/30/25 Entered 06/30/25 10:28:14 Desc
Exhibit A - Albis Exhibits (Part 1) Albis Exhibit 9 of 207 Page 695 of 1716

# EXHIBIT A

LOAN-006491

Case 23-10023-ELG Doc 15-2 Filed 09/04/25 Entered 09/04/25 00:28:04 Desc
Exhibit B - All Pleadings Ad Fok Docke Enjed Bar 9 Alb Page 78 of 2207 Page 696 of 1716

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

# DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST,** made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                    Page 3 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016             **Page 4 of 25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                    Page 5 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

**3.2 Mortgaged Property and Other Property.**

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

**4.0 Affirmative Covenants.**

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

**4.1 Compliance with Laws.**

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

**4.2 Payment of Impositions.**

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016                                                      Page 6 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

Page 7 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016                                                                 Page **8** of **25**

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016                                                                    Page **9** of **25**

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

Page **10** of 25

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

**7.0 Events of Default.**

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

**7.1 Payment of Indebtedness.**

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

**7.2 Performance of Obligations.**

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

**7.3 Appointment by Receiver.**

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

**7.4 Voluntary Bankruptcy.**

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE -- THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature — other than the Indebtedness

Rev 5.2016                                                                 Page **12** of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016                                                           Page **13** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016                                                                 Page 14 of 25

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

## 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

## 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016 — Page **16** of **25**

806

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

Page **17** of **25**

807

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

      (a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

      (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

      (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

      In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

      (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

      (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016                                         **Page 18 of 25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

Rev 5.2016                                                                 Page 19 of 25

809

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

810

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

886

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

Rev 5.2016

Page **22** of **25**

882

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_____ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member
    _____ (SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

I hereby certify on this __31st__ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

Page 23 of 25

<div align="right">
419-423 Kennedy St NW Washington DC

LOAN-006491

1st Trust
</div>

## EXHIBIT A

## LEGAL DESCRIPTION

814

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

# EXHIBIT B

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

<u>**COMMERCIAL DEED OF TRUST NOTE**</u>

**March 31, 2022**                                                          **$8,689,693.00**

**IMPORTANT NOTICE**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## 1.     <u>BORROWER'S PROMISE TO PAY</u>

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.     **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                              Page 1 of 9

892

LOAN-006491
1st Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015

Page 2 of 9

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

### 4.  BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

### 5.  BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a.  If default be made in any payment due under this Note;

b.  If default be made in the performance of any other covenant contained in this Note;

c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                                                                   Page 3 of 9

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

Page 4 of 9

LOAN-006491
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

826

LOAN-006491
1st Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a) Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b) Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c) Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

822

LOAN-006491
1st Trust

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                     Page 7 of 9

LOAN-006491
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

Page 8 of 9

LOAN-006491
1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member

_____(SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF __District of Columbia__ ) SS:
STATE OF _____)

I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015

Page 9 of 9

826

# EXHIBIT C

LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $1,256,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$1,256,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC 20011

LOAN-006652

2nd Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

Page **2** of **25**

828

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016

Page 3 of 25

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016

Page 4 of 25

830

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                    Page 5 of 25

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

ARTICLE IV

AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

Page 6 of 25

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**4.3 Repairs and Waste.**

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

**4.4. Insurance.**

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

**4.5 Restoration Following Casualty.**

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

Page 7 of 25

Case 24-10023-BLS Doc 152 Filed 05/04/25 Entered 05/04/25 08:33:21 Desc
Exhibit B - All Pleadings Ad- AkDocket Forms Bank 8 Albb Page 23 of 207 Page 739 of 1716

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016

Page **8** of 25

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

### ARTICLE V

### NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016                                                             Page **9** of **25**

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

## 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

## 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

836

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

### 7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

### 7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

### 7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

### 7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

### 7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016      Page **11** of **25**

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

## 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

## 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

## 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

## 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

## 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                                 Page **12** of 25

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

Page **13** of **25**

### 8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

### 8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

### 8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

Page **14** of **25**

840

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

Page **15** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

Case 23-10078-ELG Doc 15-2 Filed 09/30/25 Entered 09/30/25 00:33:21 Desc

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

ARTICLE X

RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

ARTICLE XI

MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

Page 17 of 25

848

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

Rev 5.2016                                                                 Page 19 of 25

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016

Page **20** of 25

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

### 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

### 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

### 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

Rev 5.2016

**Page 21 of 25**

## ARTICLE XII

### STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited   Liability
Company

_____ (SEAL)
By:      Mel Melaku Negussie
Its:      Member-Manager

By:      Brighton - KSDC, LLC
Its:      Member-Manager

By:      Brighton Capital LLC
Its:      Managing Member

_____ (SEAL)
By:      Mel Melaku Negussie
Its:      Authorized Signer, on behalf
           of Balakrishnarao Sure and
           Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

I hereby certify on this __31ST__ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

Page **23** of **25**

419-423 Kennedy St NW Washington DC 20011

LOAN-006652

2nd Trust

## EXHIBIT A

## LEGAL DESCRIPTION

Rev 5.2016

Page **24** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**      **March 31, 2022**

**Borrower(s):**      **423 Kennedy St Holdings LLC**

**Property Address:**    **419-423 Kennedy Street, NW, Washington, DC 20011**

PROPERTY DESCRIPTION:

Lots Fifty-Six (56) in Square numbered Thirty-Two Hundred Sixty (3260) in the subdivision made by Ashley Brown, as per plat thereof recorded in the Office of the Surveyor for the District of Columbia in Plat Book 214 at Page 78.

# EXHIBIT D

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                            **$1,256,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.      **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$1,256,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.      **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                    Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$43,960.00** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,250.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **12%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015 Page 2 of **9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a.   If default be made in any payment due under this Note;

b.   If default be made in the performance of any other covenant contained in this Note;

c.   If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d.   If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

Page 3 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                                          Page **4** of **9**

832

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

Page 5 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

**[SIGNATURE PAGE TO FOLLOW]**

Rev 12.2015

Page **8** of **9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_____ (SEAL)
By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

    By:     Brighton Capital LLC
    Its:     Managing Member
    _____ (SEAL)
    By:     Mel Melaku Negussie
    Its:     Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015

Page 9 of 9

88Z

# EXHIBIT E




# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,015,335.18 as of 10/30/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $276,849.94 |
| Interest Paid: | ($247,771.80) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,015,335.18** |

**Payoff good through 10/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▮▮▮▮ |
| | **Falls Church, VA  22043** | **Account Number:** ▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

Case 24-10036-BLS Doc 1152 Filed 05/30/25 Entered 04/30/25 00:33:14 Desc
Exhibit B - All Pleadings Ad Hoc Docketed Categorized (joint) Album Volume 2 of 2 Page 770 of 1716

# EXHIBIT F

Case 23-10037-ELG Doc 151-2 Filed 05/31/25 Entered 09/30/25 06:33:14 Desc
Exhibit B - All Pleadings and Paper Entered (Part 6) Page 55 of 207 Page 771 of 1716




# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,610.00 as of 10/30/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $89,594.68 |
| Interest Paid: | ($77,034.68) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,610.00** |

**Payoff good through 10/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▮▮▮▮▮ |
| | **Falls Church, VA  22043** | **Account Number:** ▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT G

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT H

**Subject:** RE: Payoff status of 5505 1st and Kennedy project

**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT I




# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,031,153.71 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $323,191.50 |
| Interest Paid: | ($278,344.83) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,031,153.71** |

**Payoff good through 11/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:   WCP Servicing LLC             **Bank Name: United Bank**
8401 Greensboro Dr Suite 960     **Routing Number:** ▉▉▉▉▉▉
McLean, VA  22102                   **Account Number:** ▉▉▉▉

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT J




# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,660.00 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $102,573.35 |
| Interest Paid: | ($90,013.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,660.00** |

Payoff good through 11/30/2022. Per diem $418.67.

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| Payable to: | WCP Servicing LLC | Bank Name: United Bank |
|---|---|---|
| | 8401 Greensboro Dr Suite 960 | Routing Number: ▮▮▮▮▮ |
| | McLean, VA 22102 | Account Number: ▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT K



8401 Greensboro Dr Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

Re:   **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT L





# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $7,174,724.51 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of 8/30/22): | $185,661.72 |
| Default Interest Owed (as of payoff date): | $456,927.95 |
| Interest Paid: | ($323,191.50) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $868,969.30 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$7,174,724.51** |

**Payoff good through 12/23/2022. Per diem $3,990.80.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:  WCP Servicing LLC**                    **Bank Name: United Bank**
                   **8401 Greensboro Dr Suite 960**       **Routing Number:** ▬▬▬▬
                   **McLean, VA  22102**                   **Account Number:** ▬▬▬▬

When sending the wire please reference our loan number, LOAN-006491
and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT M

Case 23-10037-ELG Doc 152-1 Filed 05/30/25 Entered 05/30/25 08:33:14 Desc
Exhibit B - All Pleadings Add Addextra Foreclosure (part B) Albania Entries 207 Page 785 of 1716




# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,439,944.65 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of 8/30/2022): | $63,637.33 |
| Default Interest Owed (as of payoff date): | $97,130.67 |
| Interest Paid: | ($102,573.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $125,600.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,439,944.65** |

**Payoff good through 12/23/2022. Per diem $837.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:   WCP Servicing LLC                    Bank Name: United Bank
              8401 Greensboro Dr Suite 960         Routing Number: ▓▓▓▓▓
              McLean, VA  22102                     Account Number: ▓▓▓▓▓

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT N

**James D. Sadowski**

---

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| | |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

**5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))**

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

**423 Kennedy Street, NW (Lot 0056 in Square 3260)**

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo | drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

888

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document.  Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default".  Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy.  As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today.  I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400, x5407
Fax:  202.452.1410
E-mail:  jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING:  administrator@gdllaw.com. THANK YOU.  FOR MESSAGES TO CONSUMER DEBTORS:  THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie
>
> > **From:** Leslie Calderas <lcalderas@wcp.team>
> > **Date:** Thursday, December 8, 2022 at 6:57 PM
> > **To:** mel negussie <mel@ntconstruction.net>
> > **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> > **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
> >
> > Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/

8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

5

# EXHIBIT O



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

## CERTIFICATE OF SERVICE

I hereby certify that the attached Notice of Infraction **VR22-00182** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

<u>**cb@colomariver.com**</u>

<i>Patrice Derricott</i>
PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
# NOTICE OF INFRACTION

Notice No. **VR22-00182**

**12-3-2021**

Date of Service

**Issuing Agency:** D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other _____ |
|---|---|---|---|---|

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

Business/Company Name  Charge as Respondent (check): ☒ YES ☐ NO

Individual/Agent Name  Charge as Respondent (check): ☐ YES ☒ NO

1215 1ST ST NE     **cb@colomariver.com**

Mailing Address    Email Address

WASHINGTON    DC  20002-7935

City    State  Zip Code

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. **Instructions are on the reverse side of this Notice.**

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Penalty (if applicable) |
|---|---|---|
| 12G DCMR SUB-SECTION 302.4 | $530.00 | $ |

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**  Time of Infraction: **07:37 AM**  Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:** ☐ ADMIT (Pay Fine)  ☐ DENY (Appear for a Hearing)  ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|
| | | |

Nature of Infraction:

Date of Infraction:  Time of Infraction: _____  Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:** ☐ ADMIT (Pay Fine)  ☐ DENY (Appear for a Hearing)  ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

_____  GERARD ANDERSON  10-13-2021  1018
DCRA Employee Signature  Print Name  Date  Badge/Identification Number

## SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

1. **Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

   - **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
   - In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.* **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.Civilinfractions@dc.gov.
   - Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

2. **Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. Do not send payment. Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to** OAH.Filing@dc.gov.

3. **To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. Do not send payment. Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to** OAH.Filing@dc.gov. A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE** _____

# EXHIBIT P

**OFFICE OF ADMINISTRATIVE HEARINGS**
One Judiciary Square
441 Fourth Street, NW, Suite 450N
Washington, DC 20001-2714
TEL: (202) 442-9094 · FAX: (202) 442-4789 · EMAIL: oah.filing@dc.gov

---

**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Petitioner,**

**v.**

**423 KENNEDY ST HOLDINGS LLC, Respondent.**

Case No.: 2021-DCRA-VR22-00182

---

**FINAL ORDER**

The Department of Consumer and Regulatory Affairs (the Government) mailed the attached Notice of Infraction (NOI) to Respondent on December 3, 2021. Respondent failed to answer the NOI. When a respondent fails to answer, an Administrative Law Judge may find the respondent in default and impose a fine and penalty if two conditions are met: The NOI must be valid on its face, and the Government must have submitted evidence that it properly served the NOI on Respondent.[1]

The NOI is valid on its face. The Government filed a certificate of service stating that the NOI was mailed to Respondent and filed an affidavit stating that the U.S. Postal Service has not returned the NOI undelivered. The Government also filed evidence of Respondent's last known home or business address. This administrative court concludes that Respondent had adequate notice of the charges.[2]

The deadline for Respondent's answer has expired.[3] The NOI states that a respondent who fails to answer by the deadline "**will be subject to a penalty equal to twice the amount of the fine, in**

---

[1] OAH Rule 2805.5.

[2] D.C. Official Code §§ 2-1802.01 and 2-1802.05; *see Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007) (due process requires notice "reasonably calculated to afford the party an opportunity to be heard"); *Dusenberry v. United States*, 534 U.S. 161, 170 (2002).

[3] D.C. Official Code §§ 2-1802.02(e) and 2-1802.05; OAH Rule 2812.5.

**addition to the fine itself, and the entry of a default order without additional notice.**" The penalty

is authorized by statute,[4] and the conditions for issuing a default order have been met.

Therefore, it is hereby:

**ORDERED**, that Respondent is in **DEFAULT** and is **LIABLE** for the violation charged in the

NOI; it is further

**ORDERED**, that Respondent must pay fines and penalties in the total amount of **$1590** in

accordance with the **Payment Instructions** below within 20 calendar days of the mailing date of this

Order; it is further

**ORDERED**, that if Respondent fails to pay within 20 calendar days of the mailing date of this

Order, interest shall accrue on the unpaid amount at the rate of 1½ % per month or portion thereof,

starting 20 calendar days after the mailing date of this Order, pursuant to D.C. Official Code § 2-

1802.03(i)(1); it is further

**ORDERED**, that failure to pay may result in additional sanctions, including the suspension of

Respondent's licenses or permits, the placement of a lien on Respondent's real and personal property,

and the sealing of Respondent's business premises or work sites, under D.C. Official Code § 2-

1801.03; and it is further

**ORDERED,** that any party may ask for reconsideration or relief from this Order as stated

below;[5] and it is further

**ORDERED,** that any party may appeal this Order as stated below.

---

[4] D.C. Official Code §§ 2-1801.04(a)(2) and 2-1802.02(f).

[5] Parties are encouraged to provide an email address with any filing. During the Mayor's Declaration of a Public Health Emergency, parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

**This Final Order is dated when it is served, as certified on the Certificate of Service found at the end of this decision.**


_____

Claudia A. Crichlow
Principal Administrative Law Judge

3

## PAYMENT INSTRUCTIONS

**STARTING IMMEDIATELY ALL PAYMENTS MUST BE MADE DIRECTLY TO THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.**

Online payment can be made with a credit or debit card only. If you wish to pay by check, please mail or bring the check with the Notice of Infraction / Special Assessment / Re-Inspection bill to DCRA Office of Civil Infractions, located at 1100 4th Street, SW, 2nd Floor, Washington DC, 20024. Make your check payable to "DC Treasurer." Please write your Notice of Infraction / Special Assessment / Re-Inspection number on the check.

**Online payment** can be made using the following link: **https://govservices.dcra.dc.gov/paymentportal**. Please enter the Notice of Infraction Number. When paying for multiple fines that have been consolidated, please enter the first number listed in the Final Order.

**Walk-In payment** is available at the **District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.** The walk-in cashier's office requires payment be accompanied with a payment voucher that the respondent must secure from DCRA's Office of Civil Infractions. To request a payment voucher, please email DCRA.Civilinfractions@dc.gov with reference to the Notice of Infraction Number.

**Mail payment** to **Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.**

To ensure payments are applied accurately, record the Notice of Infraction number on the front of any check or money order and correspondence.

A $65.00 FINE WILL BE IMPOSED ON CHECKS DISHONORED BY THE BANK.

INTEREST
D.C. Official Code § 2-1802.03.(i)(1) provides that fines be paid in full with interest from the date levied. For each month or portion thereof that a fine and/or assessment remain unpaid interest is accrued at 1.5%. Interest begins 30 calendar days after the fine and/or assessment is levied.

Case No.: 2021-DCRA-VR22-00182

District of Columbia
Office of Administrative Hearings
One Judiciary Square
441 Fourth Street, NW
Washington, DC 20001-2714


423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

_____

**Certificate of Service:**

**By First-Class Mail (Postage Paid):**          **By Email:**

423 KENNEDY ST HOLDINGS LLC          Esther Yong McGraw
1215 1ST ST NE                                         General Counsel
Washington, DC 20002-7935             Dep't of Consumer and Regulatory Affairs
cb@colomariver.com                           1100 4th Street, SW – 5th Floor
                                                            Washington, DC 20024
                                                            **Email:** oaheserve.dcra@dc.gov


I hereby certify that on September 7, 2022 this document was served upon the parties named on this page at the address(es) and by the means stated.


//s W. Green

_____
Clerk / Deputy Clerk

5

**APPEAL RIGHTS**

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

**COVID-19 NOTICE:** The deadlines described below may be temporarily suspended or extended due to the COVID-19 pandemic. For up-to-date information about any changes to these deadlines, please visit the Office of Administrative Hearings website at https://oah.dc.gov and the D.C. Court of Appeals website at https://www.dccourts.gov/court-of-appeals.

**HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[6]**

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days** if OAH mailed the Final Order to you). **HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS**

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[6] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

## IMPORTANT NOTICES:

- **The amount of a lawfully imposed fine cannot be modified or reduced on appeal.  D.C. Official Code § 2-1831.16(g).**
- **Filing an appeal does not stay (stop) the requirement to comply with a Final Order, including any requirement to pay a fine, penalty or other monetary sanction imposed by a Final Order.  If you wish to request a stay, you must first file a written motion for a stay with the Office of Administrative Hearings.  If the presiding Administrative Law Judge denies a stay, you then may seek a stay from the Court of Appeals or the Board as appropriate.**



Government of the District of Columbia
Department of Consumer and Regulatory Affairs
Office of Civil Infractions

## AFFIDAVIT THAT NOTICE OF INFRACTION HAS NOT BEEN RETURNED

**Notice of Infraction Number: <u>VR22-00182</u>**

The Notice of Infraction referred to above was:

**X** Emailed to the Respondent on **December 3, 2021** using the email address(es) provided by the Respondent. The email included a delivery confirmation receipt,

<u>and/or</u>

◻ Mailed to the Repsondent on **N/A** First Class U.S. Mail Postage Prepaid to the address(es) recorded on the Certificate of Service. The evenlope(s) included the return address for the this agency.

At least 15 calendar days have passed since the email or mailing date described above. My review of DCRA records to determine whether or not the email was returned as undeliverable or whether the U.S. Postal Service has returned the mailing to this agency confirmed that the Notice of Infraction was not returned at any time subsequent to the the time it was either emailed or mailed to the respondent as reflected in the Certificate of Service.

I declare under penalty of perjury that this information is correct.

_____*Patrice Derricott*_____   **__December 24, 2021__**
Signature            Date

Patrice Derricott
Program Supports Speclist
Office of Civil Infractions
Department of Consumer and Regulatory Affairs
1100 4th St., SW, Suite E510
Washington, DC 20024



## Government of the District of Columbia
## Department of Consumer and Regulatory Affairs

### Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

### CERTIFICATE OF SERVICE

I hereby certify that the attached Notice of Infraction **VR22-00182** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

<u>**cb@colomariver.com**</u>

*Patrice Derricott*

PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
## NOTICE OF INFRACTION

Notice No. **VR22-00182**

**12-3-2021**

Date of Service

**Issuing Agency:** D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other _____ |
|---|---|---|---|---|

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

Business/Company Name    Charge as Respondent (check): ☒ YES  ☐ NO

Individual/Agent Name    Charge as Respondent (check): ☐ YES  ☒ NO

1215 1ST ST NE    **cb@colomariver.com**

Mailing Address    Email Address

WASHINGTON    DC    20002-7935

City    State    Zip Code

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. Instructions are on the reverse side of this Notice.

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation 12G DCMR SUB-SECTION 302.4 | Fine for Infraction $530.00 | Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**    Time of Infraction: **07:37 AM**    Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:** ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction:

Date of Infraction:    Time of Infraction: _____    Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:** ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

DCRA Employee Signature    GERARD ANDERSON    10-13-2021    1018
    Print Name    Date    Badge/Identification Number

### SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

1. **Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

   - **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
   - In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30*. **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.Civilinfractions@dc.gov.
   - Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024*.

2. **Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. <u>Do not send payment.</u> Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to** <u>OAH.Filing@dc.gov</u>.

3. **To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. <u>Do not send payment.</u> Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to** <u>OAH.Filing@dc.gov</u>. A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE**_____

Case 24-10092-BLS Doc 15-1 Filed 05/03/25 Entered 05/03/25 00:33:14 Desc
Exhibit B - All Pleadings Ask Docket Entries (Point Alb Page 92 of 207 Page 808 of 1716

# EXHIBIT Q

## DISTRICT OF COLUMBIA
## OFFICE OF ADMINISTRATIVE HEARINGS

### Cover Sheet for Electronic Filing

I am filing the attached papers at the Office of Administrative Hearings.

**1. Check one of the boxes below.**

☒ The case number is: ___2021-DCRA-VR22-00182___.　　☐ This is a new case, and a case number has not yet been assigned.

**2. Briefly describe the paper that you are filing:**

Request to Change Final Order for Case # 2021-DCRA-VR22-00182

3. **My name, mailing address, telephone number, and e-mail address are:**

Name: Mel Negussie　　　　　　　Telephone: 202-271-5046

Mailing Address: _____　E-mail address: cbp@harkenbuilders.com

1629 K St NW. Suite 300　　　　　Representing: 423 Kennedy St Holdings LLC

City, State, Zip: Washington, DC 20006

I agree to receive documents from the court at my email address. **Yes**　　No

4. You should complete this form, save it to your computer, and then attach it to an e-mail, along with the papers you are filing. The e-mail address for filing papers at OAH is oah.filing@dc.gov. Papers sent to any other e-mail address will **not** be accepted for filing.

**I sent a copy of the attached papers to all other parties or their representatives as listed below.**

Person to Whom the Papers Were Sent:

_____

Address _____

City, State, Zip Code_____

Date the papers were sent:_____

Method of sending:
☐ Mail　☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide
　email address _____)

Person to Whom the Papers Were Sent:

_____

Address _____

City, State, Zip Code_____

Date the papers were sent:_____

Method of sending:
☐ Mail　☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide
　email address _____)

**If you sent the papers to more than two people, provide the above information for the additional people on a separate sheet.**

# DISTRICT OF COLUMBIA
## OFFICE OF ADMINISTRATIVE HEARINGS

One Judiciary Square
441 Fourth Street, NW, 450 North
Washington, DC 20001-2714
TEL: (202) 442-9094    FAX: (202) 442-9451

# REQUEST TO CHANGE A FINAL ORDER
## ("I want the decision changed")

You may use this form to ask the Administrative Law Judge to change a Final Order **after** it has been issued.

My Name: Mel Negussie                My Case No.: 2021-DCRA-VR22-00182

My Address: 1629 K St NW. Suite 300        My Telephone No.: 202-271-5046

City/State/Zip Code: Washington, DC 20006    My Fax No.:

If you lost because the Final Order said you did not file something (such as an answer to a Notice of Violation, an answer to a Notice of Infraction, or a Claims Examiner's Determination), explain why you did not file it.

> We did not file it because we did not know that this infraction existed. The only notice we received was the Final Order via email. The mailing address on the notice was incorrect and was mailed to the old property owner.

Why do you think that the Final Order is wrong or unfair?  Why should the Administrative Law Judge change the Final Order?

> We did not get the notice and did not know that this case was still active. We also have been under construction for the past 12 months and have made improvements to the site and cleaned up the area that we were fined for.

The OAH Resource Center, which has a variety of tools to assist you, is open during regular OAH business hours.  The OAH website is available at www.oah.dc.gov.  It includes the text of the rules, forms, and other helpful information.  The OAH Rules concerning requests for reconsideration and requests for relief from a final order can be found at OAH Rule 2828.

# EXHIBIT R

## James D. Sadowski

| | |
|---|---|
| **From:** | DOB/DLCP Payment Confirmation <DoNotReply-DCRA@dc.gov> |
| **Sent:** | Saturday, December 10, 2022 6:38 AM |
| **To:** | mel@ntconstruction.net |
| **Subject:** | Payment Confirmation for DOB Code Enforcement Fine |

**Importance:** High

This email is generated automatically. Please do not reply.

**Your Payment has been accepted.**

Thank you for your recent payment submitted via online payment portal. Please make sure you keep a copy of this email for your records.

**Payment Details:**

| | |
|---|---|
| Notice of Infraction (NOI) Number: | VR22-00182 |
| Payment date: | 12/10/2022 |
| Amount Charged: | $ 1657.43 |
| Card number ending in: | 8755 |
| Transaction ID: | AP1C7F27E550 |

Thank you,
DOB/DLCP



Case 24-10026-DHC Doc 15-1 Filed 07/30/25 Entered 07/30/25 16:33:14 Desc
Exhibit B - All Pleadings Albuquerque Bar (90) Albuquerque 207 Page 813 of 1716

# EXHIBIT S

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
One Judiciary Square
441 Fourth Street, NW
Washington, DC 20001-2714
TEL: (202) 442-9094
FAX: (202) 442-4789
oah.filing@dc.gov

| | |
|---|---|
| DISTRICT OF COLUMBIA<br>DEPARTMENT OF BUILDINGS<br>AS SUCCESSOR AGENCY TO THE<br>DISTRICT OF COLUMBIA<br>DEPARTMENT OF CONSUMER AND<br>REGULATORY AFFAIRS,[1]<br>Petitioner,<br><br>v.<br><br>423 KENNEDY ST HOLDINGS LLC,<br>Respondent. | Case No.: 2021-DCRA-VR22-00182<br>NOI No.: VR22-00182 |

**ORDER VACATING FINAL ORDER**
**AND**
**DISMISSING CASE WITHOUT PREJUDICE**

## I. Introduction

I issued a Final Order in this case, which was served on September 7, 2022, (the "Final Order"), finding Respondent in default for failing to answer Notice of Infraction No. VR22-00182 (the "NOI"). I imposed the authorized fine and late answer penalty. For the reasons set forth below, I now vacate the Final Order and dismiss Case No. 2021-DCRA-VR22-00182 and the NOI, each without prejudice.

---

[1] In accordance with the Department of Buildings Establishment Act of 2020, D.C. Code 10-561.01 et seq., OAH Rule 2816.6, and Mayor's Order 2022-149, OAH retains jurisdiction over the Department of Buildings and the Department of Licensing and Consumer Protection as successor agencies to the Department of Consumer and Regulatory Affairs (DCRA). This matter has been recaptioned to refer to the applicable successor agency to DCRA.

On December 12, 2022, the Petitioner, DOB, filed a Motion of Dismissal with the Office of Administrative Hearings.

*OAH rule 2817.1 The party initiating the case may move to dismiss the case at any time, and the Administrative Law Judge may grant the motion without waiting for a response from the opposing side.*

The District of Columbia Department of Buildings (the "Government") may, at its discretion and as authorized by law, issue a new Notice of Infraction and begin a new case before this administrative court, for the same alleged infraction(s).

It is therefore this 12th day of December, 2022:

**ORDERED**, that the Final Order is **VACATED** and of no further effect whatsoever; and it is further

**ORDERED**, that Notice of Infraction No. VR22-00182 is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED**, that the appeal rights of any party aggrieved by this Order are stated below; and it is further

*(s) Claudia A. Crichlow*
Claudia A. Crichlow
Principal Administrative Law Judge

- 2 -

## Certificate of Service:

### By Email:

Esther Yong McGraw
General Counsel
Department of Buildings
1100 4th Street, SW – 5th Floor
Washington, DC 20024
Email: oaheserve.dcra@dc.gov
        dob.filing@dc.gov

### By First-Class Mail (Postage Paid) and Email:

Chapman Paret
629 K St NW
Ste 300
Washington, DC 20006
ecbp@harkenbuilders.com

I hereby certify that on December 12, 2022, this document was served upon the parties named on this page at the address(es) and by the means stated.

*(s) Joseph Harrison*

Joseph Harrison
Paralegal Specialist

- 3 -

Case No.: 2021-DCRA-VR22-00182

## APPEAL RIGHTS

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

### HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[2]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days** if OAH mailed the Final Order to you).

### HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[2] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

- 4 -

# EXHIBIT T

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024**
Phone (202)727-5374

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square | 3260 | Suffix | | Lot | 0056

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A

FROM: WCP Fund I LLC     PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON July 25 , 20 23 , AT THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:10 P.M. THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on April 8 , 20 22 .

Liber: | Folio: | Instrument No: 2022038745

Maker(s) of the Note secured by the instrument: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A     See Exhibit A
Phone                    Last Known Address

Description of Property: Multi-Family Residential Building

(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 423 Kennedy Street, NW, Washington, DC 20011

Square: 3260     Lot: 0056     or Parcel No:

Holder of the Note (Name): WCP Fund I LLC

Phone: (703) 727-5464     Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 1,598,839.60 *
Minimum balance required to cure default obligation pursuant to D.C. Law 5-82
¡Right to Cure a Residential Mortgage Foreclosure Default Act of 1984.¡
$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin
Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015     Phone: (202) 223-7900

** as of June 23, 2023

# NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374**

Square | 3260 | Suffix | | Lot | 0056

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on | June 23 | ,20 | 23 |; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

| 06/23/2023 |
Date

_____
(Signature of Noteholder or his agent)

I, | Deborah A. Stewart | , a Notary Public in and for the
| District of Columbia | ,
DO HEREBY CERTIFY THAT | Russell S. Drazin |
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the | 23rd | day of | June | , 20 | 23 |, personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be | his | act and deed.

Given under my hand and seal this | 23rd | day of | June | , 20 | 23 |.

_____
Notary Public

My Commission Expires: | 09/30/2025 |
mmddyyyy



## EXHIBIT A

Borrower, Grantor, Record Owner:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
202-223-7900

## TRUSTEE'S SALE
## OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

## JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

-------------------------------------------------------------------------------------------------

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)

# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE



**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374**

**423 KENNEDY ST HOLDINGS LLC**
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo       [name], Vice President of Finance [title]

of WCP Fund I LLC

[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC     is the holder of the mortgage
recorded as Instrument Number 2022038745    in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate Issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

**SSL:**

**3260/0056**

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on
this 21st      day of June     ,20 23

by Christina Araujo     (name of person) as

Vice President of Finance     (type of authority, e.g. officer,

trustee, etc.) of WCP Fund I LLC

(name of party on behalf of whom instrument was executed).

Recording requested by:

Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

Notary Public

My Commission Expires:



```
Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $25.00
   SURCHARGE              $6.50
TOTAL:                    $31.50
```

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                                Plaintiff
                    vs.

                                                          Case Number     2023-CAB-004260

Daniel Huertas
_____
                                                Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
                                    Deputy Clerk

Date            **July 17, 2023**

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828    ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                        Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                       Demandante

          contra

                                         Número de Caso: _____

Daniel Huertas
_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC 20006

(202) 452-1400
_____
Teléfono

               *SECRETARIO DEL TRIBUNAL*

Por: _____
                              Subsecretario

Fecha _____

如需翻译.请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

반역을 원하시면 (202)879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                    Plaintiff
                    vs.

                                                        Case Number    2023-CAB-004260

DP Capital, LLC d/b/a Washington Capital Partners
_____
                                    Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000                    By _____
_____
Address                                                              Deputy Clerk
Washington, DC  20006
_____

(202) 452-1400                                              Date        **July 17, 2023**
_____
Telephone
如需翻译，请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                        Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
Demandante

contra

Número de Caso: _____

DP Capital, LLC d/b/a Washington Capital Partners
_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

801 17th Street, NW, Suite 1000
_____
Dirección

Por: _____
Subsecretario

Washington, DC 20006

(202) 452-1400
_____
Teléfono

Fecha _____

如需翻译.请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC
_____
                                                    Plaintiff
                              vs.

Case Number _____ 2023-CAB-004260 _____

WCP Fund, I, LLC
_____
                                                    Defendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date _____ July 17, 2023 _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____

                  Demandante

contra

                                    Número de Caso: _____

WCP Fund, I, LLC
_____

                  Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC 20006
_____

(202) 452-1400
_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
                                Subsecretario

Fecha _____

如需翻译.请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화하십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                     Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                                    Plaintiff
                              vs.

                                                                        Case Number _____2023-CAB-004260_____

Russell S. Drazin
_____
                                                    Defendant

<div align="center">

**SUMMONS**
</div>

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
                              Deputy Clerk

Date _____**July 17, 2023**_____

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시요      የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

<div align="center">

See reverse side for Spanish translation
Vea al dorso la traducción al español
</div>

CV-3110 [Rev. June 2017]                                                                        Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                    Demandante
            contra

                                                        Número de Caso: _____

Russell S. Drazin
_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000              Por: _____
_____
Dirección                                                  Subsecretario
Washington, DC  20006

(202) 452-1400                                     Fecha _____
_____
Teléfono

如需翻译.请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202)879-4828

번역을 원하시면 (202)879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC
_____

Plaintiff

vs.

SF NU, LLC
_____

Case Number     **2023-CAB-004260**

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006

(202) 452-1400
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date     **July 17, 2023**

如需翻译，请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.     የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

Case 24-10092-BLS Doc 15-1 Filed 05/01/25 Entered 05/01/25 00:00:00 Desc
Exhibit B - All Pleadings and Ad Prob Docket and Judgment (part 3) Page 19 of 2207 Page 835 of 1716



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                        Demandante

contra

Número de Caso: _____

SF NU, LLC
_____
                        Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC 20006

Por: _____
                           Subsecretario

(202) 452-1400
_____
Teléfono

Fecha _____

如需翻译.请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 전화해주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                  Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

423 Kennedy St Holdings, LLC

Case Number: _____2023-CAB-004260_____

vs

Date: _____

DP Capital, LLC d/b/a Washington Capital Partners,
et, al.

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)*    James D. Sadowski | Relationship to Lawsuit |
|---|---|
| Firm Name:   Greenstein Delorme & Luchs PC | ☒ Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.:    Six digit Unified Bar No.: <br> 202-452-1400 ext. 7805    446635 | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☒ 12 Person Jury

Demand: $ ___1 Million___     Other: Punitive Damages

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: 2022-CAB-005935    Judge: Ebony Scott    Calendar #:_____

Case No.:_____    Judge: _____    Calendar#:_____

---

NATURE OF SUIT:    *(Check One Box Only)*

**A. CONTRACTS** *      **COLLECTION CASES**
Implied Covenant of Good Faith and Fair Dealing

| | | |
|---|---|---|
| ☒ 01 Breach of Contract* | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property |    Over $25,000 Pltf. Grants Consent |    Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees |    Under $25,000 Pltf. Grants Consent |    Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| |    Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**   1. Tortious Interference with Business Relations ; 2. Breach of Fiduciary Duty

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander |    Not Malpractice) |
| ☐ 03 Assault and Battery | ☒ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud |    Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE     IF USED

CV-496/June 2015

Case 24-10023-BDG Doc 15-1 Filed 05/01/25 Entered 05/01/25 00:33:21 Desc

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
    (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☒ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
    (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
     Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐  33 Whistleblower

Injunctive Relief - to Stop a Foreclosure

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
    Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
    Judgment [ D.C. Code §
    2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
    42-3301, et seq.)

- ☐ 21 Petition for Subpoena
    [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
    (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D.  REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
/s/ James D. Sadowski

Attorney's Signature

July 13, 2023 _____

Date

CV-496/ June 2015

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
8/10/2023

## PRAECIPE WITH AN UPDATE ON A MOTION THAT IS NOW UNOPPOSED

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, hereby provides notice to the Court that during a meet and confer session held on July 11, 2023 with Maurice VerStandig, Esq., Counsel for the Defendants, Mr. VerStandig authorized the undersigned to advise the Court that the Defendants do not oppose the Opposed Motion to Exceed Page Limit in an Emergency Filing that was filed on July 11, 2023, so the Court can now treat that motion as unopposed.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 13, 2023

/s/ James D. Sadowski
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

4877-0365-2464

Case 24-10036-BLS Doc A-152 Docket 07/30/25 Filed 09/30/25 00:35:27 Desc
Exhibit B - All Pleadings and Filings in First Baca Case Page 839 of 1716

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Praecipe With an Update on a Motion that is Now

Unopposed was served by the Court's electronic filing system this 13th day of July 2023, and a

notice of filing should be served on all counsel of record.


/s/ James D. Sadowski
James D. Sadowski


4877-0365-2464

eFiled
07/13/2023 4:05:05 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,
1629 K Street, N.W - Suite 300
Washington, DC 20006

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS,
8401 Greensboro Drive - Suite 960
McLean, VA 22102,

WCP FUND I, LLC
2815 Hartland Road - Suite 200
Falls Church, VA 22043,

DANIEL HUERTAS,
909 Chinquapin Road
McLean, VA 22102,

RUSSELL S. DRAZIN
4400 Jenifer Street, NW - Suite 2
Washington, DC 20015,

  and

SF NU, LLC
1455 Research Boulevard - Suite 510
Rockville, MD 20850

    *Defendants*.

Case No: ___2023-CAB-004260___

## VERIFIED COMPLAINT

COMES NOW THE PLAINTIFF, 423 Kennedy St Holdings LLC ("423 Kennedy"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, Russell Drazin, and SF NU, LLC. This Verified Complaint

4884-5924-1840.v1

936

("Complaint") includes claims for breach of contract, tortious interference with business relations, breach of the duty of good faith and fair dealing, and breach of fiduciary duty by a Trustee. The Complaint also seeks a declaratory judgment as to the meaning of certain provisions in two Deeds of Trust, that certain provisions are unenforceable as a matter of law, that the Trustee has a conflict of interest that prevents him from serving as Trustee, and that actions taken by the Trustee are invalid and must be set aside or suspended. The Complaint also seeks injunctive relief to prevent a foreclosure. In support of its Complaint, 423 Kennedy avers as follows:

<h3 style="text-align:center">THE PARTIES</h3>

1. The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy") is a District of Columbia limited liability company that is authorized to do business in the District.

2. The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners". For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3. The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4. The WCP controls the WCP Fund and services its loans.

5. The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6. The fourth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the

<div style="text-align:center">2</div>

4884-5924-1840.v1

District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville,

Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU will be

referred to as the "Lender Defendants".

7.      The fifth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is

counsel to the WCP, the WCP Fund, and SFNU.  Mr. Drazin is also listed as Trustee under two

deeds of trust that he drafted, the terms of which are at issue in this case.

<div align="center">S<small>TATEMENT OF</small> F<small>ACTS</small> A<small>PPLICABLE TO</small> A<small>LL</small> C<small>OUNTS</small></div>

The WCP Claims that It Is a Company That Can be Trusted and That It Has an
"Unwavering Commitment to the Highest Ethical Standards"

8.      In a June 16, 2022 news article published on the internet by Modern Luxury DC,

two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers
> end up trusting that if they work with us, we will do everything in our power to
> help them succeed." The duo understands the importance of a client's positive
> experience and the clear communication of each step in the lending process
> because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas.
> "We've developed a highly relational experience with our clients through
> innovative products, practices and standards. *What sets us apart from other
> lenders is our unwavering commitment to the highest ethical practices in the
> industry*, which historically have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.      But in reality, the WCP does not have the highest ethical standards.  The WCP is

a company that has engaged in predatory lending practices, and as this Complaint will show, Mr.

Huertas, the WCP, the WCP, and SF NU have engaged in unethical, outrageous conduct that was

specifically designed to make one, if not more, of their clients' construction projects fail.

<div align="center">3</div>

The Ownership of 423 Kennedy, Its Purpose, and the Property.

10.     423 Kennedy is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "Property").

11.     423 Kennedy is a domestic, sole purpose, limited liability company, and the sole purpose of 423 Kennedy is to own and develop the Property.

12.     The Defendants all knew that 423 Kennedy was a sole purpose entity whose only asset was the Property and any the improvements that 423 Kennedy made to the Property.

13.     423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

14.     The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

15.     On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the Property with the WPC Fund.

16.     Due to unforeseen complications with the soil and water at the Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide Construction Draws to Fund the Project

17.     As part of the refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed.  The WCP and the WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing.

4

4884-5924-1840.v1

18.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

19.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing.  423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

<u>The Loan Documents with the WCP and the WCP Fund</u>

20.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

21.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

22.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First DOT before it was signed.

23.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

24.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First Note before it was signed.

5

4884-5924-1840.v1

26. On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee. A true copy of the Second DOT is attached as Exhibit C.

27. The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

28. The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second DOT before it was signed

29. On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $1,256.000.00, as "Borrower", a copy of which is attached as Exhibit D.

30. The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

31. The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second Note before it was signed.

32. As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

33. The new, refinanced loans were set to mature on March 31, 2023.

34. Beginning in April of 2022, the WCP and the WCP Fund started providing construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to closing.

35. The WCP Fund may have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment"). The Assignment lists Mr. Huertas as trustee, but

6

4884-5924-1840.v1

has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

36.     Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the Property with another lender.

37.     As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

38.     As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

<u>The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the Property by Starving 423 Kennedy of Construction Draw Funds.</u>

39.     On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

40.     The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

41.     The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

42.     On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WEP Fund to retire the balances owed under the

7

4884-5924-1840.v1

First Note and to release the First DOT from the Property. A true copy of the October 24, 2022 Payoff Statement for the first loan is attached as Exhibit E.

43. On or about October 24, 2022, WCP transmitted a Payoff Statement for the Second Note listing the amounts required to pay the balance due to the WEP Fund under the Second Note and to release the Second DOT from the Property. A true copy of the Payoff Statement for the second loan is attached as Exhibit F.

44. As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

45. As of October 24, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

46. On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr. Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy. Mr. Huertas stated that WCP "would not provide any construction loan draws to 423 Kennedy". A copy of the November 3, 2022 email is attached as Exhibit G.

47. As of November 3, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

48. As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

49. On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws. A copy of the November 15, 2022 email is attached as Exhibit H.

8

4884-5924-1840.v1

50.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

51.     By as early as November 17, 2022, the Defendants each knew that 423 Kennedy had secured alternative financing for the Property with another lender named Main Street Bank, and that 423 Kennedy expected to close on the new refinancing loan with Main Street Bank in December of 2022.

52.     On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WEP Fund under the First Note and to release the First DOT from the Property.  A true copy of the November 21, 2022 Payoff Statement for the first loan is attached as Exhibit I.

53.     On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WEP Fund under the Second Note and to release the Second DOT from the Property.  A true copy of the November 21, 2022 Payoff Statement for the second loan is attached as Exhibit J.

54.     As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

55.     WCP sent all the Payoff Statements listed in paragraphs 42, 43, 52, and 53 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

56.     None of the Payoff Statements that are referenced in paragraphs 42, 43, 52, and 53 included any request by any Defendant for the payment of default fees, default interest, or any

9

4884-5924-1840.v1

other amount that was based upon any allegation that there was a "default" by 423 Kennedy under either the First Note, the Second Note, the First DOT or the Second DOT.

> **After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr. Huertas Then Demands that Either 423 Kennedy or Mr. Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".**

57.     As of December 8, 2022, 423 Kennedy had made all payments due under the First Note and the Second Note.  By that date, 423 Kennedy had paid $514,560.80 in interest payments to the WCP Fund.  That interest amount is in addition to prior payments made by 423 Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

58.     On December 8, 2022, Mr. Huertas told 423 Kennedy during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

59.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

60.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans that Mr. Negussie was associated with at WCP, including 423 Kennedy." Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done".  Mr. Huertas further stated that the Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on 423 Kennedy and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

<div align="center">10</div>

4884-5924-1840.v1

61.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

62.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force 423 Kennedy or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

63.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements that were sent to 423 Kennedy were withdrawn and that he would place 423 Kennedy and the borrower on another, unrelated project named Developer RE1, LLC ("Developer RE1") in default under their loan documents with the WCP Fund.

64.     The Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

65.     The Defendants knew that the sole purpose of Developer RE1 is to develop the property located in the District at 5501 First Street, NW.

66.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

67.     The Defendants knew that 423 Kennedy does not control Developer RE1 and Developer RE1 does not control 423 Kennedy.

11

68.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

69.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put 423 Kennedy in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put 423 Kennedy in "default" under two, unrelated loans because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

70.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

71.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

72.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and 2507 Holdings.

73.     The Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

74.     The Defendants knew that Mr. Negussie does not have a controlling interest in either 423 Kennedy or 2507 Holdings.

75.     The Defendants knew that 423 Kennedy has no interest in the 2507 I Street Project.

76.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project.

12

4884-5924-1840.v1

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to 423 Kennedy By
Improperly Demanding Payment of More than $1.5 Million in "Default Penalties" and
"Default Interest" and By Threatening 423 Kennedy With Foreclosure.</u>

77.     Later that same day (December 8, 2022), Mr. Huertas followed through with his

threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for

Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Mr.

Negussie by email.  A true the "Notice of Default" is attached as Exhibit K.

78.      "Notice of Default" appears to reference either the First Note, the First DOT, the

Second Note, and/or the Second DOT.

79.     The "Notice of Default" states that it was being sent by the "Vice President" of

the WCP, but it was not signed by anyone at the WCP.  The WCP web site indicates that the

Vice President of the WCP is Christina Araujo.

80.     The "Notice of Default" also states that it was referencing "a copy of the first

page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to the notice.

81.     The lack of a signature on the "Notice of Default" and the failure by the WCP to

include the referenced exhibit with the "Notice of Default" are indications that the notice was

hastily prepared by either Mr. Huertas or by someone else at the WCP.

82.     The Notice of Default did not contain any legal basis or other explanation for how

or why 423 Kennedy had defaulted under the terms of any of the loan documents.

83.     Each Deed of Trust contains a "Notices" provision that states how notices are

required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and

the Second DOT states:

> All notices, demands, requests and other communications pursuant to the
> provisions of the Note and this Deed of Trust shall be in writing and shall
> be deemed to have been properly given or served for all purposes when
> presented personally, or one business day after having been sent by a
> nationally recognized overnight delivery service or a local courier service,

13

4884-5924-1840.v1

charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006

(b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

84. In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

85. In the email that transmitted the letter purporting to be a "Notice of Default" under one of the two loans, the WCP included two Payoff Statements. A copy of the two Payoff Statement that were included with the email transmitting each "Notice of Default" are attached as Exhibits L and M.

86. The new Payoff Statement sent by WCP for the first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30. Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423 Kennedy.

87. The new Payoff Statement sent by WCP for the second loan including a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty".

14

Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by the WCP.

**Mr. Huertas "Lawyers Up" and Asks Defendant Drazin to Come Up with A Cover Story.**

88.     After receiving the email with the Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the WCP and the WCP Fund were now claiming that 423 Kennedy was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

89.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to 423 Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that 423 Kennedy was in default of the loan documents when they each knew, in fact, that there were no defaults by 423 Kennedy under any of its loan documents.

90.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring 423 Kennedy to be in default under any of the loan documents and to conceal the real reason why 423 Kennedy was improperly placed in default by the Defendants.

91.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrower (423 Kennedy) and to the lender under the First DOT and the Second DOT.

92.     As of December 8, 2022, Mr. Drazin knew that that his representation of the WCP and the WCP Fund as counsel created an actual conflict of interest with his fiduciary duty as Trustee to 423 Kennedy, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary

15

4884-5924-1840.v1

duty that he owed to 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

93.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to 421 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

94.     The real reason that the Lender Defendants improperly alleged that 423 Kennedy was in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

95.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

96.     There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from 423 Kennedy Street by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

97.     As a result of their evil, improper motive and their greed, the Defendants improperly alleged that 423 Kennedy was in default under the loan documents to try line their own pockets and to cause as much financial and reputational damage as possible to 423 Kennedy, to Mr. Negussie, and to Developer RE1.[1]

---

[1]     Developer RE1 filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct. *See Developer RE1, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al,* 2022-CAB-005935.  That case is currently in the discovery phase.

16

98.    The Lender Defendants also caused WCP to issue each the "Notice of Default" to 423 Kennedy for the express purpose of trying to interfere with the refinancing of the loans that they knew that 423 Kennedy had secured with Main Street Bank.

99.    The Lender Defendants also caused WCP to issue the "Notice of Default" to 423 Kennedy for the express purpose of trying to prevent 423 Kennedy from being able to go to closing on the refinancing loan with Main Street Bank.

100.    The Lender Defendants also caused the WCP to issue the "Notice of Default" to 423 Kennedy for the express purpose of improperly pressuring either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or to SF NU).

101.    The Defendants knew that they had no legal right to demand that 423 Kennedy, Developer RE1, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

102.    The Defendants knew that they had no legal right, or factual basis, to claim that 423 Kennedy was in default of any loan document.

103.    The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon 423 Kennedy and its members. The Defendants' misconduct is a form of extortion.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT</u>

104.    Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants. When asked by counsel for 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr. Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022

17

4884-5924-1840.v1

as Instrument No. 2022114185 ("Fine Certificate"). A copy of Mr. Drazin's reply email listing the alleged defaults is attached as Exhibit N.

105.    The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00. A true copy of the NOI is attached at Exhibit O.

106.    423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

107.    On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. A copy of the Final Order is attached as Exhibit P.

108.    423 Kennedy noted an appeal of the Final Order on September 12, 2022. A copy is 423 Kennedy's appeal is attached as Exhibit Q.

109.    Pursuant to Section 7.6 of the First DOT and the Second DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

110.    423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI. However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that was sent to it by The Defendant was improper and was sent as a pretext, on December 10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was recorded as a result of the NOI. A copy of confirmation of the $1,657.34 payment to the District is attached as Exhibit R.

18

111. December 10, 2022 is less than thirty days after November 17, 2022.

112. On December 11, 2022, the District of Columbia Office of Administrative Hearings (OAH) vacated the Final Order.  *See* Exhibit S.

113. There are no outstanding fines owed by 423 Kennedy to the District.

114. 423 Kennedy cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal from, or to discharge (by payment), any lien filed by the District.

115. The only provision of the loan documents that Mr. Drazin cited as a claimed basis for a "default" by 423 Kennedy was Section 7.9 of the First DOT and the Second DOT.

116. The First DOT and the Second DOT each have a Section 7.9 that are identical. Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT. Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

117. The Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

118. In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy, two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document

19

4884-5924-1840.v1

or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

119. The First DOT and the Second DOT do not define the term "affiliate." Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code §6809 (6).

120. Developer RE1 does not control 423 Kennedy and vice versa.

121. Developer RE1 is not controlled by 423 Kennedy and vice versa.

122. There is also no common control of Developer RE1 and 423 Kennedy.

123. Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

124. Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by 423 Kennedy under either the First DOT or the Second DOT, even if Developer RE1 was actually in "default" of any loan agreement with the WCP Fund.

125. Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that 423 Kennedy was in default of the First DOT and/or the Second DOT.

126. The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that: "There is no right to cure. There is no right to deceleration. There is no right to reinstatement. The Loans are in default and are accelerated." *See* Ex. N (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT) (underlined emphasis in original).

20

<u>423 Kennedy Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked</u>

127.    On December 8, 2022, the Defendants threatened to foreclose on the Property even though they know that they had no legal right to foreclose on the Property.

128.    The Property has been improved by 423 Kennedy by constructing a mixed use, six level (including the lower cellar unit) building with thirty-three residential units and one commercial unit comprising 36,512 square feet.

129.    The improvements that 423 Kennedy made to the Property are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Defendants' misconduct.

130.    The Property has a current value of $11.9 million.

131.    There was no valid, legal basis under any provision of either the First DOT or the Second DOT that would have permitted the Defendants to foreclose on the Property.

132.    The Defendants deliberately sabotaged 423 Kennedy's ability to complete construction and its refinancing efforts.  But for the Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP Fund in full in December of 2022.

133.    The Defendants also deliberately timed their improper interference with 423 Kennedy's business relations during an approaching holiday period to make it impossible for 423 Kennedy to close on the refinancing loan with Main Street Bank prior to the end of this year, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property.

134.    On June 23, 2023, Mr. Drazin, apparently now acting on behalf of SF NU, sent to 423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").  A copy of the Foreclosure Notice is attached as Exhibit T.

21

4884-5924-1840.v1

135. The Foreclosure Notice sets the date and time of the foreclosure sale on July 25, 2023 at 2:10 p.m.

136. If the Defendants follow through on the scheduled foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors, will be irreparably harmed and they could lose their entire investment.

137. The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to inflict damages on 423 Kennedy and others, and they are intentionally and willfully disregarding 423 Kennedy's rights under the loan documents and under the law. The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

138. As of July 12, 2023, none of the Defendants have sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

<div align="center">

COUNT I

BREACH OF CONTRACT

Count I is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

</div>

139. Paragraphs 1-138 of the Complaint are incorporated by reference.

140. There was either an express contract or an implied-in-fact contract between 423 Kennedy and the WCP and the WCP Fund to fund construction draws.

141. The WCP and the WCP Fund breached the contract by unilaterally refusing to fund construction draws and due to no fault of 423 Kennedy.

142. To the extent that SF NU is found to have been assigned any rights in the contract from either the WCP or the WCP Fund, SF NU is bound by the contract and equally responsible for its breach.

<div align="center">22</div>

4884-5924-1840.v1

143.    423 Kennedy has been damaged by the breach of contract by the WCP, the WCP Fund, and SF NU.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that under Count I this Honorable Court enter judgment in its favor and against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC for: (a) any and all damages (final amount to be determined) that 423 Kennedy has suffered and will suffer as a result of the Defendants' breach of contract (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## COUNT II
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count II is Asserted Against All Defendants Except Mr. Drazin

144.    Paragraphs 1-143 of the Complaint are incorporated by reference.

145.    423 Kennedy was in the process of closing on a refinancing loan with Main Street Bank.

146.    The Defendants each knew of the existence of 423 Kennedy's business relations with Main Street Bank.

147.    As a result of the Defendants' improper demand that 423 Kennedy pay Default Interest and Default Penalties, 423 Kennedy will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

148.    As a direct result of the Defendants' direct and continuing interference with 423 Kennedy's business relations with Main Street Bank, 423 Kennedy will not be able to go to closing on the refinancing loans with Main Street Bank or any other bank.

23

4884-5924-1840.v1

932

149. The Defendants have intentionally interfered with 423 Kennedy's construction business and development of the Property and 423 Kennedy's refinancing of the loans with Main Street Bank without any valid justification.

150. 423 Kennedy has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that under Count II this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund I, LLC, Mr. Huertas, and SF NU, LLC for: (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with 423 Kennedy's business relations (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1 million; (d) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT III
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count III Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

</div>

151. Paragraphs 1- 150 of the Complaint are incorporated by reference.

152. Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

153. The First Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

154. The First DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

<div align="center">24</div>

4884-5924-1840.v1

155.    The Second Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

156.    The Second DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

157.    There was also either an express or implied-in-fact contract between 423 Kennedy and the WCP, the WCP Fund and/or SN FU to fund construction draws.

158.    Through their improper conduct, the WCP, the WCP Fund, and SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, the Second DOT, and the contract to fund construction draws.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count III this Honorable Court enter judgment in its favor against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the breaches of the duty of good faith and fair dealing (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

## COUNT IV
### DECLARATORY JUDGMENT
Count IV Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

159.    Paragraphs 1-158 of the Complaint are incorporated by reference.

160.    The First DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

161.    The Second DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

25

4884-5924-1840.v1

162.    The First Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

163.    The Second Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

164.    There is an actual and justiciable controversy between WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, as that term is used in the First DOT and the Second DOT, which controversy is ripe for adjudication.

165.    There is an actual and justiciable controversy between the Count IV Defendants as to whether the Developer RE1 is an "affiliate" of 423 Kennedy, as that term is used in the First DOT and the Second DOT, which controversy is ripe for adjudication.

166.    There is an actual and justiciable controversy between the WCP, the WCP Fund, and SF NU and 423 Kennedy as to whether the First DOT, the Second DOT, the First Note, and the Second Note contain unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count III this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, Developer REI, LLC is not an affiliate of 423 Kennedy St Holdings LLC; and (b) the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

26

4884-5924-1840.v1

## COUNT V
### INJUNCTIVE RELIEF
### (TO STOP ENFORCEMENT OF THE FIRST DOT, THE SECOND DOT, AND ANY FORECLOSURE)
Count V Is Asserted Against All Defendants

167.    Paragraphs 1-166 of the Complaint are incorporated by reference.

168.    Unless enjoined, the Defendants will continue to improperly claim that 423 Kennedy is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

169.    The Defendants unethical, outrageous, and illegal conduct, as described in this Complaint, is causing irreparable harm to 423 Kennedy.  The Property is unique, and 423 Kennedy could lose its entire interest in the Property.

170.    423 Kennedy does not have an adequate remedy at law.

171.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count V this Honorable Court enter an injunction prohibiting the Defendants from invoking any remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including, without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the First Note, the First DOT, the Second Note, and the Second DOT that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the Property until after 423 Kennedy's claims in the Complaint have been decided.

## COUNT VI
### BREACH OF FIDUCIARY DUTY
Count VI is Asserted Against Defendant Drazin Only

172.    Paragraphs 1-171 of the Complaint are incorporated by reference.

27

4884-5924-1840.v1

173.    As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and has, a fiduciary duty to both the lender and the borrower (423 Kennedy).

174.    Defendant Drazin has had an actual conflict of interest while serving simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the Second DOT.

175.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Lender Defendants.

176.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of 423 Kennedy, as borrower, under the First DOT and the Second DOT.

177.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to 423 Kennedy's rights as borrower.

178.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

179.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of 423 Kennedy and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

28

4884-5924-1840.v1

180. Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that this Honorable Court enter judgment in its favor under Count VI against Defendant Russel S. Drazin for: (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT VII

**DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID**

Count VII is Asserted Against All Defendants

</div>

181. Paragraphs 1-180 of the Complaint are incorporated by reference.

182. Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

183. Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (423 Kennedy) as Trustee under the First DOT and the Second DOT.

184. Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (423 Kennedy) and the lender under the First DOT and the Second DOT.

<div align="center">29</div>

4884-5924-1840.v1

185.     There is an actual and justiciable controversy between 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

186.     There is an actual and justiciable controversy between 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count VII this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrower (423 Kennedy) and the lender under the First DOT and the Second DOT.

## DEMAND FOR A JURY TRIAL

423 Kennedy St Holdings, LLC demands a trial by jury as to all claims asserted in the Complaint for which a jury trial is allowed under the law.

4884-5924-1840.v1

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 13, 2023

/s/ James D. Sadowskif
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Phone:  (202) 452-1400; Fax: 202-452-1410
Email:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

31

4884-5924-1840.v1

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| 423 KENNEDY ST HOLDINGS LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS *et al.* <br><br> *Defendants.* | Case No: _____ |

## VERIFICATION OF MEL NEGUSSIE

I, Mel Negussie, declare under oath that:

1.     I am over the age of 18, I am otherwise competent to be a witness, and I am authorized to give this Verification on behalf of 423 Kennedy St Holdings, LLC, the Plaintiff in this case ("423 Kennedy").

2.     I have personal knowledge of the facts set forth in the Verified Complaint.

3.     The facts stated in the Verified Complaint are true and correct to the best of my knowledge, information, and belief.

4.     423 Kennedy will be irreparably harmed if a foreclosure sale that is scheduled for July 25, 2023 at 2:10 p.m., which sale was orchestrated by the Defendants in this case, is not stopped by the issuance of a temporary restraining order.

I declare under penalty of perjury that the foregoing facts are true to the best of my knowledge.

_Mel Negussie_
Mel Negussie

4894-4804-5424.v1

# EXHIBIT A

LOAN-006491

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST,** made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

### DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                                 Page 2 of 25

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016

Page 4 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                    Page 5 of 25

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

### 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

### 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

### 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

### 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

Page 6 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

### 4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

Page **7 of 25**

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016                                    Page **8** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016

Page **9** of **25**

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<u>ARTICLE VII</u>

<u>EVENTS OF DEFAULT</u>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

Page **11** of **25**

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                    Page **12** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

### ARTICLE VIII

### DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

980

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

Page 14 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016                                                          Page 15 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

## THE TRUSTEE

**9.0 Acceptance - Standard of Conduct**

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

**9.1 Fees and Expenses.**

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

**9.2 Commissions on Sale.**

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

**9.3 Commission on Advertisement.**

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

**9.4 Resignation.**

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

**9.5 Acts of Trustee.**

Rev 5.2016

Page **16** of **25**

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016                                                          Page **18** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

Rev 5.2016                                                      Page 19 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016     Page 20 of 25

982

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

Rev 5.2016

Page **21** of **25**

Case 23-10020-ELG Doc 15-2 Filed 08/04/25 Entered 08/04/25 00:33:21 Desc
Exhibit B - All Pleadings Ad Nunc Docket Entered (Joint Album) Page 78 of 1207 Page 894 of 1716

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF,** the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

989

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited  Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

By:    Brighton Capital LLC
Its:    Managing Member

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Authorized Signer, on behalf
of Balakrishnarao Sure and
Naveen Vavilala, Members

COUNTY OF ____District of Columbia____ ) SS:
STATE OF _____ )

I hereby certify on this __31st__ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: ____5/14/2025____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

Page 23 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

906

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

Case 23-10086-BLS Doc 1652 Filed 06/04/25 Entered 06/04/25 00:33:14 Desc
Exhibit B - All Pleadings Ask Docket Entries (Point Albert) Page 898 of 1716

# EXHIBIT B

Case 23-10086-BLS Doc 1652 Filed 06/04/25 Entered 06/04/25 00:33:14 Desc
Exhibit B - All Pleadings Ask Docket Entries (Point Albert) Page 898 of 1716

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                    **$8,689,693.00**

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## 1.     BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC,** a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                          Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015

Page 2 of 9

LOAN-006491
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. <u>BORROWER'S RIGHT TO PREPAY</u>

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. <u>BORROWER'S FAILURE TO PAY AS REQUIRED</u>

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;

b. If default be made in the performance of any other covenant contained in this Note;

c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

Page 3 of 9

LOAN-006491

1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

Page 4 of 9

LOAN-006491
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

Page 5 of 9

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015                                                        Page 6 of 9

LOAN-006491
1st Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015

Page 7 of 9

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

LOAN-006491
1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member

    _____(SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ____5/14/2025____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                             Page 9 of 9

# EXHIBIT C

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $1,256,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$1,256,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016

Page 3 of 25

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016

Page 4 of 25

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                         Page 5 of 25

1008

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

## 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

## 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

## 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

## 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

Page **6** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

1010

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016                                                                          Page 8 of 25

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

ARTICLE V

NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016                                                      Page **9** of **25**

1982

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

1088

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

## ARTICLE VII

### EVENTS OF DEFAULT

</div>

**7.0 Events of Default.**

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

**7.1 Payment of Indebtedness.**

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

**7.2 Performance of Obligations.**

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

**7.3 Appointment by Receiver.**

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

**7.4 Voluntary Bankruptcy.**

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

Page **11** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

1015

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016                                                      Page **13** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

## 8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

## 8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

1017

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

### 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

### 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

Page **15** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE IX

### THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016

Page **16 of 25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

1020

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016

Page **18** of 25

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

Rev 5.2016                                                    Page **19** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016

Page **20** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

Rev 5.2016

Page **21** of **25**

## ARTICLE XII

### STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

1026

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_____ (SEAL)
By:      Mel Melaku Negussie
Its:      Member-Manager

By:      Brighton - KSDC, LLC
Its:      Member-Manager

     By:      Brighton Capital LLC
     Its:      Managing Member
     _____ (SEAL)
     By:      Mel Melaku Negussie
     Its:      Authorized Signer, on behalf
             of Balakrishnarao Sure and
             Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

I hereby certify on this __31ST__ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

Page **23** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

1027

Case 24-10023-ELG Doc 15-2 Filed 09/03/25 Filed 10/30/25 Page 933 of 1716

Exhibit B - All Pleadings And Docket Entries Page 25 of 820

Exhibit And Disclosure Statement (all Docket Entries) Page

419-423 Kennedy St NW Washington DC 20011

LOAN-006652

2nd Trust

1028

EXHIBIT "A"
**Property Description**

**Closing Date:** **March 31, 2022**

**Borrower(s):** **423 Kennedy St Holdings LLC**

**Property Address:** **419-423 Kennedy Street, NW, Washington, DC 20011**

PROPERTY DESCRIPTION:

Lots Fifty-Six (56) in Square numbered Thirty-Two Hundred Sixty (3260) in the subdivision made by Ashley Brown, as per plat thereof recorded in the Office of the Surveyor for the District of Columbia in Plat Book 214 at Page 78.

# EXHIBIT D

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                    **$1,256,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$1,256,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                         Page **1** of **9**

1006

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$43,960.00** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,250.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **12%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                                 Page 2 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;

b. If default be made in the performance of any other covenant contained in this Note;

c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

1033

<div align="right">
419-423 Kennedy St NW Washington DC 20011<br>
LOAN-006652<br>
2nd Trust
</div>

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                             **Page 4 of 9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.  WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.  GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                                 Page 5 of 9

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.   SUCCESSORS AND ASSIGNS

(a)   Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)   Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)   Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page 6 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

## CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                              Page 7 of 9

1032

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN
ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF
WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT
ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR
OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE
HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER
ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO
APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL
NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY
ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE
EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO;
SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE
OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT
JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL
DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE
HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL
MATTERS PERTAINING THERETO ARE TO BE DETERMINED
ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE
PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF
LAW PRINCIPLES.

**[SIGNATURE PAGE TO FOLLOW]**

Rev 12.2015

Page **8** of **9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_____ (SEAL)
By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

    By:     Brighton Capital LLC
    Its:     Managing Member
    _____ (SEAL)
    By:     Mel Melaku Negussie
    Its:     Authorized Signer, on behalf
            of Balakrishnarao Sure and
            Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                Page 9 of 9

# EXHIBIT E




# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,015,335.18 as of 10/30/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $276,849.94 |
| Interest Paid: | ($247,771.80) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,015,335.18** |

**Payoff good through 10/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| Payable to: | WCP Servicing LLC | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▉▉▉▉▉ |
| | **Falls Church, VA  22043** | **Account Number:** ▉▉▉▉▉ |

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT F





# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,610.00 as of 10/30/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $89,594.68 |
| Interest Paid: | ($77,034.68) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,610.00** |

**Payoff good through 10/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:   WCP Servicing LLC**          **Bank Name: United Bank**
**2815 Hartland Road Suite 200**          **Routing Number:** ▮▮▮▮▮▮
**Falls Church, VA  22043**          **Account Number:** ▮▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT G

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT H

**Subject:** RE: Payoff status of 5505 1st and Kennedy project

**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

Page 1 of 2

# EXHIBIT I




# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,031,153.71 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $323,191.50 |
| Interest Paid: | ($278,344.83) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,031,153.71** |

**Payoff good through 11/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:  WCP Servicing LLC            **Bank Name: United Bank**
             8401 Greensboro Dr Suite 960     **Routing Number:** ▅▅▅▅▅
             McLean, VA  22102          **Account Number:** ▅▅▅▅▅

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT J




# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,660.00 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $102,573.35 |
| Interest Paid: | ($90,013.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,660.00** |

**Payoff good through 11/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to: WCP Servicing LLC                 **Bank Name: United Bank**
            8401 Greensboro Dr Suite 960       **Routing Number:** ▮▮▮▮▮▮▮▮
            McLean, VA 22102               **Account Number:** ▮▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT K



12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

    Re:    **NOTICE OF DEFAULT**

    419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners
Servicing Department
8401 Greensboro Dr Suite 960
McLean, VA 22102
Office - (703)-348-0549 ext. 924
Email - <u>servicing@wcp.team</u>**

# EXHIBIT L




# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $7,174,724.51 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of 8/30/22): | $185,661.72 |
| Default Interest Owed (as of payoff date): | $456,927.95 |
| Interest Paid: | ($323,191.50) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $868,969.30 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$7,174,724.51** |

**Payoff good through 12/23/2022. Per diem $3,990.80.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to: WCP Servicing LLC                     Bank Name: United Bank
            8401 Greensboro Dr Suite 960          Routing Number: ▮▮▮▮▮▮
            McLean, VA  22102                      Account Number: ▮▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006491
and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT M





# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,439,944.65 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of 8/30/2022): | $63,637.33 |
| Default Interest Owed (as of payoff date): | $97,130.67 |
| Interest Paid: | ($102,573.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $125,600.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,439,944.65** |

**Payoff good through 12/23/2022. Per diem $837.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| Payable to: | WCP Servicing LLC | Bank Name: United Bank |
|---|---|---|
| | 8401 Greensboro Dr Suite 960 | Routing Number: ▮▮▮▮▮▮ |
| | McLean, VA 22102 | Account Number: ▮▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT N

1058

**James D. Sadowski**

_____

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| | |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

**5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))**

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (_i.e._, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower _or Borrower's affiliates_ is an Event of Default.

**423 Kennedy Street, NW (Lot 0056 in Square 3260)**

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

---------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

---------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

---------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

---------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** I **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

1060

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document. Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default". Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy. As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today. I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400, x5407
Fax: 202.452.1410
E-mail: jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie
>
> > **From:** Leslie Calderas <lcalderas@wcp.team>
> > **Date:** Thursday, December 8, 2022 at 6:57 PM
> > **To:** mel negussie <mel@ntconstruction.net>
> > **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> > **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
> >
> > Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/

8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

1088

# EXHIBIT O



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

**CERTIFICATE OF SERVICE**

I hereby certify that the attached Notice of Infraction **<u>VR22-00182</u>** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

<u>**cb@colomariver.com**</u>

_Patrice Derricott_

PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
## NOTICE OF INFRACTION

Notice No. **VR22-00182**

**12-3-2021**

Date of Service

**Issuing Agency:** D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other _____ |

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

Business/Company Name — Charge as Respondent (check): ☒ YES ☐ NO

Individual/Agent Name — Charge as Respondent (check): ☐ YES ☒ NO

1215 1ST ST NE — cb@colomariver.com

Mailing Address — Email Address

WASHINGTON — DC — 20002-7935

City — State — Zip Code

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. Instructions are on the reverse side of this Notice.

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Penalty (if applicable) |
|---|---|---|
| 12G DCMR SUB-SECTION 302.4 | $530.00 | $ |

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**     Time of Infraction: **07:37 AM**     Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

ANSWER:     ☐ ADMIT (Pay Fine)     ☐ DENY (Appear for a Hearing)     ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|
|  |  |  |

Nature of Infraction:

Date of Infraction:     Time of Infraction: _____     Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

ANSWER:     ☐ ADMIT (Pay Fine)     ☐ DENY (Appear for a Hearing)     ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

DCRA Employee Signature — GERARD ANDERSON — 10-13-2021 — 1018
Print Name — Date — Badge/Identification Number

## SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

**1. Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

- **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
- In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4ᵗʰ Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.* **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.CivilInfractions@dc.gov.
- Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

**2. Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. <u>Do not send payment.</u> Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4ᵗʰ Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to** OAH.Filing@dc.gov.

**3. To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. <u>Do not send payment.</u> Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to** OAH.Filing@dc.gov. A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE**_____

# EXHIBIT P

Case 25-10083-MG   Doc 15-1   Filed 09/04/25   Entered 09/04/25 00:13:24   Desc
Exhibit And Exhibits at Part 10, Filed Date Stored   Page 958 of 820

**OFFICE OF ADMINISTRATIVE HEARINGS**

One Judiciary Square
441 Fourth Street, NW, Suite 450N
Washington, DC 20001-2714
TEL: (202) 442-9094 · FAX: (202) 442-4789 · EMAIL: oah.filing@dc.gov

---

**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Petitioner,**

**v.**

**423 KENNEDY ST HOLDINGS LLC, Respondent.**

Case No.: 2021-DCRA-VR22-00182

---

**FINAL ORDER**

The Department of Consumer and Regulatory Affairs (the Government) mailed the attached Notice of Infraction (NOI) to Respondent on December 3, 2021. Respondent failed to answer the NOI. When a respondent fails to answer, an Administrative Law Judge may find the respondent in default and impose a fine and penalty if two conditions are met: The NOI must be valid on its face, and the Government must have submitted evidence that it properly served the NOI on Respondent.[1]

The NOI is valid on its face. The Government filed a certificate of service stating that the NOI was mailed to Respondent and filed an affidavit stating that the U.S. Postal Service has not returned the NOI undelivered. The Government also filed evidence of Respondent's last known home or business address. This administrative court concludes that Respondent had adequate notice of the charges.[2]

The deadline for Respondent's answer has expired.[3] The NOI states that a respondent who fails to answer by the deadline "**will be subject to a penalty equal to twice the amount of the fine, in**

---

[1] OAH Rule 2805.5.

[2] D.C. Official Code §§ 2-1802.01 and 2-1802.05; *see Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007) (due process requires notice "reasonably calculated to afford the party an opportunity to be heard"); *Dusenberry v. United States*, 534 U.S. 161, 170 (2002).

[3] D.C. Official Code §§ 2-1802.02(e) and 2-1802.05; OAH Rule 2812.5.

**addition to the fine itself, and the entry of a default order without additional notice**." The penalty is authorized by statute,[4] and the conditions for issuing a default order have been met.

Therefore, it is hereby:

**ORDERED**, that Respondent is in **DEFAULT** and is **LIABLE** for the violation charged in the NOI; it is further

**ORDERED**, that Respondent must pay fines and penalties in the total amount of **$1590** in accordance with the **Payment Instructions** below within 20 calendar days of the mailing date of this Order; it is further

**ORDERED**, that if Respondent fails to pay within 20 calendar days of the mailing date of this Order, interest shall accrue on the unpaid amount at the rate of 1½ % per month or portion thereof, starting 20 calendar days after the mailing date of this Order, pursuant to D.C. Official Code § 2-1802.03(i)(1); it is further

**ORDERED**, that failure to pay may result in additional sanctions, including the suspension of Respondent's licenses or permits, the placement of a lien on Respondent's real and personal property, and the sealing of Respondent's business premises or work sites, under D.C. Official Code § 2-1801.03; and it is further

**ORDERED,** that any party may ask for reconsideration or relief from this Order as stated below;[5] and it is further

**ORDERED,** that any party may appeal this Order as stated below.

---

[4] D.C. Official Code §§ 2-1801.04(a)(2) and 2-1802.02(f).

[5] Parties are encouraged to provide an email address with any filing. During the Mayor's Declaration of a Public Health Emergency, parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

**This Final Order is dated when it is served, as certified on the Certificate of Service found at the end of this decision.**

 

 

_Claudia A. Crichlow_

_____

Claudia A. Crichlow
Principal Administrative Law Judge

3

---

## PAYMENT INSTRUCTIONS

**STARTING IMMEDIATELY ALL PAYMENTS MUST BE MADE DIRECTLY TO THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.**

Online payment can be made with a credit or debit card only. If you wish to pay by check, please mail or bring the check with the Notice of Infraction / Special Assessment / Re-Inspection bill to DCRA Office of Civil Infractions, located at 1100 4th Street, SW, 2nd Floor, Washington DC, 20024. Make your check payable to "DC Treasurer." Please write your Notice of Infraction / Special Assessment / Re-Inspection number on the check.

**Online payment** can be made using the following link: **https://govservices.dcra.dc.gov/paymentportal**. Please enter the Notice of Infraction Number. When paying for multiple fines that have been consolidated, please enter the first number listed in the Final Order.

**Walk-In payment** is available at the **District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.** The walk-in cashier's office requires payment be accompanied with a payment voucher that the respondent must secure from DCRA's Office of Civil Infractions. To request a payment voucher, please email DCRA.Civilinfractions@dc.gov with reference to the Notice of Infraction Number.

**Mail payment** to **Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.**

To ensure payments are applied accurately, record the Notice of Infraction number on the front of any check or money order and correspondence.

A $65.00 FINE WILL BE IMPOSED ON CHECKS DISHONORED BY THE BANK.

INTEREST
D.C. Official Code § 2-1802.03.(i)(1) provides that fines be paid in full with interest from the date levied. For each month or portion thereof that a fine and/or assessment remain unpaid interest is accrued at 1.5%. Interest begins 30 calendar days after the fine and/or assessment is levied.

4

District of Columbia
Office of Administrative Hearings
One Judiciary Square
441 Fourth Street, NW
Washington, DC  20001-2714


423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

---

**Certificate of Service:**

**By First-Class Mail (Postage Paid):**

423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

**By Email:**

Esther Yong McGraw
General Counsel
Dep't of Consumer and Regulatory Affairs
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov

I hereby certify that on September 7, 2022 this document was served upon the parties named on this page at the address(es) and by the means stated.

//s W. Green

_____

Clerk / Deputy Clerk

## APPEAL RIGHTS

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

**COVID-19 NOTICE:** The deadlines described below may be temporarily suspended or extended due to the COVID-19 pandemic. For up-to-date information about any changes to these deadlines, please visit the Office of Administrative Hearings website at https://oah.dc.gov and the D.C. Court of Appeals website at https://www.dccourts.gov/court-of-appeals.

## HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[6]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days** if OAH mailed the Final Order to you). **HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS**

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

<div align="center">

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

</div>

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[6] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

## IMPORTANT NOTICES:

- The amount of a lawfully imposed fine cannot be modified or reduced on appeal. D.C. Official Code § 2-1831.16(g).
- Filing an appeal does not stay (stop) the requirement to comply with a Final Order, including any requirement to pay a fine, penalty or other monetary sanction imposed by a Final Order. If you wish to request a stay, you must first file a written motion for a stay with the Office of Administrative Hearings. If the presiding Administrative Law Judge denies a stay, you then may seek a stay from the Court of Appeals or the Board as appropriate.



Government of the District of Columbia
Department of Consumer and Regulatory Affairs
Office of Civil Infractions

## AFFIDAVIT THAT NOTICE OF INFRACTION HAS NOT BEEN RETURNED

**Notice of Infraction Number: <u>VR22-00182</u>**

The Notice of Infraction referred to above was:

**X** Emailed to the Respondent on **December 3, 2021** using the email address(es) provided by the Respondent. The email included a delivery confirmation receipt,

<u>and/or</u>

☐ Mailed to the Repsondent on **N/A** First Class U.S. Mail Postage Prepaid to the address(es) recorded on the Certificate of Service. The evenlope(s) included the return address for the this agency.

At least 15 calendar days have passed since the email or mailing date described above. My review of DCRA records to determine whether or not the email was returned as undeliverable or whether the U.S. Postal Service has returned the mailing to this agency confirmed that the Notice of Infraction was not returned at any time subsequent to the the time it was either emailed or mailed to the respondent as reflected in the Certificate of Service.

I declare under penalty of perjury that this information is correct.

_____*Patrice Derricott*_____          ___**December 24, 2021**___
Signature                                                              Date

Patrice Derricott
Program Supports Speclist
Office of Civil Infractions
Department of Consumer and Regulatory Affairs
1100 4th St., SW, Suite E510
Washington, DC 20024



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

**CERTIFICATE OF SERVICE**

I hereby certify that the attached Notice of Infraction **<u>VR22-00182</u>** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

<u>**cb@colomariver.com**</u>

_Patrice Derricott_

PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
# NOTICE OF INFRACTION

**Notice No.  VR22-00182**

**12-3-2021**

Date of Service

**Issuing Agency:**    D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other _____ |
|---|---|---|---|---|

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

Business/Company Name            Charge as Respondent (check): ☒ YES  ☐ NO

Individual/Agent Name            Charge as Respondent (check): ☐ YES  ☒ NO

1215 1ST ST NE                                                **cb@colomariver.com**

Mailing Address                                               Email Address

WASHINGTON                                    DC            20002-7935

City                                          State         Zip Code

You are charged with violating the District of Columbia laws or regulations stated below.  You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service.  You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. **Instructions are on the reverse side of this Notice.**

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines.  If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty.  For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Penalty (if applicable) |
|---|---|---|
| 12G DCMR SUB-SECTION 302.4 | $530.00 | $ |

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**      Time of Infraction: **07:37 AM**      Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**      ☐ ADMIT (Pay Fine)          ☐ DENY (Appear for a Hearing)          ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____   No_____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction:

Date of Infraction:      Time of Infraction: _____      Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**      ☐ ADMIT (Pay Fine)          ☐ DENY (Appear for a Hearing)          ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____   No_____

**Total Fines and Penalties $530.00**

**If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.**

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

| | GERARD ANDERSON | 10-13-2021 | 1018 |
|---|---|---|---|
| DCRA Employee Signature | Print Name | Date | Badge/Identification Number |

## SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

1. **Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

   - **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
   - In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4ᵗʰ Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.* **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.Civilinfractions@dc.gov.
   - Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

2. **Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. Do not send payment. Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4ᵗʰ Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to** OAH.Filing@dc.gov.

3. **To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. Do not send payment. Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to** OAH.Filing@dc.gov. A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE** _____

# EXHIBIT Q

# DISTRICT OF COLUMBIA
# OFFICE OF ADMINISTRATIVE HEARINGS

## Cover Sheet for Electronic Filing

I am filing the attached papers at the Office of Administrative Hearings.

**1. Check one of the boxes below.**

☒ The case number is: ___2021-DCRA-VR22-00182___ .

☐ This is a new case, and a case number has not yet been assigned.

**2. Briefly describe the paper that you are filing:**

Request to Change Final Order for Case # 2021-DCRA-VR22-00182

3. **My name, mailing address, telephone number, and e-mail address are:**

Name: Mel Negussie

Mailing Address:

1629 K St NW. Suite 300

City, State, Zip: Washington, DC 20006

Telephone: 202-271-5046

E-mail address: cbp@harkenbuilders.com

Representing: 423 Kennedy St Holdings LLC

I agree to receive documents from the court at my email address. [Yes]   No

4. You should complete this form, save it to your computer, and then attach it to an e-mail, along with the papers you are filing. The e-mail address for filing papers at OAH is oah.filing@dc.gov. Papers sent to any other e-mail address will **not** be accepted for filing.

**I sent a copy of the attached papers to all other parties or their representatives as listed below.**

Person to Whom the Papers Were Sent:

_____

Address _____

City, State, Zip Code_____

Date the papers were sent:_____

Method of sending:
☐ Mail   ☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____ )

Person to Whom the Papers Were Sent:

_____

Address _____

City, State, Zip Code_____

Date the papers were sent:_____

Method of sending:
☐ Mail   ☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____ )

**If you sent the papers to more than two people, provide the above information for the additional people on a separate sheet.**

# DISTRICT OF COLUMBIA
## OFFICE OF ADMINISTRATIVE HEARINGS

One Judiciary Square
441 Fourth Street, NW, 450 North
Washington, DC 20001-2714
TEL: (202) 442-9094    FAX: (202) 442-9451

## REQUEST TO CHANGE A FINAL ORDER
### ("I want the decision changed")

You may use this form to ask the Administrative Law Judge to change a Final Order **after** it has been issued.

My Name: Mel Negussie

My Case No.: 2021-DCRA-VR22-00182

My Address: 1629 K St NW. Suite 300

My Telephone No.: 202-271-5046

City/State/Zip Code: Washington, DC 20006

My Fax No.:

If you lost because the Final Order said you did not file something (such as an answer to a Notice of Violation, an answer to a Notice of Infraction, or a Claims Examiner's Determination), explain why you did not file it.

We did not file it because we did not know that this infraction existed. The only notice we received was the Final Order via email. The mailing address on the notice was incorrect and was mailed to the old property owner.

Why do you think that the Final Order is wrong or unfair?  Why should the Administrative Law Judge change the Final Order?

We did not get the notice and did not know that this case was still active. We also have been under construction for the past 12 months and have made improvements to the site and cleaned up the area that we were fined for.

The OAH Resource Center, which has a variety of tools to assist you, is open during regular OAH business hours.  The OAH website is available at www.oah.dc.gov.  It includes the text of the rules, forms, and other helpful information.  The OAH Rules concerning requests for reconsideration and requests for relief from a final order can be found at OAH Rule 2828.

# EXHIBIT R

## James D. Sadowski

| | |
|---|---|
| **From:** | DOB/DLCP Payment Confirmation <DoNotReply-DCRA@dc.gov> |
| **Sent:** | Saturday, December 10, 2022 6:38 AM |
| **To:** | mel@ntconstruction.net |
| **Subject:** | Payment Confirmation for DOB Code Enforcement Fine |

**Importance:** High

This email is generated automatically. Please do not reply.

**Your Payment has been accepted.**

Thank you for your recent payment submitted via online payment portal. Please make sure you keep a copy of this email for your records.

**Payment Details:**

| | |
|---|---|
| Notice of Infraction (NOI) Number: | VR22-00182 |
| Payment date: | 12/10/2022 |
| Amount Charged: | $ 1657.43 |
| Card number ending in: | 8755 |
| Transaction ID: | AP1C7F27E550 |

Thank you,
DOB/DLCP



# EXHIBIT S

# DISTRICT OF COLUMBIA
## OFFICE OF ADMINISTRATIVE HEARINGS
One Judiciary Square
441 Fourth Street, NW
Washington, DC 20001-2714
TEL: (202) 442-9094
FAX: (202) 442-4789
oah.filing@dc.gov

DISTRICT OF COLUMBIA
DEPARTMENT OF BUILDINGS
AS SUCCESSOR AGENCY TO THE
DISTRICT OF COLUMBIA
DEPARTMENT OF CONSUMER AND
REGULATORY AFFAIRS,[1]
    Petitioner,

v.

423 KENNEDY ST HOLDINGS LLC,
    Respondent.

Case No.: 2021-DCRA-VR22-00182
NOI No.: VR22-00182

## ORDER VACATING FINAL ORDER
## AND
## DISMISSING CASE WITHOUT PREJUDICE

### I. Introduction

I issued a Final Order in this case, which was served on September 7, 2022, (the "Final Order"), finding Respondent in default for failing to answer Notice of Infraction No. VR22-00182 (the "NOI"). I imposed the authorized fine and late answer penalty. For the reasons set forth below, I now vacate the Final Order and dismiss Case No. 2021-DCRA-VR22-00182 and the NOI, each without prejudice.

---

[1] In accordance with the Department of Buildings Establishment Act of 2020, D.C. Code 10-561.01 et seq., OAH Rule 2816.6, and Mayor's Order 2022-149, OAH retains jurisdiction over the Department of Buildings and the Department of Licensing and Consumer Protection as successor agencies to the Department of Consumer and Regulatory Affairs (DCRA). This matter has been recaptioned to refer to the applicable successor agency to DCRA.

On December 12, 2022, the Petitioner, DOB, filed a Motion of Dismissal with the Office of Administrative Hearings.

*OAH rule 2817.1 The party initiating the case may move to dismiss the case at any time, and the Administrative Law Judge may grant the motion without waiting for a response from the opposing side.*

The District of Columbia Department of Buildings (the "Government") may, at its discretion and as authorized by law, issue a new Notice of Infraction and begin a new case before this administrative court, for the same alleged infraction(s).

It is therefore this 12th day of December, 2022:

**ORDERED**, that the Final Order is **VACATED** and of no further effect whatsoever; and it is further

**ORDERED**, that Notice of Infraction No. VR22-00182 is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED**, that the appeal rights of any party aggrieved by this Order are stated below; and it is further

*(s) Claudia A. Crichlow*
Claudia A. Crichlow
Principal Administrative Law Judge

1082

## Certificate of Service:

**By Email:**

Esther Yong McGraw
General Counsel
Department of Buildings
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov
       dob.filing@dc.gov

**By First-Class Mail (Postage Paid) and
Email:**

Chapman Paret
629 K St NW
Ste 300
Washington, DC 20006
ecbp@harkenbuilders.com

I hereby certify that on <u>December 12, 2022,</u>
this document was served upon the parties
named on this page at the address(es) and by
the means stated.

*(s) Joseph Harrison*
Joseph Harrison
Paralegal Specialist

- 3 -

1088

**APPEAL RIGHTS**

After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.

**HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[2]**

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days** if OAH mailed the Final Order to you).

**HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS**

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[2] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

- 4 -

# EXHIBIT T

# NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**★ ★ ★**

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024**
Phone (202)727-5374

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square | 3260 | Suffix | | Lot | 0056

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A

FROM: WCP Fund I LLC          PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE

TO BE HELD ON | July 25 | , 20| 23 |, AT

THE OFFICE OF | Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

| 2:10 | P.M.  THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on | April 8 | , 20| 22 |.

Liber: | | Folio: | | Instrument No: | 2022038745

Maker(s) of the Note secured by the instrument: | 423 KENNEDY ST HOLDINGS LLC

| See Exhibit A | | See Exhibit A |
Phone | | Last Known Address

Description of Property: | Multi-Family Residential Building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: | 423 Kennedy Street, NW, Washington, DC 20011

Square: | 3260 | Lot: | 0056 | or Parcel No: |

Holder of the Note (Name): | WCP Fund I LLC

Phone: | (703) 727-5464 | Address: | 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ | 1,598,839.60 |**

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 ¡Right to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.¡

$ | N/A commercial loan

Name of person to contact to stop foreclosure sale: | Russell S. Drazin
Address: | 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015 | Phone: | (202) 223-7900

** as of June 23, 2023

---

Affidavit of Non-Residential Mortgage Foreclosure recorded on June 22, 2023 as Instrument No. 2023052260

★ ★ ★

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the**
**District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

Square [ 3260 ]  Suffix [    ]  Lot [ 0056 ]

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on [ June 23 ] ,20 [ 23 ] ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

[ 06/23/2023 ]
Date

_____
(Signature of Noteholder or his agent)

I, [ Deborah A. Stewart ] , a Notary Public in and for the [ District of Columbia ] ,
DO HEREBY CERTIFY THAT [ Russell S. Drazin ]
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the [ 23rd ] day of [ June ] , 20 [ 23 ] , personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be [ his ] act and deed.

Given under my hand and seal this [ 23rd ] day of [ June ] , 20 [ 23 ].

_____
Notary Public

My Commission Expires: [ 09/30/2025 ]
mmddyyyy

## EXHIBIT A

Borrower, Grantor, Record Owner:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
202-223-7900

## TRUSTEE'S SALE
## OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

## JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

---

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202) 727-5374**

SSL:

3260/0056

Recording requested by:

Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo      [name], Vice President of Finance [title]

of WCP Fund I LLC

[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC      is the holder of the mortgage recorded as Instrument Number 2022038745      in the District of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on this 21st day of June , 20 23

by Christina Araujo      (name of person) as

Vice President of Finance      (type of authority, e.g. officer, trustee, etc.) of WCP Fund I LLC

(name of party on behalf of whom instrument was executed).

Notary Public

My Commission Expires:



Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
   RECORDING FEES       $25.00

    SURCHARGE        $6.50

TOTAL:            $31.50

Case 24-10023-TLC-Dkt 15-Doc Filed 07/03/25 Entered 10/30/25 09:39:24 Desc
Exhibit B All Pleadings Ad Hoc Dkt 1 Filed 07/03/25 Page 1003 of 1716

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC
_____
                                                    Plaintiff
                    vs.

Daniel Huertas                                                      Case Number    __2023-CAB-004260__
_____
                                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000                          By _____
_____                              Deputy Clerk
Address
Washington, DC  20006
_____
                                                        Date        **July 17, 2023**
(202) 452-1400                                               _____
_____
Telephone
如需翻译, 请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.     የአማርኛ ትርጉም ለማግኘት (202) 879-4828   ይደውሉ

_Clerk of the Court_

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                              Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____

Demandante

contra

Número de Caso: _____

Daniel Huertas
_____

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

801 17th Street, NW, Suite 1000
_____
Dirección

Por: _____

Washington, DC 20006

Subsecretario

(202) 452-1400
_____
Teléfono

Fecha _____

如需翻译.请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC
_____
                                        Plaintiff
                vs.

                                                    Case Number _____2023-CAB-004260_____

DP Capital, LLC d/b/a Washington Capital Partners
_____
                                        Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
        Deputy Clerk

Date _____**July 17, 2023**_____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면,(202)879-4828로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
Demandante

contra

Número de Caso: _____

DP Capital, LLC d/b/a Washington Capital Partners
_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC 20006

Por: _____
Subsecretario

(202) 452-1400
_____
Teléfono

Fecha _____

如需翻译.请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 전화해주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                                        Plaintiff
                              vs.

                                                                    Case Number _____2023-CAB-004260_____

WCP Fund, I, LLC
_____
                                                        Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC 20006
_____

(202) 452-1400
_____
Telephone

                                                        _Clerk of the Court_

By _____
        Deputy Clerk

Date _____
                                                        **July 17, 2023**

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                        Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                        Demandante
              contra

                                                          Número de Caso: _____

WCP Fund, I, LLC
_____
                              Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC 20006

(202) 452-1400
_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
                        Subsecretario

Fecha _____

如需翻译.请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828로 전화해주십시오          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                    Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**

**CIVIL DIVISION**

**Civil Actions Branch**

**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**

**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                                    Plaintiff

vs.

Case Number    2023-CAB-004260

Russell S. Drazin

_____
                                    Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
                              Deputy Clerk

Date    **July 17, 2023**

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면,(202)879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                    Demandante
            contra

                                                        Número de Caso: _____

Russell S. Drazin
_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

                                            *SECRETARIO DEL TRIBUNAL*

801 17th Street, NW, Suite 1000
_____        Por: _____
Dirección                                               Subsecretario
Washington, DC 20006

(202) 452-1400
_____        Fecha _____
Teléfono

如需翻译.请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828 로 연락하시기 바랍니다          የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                        Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

423 Kennedy St Holdings LLC
_____

Plaintiff
vs.

Case Number ___2023-CAB-004260___

SF NU, LLC
_____

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006

(202) 452-1400
_____
Telephone

By _____
Clerk of the Superior Court

Deputy Clerk

Date ___July 17, 2023___

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                     Demandante

         contra

                                                   Número de Caso: _____

SF NU, LLC
_____
                                     Demandado

## CITATORIO

Al susodicho Demandado:

       Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

       A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC 20006
_____

Por: _____
                                        Subsecretario

(202) 452-1400
_____
Teléfono

Fecha _____

如需翻译，请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 도움을 받으려면 (202) 879-4828 로 전화 걸어주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

       Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                   Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

## CIVIL DIVISION- CIVIL ACTIONS BRANCH

### INFORMATION SHEET

423 Kennedy St Holdings, LLC

Case Number: 2023-CAB-004260

vs

Date: _____

DP Capital, LLC d/b/a Washington Capital Partners, et, al.

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)*   James D. Sadowski | Relationship to Lawsuit |
| --- | --- |
| Firm Name:   Greenstein Delorme & Luchs PC | ☒ Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.:   202-452-1400 ext. 7805   Six digit Unified Bar No.:   446635 | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☒ 12 Person Jury
Demand: $ 1 Million    Other: Punitive Damages

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: 2022-CAB-005935    Judge: Ebony Scott    Calendar #: _____

Case No.: _____    Judge: _____    Calendar#: _____

---

**NATURE OF SUIT:** *(Check One Box Only)*

**A. CONTRACTS** * Implied Covenant of Good Faith and Fair Dealing    **COLLECTION CASES**

☒ 01 Breach of Contract*
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
   Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
   Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
   Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
   Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
   Under $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

**C. PERSONAL TORTS** 1. Tortious Interference with Business Relations ; 2. Breach of Fiduciary Duty

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☒ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE    IF USED

CV-496/June 2015

# Information Sheet, Continued

---

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [X] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability
- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

Injunctive Relief - to Stop a Foreclosure

---

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

---

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

---

_____/s/ James D. Sadowski_____

Attorney's Signature

July 13, 2023 _____

Date

CV-496/ June 2015



# Superior Court of the District of Columbia
## Civil - Civil Actions Branch
### 500 Indiana Ave NW, Room 5000, Washington DC 20001
### (202) 879-1133 | www.dccourts.gov

**Case Number:** 2023-CAB-004260

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/13/2023 | 9:30 AM | Remote Courtroom 318 |

**Please see attached instructions for remote participation.**

Your case is assigned to Associate Judge Milton C Lee.

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) When you are ready, click "Join Meeting".

3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.

2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

3) For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

1086

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Page 3 of 6

1082

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.

## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

     Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
### (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

District of Columbia Courts

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

**The remote site locations are:**



| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| --- | --- |
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** *No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

 **\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov

Case 25-1500773-ELG - Doc 15-2 - Filed 07/01/25 - Entered 06/30/25 08:26:34 - Desc
Exhibit B - All Pleadings Admin Record (Part 1 of 5) Page 1040 of 2207 - Page 1020 of 1716

# Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

**Los centros de acceso remoto son:**



| | |
|---|---|
| **Sitio Remoto - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sitio Remoto - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Sitio Remoto - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sitio Remoto - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.** Si necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**  DP Capital LLC                                   **Case Number:**   2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

#### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

#### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

#### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

DP Capital LLC
8401 Greensboro DR STE 960
McLean VA  22102

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:** WCP Fund I, LLC                    **Case Number:** 2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

#### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

#### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

#### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

WCP Fund I, LLC
2815 Hartland RD STE 200
Falls Church VA  22043

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:** Daniel Huertas                    **Case Number:** 2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

#### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

#### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

#### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Daniel Huertas
909 Chinquapin RD
McLean VA  22102

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**   Russell  S. Drazin                                **Case Number:**   2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Russell  S. Drazin
4400 Jenifer ST NW STE 2
Washington DC  20015

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**  SF NU, LLC                                              **Case Number:**   2023-CAB-004260

## NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

SF NU, LLC
1455 Research BLVD STE 510
Rockville MD  20850

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

Case 25-10088-ELG   Doc 15-7   Filed 09/04/25   Entered 09/04/25 00:18:27   Desc
Exhibit B - All Pleadings Ad Filed Case Together (Part 1) of Docket Entries 20   Page 1031 of 1716

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**   James D Sadowski                    **Case Number:**    2023-CAB-004260

## NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

James D Sadowski
GREENSTEIN DELORME & LUCHS PC
801 17TH STREET NW
SUITE 1000
WASHINGTON DC  20006

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:** Alexandria J Smith          **Case Number:** 2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

#### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

#### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

#### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Alexandria J Smith
801 17TH ST NW
STE 1000
WASHINGTON DC  20006

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:** James D Sadowski                    **Case Number:** 2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

#### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

#### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

#### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

James D Sadowski
GREENSTEIN DELORME & LUCHS PC
801 17TH STREET NW
SUITE 1000
WASHINGTON DC  20006

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**   Alexandria J Smith                    **Case Number:**   2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

#### To Join by Computer, Tablet, or Smartphone:

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

 Link: dccourts.webex.com/meet/ctb318

 Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

#### OR To Join by Phone:

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
 Enter the Webex Meeting ID shown above followed by "##"

#### Resources and Contact Information:

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Alexandria J Smith
801 17TH ST NW
STE 1000
WASHINGTON DC  20006

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

      *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

      *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
8/10/2023

### PRAECIPE SUBMITTING VERIFICATION/AFFIDAVIT TO PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE

The Plaintiff, Developer RE1 LLC ("Developer RE1"), hereby submits the Verification/Affidavit of Mel Negussie that was supposed to be included in the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure ("Emergency Motion") filed on July 12, 2023. The Verification/Affidavit, which is attached to this Praecipe, was not included with the Emergency Motion due to an error by the undersigned. The undersigned apologizes to the Court and opposing counsel for this oversight.

        Respectfully submitted,

        GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 14, 2023

        /s/ James D. Sadowski
        Alexandria J. Smith (D.C. Bar. No. 1781067)
        James D. Sadowski (D.C. Bar No. 446635)
        801 17th Street, NW, Suite 1000
        Washington, DC 20006
        Telephone:  (202) 452-1400
        Email:  jds@gdllaw.com
        *Counsel for Plaintiff Developer RE1 LLC*

4888-6930-8016

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Praecipe and the attachment were served by the

Court's electronic filing system this 14th day of July 2023, and a notice of filing should be served

on all counsel of record.

/s/ James D. Sadowski
James D. Sadowski

4888-6930-8016

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
              8/10/2023

## VERIFICATION / AFFIDAVIT OF MEL NEGUSSIE

I, Mel Negussie, declare under oath that:

1.    I am over the age of 18, I am otherwise competent to be a witness, and I am authorized to give this Verification / Affidavit on behalf of Developer RE1, LLC, the Plaintiff in this case ("Developer RE1").

2.    I have personal knowledge of the facts set forth in the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Motion for TRO"). The facts stated in the Motion for TRO are true and correct to the best of my knowledge, information, and belief.

3.    Developer RE1 will be irreparably harmed if a foreclosure sale that is scheduled for July 25, 2023 at 2:00 p.m., which sale was orchestrated by the Defendants in this case, is not stopped by the issuance of a temporary restraining order.

I declare under penalty of perjury that the foregoing facts are true to the best of my knowledge.

_____
Mel Negussie

4871-2480-0880.v1



# Superior Court of the District of Columbia
## Civil - Civil Actions Branch
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**(202) 879-1133 | www.dccourts.gov**

**Case Number:** 2023-CAB-004260

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/13/2023 | 9:30 AM | Remote Courtroom 318 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Milton C Lee. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1)  Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

    Link: dccourts.webex.com/meet/ctb318

    Meeting ID: 129 801 7169

2)  When you are ready, click "Join Meeting".

3)  You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1)  Call 202-860-2110 (local) or 844-992-4726 (toll-free)

2)  Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1)  For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.

2)  For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

3)  For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Page 3 of 6

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing

- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
**(Click here for more information)**

- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

Case 23-1300322-EB1G0-Doc 15-1 Doc 5 Filed 07/01/24 Filed 10/30/25 08/25 09:23:24 Desc
Exhibit B - All Pleadings Exhibit and All Debtor Hearing Part 1 All Page 26 Times 220 Page 1046 of 1718
District of Columbia Courts

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

**The remote site locations are:**



| | |
|---|---|
| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** *No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov

Case 25-5003 ... Document ... Filed 09/04/25 ... Page 1047 of 1716
Exhibit B - All Pleadings And Docket Entries (Part 11) Page 1131 of 2207

# Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

**Los centros de acceso remoto son:**



**Sitio Remoto - 1**
Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

**Sitio Remoto - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

**Sitio Remoto - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

**Sitio Remoto - 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**Sitio Remoto - 5**
Reeves Center
2000 14th Street, NW, 2nd Floor
Community Room
Washington, DC 20009

**Sitio Remoto - 6**
Reeves Center
2000 14th Street, NW, Suite 300N
Office of the Tenant Advocate
Washington, DC 20009
*No se puede entrar sin cita previa*

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.** Si necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

Exhibit B - All Pleadings Ad Filed and Authenticated Part 11 A3 Page 531 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

    Plaintiff,

v.

DP Capital, LLC, et al.

    Defendants.

Case No. 2022 CAB 005935

Judge Ebony Scott

**OPPOSED MOTION FOR PROTECTIVE ORDER TO
PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 26(c), and move this Honorable Court to enter a protective order prohibiting Developer RE1 LLC (the "Plaintiff") from taking the deposition of Mr. Drazin, counsel for WCP and DPCL,[1] and in support thereof state as follows:

## I.    Introduction

The Plaintiff has noticed the deposition of Mr. Drazin, outside general counsel to WCP and DPCL. Mr. Drazin has counseled WCP and DPCL in connection with the loans at issue in this case and has been joined as a co-defendant in this case for reasons that continue to evade understanding. Indeed, while the Plaintiff has sued Mr. Drazin (perhaps with designs of using such as a pretext for taking his deposition), the Plaintiff has not actually made Mr. Drazin a party to any substantive

---

[1] A copy of the notice of deposition is attached hereto as Exhibit A.

1

cause of action herein. Rather, Mr. Drazin is merely named as a defendant on a claim for "injunctive relief," which case law has long held to be a remedy but not a cause of action.[2]

This effort of the Plaintiff is improper and appears to be undertaken for solely harassing and vexatious purposes. Case law teaches that the deposing of opposing lawyers is not only frowned upon but, indeed, fodder for the entry of a protective order in most situations. This case is no different, and the facts *sub judice* well lend themselves to entry of an order prohibiting the subject deposition from occurring.

## II.    Standard

The rules of this Honorable Court, modeled after the analogous Federal Rules of Civil Procedure, expressly permit, *inter alia*:

> A party or any person from whom discovery is sought may move for a protective order in this court… The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery…

D.C. Super. Ct. R. Civ. P. 26(c). *See also*, Fed. R. Civ. P. 26(c) (providing substantially identically, save for interlineating the words "in the court where the action is pending" for the words "this court").

---

[2] . *See, e.g.*, *Equitas Disability Advocates, LLC v. Bryant*, 134 F. Supp. 3d 209, 222 (D.D.C. 2015) ("…the claim for injunctive relief must also be dismissed as injunctive relief is a type of remedy, not a freestanding cause of action.") (citing *Base One Techs., Inc. v. Ali*, 78 F.Supp.3d 186, 199 (D.D.C. 2015); *Johnson v. District of Columbia*, 49 F.Supp.3d 115, 117 n. 1 (D.D.C. 2014); *Guttenberg v. Emery*, 41 F.Supp.3d 61, 70 & n. 5 (D.D.C. 2014)); *Butler v. Georgetown Univ.*, 2022 WL 1773479, at *2 (D.D.C. 2022) ("A request for injunctive relief is 'a remedy and does not assert any separate cause of action.'") (quoting *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 341 (D.D.C. 2016)); *C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*, 308 F. Supp. 3d 145, 152 (D.D.C. 2018) ("Injunctive relief, however, ' 'is not a freestanding cause of action, but rather ...a form of relief to redress' ' a plaintiff's other claims.") (quoting *Johnson v. Mao*, 174 F.Supp.3d 500, 523–524 (D.D.C. 2016) (quoting *Base One Techs., Inc.*, 78 F.Supp.3d at 199))).

2

Ordinarily, "'the burden is upon the party seeking non-disclosure or a protective order' to show why it should be granted." *Office of People's Counsel v. Pub. Serv. Comm'n*, 21 A.3d 985, 993 n. 15 (D.C. 2011) (quoting *Penthouse Int'l v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981); *Plough, Inc. v. Nat'l Acad. of Sciences*, 530 A.2d 1152, 1156 n. 5 (D.C. 1987)). However, where, as here, a protective order is sought to prohibit the deposition of a party's opposing counsel, "Courts … presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise." *Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947); *Shelton v. Am. Motors Sales Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208–09 (5th Cir. 1999); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir.2003); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009); *Sterne Kessler Goldstein & Fox PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011)).[3]

### III.  Argument: The Deposition of Mr. Drazin Should be Prohibited

#### a.  The Plaintiff Cannot Meet Its Burden

As noted *supra*, there exists a rebuttal presumption against permitting the deposition of a party's opposing counsel, and the burden thusly falls on the proponent of a deposition to show why such is proper. Here, the Plaintiff cannot meet that burden. To the contrary, the record herein is such that all non-privileged information obtainable from Mr. Drazin can be obtained from other

---

[3] There are numerous references to precedent from federal courts herein, inasmuch as District of Columbia Rule 26 is to be interpreted in accord with Federal Rule of Civil Procedure 26. *See, e.g.*, *Plough Inc.*, 530 A.2d at 1156, n. 5 ("Super. Ct. Civ. R. 26(c) is identical to its federal counterpart. 'In interpreting the applicable discovery rules, we are guided generally by decisions construing the Federal Rules of Civil Procedure, which are substantially the same as the rules of the trial court.'") (quoting *Dunn v. Evening Star Newspaper Co.*, 232 A.2d 293, 295 (D.C. 1967)).

witnesses and, as such, there is no need to undertake the extraordinary measure of deposing counsel for WCP and DPCL.

The United States District Court for the District of Columbia has invoked a three prong test, established by the United States Court of Appeals for the Eighth Circuit, in assessing whether a deposition of opposing counsel ought to be permitted, requiring a proponent to demonstrate that "(1) no other means exists to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *White v. Boarman*, 2011 WL 13266589, at \*2 (D.D.C. 2011) (quoting *Shelton*, 805 F.2d at 1327).

Here, Mr. Drazin has no discoverable knowledge that cannot be gleaned from WCP, DPCL and/or Mr. Huertas (who is scheduled to be deposed on Wednesday, July 19, 2023). While Mr. Drazin has counseled WCP and DPCL in connection with their loans to the Plaintiff, the whole of the loan documents are possessed by his clients (which documents, through the discovery process, have now been produced to the Plaintiff). Equally, Mr. Drazin never interacted directly with the Plaintiff, except (a) through e-mails, which the Plaintiff has; and (b) at a mediation held following the commencement of this case; even if some aspect of that mediation were to become discoverable (which is far-fetched), Mr. Huertas was present for the entirety of the meeting and can accordingly testify to the events that occurred therein.

Indeed, Mr. Drazin's only knowledge relevant to this case is directly attributable to either (i) his review of documents, furnished by his clients, all of which his clients can produce (and have produced) in discovery to the extent they are not privileged; and (ii) his communications with his clients, which are highly privileged and not subject to discovery. Mr. Drazin has no other pertinent knowledge – he has not interfaced with the Plaintiff, except as disclosed above; he has never

<div align="center">4</div>

personally visited the building that is the collateral for the loans at issue in this case; he did not personally collect payments from the Plaintiff; and he did not elect to lend monies to the Plaintiff.

Accordingly, in assessing the second prong of the *Shelton* test, there is no information that Mr. Drazin can uniquely produce, except for information that is either irrelevant or privileged. While he could testify to what legal advice he has given his clients and the foundation of that advice, such would be the epitome of privileged material well outside the permissive contours of discovery. And while he could testify to his other interactions with DPCL and WCP as their counsel, such would be equally privileged in nature and, too, would be starkly irrelevant to the case at bar.

This leaves the third element – whether information is crucial to the case at bar. Since there is no information that Mr. Drazin can uniquely provide, except for privileged information, it is difficult to fathom how that information could be crucial to the matter *sub judice*. It is not merely that Mr. Drazin lacks unique possession of discoverable information crucial to this case; it is, too, that the only information he uniquely has is uniformly privileged in nature. Everything else can be gleaned through WCP, DPCL, Mr. Huertas, and the troves of documents that DPCL has produced pursuant to the Plaintiff's elastic discovery requests herein.

In short, none of the three *Shelton* elements can be satisfied, and it is accordingly appropriate to prohibit the Plaintiff from deposing Mr. Drazin.

More macroscopically, it bears notation that case law rather strictly informs why such a high burden is imposed on a party seeking to depose an opposing attorney, recognizing the unique mischief that can be undertaken through such a process. As far back as 1947, the Supreme Court of the United States had occasion to touch upon the perils of subjecting a lawyer to discovery:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and

5

their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

More recently, the United States District Court for the Southern District of Mississippi – in a case invoking the same *Shelton* test as has been embraced in the District of Columbia – explained, "As this court has stated in previous cases, depositions of opposing counsel are discouraged, as they disrupt the adversarial process and lower the standards of the profession. Thus, a party should not be permitted to take the deposition of another party's attorney except in the most unusual of circumstances." *Wilson v. Scruggs*, 2003 WL 23521358, at *1 (S.D. Miss. 2003) (citing *Shelton*, 805 F.2d 1323, 1327 (8th Cir.1986), *Hickman*, 329 U.S. at 513; *Jones v. Board of Police Commissioners of Kansas City, Missouri*, 176 F.R.D. 625 (W.D. Mo. 1997); *Caterpillar Inc. v. Friedemann*, 164 F.R.D. 76 (D. Or. 1995); *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990).

As observed by the United States District Court for the District of Kansas, "While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Mike v. Dymon, Inc.*, 169 F.R.D.

6

1148

376, 378 (D. Kan. 1996) (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, <mark>132 F.R.D. 687, 689</mark> (D. Kan. 1990)).

The *Wilson* and *Mike* holdings are neither random nor outliers. To the contrary, they are both cited herein because they have both been favorably cited by the United States District Court for the District of Columbia. *See Stern*, <mark>276 F.R.D. at 381</mark>. And that local case also notes a blizzard of concurring holdings from other courts, including ones sitting in New York and Illinois. *Id.*

**b. Mr. Drazin's Ministerial Service as Substitute Trustee Does Not Alter the Impropriety of His Deposition Being Taken**

Following a good faith conference with counsel for the Plaintiff, it is understood that at least one of the theories espoused for deposing Mr. Drazin is that he is the substitute trustee on a deed of trust, securing an obligation of the Plaintiff to WCP, that is set to be foreclosed. It is, however, a longstanding practice in the District of Columbia for secured parties to have their counsel serve as trustees under deeds of trust, with the resulting obligations being largely ministerial in nature. This reality does not change the analysis set forth above.

As a starting point, Mr. Drazin's service as trustee does not alter any of the *Shelton* factors discussed *supra*. In this capacity, Mr. Drazin has (i) filed an Notice of Foreclosure Sale of Real Property or Condominium Unit, on the official form issued by the District of Columbia; (ii) caused that form to be served on all pertinent parties (including the Plaintiff and its counsel of record); (iii) scheduled a foreclosure auction; and (iv) made arrangements to have notice of that foreclosure auction advertised in the Washington Post. The notice is a matter of public record and was sent to the Plaintiff and its counsel; the time and date of the foreclosure are contained in the notice; the newspaper advertisements can be found online and in the pages of the region's most-read daily newspaper. And there is, as such, nothing about Mr. Drazin's service in this role that would lend

itself to his being asked questions at deposition where the answers to those questions are not readily ascertainable from other sources.

Further, though, the fact that Mr. Drazin's service as trustee does not alter the *Shelton* factors speaks volumes to the ministerial nature of such service. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 377 n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 422 (D.C. Cir. 1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope, consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction, and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 169 (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as they relate to foreclosures. This is a case where the underlying promissory note matured in December 2022 and has not been paid off; the deed of trust plainly provides for a foreclosure to occur in such an instance. And Mr. Drazin, as an experienced local attorney, is familiar with the laws governing how that procedure is to accordingly be executed.

To be sure, there is no contention in this case that the Plaintiff has not defaulted under the deed of trust. To the contrary, it is manifest the underlying loan matured without payment after a

8

preceding series of independent defaults that include (i) the Plaintiff failing to make at least four payments in a timely fashion; (ii) the Plaintiff allowing a water/sewer lien to accrue on the real estate; and (iii) the Plaintiff allowing a tax lien to accrue on the real estate. So Mr. Drazin proceeding with a foreclosure, under the deed of trust, is both ministerial in nature and uninformed by any discoverable information not held by others.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his duties as trustee. To the contrary, it is facially apparent that he filed the correct form for a Notice of Foreclosure Sale of Real Property or Condominium Unit, that he gave proper notice thereof, that he has scheduled an auction, and that he has caused that auction to be advertised. He has, in the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to deposition within the contours of the *Shelton* standard.

## IV. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter an order prohibiting the Plaintiff from taking the deposition of Mr. Drazin; and (ii) afford such other and further relief as may be just and proper.

Dated: July 17, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

9

**CERTIFICATE OF GOOD FAITH CONFERENCE**

I HEREBY CERTIFY that on Tuesday, July 11, 2023, I spoke with James Sadowski, counsel for the plaintiff herein, about whether or not his client would agree to not depose Russell Drazin. Mr. Sadowski and I spoke cordially and had a substantive, professional discussion concerning the issue. We were not, however, able to reach an agreement as to the entry of a protective order barring the plaintiff from deposing Mr. Drazin.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 17th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

10

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

      Plaintiff,

v.

DP Capital, LLC, et al.

      Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## [PROPOSED] PROTECTIVE ORDER

Upon consideration of the Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel (the "Motion") filed by DP Capital, LLC, WCP Fund I LLC, Daniel Huertas, and Russell Drazin (collectively, the "Defendants"), any opposition thereto, the authorities cited in the Motion, and the record herein, it is, this _____ day of _____, 2023, by the Superior Court of the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED; and it is further

ORDERED, that the plaintiff herein is prohibited from taking the deposition of Russell Drazin, Esq.

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

# Exhibit A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al*.

     *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Close of Discovery – 8/10/23

## NOTICE OF DEPOSITION OF RUSSELL DRAZIN

Please take notice that the Plaintiff, Developer RE1 LLC ("Developer RE1"), by undersigned counsel, will take the deposition of Russell Drazin before an officer duly authorized to administer oaths, commencing at the following time and continuing thereafter until completed or recessed.

| Deponent | Date & Time |
|---|---|
| Russell Drazin | Wednesday, July 19, 2023 at 9:30 a.m. |

The deposition will take place at the offices of Greenstein DeLorme & Luchs, P.C., 801 17th Street, N.W., Suite 1000, Washington, D.C. 20006, and will continue day-to-day until completed. The deposition is being taken for the purposes of discovery and/or for use at trial and for such other purposes as are permitted under applicable law.

8161-0002\4880-9034-8910-1

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 9, 2023

/s/ James D. Sadowski
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Russell

Drazin was served on July 9, 2023, using eFileDC, and a notice of service should be served on

all counsel of record in this case.

/s/ Alexandria J. Smith
Alexandria J. Smith

2

8161-0002\4880-9034-8910-1

Exhibit B - All Pleadings and Filings and Orders (Part 17) Page 1062 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DEVELOPER RE1 LLC, <br><br>     *Plaintiff*, <br><br> v. <br><br> DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL., <br><br><br>     *Defendants*. | Case No. 2022-CAB-005935 <br> Judge Ebony Scott |
| 423 KENNEDY ST HOLDINGS LLC, <br><br>     *Plaintiff*, <br><br> v. <br><br> DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL., <br><br><br>     *Defendants*. | Case No. 2023-CAB-004260 <br> Judge Milton Lee |

## NOTICE OF RELATED CASES

Pursuant to D.C. Super. Ct. Civ. R. 40-I.(f)(2)(B), Counsel for 423 Kennedy St Holdings LLC and Developer RE1, LLC notifies the judges that the above-captioned cases are related within the meaning of Rule 40-I.(f). The two cases, the earliest of which is 2022-CAB-005935, involve common issues of facts, i.e., the Defendants alleged that the Plaintiffs were in default under similar loan documents after they sabotaged a refinance of the existing loans. The claims in both cases are also substantially the same, and refer to similar events and transactions. The

4853-3163-9921.v1

related cases also currently have four of five Defendants that are the same. The two cases will also have the same five Defendants (adding SF NU, LLC as a Defendant in 2022-CAB-005935) and overlapping claims if Developer RE1 is granted leave to amend its complaint in the older case.

<div align="right">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Date:  July 17, 2023

/s/ James D. Sadowski
James D. Sadowski, #446635
Alexandria J. Smith, #1781067
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone:  (202) 452-1400
Facsimile:  (202) 452-1410
E-mail:  jds@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings, LLC* and *Plaintiff Developer RE1 LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July 2023, a true copy of the foregoing Notice of Related Cases was filed in both of the above-captioned cases (2022-CAB-005935 and 2023-CAB-004260) using eFileDC and that a notice of filing should be sent electronically to counsel of record in both cases. Before filing this notice in the newer case (2023-CAB-004260), I also added all counsel of record for the Defendants in the older case to the service list for the newer case.

/s/ James D. Sadowski
Janes D. Sadowski

2

4853-3163-9921.v1

eFiled
07/17/2023 11:14:22 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

      Plaintiff,

v.

DP Capital, LLC, et al.

      Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

**OPPOSITION TO PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff") state as follows:

**I.    Introduction**

In December 2021, the Plaintiff borrowed slightly over $4 million from WCP and DPCL, through two loans memorialized by promissory notes and secured by deeds of trust. Some seven months later, in July 2022, the Plaintiff defaulted on both promissory notes by failing to timely make interest payments. The Plaintiff defaulted again in October 2022, once again failing to timely make interest payments. Another default, for the same reason, followed in November 2022. A fourth monetary default – again, for failure to timely make an interest payment – ensued in December 2022.

The Plaintiff's defaults did not stop there. The Plaintiff failed to pay water and sewer bills for the property securing the loans, causing a $44,857.93 lien to be imposed. The Plaintiff also

1

failed to timely pay more than $16,700.00 in taxes on the property, causing another lien to incur. And then, on December 23, 2022, the Plaintiff failed to pay the loans at maturity.

With more than six months having now elapsed since repayment of the loaned monies came due, and with more than a year having now elapsed since the beginning of the Plaintiff's string of defaults under the loan documents, the Plaintiff is asking for a temporary restraining order to enjoin WCP and DPCL from exercising their bargained-for rights under those documents. Or, stated otherwise, the Plaintiff endeavors to retain the monies loaned to it by WCP and DPCL, while also retaining the collateral it pledged as security for those loans. In the words of the former Municipal Court of Appeals for the District of Columbia, "[t]he plaintiff wishes to have his cake and eat it too." *Plant v. Plant*, 57 A.2d 204, 208 (D.C. 1948).

The Motion merits denial because (i) the Plaintiff cannot show a likelihood of success on the merits where the undisputed and objective record evidences myriad defaults under loan documents, including a failure to pay at maturity; (ii) the "irreparable harm" cited by the Plaintiff is nothing more than the exercise of a contractually bargained-for right; (iii) the Plaintiff has an adequate remedy at law, inasmuch as it is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code; (iv) any balancing of equities necessarily weighs against the Plaintiff being able to retain WCP and DPCL's money while also retaining WCP and DPCL's collateral, more than six months after two loans have fully matured; and (v) public policy disfavors using this Honorable Court to disrupt the District of Columbia's long history of permitting non-judicial foreclosures of commercial assets.

For these reasons, and as extrapolated upon *infra*, the Defendants ask this Honorable Court to deny the relief sought in the Motion.

2

## II.    Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009) (noting the overlapping elements of the two forms of relief); *Campbell v. U. S.*, 295 A.2d 498, 501 (D.C. 1972) (noting federal rules may be used to offer guidance where similar to the rules of this Honorable Court).

Specifically, a four prong test controls any request for non-final injunctive relief, with a "sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, 665 A.2d 185, 187–88 (D.C. 1995) (quoting *In re Antioch Univ.*, 418 A.2d 105, 109 (D.C.1980)).

Importantly, "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (citing *CFGC v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

## III.    Relevant Facts

The Defendants submit the following facts to be without genuine dispute and, where appropriate, to be evidenced by documents appended to the Motion or appended hereto:

1. On December 24, 2021, WCP loaned the Plaintiff the sum of $3,579,000.00 (the "First Loan"). *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B.

2. Of even date therewith, WCP loaned the Plaintiffs an additional sum of $524,000.00 (the "Second Loan"). *See* Commercial Deed of Trust Note, attached to Motion as Exhibit D.

3.      Both promissory notes stipulate that "[p]ayments of interest only shall be due and payable on the first day of each calendar month…" *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B, at § 3; *See* Commercial Deed of Trust Note, attached to Motion as Exhibit D, at § 3.

4.      The payments due on July 1, 2022 were not made until July 14, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

5.      The payments due on October 1, 2022 were not made until October 6, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

6.      The payments due on November 1, 2022 were not made until November 9, 2022 for one loan and November 10, 2022 for the other loan. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

7.      The payments due on December 1, 2022 were not made until December 6, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

8.      Both loans matured on December 24, 2022. *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B; Commercial Deed of Trust Note, attached to Motion as Exhibit D.

9.      Neither loan was paid at maturity, nor have any payments been made thereon at any time in the almost seven months since maturity. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

4

10. Both the First Loan and the Second Loan are secured by deeds of trust on the real property commonly known as 5501 1st Street, NW, Washington, DC 20011 and 5505 1st Street, NW, Washington, DC 20011 (the "Property"). *See* Deed of Trust, attached to Motion as Exhibit A; Deed of Trust, attached to Motion as Exhibit C.

11. Both deeds of trust require the Plaintiff to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

*See* Deed of Trust, attached to Motion as Exhibit A, at § 4.2; Deed of Trust, attached to Motion as Exhibit C, at § 4.2. *See also*, *Id.* at § 1.0(d) (defining "[i]mpositions" to include "real estate taxes" and "water and sewer rents and charges," among other obligations).

12. The Plaintiff failed to pay its water and sewer bills, causing a $44,857.93 lien to be placed upon the Property in August 2022 (with the subject lien being superior to that of WCP and DPCL). Plaintiff's First Amended Complaint at ¶¶ 81(a), 83; D.C. Code § 34-2407.02(a) (providing that a certificate of delinquency for unpaid water and sewer charges "shall constitute a continuing lien against the real property"); D.C. Code § 34-2407.02(b) (providing "[a] lien for water and sanitary sewer charges shall have priority over any other lien, except a lien for District taxes").

13. The Plaintiff also failed to timely pay more than $16,700.00 in taxes on the Property for the second half of 2022, creating another a lien on the Property superior to that of WCP and DPCL. *Id.* at ¶¶ 81(b), 91; D.C. Code § 47-1331(a) ("A tax shall automatically become a lien on

5

the real property on the date the tax was due and unpaid…"); D.C. Code § 47-1331(b) ("The lien for a tax shall be a prior and preferred claim over all other liens and shall be perpetual.").

14. Neither the promissory notes nor the deeds of trust require written notice of a default, nor of acceleration upon default, being commercial loan instruments governed by District of Columbia law. *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B, *passim*; Commercial Deed of Trust Note, attached to Motion as Exhibit D, *passim*; Deed of Trust, attached to Motion as Exhibit A, *passim*; Deed of Trust, attached to Motion as Exhibit C, *passim*.

15. The promissory notes and deeds of trust expressly provide that WCP and DPCL may temporarily forbear from exercising remedies pursuant to a default of the Plaintiff, without waiving such remedies or the right to invoke such remedies. *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B, § 5; Commercial Deed of Trust Note, attached to Motion as Exhibit D, § 5; Deed of Trust, attached to Motion as Exhibit A, § 11.4; Deed of Trust, attached to Motion as Exhibit C, § 11.4.

## IV. Argument: The Motion Merits Rejection

### a. The Plaintiff is Not Likely to Succeed on the Merits

The thrust of the Plaintiff's claims in this case is that a failure to pay two promissory notes at maturity, preceded by multiple payment defaults thereunder and the imposition of multiple municipal liens on the collateral securing those loans, is not grounds to foreclose under standard commercial deeds of trust. This is *reductio ad absurdum*.

### i. Tortious Interference with Business Relations

The heart of the claim for tortious interference with business relations (Count I) is that WCP and DPCL should not have declared the promissory notes to be in default on December 8, 2022, when the Plaintiff had already defaulted on each of the notes and their correlative deeds of

trust at least six separate times. Rather, the Plaintiff posits, WCP and DPCL were obligated to refrain from noting the myriad defaults, so the Plaintiff could fraudulently represent to a new lender that its existing loan obligations were in good standing.

A claim for tortious interference with business relations requires a showing of "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (quoting *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038 (D.C. 2015) (quoting *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 345–46 (D.C. 2015))).

Here, the Plaintiff has not shown that it had a valid contractual or other business relationship with anyone aside from WCP and DPCL. The Plaintiff claims to have been in the process of endeavoring to refinance its debt, but in a case where the Plaintiff has appended an extensive array of exhibits to nearly every filing, the record is notably devoid of a loan commitment letter from a third party lender. And while ultimately immaterial because of the Plaintiff's failure to make showings of other required elements, this prong ought not be overlooked. To the contrary, this is a case where the Plaintiff claims that there is significant equity in the Property, but that it suddenly became unable to procure a refinancing (despite that significant equity) in December 2022 because WCP and DPCL declared their loans to be in default. This assertion is, on many levels, not only counterintuitive but, indeed, plainly illogical. It seems far-fetched to surmise a lender walked away from refinancing an obligation secured by a healthy equity cushion, and it is altogether suspect that the Plaintiff has never mustered any evidence of this actually occurring.

Equally, the Plaintiff has not shown that WCP and DPCL did anything to intentionally interfere with any third party relationship. All the Plaintiff alleges is that WCP and DPCL sent

7

default notices and payoff statements *to the Plaintiff*. There is no claim that any of the Defendants contacted another lender, libeled the Plaintiff, or undertook any actions whatsoever in connection with a third party. The Plaintiff's claim necessarily fails on account of this reality, as tortious interference mandates some action over and above merely communicating with the allegedly-aggrieved party itself.

Most importantly, though, the Plaintiff has not shown resulting damages. The Plaintiff defaulted – at least six times – under loan documents, leading WCP and DPCL to simply note the defaults and declare the loans to be in default. This does not invite any legally-cognizable form of damages; to the contrary, this is merely WCP and DPCL proceeding under contractually bargained-for loan documents, in accord with the express terms thereof. In fact, WCP and DPCL waited more than six months after the loans matured to notice foreclosures, permitting the Plaintiff more than the bargained-for time period to seek new financing.

In short, the Plaintiff is alleging that WCP and DPCL exercising their contractual remedies, under valid loan documents, constitutes tortious interference. The innate failure of this contention – and the resulting absence of any probability of success on the merits – is self-evident.

### ii. Breach of the Duty of Good Faith and Fair Dealing

The Plaintiff is similarly unlikely to prevail on its claim for breach of the implied covenant of good faith and fair dealing. Only a single paragraph is devoted to this claim in the Motion, and for good reason: the Plaintiff is arguing that a lender cannot foreclose, under a deed of trust, after a borrower breaches loan documents at least seven separate times, including a failure to pay the loan at maturity. Such a holding would not only invite untold havoc upon the docket of this Honorable Court but would, too, do palpable violence to the commercial paper market writ large.

8

Familiarly, "… to establish a breach of the implied covenant of good faith and fair dealing in all three jurisdictions, the plaintiff must plead that (1) the defendant has taken steps, or refused to take steps, (2) which destroyed or injured the plaintiff's right to receive the fruits of the contract." *Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 112 (D.D.C. 2017) (citing *Mero v. City Segway Tours of Wash. D.C., LLC*, 826 F.Supp.2d 100, 106 (D.D.C. 2011); *Williams v. Craft Dev., LLC*, 199 N.C.App. 500, 682 S.E.2d 719, 723 (2009); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919, 923 (1991)).

Here, the Plaintiff was entitled to receive just over $4,000,000.00 in loaned monies from WCP and DPCL, pursuant to the terms of the loan documents. Those are the "fruits of the contract" insofar as the Plaintiff is concerned, and there is no dispute but that the Plaintiff received those fruits. Rather, what the Plaintiff argues is that it is entitled, too, to retain the collateral it pledged as security – notwithstanding an avalanche of defaults and a failure to pay the notes at maturity – because the Plaintiff is not fond of the terms for which it bargained.

To be clear, the "fruits of the contract" are the monies paid to the Plaintiff. In fact, it is the repayment of those monies with interest – something the Plaintiff has failed to honor – that is the fruit of the contract for WCP and DPCL. And to the extent there is a claim for breach, in this instance, such a claim may be rightfully understood to belong to the Defendants – not the Plaintiff.

### iii. The Defaults are Not "Technical" and Do Give Rise to Foreclosure

Remarkably, the Plaintiff describes the breaches giving rise to a default under the loan documents as being "technical" in nature, not inviting foreclosure. Motion at § IV(b)(5). The Plaintiff also alleges these violations to be "pretextual," *Id.* at § IV(b)(3), and that the violations have been cured, *Id.* at § IV(b)(5). The former assertion is belied by the undisputed record; the latter assertions are plainly counter-factual in nature.

9

To be sure, failing to pay a loan at maturity is not a "technical" breach of the promissory note or deed of trust. Indeed, it is difficult to fathom a more substantive breach. Equally, failing to make regular payments on time is not a "technical" violation; the Plaintiff repeatedly made late payments multiple times not enumerated above – the late payments identified herein are only those where the delinquency extended for *at least* five days. And, similarly, allowing tens of thousands of dollars in senior liens to encumber a lender's collateral, because of the non-payment of water/sewer and tax bills, is most certainly not a "technical" breach of loan documents.

Vis a vis the alleged "cure" of these violations, it is undisputed that the loan balances remain unpaid, despite the notes having matured. Yes, the late payments were ultimately made on installment interest. And perhaps the senior liens were ultimately retired (that seems less clear). Those breaches would be alone sufficient to invite foreclosure under the loan documents (which do not allow for cures to void defaults of these types), but to focus on those breaches is to miss the forest for the trees: the Plaintiff owes more than $5,000,000.00 on account of loans that matured and were not repaid upon maturity. And this has been true for more than six months, with the maturity having occurred toward the end of 2022.[1]

### iv. The Late Fee is Enforceable

The Plaintiff next argues that a late fee bargained for in the promissory notes is not enforceable, on the basis that it is a forbade liquidated damages clause. Yet this contention is without legal support, as the District of Columbia expressly allows parties to contractually bargain for damages arising on account of contractual breaches.

---

[1] The Motion also argues that an affiliate relationship does not invite a breach of the loan documents. Motion at § IV(b)(3). WCP and DPCL dispute this assertion and believe the relevant third party entities to be affiliates of the Plaintiff, but such is besides the point for purposes of the instant Motion. As noted *passim*, there are more than six separate breaches of the loan documents – not involving any affiliates – that punctuate the frivolity of the Plaintiff's claims.

10

The District of Columbia Court of Appeals has made clear that liquidated damages provisions of contracts are allowable in nature:

> "It is well-settled that parties to a contract may agree in advance to a sum certain to be forfeited as liquidated damages for breach of contract." This is because a liquidated damages clause serves "to simplify the resolution of a breach of contract dispute" by "giving the parties an opportunity to resolve the damages question without resorting to litigation" and by "fix[ing] the measure of damages at the outset before a breach even occurs."

*Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019) (quoting *Burns v. Hanover Ins. Co.*, 454 A.2d 325, 237 (D.C. 1982); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 367 (D.C. 1984)).

The Plaintiff devotes but a single paragraph to this contention in its Motion (despite an agreement to exceed the page count ordinarily governing motions practice). This is problematic, inasmuch as the burden would be on the Plaintiff to establish that (i) the late fee in the loan documents is a penalty; (ii) the late fee is not reasonable compensation for a breach; and (iii) the late fee was unreasonable at the time the promissory notes were entered into. *Id.; Proulx v. 1400 Pennsylvania Ave., SE, LLC,* 199 A.3d 667, 673 (D.C. 2019). The Motion makes no such showing.

To the contrary, WCP and DPCL loaned millions of dollars, expecting those monies to be repaid in a year. It has now been nearly seven months since those debts came due and the loans remain unpaid, leaving the lenders without access to their capital. The Defendants never bargained for an indefinite loan and, to the contrary, WCP and DPCL are in the business of making short term loans and being able to then redeploy their capital accordingly. It is thusly altogether sensible that there is a late fee when payments are not timely made, and it is undisputed that the late fee was agreed to by the Plaintiff when the promissory notes were executed.

Indeed, in the words of the *Proulx* Court, "We have ... consistently adhered to a general rule that one who signs a contract has a duty to read it and is obligated according to its terms....

11

[A]bsent fraud or mistake, one who signs a contract is bound by a contract which [s]he has an opportunity to read whether [s]he does so or not." *Proulx*, <mark>199 A.3d at 672</mark> (quoting *Pyles v. HSBC Bank USA, N.A.*, <mark>172 A.3d 903, 907</mark> (D.C. 2017) (quoting *Pers Travel, Inc. v. Canal Square Assocs.*, <mark>804 A.2d 1108, 1110</mark> (D.C. 2002)))).[2]

### b. The Motion Does Not Demonstrate Irreparable Harm

The Motion should also be denied because the Plaintiff cannot show irreparable harm. While a foreclosure would serve to alienate the Plaintiff's interest in the Property, the Plaintiff has an adequate remedy at law to forestall the foreclosure, inasmuch as the Plaintiff is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code. This is the remedy normally invoked by commercial borrowers who face a foreclosure and do not wish to see it proceed; it is altogether unclear why the Plaintiff has not travelled this relatively simple and oft-invoked route.

Under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Dist. of Columbia v. Wical Ltd. P'ship*, <mark>630 A.2d 174, 185</mark> n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, <mark>367 A.2d 143, 144</mark> (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I. No tangential or other operations are alleged, nor does the

---

[2] In denying a similar motion for a temporary restraining order in a sister case, this Honorable Court observed, *inter alia*, "Additionally, the Court finds Defendant has acted in accordance with the terms of the contract." *See* Order, attached hereto as Exhibit 3.

Plaintiff purport to have any other assets or affairs. *Id.* Thusly, the Plaintiff could stay a foreclosure by filing a petition for bankruptcy relief. 11 U.S.C. § 362. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### c. Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra*, the longstanding alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. To permit otherwise, and afford injunctive relief in a case where the Plaintiff tacitly acknowledges breaches of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

This is all the more true where, as here, the defaulting party is an entity without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

## V.      Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* is over $5,000,000.00. The debt is accruing interest at the rate of $2,735.33 per day. *See* Payoff Statements, attached to Motion as Exhibits M and N. And

14

that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $998,395.45 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

The Defendants are aware this number may seem palpably large. But so, too, are the ramifications injunction the Plaintiff seeks. The Plaintiff is not merely asking that a foreclosure be enjoined; the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial peril of the parties against whom they seek relief.

## VI. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; (ii) alternatively, condition an injunction upon the posting of a bond in the amount of $998,395.45; and (iii) afford such other and further relief as may be just and proper.

15

Dated: July 17, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 17th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

16

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Developer RE1 LLC, | |
| Plaintiff, | |
| v. | Case No. 2022 CAB 005935 <br> Judge Ebony Scott |
| DP Capital, LLC, et al. | |
| Defendants. | |

## [PROPOSED] ORDER

Upon consideration of the Plaintiff's Opposed Motion for Temporary Restraining Order to

Prevent an Imminent Foreclosure Sale (the "Motion") filed by the plaintiff herein, the opposition of

the defendants herein thereto, the authorities cited in the defendants' brief in opposition, and the record

herein, it is, this _____ day of _____, 2023, by the Superior Court of the District of Columbia,

hereby:

ORDERED, that the Motion be, and hereby is, DENIED

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

Exhibit 1

| Name | Status Reason | Payment Due On | Days Past Due | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F) | Amount Due (Default Int | Amount Due (Pri | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest) Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int | Amount Paid (Pr | Amount Paid (Total) | Beginning Princi | Ending Principal | Cumulative Inter | Unapplied Funds | Principal Paydow | Balance (Total) | Scheduled Payment Statu | balance (no late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111556 | Unpaid | 7/1/2023 | -11 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 71580.01 | Unscheduled | 71580.01 |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 71580.01 | Unscheduled | 71580.01 |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 22241.50 | 0.00 | 44566.50 | 66808.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 66808.00 | Unscheduled | 66808.00 |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 | Wire | Late (5-15 Days) | 23830.18 | 2383.02 | 0.00 | 26213.20 | 23830.18 | 0.00 | 0.00 | 0.00 | 0.00 | 23830.18 | | | | 0.00 | 0.00 | 2383.02 | ACH - Cleared | 0.00 |
| LPAY-098044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 | Wire | Late (5-15 Days) | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) | 23830.18 | 2383.02 | 0.00 | 26213.20 | 23830.18 | 0.00 | 0.00 | 0.00 | 0.00 | 23830.18 | | | | 0.00 | 0.00 | 2383.02 | ACH - Cleared | 0.00 |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) | 23830.18 | 0.00 | 0.00 | 23830.18 | 615.39 | 23214.79 | 0.00 | 0.00 | 0.00 | 23830.18 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-085019 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | | Current | 23830.18 | 0.00 | 0.00 | 23830.18 | 0.00 | 23830.18 | 0.00 | 0.00 | 0.00 | 23830.18 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | | Current | 22241.50 | 0.00 | 0.00 | 22241.50 | 0.00 | 22241.50 | 0.00 | 0.00 | 0.00 | 22241.50 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated | 7149.05 | 0.00 | 0.00 | 7149.05 | 7149.05 | 0.00 | 0.00 | 0.00 | 0.00 | 7149.05 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |

WCP0708

| Name | Status Reason | Payment Due On | Days Past Due Cal | Payment Paid On | Payment Method | Servicing Status |
|---|---|---|---|---|---|---|
| LPAY-111556 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 | Wire | Late (5-15 Days) |
| LPAY-098044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 | Wire | Late (5-15 Days) |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085019 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 1

Exhibit 2

| Name | Status Reason | Payment Due On | Days Past Due C | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F | Amount Due (Default Int | Amount Due (Pri | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest) Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int | Amount Paid (Pr | Amount Paid (Total) | Beginning Princi | Ending Principal | Cumulative Inter | Unapplied Funds | Principal Paydow | Balance (Total) | Scheduled Payment Stat | balance (no late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | 10480.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 10480.00 | Unscheduled | 10480.00 | |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 10829.33 | Unscheduled | 10829.33 | |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | 10480.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 10480.00 | Unscheduled | 10480.00 | |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 10829.33 | Unscheduled | 10829.33 | |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 4886.59 | 0.00 | 4894.74 | 9781.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 9781.33 | Unscheduled | 9781.33 | |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 10829.33 | Unscheduled | 10829.33 | |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 12/6/2022 0:06 | Wire | Late (5-15 Days) | 5235.63 | 523.56 | 0.00 | 5759.19 | 6029.96 | 0.00 | 0.00 | 0.00 | 0.00 | 6029.96 | | 0.00 | 0.00 | -270.77 | ACH - Cleared | | |
| LPAY-098596 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 | Stripe | Late (5-15 Days) | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | 0.00 | 0.00 | 0.00 | ACH - Cleared | | |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) | 5235.63 | 523.56 | 0.00 | 5759.19 | 5235.63 | 0.00 | 0.00 | 0.00 | 0.00 | 5235.63 | | 0.00 | 0.00 | 523.56 | ACH - Cleared | 0.00 | |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | 0.00 | 0.00 | 0.00 | ACH - Cleared | | |
| LPAY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | 0.00 | 0.00 | 0.00 | ACH - Cleared | | |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) | 5235.63 | 0.00 | 0.00 | 5235.63 | 148.30 | 5087.33 | 0.00 | 0.00 | 0.00 | 5235.63 | | 0.00 | 0.00 | 0.00 | ACH - Cleared | | |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-083035 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current | 5235.63 | 0.00 | 0.00 | 5235.63 | 0.00 | 5235.63 | 0.00 | 0.00 | 0.00 | 5235.63 | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current | 4886.59 | 0.00 | 0.00 | 4886.59 | 0.00 | 4886.59 | 0.00 | 0.00 | 0.00 | 4886.59 | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-075596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated | 1570.69 | 0.00 | 0.00 | 1570.69 | 1570.69 | 0.00 | 0.00 | 0.00 | 0.00 | 1570.69 | | 0.00 | 0.00 | 0.00 | Unscheduled | | |

WCP0054

| Name | Status Reason | Payment Due On | Days Past Due Ca | Payment Paid On | Payment Method | Servicing Status |
|------|--------------|----------------|------------------|-----------------|----------------|------------------|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 12/6/2022 0:06 | Wire | Late (5-15 Days) |
| LPAY-098596 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 | Stripe | Late (5-15 Days) |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083035 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 2

Exhibit 3

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Judge-in-Chambers**

|  |  |  |
|---|---|---|
| | : | |
| **423 KENNEDY ST. HOLDINGS** | : | |
| | : | |
| **Plaintiff** | : | **Case No. 2022 CAB 5903** |
| | : | **Judge-in-Chambers** |
| v. | : | |
| | : | **CLOSED CASE** |
| **DP CAPITAL, LLC, Et. Al.** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER

This case was set before the Court for a Temporary Restraining Order Hearing at 10:00 a.m. on the 6th day of February 2023. Counsel for Plaintiff and Defendants appeared before the Court today. Plaintiff seeks to enjoin Defendants from foreclosing on 423 Kennedy St. NW, Lot 56, Square 3260, Washington, DC. However, both Plaintiff and Defendant agree that no such foreclosure is pending or advertised. Plaintiff provided no other grounds to demonstrate imminent, irreparable harm. Additionally, the Court finds Defendant has acted in accordance with the terms of the contract.

Accordingly, the Court finds Plaintiff's injury to be too speculative and non-concrete. Plaintiff's current pleadings do not satisfy the elements for a temporary restraining order or a preliminary injunction as both forms of injunction require imminent, irreparable harm. Here, the harm is neither imminent nor irreparable. The Court reviewed Plaintiff's cited case law but found no viable reason to rule in any other way than as follows. The Court will deny Plaintiff's Motion for Temporary Restraining Order and vacate the upcoming Preliminary Injunction Hearing in this case. Plaintiff may refile when its injuries are both imminent and irreparable.

Wherefore, it is this 6th day of February 2023, hereby

**ORDERED**, that the above captioned case is **DISMISSED WITHOUT PREJUDICE.**

_____

Zinora Mitchell-Rankin, Senior Judge
Sitting in Judge-in-Chambers

Copies to:

423 Kennedy St. Holdings
Plaintiff.
Via Odyssey

DP Capital LLC
WCP Fund
Daniel Huertas
Russell Drazin
Defendant
Via Odyssey

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

**PRAECIPE IN SUPPLEMENT TO OPPOSITION TO
PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY
RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, in supplementation to their earlier-filed brief in opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff"), and note as follows:

It has now come to the attention of WCP and DPCL that, during the pendency of this case, the Plaintiff has permitted yet *another* lien to accrue on the property, for failure to conform to the dictates of governing authorities. This follows other liens, discussed more fully in the defendants' prior briefing in opposition to the Motion.

Specifically, it appears that on July 13, 2023 – some two days after the Motion was filed – the District of Columbia Department of Buildings, through its Housing Regulation Administration, filed a "Certificate of Delinquent Costs for Correction of Wrongful Housing Conditions" amongst the land records of the District of Columbia. Said filing is document number 2023058959 in those

records but, due to its relatively-recent vintage, cannot yet be downloaded from the Office of Tax and Revenue Recorder of Deeds web interface.

As noted in the defendants' opposition to the Motion, there are myriad reasons for the Motion to be denied. And, in the scheme of the Plaintiff's pattern and practice of breaching its obligations and covenants under loan documents and performing as a poor steward of the property it pledged as collateral, the additional citation enumerated herein does little to move the proverbial needle. But, upon learning of the same, the defendants would nonetheless be remiss to not call attention to the fact that there is now yet another government lien actively eroding their security interest from above. And it is respectfully urged this is all the more reason to deny the Motion.

Dated: July 17, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

**[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 17th day of July 2023, and a notice of filing should be served on all counsel of

record.

<div align="center" style="margin-left:40%">

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

</div>

eFiled
07/18/2023 5:12:39 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

---

**423 KENNEDY ST HOLDINGS LLC,**

    *Plaintiff,*

v.

**DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,**

    *Defendants.*

Case No. 2023-CAB-004260
Judge Milton Lee
Next Event:  Initial Conference
                 10/13/2023 at 9:30 am

## PLAINTIFF'S CONSENT MOTION TO EXCEED THE PAGE LIMIT IN AN EMERGENCY MOTION

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), by counsel, moves this Court to allow 423 Kennedy to exceed the page limit in an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Emergency Motion") that will soon be filed by 423 Kennedy. In support of its Motion, 423 Kennedy represents to the Court that:

1.      This case primarily involves a dispute concerning a Trustee's conflict of interest, allegations of defaults under mortgage loan documents, whether certain provisions of those loan documents include unenforceable liquidated damages provisions, and trying to stop an imminent foreclosure.

2.      423 Kennedy filed this case because the Defendants, who 423 Kennedy believes are acting in concert, recently issued a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice"). A copy of the Foreclosure Notice is attached as Exhibit A.

4894-3367-7681

3.      In Count V of the Complaint, 423 Kennedy seeks injunctive relief to prevent, among other things, any foreclosure under the loan documents while this case is being litigated. *See* Compl. at page 27 (subpart "(c)" of the request for relief).

4.      The Foreclosure Notice sets the date of the foreclosure sale on July 25, 2023 at 2:10 p.m. – less than one week away.  The foreclosure is being requested by an unknown (to 423 Kennedy) company called "SF NU, LLC".

5.      423 Kennedy will be filing an opposed emergency motion that seeks the issuance of a temporary restraining order to stop the foreclosure sale on July 25, 2023 (the "Emergency Motion").

6.      The Emergency Motion contains a detailed factual background to assist the Court with understanding the factual background, the factual and legal basis for the claims, and the provisions of the loan documents that are being challenged.  The factual background portion runs about nine pages.

7.      The Emergency Motion also contains a thorough legal argument section that explains why 423 Kennedy meets the standard for injunctive relief.

8.      The Emergency Motion also includes multiple, important exhibits.  Those exhibits are included with the Emergency Motion so that the Court does not have to sift through the Complaint to find the important documents.

9.      Given the lengthy factual background, the number of claims in this case, the number of exhibits, and the exigency of the relief requested, the Emergency Motion may exceed twenty pages by just a few, including the signature page and required certifications.

2

4894-3367-7681

10.     The Court's January 3, 2023, Supplemental General Order requires leave of court to file any motion or opposition with a legal memorandum exceeding twenty (20) double-spaced pages in pages in length.

11.     No party will be prejudiced by the relief requested in this Motion.

12.     Good cause exists to allow 423 Kennedy to file its Emergency Motion, which should not exceed twenty-three pages, including the signature page, the required certifications, and excluding the exhibits.

13.     Counsel for the Defendants consents to this motion so long as any opposition that is filed may exceed the page limit on an equal basis.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 18, 2023          /s/ Alexandria J. Smith
                               Alexandria J. Smith (D.C. Bar. No. 1781067)
                               James D. Sadowski (D.C. Bar No. 446635)
                               801 17th Street, NW, Suite 1000
                               Washington, DC 20006
                               Telephone:  (202) 452-1400
                               Email:  jds@gdllaw.com
                               *Counsel for Plaintiff 423 Kennedy St Holdings LLC*

CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this Motion by sending an email to counsel for the Defendants on July 18, 2023.  Counsel for all Defendants consented to the instant Motion over the phone.

/s/ Alexandria J. Smith
Alexandria J. Smith

3

4894-3367-7681

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Consent Motion to Exceed Page Limit in

an Emergency Filing was served by the Court's electronic filing system this 18th day of July

2023, and a notice of filing should be served on all counsel of record.

/s/ Alexandria J. Smith
Alexandria J. Smith

4894-3367-7681

4

<div align="center">

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

</div>

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2023-CAB-004760
Judge Milton Lee
Next Event:  Initial Conference
                 10/13/2023 at 9:30 am

<div align="center">

**[PROPOSED] ORDER GRANTING PLAINTIFF'S
CONSENT MOTION TO EXCEED PAGE LIMIT**

</div>

UPON CONSIDERATION of the Plaintiff's Consent Motion to Exceed Page Limit in an Emergency Filing ("Motion"), and any opposition thereto, the Court funds good cause to grant the relief requested in the Motion.

Accordingly, it is this _____ day of _____, 2023, hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Plaintiff may file an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale that does not exceed twenty-three (23) pages, including the signature page, the request for a hearing, the certificate of consent, and the certificate of service.  The Exhibits are excluded from the page count.  The Opposition may also exceed the page limit by an equal number of pages as the Emergency Motion.

SO ORDERED.

 

_____
The Honorable Milton Lee
Superior Court of the District of Columbia

4894-3367-7681

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

4894-3367-7681

# EXHIBIT A

★ ★ ★

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374**

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square | 3260 | Suffix | | Lot | 0056

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A

FROM: WCP Fund I LLC      PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON July 25 , 20 23 , AT THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:10 P.M. THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on April 8 , 20 22 .

Liber: | Folio: | Instrument No: 2022038745

Maker(s) of the Note secured by the instrument: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A        See Exhibit A
Phone              Last Known Address

Description of Property: Multi-Family Residential Building

(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 423 Kennedy Street, NW, Washington, DC 20011

Square: 3260    Lot: 0056    or Parcel No:

Holder of the Note (Name): WCP Fund I LLC

Phone: (703) 727-5464    Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 1,598,839.60 *

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 iRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î

$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin

Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015    Phone: (202) 223-7900

** as of June 23, 2023

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the**
**District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

Square | 3260    Suffix |    Lot | 0056

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on | June 23 |,20| 23 |; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

06/23/2023
Date

_____
(Signature of Noteholder or his agent)

I, | Deborah A. Stewart |, a Notary Public in and for the
| District of Columbia |,
DO HEREBY CERTIFY THAT | Russell S. Drazin |
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the | 23rd | day of | June |, 20| 23 |, personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be | his | act and deed.

Given under my hand and seal this | 23rd | day of | June |, 20| 23 |.

_____
Notary Public

My Commission Expires: | 09/30/2025 |
mmddyyyy



# EXHIBIT A

<u>Borrower, Grantor, Record Owner:</u>

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
202-223-7900

## TRUSTEE'S SALE
## OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

-----------------------------------------------------------------------------------------------------------

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



**Government of the
District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374**

SSL:

3260/0056

Recording requested by:

Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo        [name], Vice President of Finance [title]

of WCP Fund I LLC

[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC       is the holder of the mortgage

recorded as Instrument Number 2022038745     in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate Issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on this 21st     day of June    , 20 23

by Christina Araujo      (name of person) as

Vice President of Finance     (type of authority, e.g. officer,

trustee, etc.) of WCP Fund I LLC

(name of party on behalf of whom instrument was executed).

Notary Public

My Commission Expires:

*[Notary Seal: MUHAMMAD T BILAL, NOTARY PUBLIC, REG. #7637841, MY COMMISSION EXPIRES JUNE 30, 2023, COMMONWEALTH OF VIRGINIA]*

```
Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
    RECORDING FEES          $25.00
    SURCHARGE               $6.50
TOTAL:                      $31.50
```

eFiled
07/18/2023 5:19:56 PM
Superior Court
of the District of Columbia

<div align="center">

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

</div>

2023-CAB-004260

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DP CAPITAL D/B/A WASHINGTON CAPITAL
PARTNERS, ET AL.

    *Defendants*.

2023-CAB-004260
Judge Milton Lee
Emergency Relief Requested
Initial Conf. - 10/13/23 (9:30 a.m.)

<div align="center">

## PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

</div>

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy") by counsel, hereby requests that the Court enjoin the Defendants from moving forward with a scheduled foreclosure sale to preserve the status quo and prevent irreparable harm to 423 Kennedy. The Trustee under the deeds of trust at issue in this case has a direct conflict of interest that prevents him from acting as Trustee and from participating in any foreclosure sale until he proves that he has been faithful to his fiduciary duties as trustee. The Defendants here deliberately prevented 423 Kennedy from obtaining a refinancing loan, and they now seek to further their misconduct by foreclosing on real property owned by 423 Kennedy on July 25, 2023. The Court should grant injunctive relief suspending any foreclosure sale to prevent an injustice.

## I. DETAILED FACTUAL BACKGROUND

<u>423 Kennedy, the Property, and the Defendants and Their Roles</u>.

423 Kennedy is a domestic, sole purpose, limited liability company that owns real property known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "Property"). Compl. ¶¶ 10-11. 423 Kennedy is co-owned 50/50 by Mel Negussie and the Brighton KSDC, LLC

<div align="center">1</div>

4862-3427-3137

("Brighton Group").  *Id.* ¶ 13.[1]  There are five defendants.  DP Capital, LLC ("DP Capital"), is a

Virginia company that uses the trade name "Washington Capital Partners" ("WCP").  *Id.* ¶ 2.

The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending

business.  *Id.* ¶ 3.  Daniel Huertas ("Mr. Huertas") is an individual that controls WCP, and WCP

controls the WCP Fund.  *Id.* ¶¶ 4-5.  SF NU, LLC ("SF NU") is a New Mexico limited liability

that appears to have been assigned rights under the deeds of trust from the WCP Fund.  *Id.* ¶ 6.

Russell Drazin ("Mr. Drazin"), is an individual who is also counsel to the WCP and Trustee

under two deeds of trust that he drafted.  *Id.* ¶ 7.  SF NU sent 423 Kennedy a notice of

foreclosure sale signed by Mr. Drazin that scheduled a foreclosure sale on July 25, 2023 at 2:10

p.m.  *Id.* ¶¶ 134-35.

<u>Before Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide
Construction Draws to Fund the Project.</u>

As part of the refinancing, the WCP and the WCP Fund agreed that they would provide

construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project

progressed, which agreement was memorialized in writing in multiple places.  *Id.* ¶¶ 17, 19.  423

Kennedy relied upon the agreement to provide construction draws before signing the loan

documents.  *Id.* ¶¶ 18-19.

<u>The Loan Documents.</u>

In January of 2020, the WCP helped 423 Kennedy obtain a construction finance loan for

the Property, which original loan was later refinanced.  *Id.* ¶ 15.  As part of that refinancing,

423 Kennedy signed the following documents:

---

[1]  The Brighton Group is comprised of forty-one individual investors, many of whom used their
personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.  *Id.* ¶
14.

2

4862-3427-3137

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

- a Commercial Deed of Trust Note (the "First Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund.

- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.

- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $1,256.000.00, as "Borrower".

*Id.* ¶¶ 20, 23, 26, and 29 (the "loan documents"). *See* Exhibit A and B (copies of the First DOT and the First Note).[2] The loan documents were form documents prepared by Mr. Drazin that 423 Kennedy was not allowed to modify. *Id.* ¶¶ 21-31. The loan documents provided security to the WCP Fund for the construction financing loans to 423 Kennedy.

The Lender Defendants Begin Their Corrupt Plan to Foreclose on the Property by Starving 423 Kennedy of Construction Draw Funds.[3]

By October 6, 2022, 423 Kennedy had paid all amounts due to the WCP Fund under the First and Second Note. *Id.* ¶ 38. Around that date, Mr. Huertas told 423 Kennedy that the WCP would no longer provide construction draws. *Id.* ¶ 39. The reason that Mr. Huertas gave for not funding construction draws was because Mr. Negussie was involved with Mr. Charles Paret in projects that were unrelated to the Property and the Defendants were "disappointed" that those other projects "were not constructed well". *Id.* ¶ 40. The Defendants knew that without construction draws, 423 Kennedy could not complete construction. *Id.* ¶ 41.

---

[2] Because the First and Second DOT contain nearly identical terms, as do the First and Second Note, only the First DOT and First Note are attached as Exhibits. The Second DOT and the Second Note were attached to the Complaint as Exhibits B and D.

[3] For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU are referred to as the "Lender Defendants". Compl. ¶ 6.

4862-3427-3137

<u>The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default"
Under Any of the Loan Documents.</u>

The Defendants knew that 423 Kennedy was in the process of obtaining a refinancing loan to fully pay the debts to the WCP Fund. *Id.* ¶ 51. Around October 24, 2022, the WCP sent Payoff Statements listing the amounts needed to pay the balances owed under the loans. *Id.* ¶¶ 42-43. *See* Exhibits C and D (copies of the Payoff Statements). As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the loan documents, and at that time there was no allegation that any default existed. *Id.* ¶¶ 44-45. On November 3, 2022, Mr. Huertas emailed 423 Kennedy to inquire about the status of the loan payoffs, in which he stated that WCP "would not provide any construction loan draws to 423 Kennedy". *Id.* ¶ 46. *See* Exhibit E (copy of the email). By that date, 423 Kennedy had made all payments that were due under the Notes. *Id.* ¶ 48. On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy restating that WCP would not release any more construction draws. *Id.* ¶ 49. *See* Exhibit F (copy of the email). By that date, there was no allegation made that any default by 423 Kennedy existed either the loan documents. *Id.* ¶ 50.

By November 17, 2022, the Defendants knew that 423 Kennedy had arranged for a refinancing of the two loans with Main Street Bank, and that 423 Kennedy expected to close on that loan in December of 2022. *Id.* ¶ 51. Three days later, WCP transmitted another two Payoff Statements to 423 Kennedy. *Id.* ¶¶ 52-53. Exhibit G and H (copies of the Payoff Statements). By that time, there was still no claim made that any default existed under any of the loan documents. *Id.* ¶ 54. WCP sent the Payoff Statements because WCP knew that 423 Kennedy was attempting to go to closing on the refinance loan. *Id.* ¶ 55. None of the Payoff Statements included default fees, default interest, or any other amount based upon any default claim. *Id.* ¶ 56.

4

4862-3427-3137

<u>After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr. Huertas
Then Demands that Either 423 Kennedy or Mr. Negussie Resolve Another Debt Owed to the
WCP for Another, Unrelated Project, "Or Else".</u>

By December 8, 2022, 423 Kennedy had made all payments due under the Notes

($514,560.80 in interest payments) in addition to prior payments made by 423 Kennedy of

approximately $378,818.53 in interest under the original loan. *Id.* ¶ 57. That day, Mr. Huertas

told 423 Kennedy that the Defendants and an unnamed investor were displeased with how the

development of another, unrelated property located at 2507 I Street, NW had turned out (the

"2507 I Street Project"). *Id.* ¶ 58. During that call, Mr. Huertas told Mr. Negussie that WCP

was "withdrawing the payoff statements recently issued and that he was defaulting all loans that

Mr. Negussie was associated with at WCP, including 423 Kennedy." *Id.* ¶ 60. Mr. Huertas

further stated that the 2507 I Street Project has "turned out very bad and that the person who lent

the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed

off' with the quality of the work done". *Id.* Mr. Huertas further stated that the Investor Lender

"is very wealthy and will make life hard for you", and "has now bought the notes" on 423

Kennedy and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr.

Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St

to make things right" or have them "take care of the $700,000" shortfall on that project. *Id.*

Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the

$700,000 shortfall to be paid, then the Defendants and the unnamed investor "would make

trouble for you on all of your other projects". *Id.* ¶ 61.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or

to any development projects were improper. *Id.* ¶ 62. After Mr. Negussie refused to accede to

Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all

prior Payoff Statements that were sent "were withdrawn" and that he would place 423 Kennedy

<div align="center">5</div>

and the borrower on another, unrelated project named Developer RE1, LLC ("Developer RE1") in default under their loan documents. *Id.* ¶ 63.

The Defendants knew that 423 Kennedy was not involved in the 2507 I Street Project, that there is no legal or other business relationship between 423 Kennedy and either the developer for the 2507 I Street Project or Developer RE1, and that Developer RE1 was a sole purpose entity involved with a development project at 5501 1st Street, NW. *Id.* ¶¶ 64-68. Mr. Huertas provided no basis for why or how the Defendants could put 423 Kennedy in default under the loan documents. *Id.* ¶ 69.

Mr. Huertas Follows Up on His Unethical, Improper Threats to 423 Kennedy By Improperly Demanding Payment of More than $1.5 Million in "Default Penalties" and "Default Interest" and By Threatening 423 Kennedy With Foreclosure.

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email. Compl. *Id.* ¶ 77. *See* Exhibits I and J (copies of the default notices). Each "Notice of Default" was unsigned and failed to include either a description of the alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A". *Id.* ¶¶ 79-80, 82. Email is also not listed as a permissible means to send a default notice. Compl. Ex. A (First DOT) at pages 17-18.

With the December 8, 2022 email, the WCP included two new Payoff Statements. *Id.* ¶ 85. *See* Exhibits K and L (copies of the Payoff Statements). The new Payoff Statement for the first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30, while the new Payoff Statement for the second loan including a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty". Compl. ¶¶ 86-87. There were no charges for either "Default Interest" or a "Default Penalty" listed on any prior Payoff Statements sent by the WCP. *Id.* ¶ 87.

6

Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default" claims. *Id.* ¶ 88. Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to contact the WCP's counsel. *Id.* 423 Kennedy believes that Mr. Huertas then instructed Mr. Drazin to review every provision of the loan documents to try to find a reason to justify the decision to declare that 423 Kennedy was in "default". *Id.* ¶ 89. 423 Kennedy also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact that there was no valid basis for declaring 423 Kennedy to be in default and to conceal the real reason why 423 Kennedy was improperly placed in default -- because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 90, 94.

Mr. Drazin's Conflict of Interest with His Fiduciary Duty as Trustee.

Mr. Drazin knew, as Trustee, that he had a fiduciary duty to both the borrower (423 Kennedy) and to the lender under the First and Second DOT. *Id.* ¶ 91. Mr. Drazin also knew that his representation of the WCP and the WCP Fund as counsel created an actual conflict of interest with his fiduciary duty as Trustee to 423 Kennedy, as borrower. *Id.* ¶¶ 91-92. Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants. Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to 423 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice. *Id.* ¶ 93.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a "commission" of 2.50% of the "total amount then due", and a another "commission" of 5.00% of the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts that are claimed to be due. *Id.* ¶ 95-96. The Defendants knew that by improperly alleging

7

defaults after-the-fact, and by adding $1.5 million more in "Default Interest" and "Default

Penalt[ies]", 423 Kennedy would not be able to go to closing on the refinance loan. *Id.* ¶¶ 98-99.

The Defendants deliberately interfered with the refinancing loan to prevent 423 Kennedy from

being able to go to closing and to set them up for foreclosure. *Id.* ¶ 99. The Defendants also sent

the "Notice of Default" to improperly pressure 423 Kennedy, Developer RE1, and/or Mr.

Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project). *Id.* ¶ 100. The

Defendants also knew that they had no right to demand that someone else correct, or pay for, any

problems at the 2507 I Street Project, and that they had no legitimate basis to claim that 423

Kennedy was in default. *Id.* ¶¶ 101-02. The Defendants are trying to inflict damages upon 423

Kennedy and its members, and their misconduct is a form of extortion. *Id.* ¶ 103.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the
Second DOT.</u>

After being asked by counsel for 423 Kennedy to provide a basis for the "default" claims,

Mr. Drazin sent the cover story that Mr. Huertas had asked for. In a reply email, Mr. Drazin

claimed that 423 Kennedy was in "default" because:

- "[T]he District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185";

- 423 Kennedy was not entitled to any notice of any default;

- there was "<u>no right to cure</u>", "<u>no right to deceleration</u>", <u>no right to reinstatement</u>, and that the '<u>Loans are in default and are accelerated</u>.'"; and that

- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

*See* Exhibit M (copy of the email) (emphasis in original); *Id.* ¶¶ 104 and 116.

8

4862-3427-3137

The "Certificate of Delinquent Fines" relates to Notice of Infraction dated December 3, 2021 ("NOI") issued by D.C. Department of Consumer and Regulatory Affairs ("DCRA"). *Id.* ¶ 105. The violation alleged in the NOI was: "Prohibitive Excessive Vegetative Growth" that carried with it a $500.00 fine. *Id.* 423 Kennedy did not get timely notice of the NOI because the DCRA sent a copy to the wrong email address. *Id.* ¶ 106. On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. *Id.* ¶ 107. *See* Exhibit N (copy of the Final Order). 423 Kennedy noted an appeal of the Final Order on September 12, 2022. *Id* ¶ 108. *See* Exhibit O (copy of the appeal).

Under Section 7.6 of the First and Second DOT, 423 Kennedy arguably has a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments"). *Id.* ¶ 109. 423 Kennedy had planned to wait for the District to respond to its appeal of the NOI, but after 423 Kennedy received the "Notice of Default", and even though it believed that the "Notice of Default" was improper and was sent as a pretext, 423 Kennedy paid the District $1,657.43 to discharge that fine and any resulting lien. *Id.* ¶ 110. *See* Exhibit P (copy of payment confirmation). On December 11, 2022, the Office of Administrative Hearings vacated the Final Order. *Id.* ¶ 112. *See* Exhibit Q. There are currently no outstanding fines owed by 423 Kennedy to the District. *Id.* ¶ 113.

The defaults by 423 Kennedy that have been alleged were all claimed after-the-fact as a pre-text. The "Certificate of Delinquent Fines" was paid, and 423 Kennedy has no affiliates. *Id.* ¶¶ 110-24. Even though there was no valid basis under any provision of the loan documents that would permit the Defendants to foreclose on the Property, they first threatened to take that step. *See* Ex. J ("our legal counsel will commence foreclosure proceedings"); *Id.* ¶ 127.

9

4862-3427-3137

The Irreparable Harm to 423 Kennedy is Now Imminent.

The initial threat of foreclosure in December 2022 has turned into a reality. On June 23, 2023, SF NU and Drazin sent a Notice of Foreclosure to 423 Kennedy scheduling a foreclosure sale on July 25, 2023 at 2:10 p.m. *Id*. ¶¶ 134-35. *See* Exhibit R (Notice of Foreclosure). 423 Kennedy improved the Property by building a mixed use, six level building with thirty-three residential units and one commercial unit comprising 36,512 total square feet. *Id*. ¶ 128. The improvements are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Defendants' misconduct. *Id*. ¶ 129. The Property has a current value of $11.9 million. *Id.* ¶ 130. If the Property is sold at a foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors will be irreparably harmed because they could lose their entire investment.

## II.    PROCEDURAL HISTORY

On July 13, 2023, 423 Kennedy filed a Complaint that includes claims for breach of contract (Count I), tortious interference with business relations (Count II), breach of the duty of good faith and fair dealing (Count III), and breach of fiduciary duty by the Trustee (Count VI). The Complaint also seeks a declaratory judgment as to the meaning of certain provisions in two Deeds of Trust, that the foreclosure notice is invalid, and that certain provisions of the loan documents contain unenforceable liquidated damages provisions that constitute a penalty (Counts IV) and a claim for injunctive relief to stop the foreclosure sale (Count V). The Complaint also seeks a declaratory judgment that Mr. Drazin cannot serve as Trustee due to his actual conflict of interest (Count VII). Because the Defendants are trying to sell the Property, 423 Kennedy asks this Court to preserve the status quo by issuing an injunction that prevents the Defendants from trying to enforce the "death penalty" remedy of foreclosure at least until there

10

4862-3427-3137

is a preliminary injunction hearing. A temporary delay of fourteen days will cause no harm to the Defendants.

III.     THE LEGAL STANDARD FOR INJUNCTIVE RELIEF

In determining whether to grant a temporary restraining order or a preliminary injunction, the Court considers four factors: (1) the likelihood of irreparable harm in the absence of the requested injunction; (2) the likelihood of success on the merits on the underlying action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the public interest would be served by granting the injunction. *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995). The most important inquiry is that concerning irreparable injury. *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993). These four injunctive relief factors each weigh in favor of 423 Kennedy.

IV.     LEGAL ARGUMENT

A.     423 Kennedy Will Be Irreparably Harmed if the Property is Sold
         at a Foreclosure Sale.

A foreclosure sale of the Property is scheduled for July 25, 2023. Without a restraining order, the Property will be sold, and 423 Kennedy and its members will lose their interest in the Property and the improvements to the Property (valued at nearly $12 million). The law considers property to be unique, so 423 Kennedy's potential loss of the Property, without more, is sufficient to show irreparable harm. *See Peterson v. D.C. Lottery & Charitable Games Control Bd.*, No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury."). Because the foreclosure sale is already scheduled, there is an emergency need for injunctive relief to prevent 423 Kennedy from losing its interest in the Property. *See Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540

<div align="center">11</div>

F. Supp. 2d 66, 74 (D.D.C. 2008) ("First, the injury must be both certain and great, actual and not theoretical . . . [t]he court must bear in mind whether the movant has substantiated the claim that irreparable injury is "likely" to occur."). The first injunctive relief factor weighs heavily in favor of 423 Kennedy.

      B.    <u>423 Kennedy Is Likely to Succeed on the Merits as to Its Claims.</u>

          (1)    <u>423 Kennedy is Likely to Prevail on Its Argument that Mr. Drazin Has a Conflict of Interest That Prevents Him from Serving as Trustee and From Upholding His Fiduciary Duty to 423 Kennedy.</u>

As a trustee Mr. Drazin has fiduciary duties *to both the borrowers and the lenders* under the deeds of trust. *Perry v. Virginia Mortg. & Inv. Corp.,* 412 A 2d 1194 (D.C. 1980). It is not possible for Mr. Drazin to be faithful to his fiduciary duty owed to 423 Kennedy, as borrower, while at the same time consulting exclusively with, and being counsel to, the Lender Defendants. Case law in the District is unyielding as to a Trustee with a conflict of interest. "When it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust." *Sheridan v. Perpetual Building Assoc.,* 299 F.2d 463, 465 (1962) (en banc) (*Sheridan I*); *accord, Johnson v. Inter-City Mortg. Corp.,* D.C. App., 366 A.2d 435, 437 (1976) and *Sheridan v. Perpetual Building Assoc.,* 322 F.2d 418, 420 (1963) (*Sheridan II*). The *Sheridan I* decision recommended, in clear and express terms, that a substitute trustee should be appointed whenever a trustee that has an obvious conflict of interest gets involved in issues seriously affecting a borrower's rights such as a foreclosure, as is the case here. *Sheridan I,* 299 F 2d. at 465, n.4 ("We think that the [burden shifting] rule applies wherever a trustee with conflicting interests takes action, such as foreclosure, seriously affecting the borrower's interests. Substitution of independent trustees *prior to the taking of any such action* would seem to offer a measure of protection to all concerned.") (italic emphasis added). Because Mr. Drazin has had a clear conflict of interest since as early as December 8, 2022, under

<div align="center">12</div>

4862-3427-3137

1288

"ancient" law, the burden shifts to Mr. Drazin to prove that he has been faithful to his duties as Trustee. Mr. Drazin cannot meet that burden because all of the actions that he took here were on behalf of the Lender Defendants.[4] As a result, 423 Kennedy is likely to prevail on its breach of fiduciary claims against Mr. Drazin in Count VI and the declaratory judgment claims in Count VII. The actions taken by Mr. Drazin to foreclose must be suspended until he proves that he has been faithful to his role as trustee. *Sheridan I* at 465.

<div align="center">(2)   423 Kennedy is Likely to Succeed on its Breach of Contract Claims.</div>

To prevail on a claim of breach of contract, a party must establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; (4) damages caused by that breach. *See Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009). Here, the Lender Defendants stopped funding construction draws as promised for no valid reason, so 423 Kennedy will easily prevail on its breach of contract claim.

<div align="center">(3)   423 Kennedy is Likely to Succeed on its Intentional Interference with a Business Relationship Claim.</div>

To prevail on a tortious interference with business relations claim, 423 Kennedy must establish: (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) damages. *See Onyeoziri v. Spivok*, 44 A.3d 279 (D.C. 2012). 423 Kennedy has alleged sufficient facts to show that the Defendants' actions amount to a tortious interference with business relations. The conduct alleged to have occurred here shows that the

---

[4]   In the related case, Mr. Drazin has filed a motion for a protective order to prevent his deposition from being taken. *See* Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel dated July 17, 2023 filed in *Developer RE1, LLC v. DP Capital, LLC, et al.,* 2022-CA-005095) (the "Related Case") (arguing that everything that Mr. Drazin knows is privileged and not subject to discovery). This filing contains an admission regarding Mr. Drazin's clear conflict, and that he took no action, as Trustee, to protect the borrower's interests.

<div align="center">13</div>

4862-3427-3137

Defendants are attempting to extort money from 423 Kennedy (and others) by raising pre-textual defaults at a time when 423 Kennedy was on the verge of closing on a refinancing loan. 423 Kennedy's Complaint has easily demonstrated the elements of a tortious interference with business relations claim.[5]

> (4) 423 Kennedy is Likely to Succeed on its Breach of the Duty of Good Faith and Fair Dealing Claim.

In the District, all contracts contain an implied duty of good faith and fair dealing. *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006). In essence, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *White v. WCP Fund I, LLC (In re ETS of Wash., LLC)*, Nos. 20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr. D.D.C. Jan. 14, 2022). Here, 423 Kennedy has alleged facts showing that WCP and the WCP Fund breached the implied duty of good faith and fair dealing. Making up defaults after the fact in order to put pressure on someone, whether that pressure is to pay someone else's debt, or to extract exorbitant "default" fees and unenforcable penalties, are textbook examples of bad faith. 423 Kennedy has also shown that the Defendants are taking improper actions under the loan documents for the purpose of injuring the rights of 423 Kennedy (and others) and to try to deprive 423 Kennedy of the value of the Property.

> (5) 423 Kennedy Is Likely to Prevail on Its Claims that the Defendants' Allegations of Default Are Pretextual – and that the Alleged Defaults Could Not Form a Valid Basis for a Foreclosure Sale.

The facts alleged by 423 Kennedy demonstrate that Mr. Huertas declared 423 Kennedy in default for pre-textual reasons. More importantly, the default claims that were alleged were

---

[5]    In the related case, Judge Ebony Scott has already denied the Defendants' motion to dismiss similar claims. *See* Order dated April 7, 2023 in the Related Case.

4862-3427-3137

either incorrect as a matter of law, were subsequently cured, or were so trivial in nature that they could not be used as a basis upon which to invoke the "death penalty" remedy of foreclosure. The loan documents themselves support 423 Kennedy's position because a foreclosure sale is expressly conditioned upon the "continuance of" an Event of Default. *See* Ex. A (First DOT) at page 13, Section 8.0 (a) ("During the continuance of any Event of Default, the Trustee [may conduct a foreclosure sale]" and Section 8.0 (b) (also conditioning the exercise of other remedies upon "the continuance of any Event of Default") (italic emphasis added).

> (6) 423 Kennedy is Likely to Prevail on Its Claim that It Is Not an Affiliate of Developer RE1 (or Any Other Entity).

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of in the First DOT and the Second DOT allow them to declare a default because they claim that 423 Kennedy is an "affiliate" of Developer RE1 – a separate entity that is only partially owned by Mr. Negussie.  Section 7.9 in each deed of trust states:

> Other Indebtedness.  Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness*, or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) at pages 11-12 (italic and underlined emphasis added).  Although the First DOT does not define the term "affiliate", under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code § 6809(6).  But 423 Kennedy is not under common control with Developer RE1 or any other entity.  423 Kennedy is a sole purpose entity that has two, fifty-percent owners:  Mr. Negussie and the Brighton KSDC, LLC.  *See* Compl. at ¶ 13.  Mr. Negussie and the Brighton Group are also co-managing members of 423 Kennedy, so any decisions made

15

4862-3427-3137

must be agreed to be both co-members.  *See id.* ¶¶ 13-14.  There is no business or other relationship between 423 Kennedy and Developer RE1.  Although Mr. Negussie does have a partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy.  423 Kennedy does not control Developer RE1 and vice versa.  Both entities are sole purpose limited liability companies whose businesses are separate.  Cross-default provisions have also been found to be inherently suspect.  *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs. Operating, LLC (In Re Charter Communs.),* 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY 2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing them, a court should carefully scrutinize the facts and circumstances surrounding the particular transaction . . .").  The Defendants cannot rely upon the "affiliate" language in the cross-default provision (Section 7.9) to declare a default by 423 Kennedy.

       (7)   423 Kennedy is Likely to Prevail on Its Argument that a Fine That Caused No Damages, and Has Since Been Paid, Cannot Be Used as a Basis to Foreclose on the Property.

It is settled law in the District that "equity abhors forfeitures . . . [and] so indeed does the law."  *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted).  As the *Tsintolas Realty* decision noted by using a sports analogy, technical violations of a contract that cause no harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule."  To paraphrase an analogous passage in *In re DiMartino,* 108 B.R. 394, 403 (D.R.I.1989),

> [t]he no-harm-no-foul rule of the basketball court should be applied in this law court.  Since [the landlord] has suffered no monetary harm from any alleged breach [of the settlement agreement], the [tenants are] not liable and there can be no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty,* 984 A.2d at 186-87 (citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

16

4862-3427-3137

Just like the landlord in *Tsintolas Realty,* here the Defendants are claiming a technical

default (nonpayment of a $500.00 fine) to justify the forfeiture of property, after the fact, for

which they could not have suffered any actual damages. As the *Tsintolas Realty* court further

elaborated:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira,* 107 F.3d at 473 (citing *Brock v. Robbins,* 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of monetary loss is *injuria absque dam-no,*" *Cagle v. Southern Bell Tel. & Tel. Co.,* 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977*) i.e.,* "a wrong which results in no loss or damage, and thus cannot sustain an action." *Mira,* 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)).

*Tsintolas Realty,* 984 A.2d at 187.

423 Kennedy is likely to prevail on its argument that a technical default that caused no

harm – here a $500.00 fine that blossomed into a $1,657.43 fine -- cannot serve as a basis for the

foreclosure on a Property worth almost $12 million. *See Allen v. United States,* 603 A.2d 1219,

1227 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227 (1992) ("Proportionality is of consummate

importance in judicious adjudication[.]"). Other courts have also refused to allow a forfeiture

based upon an inconsequential breach. In *Miller v. Cain Partnership, Ltd.,* No. 1993 Tenn. App.

LEXIS 485, (Tenn. Ct. App. July 20, 1993), the court noted several, general rules regarding

forfeitures, such as: "Every reasonable presumption is against forfeiture and every intendment or

presumption is against the party seeking to enforce the forfeiture", (citing 17A C.J.S. Contracts §

407 (1963)) and that "[f]orfeitures are not favored in equity and unless the penalty is fairly

proportionate to the damages suffered by the breach, relief will be granted when the [party

seeking forfeiture] can, by compensation or otherwise, be placed in the same condition as if the

breach had not occurred.") (quoting *Hooten v. Nacarto GMC Truck, Inc.,* 772 S.W.2d 41, 46

17

(Tenn. Ct. App. 1989)).[6] Because equity abhors a forfeiture, especially when the party trying to effectuate the forfeiture has suffered no damages, the third injunctive relief factor weighs in 423 Kennedy's favor.

> (8) 423 Kennedy is Likely to Prevail on Its Argument that the Claimed "Default Penalties" Are Unenforceable.

"The common law views liquidated damages clauses with a gimlet eye." *District Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 723 (D.C. 2003). The D.C. Court of Appeals has generally upheld the enforcement of a liquidated damages provision "unless it is found to be a penalty". *Burns v. Hanover Ins. Co.,* 454 A.2d 325, 237 (D.C. 1982). And if the agreement "to pay fixed sums plainly [is] without reasonable relation to any probable damage which may follow a breach [, the provision] will not be enforced". *Order of AHEPA v. Travel Consultants, Inc.,* 367 A.2d 119, 126 (D.C. 1976). Here, the lender Defendants have admitted that part of the amounts that the lender is trying to force 423 Kennedy to pay to avoid a foreclosure sale are, in fact, a penalty because they have actually described those charges as such. *See* Ex. K (seeking payment of a "Default Penalty" of $868,969.30 under the First DOT) and Ex. L (seeking a "Default Penalty" of $125,608 under the Second DOT).[7] Given these two admissions, 423 Kennedy is likely to prevail on part of its declaratory judgment claim in Count IV, *i.e.,* that the loan documents contain identical liquidated damage provisions that are unenforceable as a matter of law, and that the nonpayment of an unenforceable penalty cannot be used as the basis for a foreclosure sale.

---

[6] See also *Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.,* 1998 U.S. Dist. Lexis 1327, *39-42 ("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one." ) (issuing an injunction to prevent the termination of a Joint Venture agreement based upon inconsequential violations and when there was substantial performance under the contract).

[7] The "Default Penalty" is ten percent (10%) of the principal loan balance. The loan documents also provide for a twenty-four percent (24%) default interest rate, the highest interest rate allowed by law.

18

C.     The Balance of the Injuries is Tipped in 423 Kennedy's Favor.

The irreparable harm to 423 Kennedy greatly outweighs any potential injury to the Defendants, who really can prove no injury because, but for their improper conduct, 423 Kennedy would have gone to closing in December 2022 and repaid the loans. The Defendants have suffered no identifiable injuries to date, and any harm that the WCP or the WCP Fund could arguably claim that 423 Kennedy has caused them are wounds that are self-inflicted. By refusing to provide constructions draws, pre-textually placing 423 Kennedy in default, trying to improperly extort money from 423 Kennedy (and others), trying to collect unenforceable penalties, and by directly interfering with, and delaying indefinitely, 423 Kennedy's closing on a refinance loan, the Defendants have effectively shot themselves in the foot. The third injunctive relief factor, the "balance of the injuries", also weighs in favor of 423 Kennedy.

D.     The Public Interest is Firmly in Favor of Stopping a Wrongful Foreclosure.

The public interest will be served by stopping a foreclosure where the trustee has a conflict of interest and the lender has engaged in predatory lending practices. The public interest is served by ensuring that debtors who are on a clear path to repay their debts are rewarded, not penalized. The public interest is not served by rewarding wrongdoers. Here, 423 Kennedy had paid all amounts owed to the WCP and the WCP Fund before they issued "new" Payoff Statements demanding $1.5 million in "default" penalties. At best, the default alleged by the Defendants was a technical violation of the First and Second DOT by not initially paying a $500 fine, which caused no damages to the lender. The public interest is not served if the Court, using another sports analogy (tennis), were to allow a "foot fault" to decide an entire tennis match. This is especially true in a case like this one involving a trustee with a clear conflict of interest who carries a heavy burden of proof, and that also involves predatory lending practices. Allowing the Defendants to move forward with a foreclosure would harm the public as it would

19

4862-3427-3137

embolden the Defendants to engage in even more improper lending practices. The "public

interest" factor also favors 423 Kennedy.

## V.    CONCLUSION

For these reasons and any reasons that may be advanced at a hearing on this motion, the

Plaintiff, 423 Kennedy St Holdings LLC, requests that this Honorable Court: (a) schedule an

emergency hearing on this motion; (b) enter the attached proposed order enjoining any

foreclosure sale; and (c) award such other and further relief as the Court may deem just and

proper.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 18, 2023          /s/ Alexandria J. Smith
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

20

4862-3427-3137

Case 2:24-bk-10022-FMD Doc 15-7 Filed 09/04/25 Entered 09/04/25 09:33:24 Desc

## REQUEST FOR AN EMERGENCY ORAL HEARING

The Plaintiff requests that its Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale be set for a hearing on an expedited basis prior to July 25, 2023.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale was served by the Court's electronic filing system this 18th day of July 2023, and a notice of filing should be served on all counsel of record. I also served a copy of this motion by email on counsel for the Defendants in the related case (*Developer RE1, LLC v. DP Capital, LLC, et al.,* 2022-CA-005095).

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE REGARDING NO CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by speaking with counsel for the Defendants in the related case, who confirmed that this motion should be filed as an opposed motion.

/s/ Alexandria J. Smith
Alexandria J. Smith

21

4862-3427-3137

1292

Exhibit B - All Pleadings and Rulings in the District Court Part 23 Page 1128 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DPA CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

2023-CAB-004260

## [PROPOSED] ORDER

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale ("Emergency Motion"), any opposition thereto, the facts and arguments presented at the hearing, and a review of the record of this case, this Court finds that the Plaintiff has met the standards required for the issuance of temporary injunctive relief. Accordingly, it is this _____ day of July, 2023, hereby

ORDERED that the Emergency Motion is GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to foreclose on the Property located at 423 Kennedy Street, N.W., Lot 56, Square 3260 pending further order of this Court, and it is

FURTHER ORDERED, that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order.

SO ORDERED.

The Honorable _____
Superior Court of the District of Columbia

1

4862-3427-3137

1298

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

2

# EXHIBIT A

LOAN-006491

Case 24-10023-ELG Doc 15-2 Filed 09/30/24 Entered 09/30/24 09:33:04 Desc
Exhibit B - All Pledged Ad Hoc Deed of Trust (Part 2) Page 15 of 220 Page 1131 of 1716

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

# DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

Page 2 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                      Page 3 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016                                                                  Page 4 of 25

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016

Page 5 of 25

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016                                                                 Page 6 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**4.3 Repairs and Waste.**

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

**4.4. Insurance.**

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

**4.5 Restoration Following Casualty.**

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

Page **7 of 25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016

Page **8** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

### ARTICLE V

### NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016                                                          Page **9** of **25**

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

Page **11** of **25**

1236

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page **12** of **25**

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016                                                                 Page **13** of **25**

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

## THE TRUSTEE

**9.0 Acceptance - Standard of Conduct**

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

**9.1 Fees and Expenses.**

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

**9.2 Commissions on Sale.**

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

**9.3 Commission on Advertisement.**

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

**9.4 Resignation.**

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

**9.5 Acts of Trustee.**

Rev 5.2016

Page **16** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

Page 17 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016                                                      Page 20 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

Rev 5.2016 | Page **21** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE XII

### STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

Rev 5.2016

Page **22 of 25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia  Limited Liability
Company

_____ (SEAL)
By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

    By:     Brighton Capital LLC
    Its:     Managing Member

    _____ (SEAL)
    By:     Mel Melaku Negussie
    Its:     Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

I hereby certify on this __31st__ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ____5/14/2025____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

**Page 23 of 25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

1250

# EXHIBIT B

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                          **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                    Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015

Page 2 of 9

LOAN-006491

1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

Page 3 of 9

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

Page 4 of 9

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

Page 5 of 9

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**).  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page 6 of 9

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                                                            Page 7 of 9

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

**[SIGNATURE PAGE TO FOLLOW]**

Rev 12.2015

Page 8 of 9

LOAN-006491
1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited   Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

By:    Brighton Capital LLC
Its:    Managing Member

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Authorized Signer, on behalf
         of Balakrishnarao Sure and
         Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(notary seal: JEFFREY DARRAH, NOTARY PUBLIC, MY COMMISSION EXPIRES 5/14/2025, DISTRICT OF COLUMBIA)_

_(signature)_
NOTARY PUBLIC

My commission expires: ____5/14/2025____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                              Page 9 of 9

1260

EXHIBIT C



# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,015,335.18 as of 10/30/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $276,849.94 |
| Interest Paid: | ($247,771.80) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,015,335.18** |

**Payoff good through 10/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:   WCP Servicing LLC**            **Bank Name: United Bank**
**2815 Hartland Road Suite 200**         **Routing Number:** ▉▉▉▉▉
**Falls Church, VA  22043**               **Account Number:** ▉▉▉▉▉

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT D




# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,610.00 as of 10/30/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $89,594.68 |
| Interest Paid: | ($77,034.68) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,610.00** |

**Payoff good through 10/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
[postclosing@wcp.team](mailto:postclosing@wcp.team).**

| | |
|---|---|
| **Payable to:**    **WCP Servicing LLC** | **Bank Name: United Bank** |
| **2815 Hartland Road Suite 200** | **Routing Number:** ▓▓▓▓▓ |
| **Falls Church, VA 22043** | **Account Number:** ▓▓▓▓▓ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:**   Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:**   Daniel Huertas

**To:**    mel negussie

**CC:**    Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project

**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

**Page 1 of 2**

Case 24-50082-hlb Doc 15-1 Filed 09/04/25 Entered 09/04/25 00:28:14 Desc

# EXHIBIT G




# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,031,153.71 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $323,191.50 |
| Interest Paid: | ($278,344.83) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,031,153.71** |

**Payoff good through 11/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to: WCP Servicing LLC            Bank Name: United Bank
8401 Greensboro Dr Suite 960     Routing Number: ▮▮▮▮▮▮▮
McLean, VA  22102                      Account Number: ▮▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT H




# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,660.00 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $102,573.35 |
| Interest Paid: | ($90,013.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,660.00** |

**Payoff good through 11/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:  WCP Servicing LLC          Bank Name: United Bank
8401 Greensboro Dr Suite 960            Routing Number: ▇▇▇▇▇▇
McLean, VA 22102                        Account Number: ▇▇▇▇▇▇

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT I



8401 Greensboro Dr, Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

> Re:     **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT J



8401 Greensboro Dr, Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

     Re:     **NOTICE OF DEFAULT**

     5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

     I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

     This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

     Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

     As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners
Servicing Department
8401 Greensboro Dr Suite 960
McLean, VA 22102
Office - (703)-348-0549 ext. 924
Email - <u>servicing@wcp.team</u>**

# EXHIBIT K




# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $7,174,724.51 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of 8/30/22): | $185,661.72 |
| Default Interest Owed (as of payoff date): | $456,927.95 |
| Interest Paid: | ($323,191.50) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $868,969.30 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$7,174,724.51** |

**Payoff good through 12/23/2022. Per diem $3,990.80.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:   WCP Servicing LLC**                          **Bank Name: United Bank**
**                8401 Greensboro Dr Suite 960**              **Routing Number:** ▮▮▮▮▮▮▮
**                McLean, VA  22102**                          **Account Number:** ▮▮▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006491
and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT L





# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,439,944.65 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of 8/30/2022): | $63,637.33 |
| Default Interest Owed (as of payoff date): | $97,130.67 |
| Interest Paid: | ($102,573.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $125,600.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,439,944.65** |

**Payoff good through 12/23/2022. Per diem $837.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| Payable to: | WCP Servicing LLC | Bank Name: United Bank |
| | 8401 Greensboro Dr Suite 960 | Routing Number: ▮▮▮▮▮▮ |
| | McLean, VA 22102 | Account Number: ▮▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT M

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |

**Importance:** High

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

**5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))**

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

**423 Kennedy Street, NW (Lot 0056 in Square 3260)**

1

1282

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** ǀ **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

1288

Exhibit B - All Pleadings Ad - Filed Docket Entries (Part 2/4 Page 573 of 220

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document.  Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default".  Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy.  As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today.  I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400, x5407
Fax:  202.452.1410
E-mail:  jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING:  administrator@gdllaw.com. THANK YOU.  FOR MESSAGES TO CONSUMER DEBTORS:  THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

3

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie
>
> > **From:** Leslie Calderas <lcalderas@wcp.team>
> > **Date:** Thursday, December 8, 2022 at 6:57 PM
> > **To:** mel negussie <mel@ntconstruction.net>
> > **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> > **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
> >
> > Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/

8401 Greensboro Dr Suite 960

McLean, VA 22102

(703) 940-5190



*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT N

Case 2:24-mc-00133-BJG-DLC Doc. 15-7 Filed 09/02/25 Entered 09/02/25 09:23:24 Desc
Exhibit B - All Pleadings And Miscellaneous Documents (Part 2 of 2) Page 1193 of 1716
Exhibit B - All Pleadings And Miscellaneous Documents (Part 2 of 2) Page 1257 of 1716
District of Columbia

# OFFICE OF ADMINISTRATIVE HEARINGS

One Judiciary Square
441 Fourth Street, NW, Suite 450N
Washington, DC 20001-2714
TEL: (202) 442-9094 · FAX: (202) 442-4789 · EMAIL: oah.filing@dc.gov

---

**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Petitioner,**

**v.**

**423 KENNEDY ST HOLDINGS LLC, Respondent.**

Case No.: 2021-DCRA-VR22-00182

---

### FINAL ORDER

The Department of Consumer and Regulatory Affairs (the Government) mailed the attached Notice of Infraction (NOI) to Respondent on December 3, 2021.  Respondent failed to answer the NOI. When a respondent fails to answer, an Administrative Law Judge may find the respondent in default and impose a fine and penalty if two conditions are met: The NOI must be valid on its face, and the Government must have submitted evidence that it properly served the NOI on Respondent.[1]

The NOI is valid on its face.  The Government filed a certificate of service stating that the NOI was mailed to Respondent and filed an affidavit stating that the U.S. Postal Service has not returned the NOI undelivered.  The Government also filed evidence of Respondent's last known home or business address.  This administrative court concludes that Respondent had adequate notice of the charges.[2]

The deadline for Respondent's answer has expired.[3]  The NOI states that a respondent who fails to answer by the deadline "**will be subject to a penalty equal to twice the amount of the fine, in**

---

[1] OAH Rule 2805.5.

[2] D.C. Official Code §§ 2-1802.01 and 2-1802.05; *see Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007) (due process requires notice "reasonably calculated to afford the party an opportunity to be heard"); *Dusenberry v. United States*, 534 U.S. 161, 170 (2002).

[3] D.C. Official Code §§ 2-1802.02(e) and 2-1802.05; OAH Rule 2812.5.

**addition to the fine itself, and the entry of a default order without additional notice**.” The penalty

is authorized by statute,[4] and the conditions for issuing a default order have been met.

Therefore, it is hereby:

**ORDERED**, that Respondent is in **DEFAULT** and is **LIABLE** for the violation charged in the

NOI; it is further

**ORDERED**, that Respondent must pay fines and penalties in the total amount of **$1590** in

accordance with the **Payment Instructions** below within 20 calendar days of the mailing date of this

Order; it is further

**ORDERED**, that if Respondent fails to pay within 20 calendar days of the mailing date of this

Order, interest shall accrue on the unpaid amount at the rate of 1½ % per month or portion thereof,

starting 20 calendar days after the mailing date of this Order, pursuant to D.C. Official Code § 2-

1802.03(i)(1); it is further

**ORDERED**, that failure to pay may result in additional sanctions, including the suspension of

Respondent's licenses or permits, the placement of a lien on Respondent's real and personal property,

and the sealing of Respondent's business premises or work sites, under D.C. Official Code § 2-

1801.03; and it is further

**ORDERED,** that any party may ask for reconsideration or relief from this Order as stated

below;[5] and it is further

**ORDERED,** that any party may appeal this Order as stated below.

---

[4] D.C. Official Code §§ 2-1801.04(a)(2) and 2-1802.02(f).

[5] Parties are encouraged to provide an email address with any filing. During the Mayor's Declaration of a Public Health Emergency, parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

**This Final Order is dated when it is served, as certified on the Certificate of Service found at the end of this decision.**

Claudia A. Crichlow
Principal Administrative Law Judge

3

Case No.: 2021-DCRA-VR22-00182

---

**PAYMENT INSTRUCTIONS**

**STARTING IMMEDIATELY ALL PAYMENTS MUST BE MADE DIRECTLY TO THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.**

Online payment can be made with a credit or debit card only. If you wish to pay by check, please mail or bring the check with the Notice of Infraction / Special Assessment / Re-Inspection bill to DCRA Office of Civil Infractions, located at 1100 4th Street, SW, 2nd Floor, Washington DC, 20024. Make your check payable to "DC Treasurer." Please write your Notice of Infraction / Special Assessment / Re-Inspection number on the check.

**Online payment** can be made using the following link: **https://govservices.dcra.dc.gov/paymentportal**. Please enter the Notice of Infraction Number. When paying for multiple fines that have been consolidated, please enter the first number listed in the Final Order.

**Walk-In payment** is available at the **District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.** The walk-in cashier's office requires payment be accompanied with a payment voucher that the respondent must secure from DCRA's Office of Civil Infractions. To request a payment voucher, please email DCRA.Civilinfractions@dc.gov with reference to the Notice of Infraction Number.

**Mail payment** to **Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.**

To ensure payments are applied accurately, record the Notice of Infraction number on the front of any check or money order and correspondence.

A $65.00 FINE WILL BE IMPOSED ON CHECKS DISHONORED BY THE BANK.

INTEREST
D.C. Official Code § 2-1802.03.(i)(1) provides that fines be paid in full with interest from the date levied. For each month or portion thereof that a fine and/or assessment remain unpaid interest is accrued at 1.5%. Interest begins 30 calendar days after the fine and/or assessment is levied.

4

Case No.: 2021-DCRA-VR22-00182

District of Columbia
Office of Administrative Hearings
One Judiciary Square
441 Fourth Street, NW
Washington, DC  20001-2714

423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

---

**Certificate of Service:**

**By First-Class Mail (Postage Paid):**

423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

**By Email:**

Esther Yong McGraw
General Counsel
Dep't of Consumer and Regulatory Affairs
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov

I hereby certify that on September 7, 2022 this document was served upon the parties named on this page at the address(es) and by the means stated.

//s W. Green

_____

Clerk / Deputy Clerk

5

**APPEAL RIGHTS**

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

**COVID-19 NOTICE:** The deadlines described below may be temporarily suspended or extended due to the COVID-19 pandemic. For up-to-date information about any changes to these deadlines, please visit the Office of Administrative Hearings website at https://oah.dc.gov and the D.C. Court of Appeals website at https://www.dccourts.gov/court-of-appeals.

**HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[6]**

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days** if OAH mailed the Final Order to you). **HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS**

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

<div align="center">

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

</div>

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[6] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

Case No.: 2021-DCRA-VR22-00182

## IMPORTANT NOTICES:

- **The amount of a lawfully imposed fine cannot be modified or reduced on appeal. D.C. Official Code § 2-1831.16(g).**
- **Filing an appeal does not stay (stop) the requirement to comply with a Final Order, including any requirement to pay a fine, penalty or other monetary sanction imposed by a Final Order. If you wish to request a stay, you must first file a written motion for a stay with the Office of Administrative Hearings. If the presiding Administrative Law Judge denies a stay, you then may seek a stay from the Court of Appeals or the Board as appropriate.**



Government of the District of Columbia
Department of Consumer and Regulatory Affairs
Office of Civil Infractions

## AFFIDAVIT THAT NOTICE OF INFRACTION HAS NOT BEEN RETURNED

**Notice of Infraction Number: VR22-00182**

The Notice of Infraction referred to above was:

**X** Emailed to the Respondent on **December 3, 2021** using the email address(es) provided by the Respondent. The email included a delivery confirmation receipt,

<u>and/or</u>

☐ Mailed to the Repsondent on **N/A** First Class U.S. Mail Postage Prepaid to the address(es) recorded on the Certificate of Service. The evenlope(s) included the return address for the this agency.

At least 15 calendar days have passed since the email or mailing date described above. My review of DCRA records to determine whether or not the email was returned as undeliverable or whether the U.S. Postal Service has returned the mailing to this agency confirmed that the Notice of Infraction was not returned at any time subsequent to the the time it was either emailed or mailed to the respondent as reflected in the Certificate of Service.

I declare under penalty of perjury that this information is correct.

_____*Patrice Derricott*_____          _____December 24, 2021_____
Signature                                      Date

Patrice Derricott
Program Supports Speclist
Office of Civil Infractions
Department of Consumer and Regulatory Affairs
1100 4th St., SW, Suite E510
Washington, DC 20024

OCI NOI Affidavit (7.15.20)



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

### CERTIFICATE OF SERVICE

I hereby certify that the attached Notice of Infraction **VR22-00182** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

**<u>cb@colomariver.com</u>**


<u>*Patrice Derricott*</u>
PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



GOVERNMENT OF THE DISTRICT OF COLUMBIA
## NOTICE OF INFRACTION

Notice No. **VR22-00182**

**12-3-2021**

Date of Service

**Issuing Agency:** D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other ____ |
|---|---|---|---|---|

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

| Business/Company Name | Charge as Respondent (check): ☒ YES ☐ NO |
|---|---|

| Individual/Agent Name | Charge as Respondent (check): ☐ YES ☒ NO |
|---|---|

1215 1ST ST NE

**cb@colomariver.com**

| Mailing Address | | | Email Address |
|---|---|---|---|

WASHINGTON | | DC | 20002-7935

| City | | State | Zip Code |
|---|---|---|---|

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. Instructions are on the reverse side of this Notice.

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation 12G DCMR SUB-SECTION 302.4 | Fine for Infraction $530.00 | Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**     Time of Infraction: **07:37 AM**     Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)     ☐ DENY (Appear for a Hearing)     ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction:

Date of Infraction:     Time of Infraction: _____     Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)     ☐ DENY (Appear for a Hearing)     ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

| DCRA Employee Signature | GERARD ANDERSON | 10-13-2021 | 1018 |
|---|---|---|---|
| | Print Name | Date | Badge/Identification Number |

### SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

**1. Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

- **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
- In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30*. **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.CivilInfractions@dc.gov.
- Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024*.

**2. Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. Do not send payment. Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714*; telephone: (202) 442-9094; **or send electronically to** OAH.Filing@dc.gov.

**3. To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. Do not send payment. Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714*; telephone: 202-442-9094; **or send electronically to** OAH.Filing@dc.gov. A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE** _____

# EXHIBIT O

# DISTRICT OF COLUMBIA
# OFFICE OF ADMINISTRATIVE HEARINGS

## Cover Sheet for Electronic Filing

I am filing the attached papers at the Office of Administrative Hearings.

**1. Check one of the boxes below.**

☒ The case number is: ___2021-DCRA-VR22-00182___ .     ☐ This is a new case, and a case number has not yet been assigned.

**2. Briefly describe the paper that you are filing:**

Request to Change Final Order for Case # 2021-DCRA-VR22-00182

3. **My name, mailing address, telephone number, and e-mail address are:**

Name: Mel Negussie

Mailing Address:

1629 K St NW. Suite 300

City, State, Zip: Washington, DC 20006

Telephone: 202-271-5046

E-mail address: cbp@harkenbuilders.com

Representing: 423 Kennedy St Holdings LLC

I agree to receive documents from the court at my email address. **Yes**    No

4. You should complete this form, save it to your computer, and then attach it to an e-mail, along with the papers you are filing. The e-mail address for filing papers at OAH is oah.filing@dc.gov. Papers sent to any other e-mail address will **not** be accepted for filing.

**I sent a copy of the attached papers to all other parties or their representatives as listed below.**

Person to Whom the Papers Were Sent:
_____

Address _____
City, State, Zip Code_____
Date the papers were sent:_____

Method of sending:
☐  Mail   ☐ Commercial Carrier
☐  Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____)

Person to Whom the Papers Were Sent:
_____

Address _____
City, State, Zip Code_____
Date the papers were sent:_____

Method of sending:
☐  Mail   ☐ Commercial Carrier
☐  Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____)

**If you sent the papers to more than two people, provide the above information for the additional people on a separate sheet.**

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
One Judiciary Square
441 Fourth Street, NW, 450 North
Washington, DC 20001-2714
TEL: (202) 442-9094    FAX: (202) 442-9451

# REQUEST TO CHANGE A FINAL ORDER
## ("I want the decision changed")

You may use this form to ask the Administrative Law Judge to change a Final Order **after** it has been issued.

My Name: Mel Negussie    My Case No.: 2021-DCRA-VR22-00182

My Address: 1629 K St NW. Suite 300    My Telephone No.: 202-271-5046

City/State/Zip Code: Washington, DC 20006    My Fax No.:

If you lost because the Final Order said you did not file something (such as an answer to a Notice of Violation, an answer to a Notice of Infraction, or a Claims Examiner's Determination), explain why you did not file it.

We did not file it because we did not know that this infraction existed. The only notice we received was the Final Order via email. The mailing address on the notice was incorrect and was mailed to the old property owner.

Why do you think that the Final Order is wrong or unfair?  Why should the Administrative Law Judge change the Final Order?

We did not get the notice and did not know that this case was still active. We also have been under construction for the past 12 months and have made improvements to the site and cleaned up the area that we were fined for.

The OAH Resource Center, which has a variety of tools to assist you, is open during regular OAH business hours.  The OAH website is available at www.oah.dc.gov.  It includes the text of the rules, forms, and other helpful information.  The OAH Rules concerning requests for reconsideration and requests for relief from a final order can be found at OAH Rule 2828.

# EXHIBIT P

## James D. Sadowski

| | |
|---|---|
| **From:** | DOB/DLCP Payment Confirmation <DoNotReply-DCRA@dc.gov> |
| **Sent:** | Saturday, December 10, 2022 6:38 AM |
| **To:** | mel@ntconstruction.net |
| **Subject:** | Payment Confirmation for DOB Code Enforcement Fine |

**Importance:** High

This email is generated automatically. Please do not reply.

**Your Payment has been accepted.**

Thank you for your recent payment submitted via online payment portal. Please make sure you keep a copy of this email for your records.

**Payment Details:**

| | |
|---|---|
| Notice of Infraction (NOI) Number: | VR22-00182 |
| Payment date: | 12/10/2022 |
| Amount Charged: | $ 1657.43 |
| Card number ending in: | 8755 |
| Transaction ID: | AP1C7F27E550 |

Thank you,
DOB/DLCP



1

# EXHIBIT Q

**DISTRICT OF COLUMBIA
OFFICE OF ADMINISTRATIVE HEARINGS**
One Judiciary Square
441 Fourth Street, NW
Washington, DC 20001-2714
TEL: (202) 442-9094
FAX: (202) 442-4789
oah.filing@dc.gov

| | |
|---|---|
| DISTRICT OF COLUMBIA DEPARTMENT OF BUILDINGS AS SUCCESSOR AGENCY TO THE DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS,[1] Petitioner, <br><br> v. <br><br> 423 KENNEDY ST HOLDINGS LLC, Respondent. | Case No.: 2021-DCRA-VR22-00182 <br> NOI No.: VR22-00182 |

**ORDER VACATING FINAL ORDER
AND
DISMISSING CASE WITHOUT PREJUDICE**

## I. Introduction

I issued a Final Order in this case, which was served on September 7, 2022, (the "Final Order"), finding Respondent in default for failing to answer Notice of Infraction No. VR22-00182 (the "NOI"). I imposed the authorized fine and late answer penalty. For the reasons set forth below, I now vacate the Final Order and dismiss Case No. 2021-DCRA-VR22-00182 and the NOI, each without prejudice.

---

[1] In accordance with the Department of Buildings Establishment Act of 2020, D.C. Code 10-561.01 et seq., OAH Rule 2816.6, and Mayor's Order 2022-149, OAH retains jurisdiction over the Department of Buildings and the Department of Licensing and Consumer Protection as successor agencies to the Department of Consumer and Regulatory Affairs (DCRA). This matter has been recaptioned to refer to the applicable successor agency to DCRA.

On December 12, 2022, the Petitioner, DOB, filed a Motion of Dismissal with the Office of Administrative Hearings.

*OAH rule 2817.1 The party initiating the case may move to dismiss the case at any time, and the Administrative Law Judge may grant the motion without waiting for a response from the opposing side.*

The District of Columbia Department of Buildings (the "Government") may, at its discretion and as authorized by law, issue a new Notice of Infraction and begin a new case before this administrative court, for the same alleged infraction(s).

It is therefore this 12th day of December, 2022:

**ORDERED**, that the Final Order is **VACATED** and of no further effect whatsoever; and it is further

**ORDERED**, that Notice of Infraction No. VR22-00182 is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED**, that the appeal rights of any party aggrieved by this Order are stated below; and it is further

*(s) Claudia A. Crichlow*
Claudia A. Crichlow
Principal Administrative Law Judge

## Certificate of Service:

### By Email:

Esther Yong McGraw
General Counsel
Department of Buildings
1100 4th Street, SW – 5th Floor
Washington, DC 20024
Email: oaheserve.dcra@dc.gov
         dob.filing@dc.gov

### By First-Class Mail (Postage Paid) and Email:

Chapman Paret
629 K St NW
Ste 300
Washington, DC 20006
ecbp@harkenbuilders.com

I hereby certify that on December 12, 2022, this document was served upon the parties named on this page at the address(es) and by the means stated.

*(s) Joseph Harrison*

Joseph Harrison
Paralegal Specialist

- 3 -

## APPEAL RIGHTS

After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.

### HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[2]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days** if OAH mailed the Final Order to you).

### HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[2] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

- 4 -

# EXHIBIT R

# NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

★ ★ ★

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374**

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square | 3260 | Suffix | | Lot | 0056

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: | 423 KENNEDY ST HOLDINGS LLC
| See Exhibit A

FROM: | WCP Fund I LLC | PHONE: | (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON | July 25 | , 20 | 23 | , AT THE OFFICE OF | Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:10 | P.M. THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on | April 8 | , 20 | 22 | .

Liber: | | Folio: | | Instrument No: | 2022038745

Maker(s) of the Note secured by the instrument: | 423 KENNEDY ST HOLDINGS LLC

See Exhibit A | See Exhibit A
Phone | Last Known Address

Description of Property: | Multi-Family Residential Building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: | 423 Kennedy Street, NW, Washington, DC 20011

Square: | 3260 | Lot: | 0056 | or Parcel No:

Holder of the Note (Name): | WCP Fund I LLC
Phone: | (703) 727-5464 | Address: | 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ | 1,598,839.60 **
Minimum balance required to cure default obligation pursuant to D.C. Law 5-82
ìRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î
$ | N/A commercial loan

Name of person to contact to stop foreclosure sale: | Russell S. Drazin
Address: | 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015 | Phone: | (202) 223-7900

** as of June 23, 2023

★ ★ ★

| NOTICE OF FORECLOSURE SALE OF REAL PROPERTY |
| OR CONDOMINIUM UNIT |

**Government of the**
**District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

Square [ 3260 ]   Suffix [   ]   Lot [ 0056 ]

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on [ June 23 ] ,20 [ 23 ] ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

[ 06/23/2023 ]
Date

_____
(Signature of Noteholder or his agent)

I, [ Deborah A. Stewart ] , a Notary Public in and for the
[ District of Columbia ] ,
DO HEREBY CERTIFY THAT [ Russell S. Drazin ]
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the [ 23rd ] day of [ June ] , 20 [ 23 ] , personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be [ his ] act and deed.

Given under my hand and seal this [ 23rd ] day of [ June ] , 20 [ 23 ] .

_____
Notary Public

My Commission Expires: [ 09/30/2025 ]
mmddyyyy

# EXHIBIT A

Borrower, Grantor, Record Owner:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
**4400 Jenifer Street, NW, Suite 2**
**Washington, DC 20015**
**202-223-7900**

### TRUSTEE'S SALE
### OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

<div align="center">Russell S. Drazin, Trustee</div>

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374**

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo [name], Vice President of Finance [title]

of WCP Fund I LLC

[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC is the holder of the mortgage recorded as Instrument Number 2022038745 in the District of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate Issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

**SSL:**

3260/0056

**Recording requested by:**

Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

**When recorded mail to:**

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on this 21st day of June , 20 23

by Christina Araujo (name of person) as

Vice President of Finance (type of authority, e.g. officer, trustee, etc.) of WCP Fund I LLC

(name of party on behalf of whom instrument was executed).

Notary Public

My Commission Expires:

MUHAMMAD T BILAL
NOTARY PUBLIC
REG. #7637841
MY COMMISSION EXPIRES
JUNE 30, 2023
COMMONWEALTH OF VIRGINIA

Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES        $25.00

   SURCHARGE         $6.50

TOTAL:           $31.50

eFiled
07/20/2023 1:54:50 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |
|---|---|
| 423 Kennedy St Holdings LLC, | |
|     Plaintiff, | |
| v. | Case No. 2023 CAB 004260<br>Judge Milton Lee |
| DP Capital, LLC, et al. | Hearing on Motion for Temporary Restraining<br>Order: July 21, 2023 at 1:30 pm |
|     Defendants. | |

**OPPOSITION TO PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY
RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), and Russell Drazin ("Mr. Drazin") (DPCL, WCP, Mr. Huertas and Mr. Drazin being

collectively known as the "Defendants"),[1] by and through undersigned counsel, pursuant to

District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Opposed

Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion,"

with the plaintiff being known as the "Plaintiff") state as follows:

**I.      Introduction**

"[T]he court finds Defendant has acted in accordance with the terms of the contract," this

Honorable Court (Mitchell-Rankin, J.) concluded when presented with a similar – albeit not

identical – motion for a temporary restraining order, by 423 Kennedy St Holdings LLC (the

"Plaintiff") in February 2023. *See* Order, attached hereto as Exhibit A. In that instance, the

---

[1] There is a fifth defendant to this action: SF NU, LLC ("SNL"). Undersigned counsel has not, as of present, been engaged to represent SNL. Accordingly, references to the "Defendants" are in exclusion of SNL. However, it appears the inclusion of SNL in this lawsuit is either grossly errant or an act of manifest bad faith, as SNL has – quite literally – nothing to do with the loans at issue *sub judice* and, equally, is an entity wholly independent and separate from the Defendants.

1

Plaintiff's request for injunctive relief was denied and the Plaintiff's case was *sua sponte* dismissed. Now, with a foreclosure of its eponymous property scheduled, the Plaintiff seeks a second bite at the proverbial apple.

The Motion merits denial this time as well. This is a case where the Plaintiff borrowed $9,945,693.00 from WCP on March 31, 2022, through two loans memorialized by promissory notes and secured by deeds of trust. Barely a month later, the Plaintiff defaulted when it failed to make a timely interest payment. A month later, the Plaintiff again defaulted by failing to make another interest payment on time. A third default followed – for the same reason – on July 1, 2022.

A fourth default came a few months later when, on November 17, 2022, the Plaintiff's failure to pay a government fine resulted in a senior lien being imposed on the property securing the debt. A fifth default followed two weeks after, when the Plaintiff did not make its December 1, 2022 interest payment on time. And seventh and eighth defaults ensued on February 1, 2023 and March 1, 2023 when the Plaintiff, yet again, failed to make interest payments.

It is the ninth default, however, that is the most significant. The loans matured on March 31, 2023 and were not repaid. It is not that the Plaintiff only repaid the principal or paid the principal with some portion of the interest; it is, rather, that the Plaintiff altogether failed to repay the loans at maturity.[2]

---

[2] Given the number of defaults, the defendants have created a demonstrative exhibit setting forth the details of each such breach of the loan documents correlative to the second loan, together with the monetary impact of each breach, the correlative provisions of loan documents giving rise to the breach, and the date of each breach. Some of the breaches were missed payments that were later made; many of the missed payments – including the maturity payment – were never made at all. Where a payment was eventually made, that, too, is indicated on the exhibit. *See* Demonstrative Exhibit, attached hereto as Exhibit B. This exhibit does *not* include the breaches of the loan documents for the first loan, since it is the second loan's security interest that is currently scheduled for foreclosure.

2

With more than three months having now elapsed since repayment of the loaned monies came due, and with more than a year having now elapsed since the beginning of the Plaintiff's string of defaults under the loan documents, the Plaintiff is asking for a temporary restraining order to enjoin WCP and DPCL from exercising their bargained-for rights under those documents. Or, stated otherwise, the Plaintiff endeavors to retain the monies loaned to it by WCP and DPCL, while also retaining the collateral it pledged as security for those loans. In the words of the former Municipal Court of Appeals for the District of Columbia, "[t]he plaintiff wishes to have his cake and eat it too." *Plant v. Plant*, 57 A.2d 204, 208 (D.C. 1948).

The Motion merits denial because (i) the Plaintiff cannot show a likelihood of success on the merits where the undisputed and objective record evidences myriad defaults under loan documents, including a failure to pay at maturity; (ii) the "irreparable harm" cited by the Plaintiff is nothing more than the exercise of a contractually bargained-for right; (iii) the Plaintiff has an adequate remedy at law, inasmuch as it is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code; (iv) any balancing of equities necessarily weighs against the Plaintiff being able to retain WCP and DPCL's money while also retaining WCP and DPCL's collateral, more than three months after two loans have fully matured; and (v) public policy disfavors using this Honorable Court to disrupt the District of Columbia's long history of permitting non-judicial foreclosures of commercial assets.

For these reasons, and as extrapolated upon *infra*, the Defendants ask this Honorable Court to deny the relief sought in the Motion.

## II. Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F.

3

Supp. 2d 67, 74 (D.D.C. 2009) (noting the overlapping elements of the two forms of relief); *Campbell v. U. S.*, 295 A.2d 498, 501 (D.C. 1972) (noting federal rules may be used to offer guidance where similar to the rules of this Honorable Court).

Specifically, a four prong test controls any request for non-final injunctive relief, with a "sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, 665 A.2d 185, 187–88 (D.C. 1995) (quoting *In re Antioch Univ.*, 418 A.2d 105, 109 (D.C.1980)).

Importantly, "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (citing *CFGC v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

### III. Relevant Facts

The Defendants submit the following facts to be without genuine dispute and, where appropriate, to be evidenced by documents appended to the Motion or appended hereto:

1. On March 31, 2022, WCP loaned the Plaintiff the sum of $8,689,693 (the "First Loan"). *See* Commercial Deed of Trust Note, attached to Complaint (the "Complaint") as Exhibit B.

2. Of even date therewith, WCP loaned the Plaintiffs an additional sum of $1,256,000.00 (the "Second Loan"). *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit D.

4

3.      Both promissory notes stipulate that "[p]ayments of interest only shall be due and payable on the first day of each calendar month…" *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, at § 3; *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit D, at § 3.

4.      The interest-only payment of $12,560.00, on the Second Loan, due on May 1, 2022, was not made until July 14, 2022 – some 74 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.[3]

5.      The interest-only payment of $12,978.67, on the Second Loan, due on June 1, 2022, was not made until July 14, 2022 – some 43 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

6.      The interest-only payment of $12,560.00, on the Second Loan, due on July 1, 2022, was not made until July 14, 2022 – some 13 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

7.      On November 17, 2022, the Plaintiff permitted a government lien to encumber the real property securing the loans (the "Property") by failing to pay fines and penalties to the District of Columbia Department of Buildings. *See* Lien Notice, attached hereto as Exhibit D.

8.       The interest-only payment of $12,560.00, on the Second Loan, due on December 1, 2022, was not made until December 8, 2022 – some 7 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

---

[3] The exhibit has two pages. The first page is an excerpt of the pertinent portions of the payment history. The second page is the full payment history. This is done because of the size of the second page and resulting concerns about readability.

5

9.      The interest-only payment of $44,846.67, on the First Loan, due on December 1, 2022, was not made until December 8, 2022 – some 7 days after the obligation came due. *See* First Loan Payment History, attached hereto as Exhibit E.[4]

10.     The interest-only payment of $12,978.67, on the Second Loan, due on January 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

11.     The interest-only payment of $46,341.56, on the First Loan, due on January 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

12.     The interest-only payment of $12,978.67, on the Second Loan, due on February 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

13.     The interest-only payment of $46,341.56, on the First Loan, due on February 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

14.     The interest-only payment of $11,722.67, on the Second Loan, due on March 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

15.     The interest-only payment of $41,856.89, on the First Loan, due on March 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

16.     Both loans matured on March 31, 2023. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B; Commercial Deed of Trust Note, attached to Complaint as Exhibit D.

17.     Neither loan was paid at maturity, nor have any payments been made thereon at any time in the almost seven months since maturity. *See* Payment History for Second Loan, attached hereto as Exhibit C; Payment History for First Loan, attached hereto as Exhibit E.

---

[4] See, *supra*, n. 3.

6

18.     Both the First Loan and the Second Loan are secured by deeds of trust on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (previously defined as the "Property"). *See* Deed of Trust, attached to Complaint as Exhibit A; Deed of Trust, attached to Complaint as Exhibit C.

19.     Both deeds of trust require the Plaintiff to pay any "fine" or "penalty" in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

*See* Deed of Trust, attached to Complaint as Exhibit A, at § 4.2; Deed of Trust, attached to Complaint as Exhibit C, at § 4.2.

20.     Neither the promissory notes nor the deeds of trust require written notice of a default, nor of acceleration upon default, being commercial loan instruments governed by District of Columbia law. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, *passim*; Commercial Deed of Trust Note, attached to Complaint as Exhibit D, *passim*; Deed of Trust, attached to Complaint as Exhibit A, *passim*; Deed of Trust, attached to Complaint as Exhibit C, *passim*.

21.     The promissory notes and deeds of trust expressly provide that WCP and DPCL may temporarily forbear from exercising remedies pursuant to a default of the Plaintiff, without waiving such remedies or the right to invoke such remedies. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, § 5; Commercial Deed of Trust Note, attached to Complaint

7

as Exhibit D, § 5; Deed of Trust, attached to Complaint as Exhibit A, § 11.4; Deed of Trust, attached

to Complaint as Exhibit C, § 11.4.

### IV.  Argument: The Motion Merits Rejection

#### a.  The Plaintiff is Not Likely to Succeed on the Merits

The thrust of the Plaintiff's claims in this case is that a failure to pay two promissory notes

at maturity, preceded by multiple payment defaults thereunder and the imposition of a municipal

lien on the collateral securing those loans, is not grounds to foreclose under standard commercial

deeds of trust. This is *reductio ad absurdum*.

#### i.  Breach of Contract

The Plaintiff's first claim (Count I) is for breach of contract. Notably, the Motion devotes

only two sentences to this cause of action, observing (i) the elements of such a claim; and (ii) that

"the Lender Defendants stopped funding constructions draws as promised for no valid reason…"

Motion at § IV(B)(2). The threadbare nature of this assertion – in a filing where the Defendants

agreed that the Plaintiff could exceed the ordinary page count – is notable.

The Plaintiff is correct about the governing elements for a breach of contract claim. *See*

Motion at § IV(B)(2) (noting the elements to be "(1) a valid contract between the parties; (2) an

obligation or duty arising out of the contract; (3) a breach of that duty; (4) damages caused by that

breach.") (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 186 (D.C. 2009)).

The first core problem with this claim, though, is that there is no such contract. The

Complaint posits that "The WCP and WCP Fund's agreement to provide construction draws was

memorialized on the HUD 1 Settlement Statement signed at closing." Complaint at ¶ 17. Yet a

8

review of the settlement statements reveals no such agreement. *See* Settlement Statements, attached hereto as Exhibit F.

Nor is this surprising. A HUD-1 Settlement Statement is a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing. It is not a contract, as a matter of law. *See, e.g.*, *Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1265 (S.D. Fla. 2013) ("…a closing statement is not a contract…") (citing *Cornelius v. Fidelity Nat. Title Co.*, 2009 WL 596585, at *3 (W.D. Wash. 2009) *Kirby v. Bank of Am., N.A.*, 2012 WL 1067944, at *8 (S.D. Miss. 2012); *Jankanish v. First Am. Title Ins. Co.*, 2009 WL 779330, at *2 (W.D. Wash. 2009); *Deutsch Tane Waterman & Wurtzel, P.C. v. Hochberg*, 890 N.Y.S.2d 755, 757 (N.Y. App. Div. 2009)); *Koschene v. Hutchinson*, 2007 WL 6013037, at *2 (Va. Cir. 2007) ("…it is apparent to the Court that the HUD–1 is not a contract, but is really a statement as to how funds shall be distributed."); *Jankanish*, 2009 WL 779330, at *2 ("…the current settlement statements do not include terms and conditions, reflect no fee paid as consideration for a separate HUD–1 contract, and contain no contractual promise to perform (or refrain from performing) some act. The Court therefore finds that the HUD–1 statements are not contracts and dismisses count two.") (citing *Cornelius* at 5-6) (citing *DePhillips v. Zolt Constr. Co.*, 959 P.2d 1104 (Wash. 1998)); *Garland v. ServiceLink L.P.*, 2013 WL 5428716, at *1 (D. Md. 2013) ("Despite the arrangement, the Garlands do not allege to having signed a formal agreement, noting only that the terms were detailed in a HUD–1 Settlement Statement (the 'HUD–1 Statement'), which the Garlands concede is not a contract").

The Plaintiff also theorizes some agreement to fund constructions draws may have been set forth in a draw budget or a term sheet. Complaint at ¶ 19. Yet the Plaintiff has not appended these documents and, to the contrary, does not point to any provision of either document where

9

WCP, DPCL, or any other person or entity expressly agrees to fund construction draws. And it is thusly difficult to appreciate why the Plaintiff believes either of these documents could form a binding contract – especially in the context of two loans that are memorialized by formal promissory notes (neither of which so much as references a promise to fund construction draws) and deeds of trust (which are also wholly silent on the issue).

Though perhaps the biggest issue with this claim, in the prism of the Motion, is that it is a claim that – should the cause of action survive a motion to dismiss – would invite litigation of monetary damages. The "contract" allegedly breached, to the extent one can be surmised from the Complaint (with the Motion being topically silent), would be an agreement to fund construction – not an agreement to buy or sell real estate. And this would, accordingly, be an agreement for which solely monetary damages could be awarded.

Yet, under District of Columbia law, injunctive relief is not available for a claim that can be remedied through the award of a monetary payment. *See, e.g. Karriem v. Gray*, 623 A.2d 112, 115 (D.C. 1993) ("Because this harm could, conceivably, be cured by a monetary payment an injunction is not needed to avoid irreparable harm to appellant.") (citing *In re Antioch University*, 418 A.2d 105, 109–10 (D.C. 1980)).

To be sure, the Plaintiff does *not* seek a permanent injunction in connection with Count I of its Complaint, asking instead for solely-monetary damages. And this is thusly a claim that (i) is addressed in only two sentences of the Motion; (ii) that appears to be untethered to any legally-cognizable contract; and (iii) that cannot support injunctive relief.

### ii. Tortious Interference with Business Relations

The heart of the claim for tortious interference with business relations (Count II) is that WCP and DPCL should not have declared the promissory notes to be in default on December 8,

2022, when the Plaintiff had already defaulted on the notes and their correlative deeds of trust at least six separate times. Rather, the Plaintiff posits, WCP and DPCL were obligated to refrain from noting the myriad defaults, so the Plaintiff could fraudulently represent to a new lender that its existing loan obligations were in good standing.

A claim for tortious interference with business relations requires a showing of "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (quoting *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038 (D.C. 2015) (quoting *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 345–46 (D.C. 2015))).

Here, the Plaintiff has not shown that it had a valid contractual or other business relationship with anyone aside from WCP and DPCL. The Plaintiff claims to have been in the process of endeavoring to refinance its debt, but in a case where the Plaintiff has appended an extensive array of exhibits to nearly every filing, the record is notably devoid of a loan commitment letter from a third party lender. And while ultimately immaterial because of the Plaintiff's failure to make showings of other required elements, this prong ought not be overlooked. To the contrary, this is a case where the Plaintiff claims that there is significant equity in the Property, but that it suddenly became unable to procure a refinancing (despite that significant equity) in December 2022 because WCP and DPCL declared their loans to be in default. This assertion is, on many levels, not only counterintuitive but, indeed, plainly illogical. It seems far-fetched to surmise a lender walked away from refinancing an obligation secured by a healthy equity cushion, and it is altogether suspect that the Plaintiff has never mustered any evidence of this actually occurring.

Equally, the Plaintiff has not shown that WCP and DPCL did anything to intentionally interfere with any third party relationship. All the Plaintiff alleges is that WCP and DPCL sent default notices and payoff statements *to the Plaintiff*. There is no claim that any of the Defendants contacted another lender, libeled the Plaintiff, or undertook any actions whatsoever in connection with a third party. The Plaintiff's claim necessarily fails on account of this reality, as tortious interference mandates some action over and above merely communicating with the allegedly-aggrieved party itself.

Most importantly, though, the Plaintiff has not shown resulting damages. The Plaintiff defaulted – at least six times – under loan documents, leading WCP and DPCL to simply note the defaults and declare the loans to be in default. This does not invite any legally-cognizable form of damages; to the contrary, this is merely WCP and DPCL proceeding under contractually bargained-for loan documents, in accord with the express terms thereof. In fact, WCP and DPCL waited until at least four more defaults occurred – including a failure to pay both loans at maturity – before noticing a foreclosure, permitting the Plaintiff more than the bargained-for time period to seek new financing.

In short, the Plaintiff is alleging that WCP and DPCL exercising their contractual remedies, under valid loan documents, constitutes tortious interference. The innate failure of this contention – and the resulting absence of any probability of success on the merits – is self-evident.

### iii. Breach of the Duty of Good Faith and Fair Dealing

The Plaintiff is similarly unlikely to prevail on its claim for breach of the implied covenant of good faith and fair dealing (Count III). Only a single paragraph is devoted to this claim in the Motion, and for good reason: the Plaintiff is arguing that a lender cannot foreclose, under a deed of trust, after a borrower breaches loan documents at least nine separate times, including a failure

to pay the loan at maturity. Such a holding would not only invite untold havoc upon the docket of this Honorable Court but would, too, do palpable violence to the commercial paper market writ large.

Familiarly, "… to establish a breach of the implied covenant of good faith and fair dealing in all three jurisdictions, the plaintiff must plead that (1) the defendant has taken steps, or refused to take steps, (2) which destroyed or injured the plaintiff's right to receive the fruits of the contract." *Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 112 (D.D.C. 2017) (citing *Mero v. City Segway Tours of Wash. D.C., LLC*, 826 F.Supp.2d 100, 106 (D.D.C. 2011); *Williams v. Craft Dev., LLC*, 199 N.C.App. 500, 682 S.E.2d 719, 723 (2009); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919, 923 (1991)).

Here, the Plaintiff was entitled to receive loaned monies from WCP and DPCL, pursuant to the terms of the loan documents. Those are the "fruits of the contract" insofar as the Plaintiff is concerned, and there is no dispute but that the Plaintiff received loaned monies. Rather, what the Plaintiff argues is that it is entitled, too, to retain the collateral it pledged as security – notwithstanding an avalanche of defaults and a failure to pay the notes at maturity – because the Plaintiff is not fond of the terms for which it bargained.

To be clear, the "fruits of the contract" are the monies paid to the Plaintiff. In fact, it is the repayment of those monies with interest – something the Plaintiff has failed to honor – that is the fruit of the contract for WCP and DPCL. And to the extent there is a claim for breach, in this instance, such a claim may be rightfully understood to belong to the Defendants – not the Plaintiff.

### iv. Breach of Fiduciary Duty

The Plaintiff also theorizes that Mr. Drazin, a respected local attorney, has a conflict of interest and cannot serve as the trustee foreclosing the second deed of trust, since he is also counsel

13

Case 24-10023-ELG Doc 157 Filed 09/04/25 Entered 09/04/25 09:33:04 Desc
Exhibit B - All Pleadings Filed in District Court (Part 3) Page 1235 of 1716
Exhibit B - All Pleadings Filed in District Court (Part 3) Page 1235 of 1716

to WCP and DPCL. In so doing, the Plaintiff not only ignores that the District of Columbia has a longstanding tradition of having creditors' attorneys act as trustees in connection with foreclosure proceeding but, too – and more importantly – that no actual breach of his fiduciary obligations has been alleged. The Plaintiff insists there is a conflict of interest, but does not – and cannot – point to a single action taken by Mr. Drazin that is not in precise conformity with his obligations as expressly set forth in the correlative deed of trust.

In his capacity as trustee, Mr. Drazin has (i) filed a Notice of Foreclosure Sale of Real Property or Condominium Unit, on the official form issued by the District of Columbia; (ii) caused that form to be served on all pertinent parties (including the Plaintiff and its counsel of record); (iii) scheduled a foreclosure auction; and (iv) made arrangements to have notice of that foreclosure auction advertised in the Washington Post. The notice is a matter of public record and was sent to the Plaintiff and its counsel; the time and date of the foreclosure are contained in the notice; the newspaper advertisements can be found online and in the pages of the region's most-read daily newspaper.

Further, Mr. Drazin's service as a trustee is largely ministerial in nature, being intentionally devoid of latitude to make decisions beyond the date/time of a foreclosure sale and where to publish advertisements for the sale. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 377

n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n*, <mark>322 F.2d 418, 422</mark> (D.C. Cir. 1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope, consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction, and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC*, <mark>915 F. Supp. 2d 162, 169</mark> (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as they relate to foreclosures. This is a case where the underlying promissory note matured in March 2023 and has not been paid off; the deed of trust plainly provides for a foreclosure to occur in such an instance. And Mr. Drazin, as an experienced local attorney, is familiar with the laws governing how that procedure is to accordingly be executed.

To be sure, there is no contention in this case that the Plaintiff has not defaulted under the deed of trust. To the contrary, it is manifest the underlying loan matured without payment after a preceding series of independent defaults that include (i) the Plaintiff failing to make various payments in a timely fashion; (ii) the Plaintiff failing to make other payments altogether; and (iii) the Plaintiff allowing a municipal lien to accrue on the real estate. So Mr. Drazin proceeding with a foreclosure, under the deed of trust, is both ministerial in nature and uninformed by any pertinent information not held by others.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his duties as trustee. To the contrary, it is facially apparent that he filed the correct form for a Notice of Foreclosure Sale of Real Property or Condominium Unit, that he gave proper notice thereof, that he has scheduled an auction, and that he has caused that auction to be advertised. He has, in

15

the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to suit herein.

### v. The Defaults are Not "Technical" and Do Give Rise to Foreclosure

Remarkably, the Plaintiff describes the breaches giving rise to a default under the loan documents as being "technical" in nature, not inviting foreclosure. Motion at § IV(b)(7). The Plaintiff also alleges these violations to be "pretextual," *Id.* at § IV(b)(5), and that the violations have been cured, *Id.* at § IV(b)(7). The former assertion is belied by the undisputed record; the latter assertions are plainly counter-factual in nature.

To be sure, failing to pay a loan at maturity is not a "technical" breach of the promissory note or deed of trust. Indeed, it is difficult to fathom a more substantive breach. Equally, failing to make regular payments on time is not a "technical" violation. Nor is altogether failing to make interest payments, for multiple months (without ever paying those obligations, even tardily) a "technical" violation. And, similarly, allowing a senior to encumber a lender's collateral, because of the non-payment of a government fine, is most certainly not a "technical" breach of loan documents.

Vis a vis the alleged "cure" of these violations, it is undisputed that the loan balances remain unpaid, despite the notes having matured. Yes, *some* of the late payments were ultimately made on installment interest, but several were not. And perhaps the senior lien was ultimately retired (that seems less clear). Still, as this Honorable Court has previously observed, those breaches would be alone sufficient to invite foreclosure under the loan documents (which do not allow for cures to void defaults of these types); yet, to focus on those breaches is to miss the forest for the trees: the Plaintiff owes more than $8.5 million on account of loans that matured and were

16

not repaid upon maturity. And this has been true for more than three months, with the maturity having occurred toward the end of March 2023.[5]

### vi. The Late Fee is Enforceable

The Plaintiff next argues that a late fee bargained for in the promissory notes is not enforceable, on the basis that it is a forbade liquidated damages clause. Yet this contention is without legal support, as the District of Columbia expressly allows parties to contractually bargain for damages arising on account of contractual breaches.

The District of Columbia Court of Appeals has made clear that liquidated damages provisions of contracts are allowable in nature:

> "It is well-settled that parties to a contract may agree in advance to a sum certain to be forfeited as liquidated damages for breach of contract." This is because a liquidated damages clause serves "to simplify the resolution of a breach of contract dispute" by "giving the parties an opportunity to resolve the damages question without resorting to litigation" and by "fix[ing] the measure of damages at the outset before a breach even occurs."

*Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019) (quoting *Burns v. Hanover Ins. Co.*, 454 A.2d 325, 237 (D.C. 1982); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 367 (D.C. 1984)).

The Plaintiff devotes but a single paragraph to this contention in its Motion (despite an agreement to exceed the page count ordinarily governing motions practice). This is problematic, inasmuch as the burden would be on the Plaintiff to establish that (i) the late fee in the loan documents is a penalty; (ii) the late fee is not reasonable compensation for a breach; and (iii) the

---

[5] The Motion also argues that an affiliate relationship does not invite a breach of the loan documents. Motion at § IV(b)(6). WCP and DPCL dispute this assertion and believe the relevant third party entities to be affiliates of the Plaintiff, but such is besides the point for purposes of the instant Motion. As noted *passim*, there are more than six separate breaches of the loan documents – not involving any affiliates – that punctuate the frivolity of the Plaintiff's claims.

late fee was unreasonable at the time the promissory notes were entered into. *Id.; Proulx v. 1400 Pennsylvania Ave., SE, LLC,* 199 A.3d 667, 673 (D.C. 2019). The Motion makes no such showing.

To the contrary, WCP and DPCL loaned millions of dollars, expecting those monies to be repaid in a year. It has now been nearly seven months since those debts came due and the loans remain unpaid, leaving the lenders without access to their capital. The Defendants never bargained for an indefinite loan and, to the contrary, WCP and DPCL are in the business of making short term loans and being able to then redeploy their capital accordingly. It is thusly altogether sensible that there is a late fee when payments are not timely made, and it is undisputed that the late fee was agreed to by the Plaintiff when the promissory notes were executed.

Indeed, in the words of the *Proulx* Court, "We have ... consistently adhered to a general rule that one who signs a contract has a duty to read it and is obligated according to its terms.... [A]bsent fraud or mistake, one who signs a contract is bound by a contract which [s]he has an opportunity to read whether [s]he does so or not." *Proulx,* 199 A.3d at 672 (quoting *Pyles v. HSBC Bank USA, N.A.,* 172 A.3d 903, 907 (D.C. 2017) (quoting *Pers Travel, Inc. v. Canal Square Assocs.,* 804 A.2d 1108, 1110 (D.C. 2002))).

### b. The Motion Does Not Demonstrate Irreparable Harm

The Motion should also be denied because the Plaintiff cannot show irreparable harm. While a foreclosure would serve to alienate the Plaintiff's interest in the Property, the Plaintiff has an adequate remedy at law to forestall the foreclosure, inasmuch as the Plaintiff is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code. This is the remedy normally invoked by commercial borrowers who face a foreclosure and do not wish to see it proceed; it is altogether unclear why the Plaintiff has not travelled this relatively simple and oft-invoked route.

Under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g., Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367 A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I. No tangential or other operations are alleged, nor does the Plaintiff purport to have any other assets or affairs. *Id.* Thusly, the Plaintiff could stay a foreclosure by filing a petition for bankruptcy relief. 11 U.S.C. § 362. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

19

### c. Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra*, the longstanding alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. To permit otherwise, and afford injunctive relief in a case where the Plaintiff tacitly acknowledges breaches of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

This is all the more true where, as here, the defaulting party is an entity without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

## V. Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* is over $8.5 million. The debt is accruing interest at the rate of $4,828.13 per day. *See* Payoff Statements, attached to Motion as Exhibits K and L. And that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $1,762,267.45 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

21

The Defendants are aware this number may seem palpably large. But so, too, are the ramifications injunction the Plaintiff seeks. The Plaintiff is not merely asking that a foreclosure be enjoined; the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial peril of the parties against whom they seek relief.

## VI.     Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; (ii) alternatively, condition an injunction upon the posting of a bond in the amount of $1,762,267.45; and (iii) afford such other and further relief as may be just and proper.

Dated: July 20, 2023                                   Respectfully Submitted,

                                                       /s/ Maurice B. VerStandig
                                                       Maurice B. VerStandig, Esq.
                                                       DC Bar #1034066
                                                       The VerStandig Law Firm, LLC
                                                       9812 Falls Road, #114-160
                                                       Potomac, Maryland 20854
                                                       Telephone: 301-444-4600
                                                       Facsimile: 301-444-4600
                                                       Electronic Mail: mac@mbvesq.com
                                                       *Counsel for the Defendants*

22

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 20th day of July 2023, and a notice of filing should be served on all counsel of

record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

# Exhibit A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Judge-in-Chambers**

|  |  |  |
|---|---|---|
| | : | |
| **423 KENNEDY ST. HOLDINGS** | : | |
| | : | |
| **Plaintiff** | : | **Case No. 2022 CAB 5903** |
| | : | **Judge-in-Chambers** |
| v. | : | |
| | : | **CLOSED CASE** |
| **DP CAPITAL, LLC, Et. Al.** | : | |
| | : | |
| **Defendant.** | : | |

**ORDER**

This case was set before the Court for a Temporary Restraining Order Hearing at 10:00 a.m. on the 6th day of February 2023. Counsel for Plaintiff and Defendants appeared before the Court today. Plaintiff seeks to enjoin Defendants from foreclosing on 423 Kennedy St. NW, Lot 56, Square 3260, Washington, DC. However, both Plaintiff and Defendant agree that no such foreclosure is pending or advertised. Plaintiff provided no other grounds to demonstrate imminent, irreparable harm. Additionally, the Court finds Defendant has acted in accordance with the terms of the contract.

Accordingly, the Court finds Plaintiff's injury to be too speculative and non-concrete. Plaintiff's current pleadings do not satisfy the elements for a temporary restraining order or a preliminary injunction as both forms of injunction require imminent, irreparable harm. Here, the harm is neither imminent nor irreparable. The Court reviewed Plaintiff's cited case law but found no viable reason to rule in any other way than as follows. The Court will deny Plaintiff's Motion for Temporary Restraining Order and vacate the upcoming Preliminary Injunction Hearing in this case. Plaintiff may refile when its injuries are both imminent and irreparable.

Wherefore, it is this 6th day of February 2023, hereby

**ORDERED**, that the above captioned case is **DISMISSED WITHOUT PREJUDICE.**

_____

Zinora Mitchell-Rankin, Senior Judge
Sitting in Judge-in-Chambers

Copies to:

423 Kennedy St. Holdings
Plaintiff.
Via Odyssey

DP Capital LLC
WCP Fund
Daniel Huertas
Russell Drazin
Defendant
Via Odyssey

# Exhibit B

### 423 KENNEDY ST HOLDINGS, LLC HISTORY OF LOAN DOCUMENT DEFAULTS
### $1,256,000.00 LOAN FROM WCP FUND I LLC

**First Default**

$12,560.00 Interest Payment
Due: May 1, 2022
Paid: July 14, 2022
Payment Made 74 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Fifth Default**

$12,560.00 Interest Payment
Due: December 1, 2022
Paid: December 8, 2022
Payment Made 7 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Second Default**

$12,978.67 Interest Payment
Due: June 1, 2022
Paid: July 14, 2022
Payment Made 43 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Sixth Default**

$12,978.67 Interest Payment
Due: January 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Third Default**

$12,560.00 Interest Payment
Due: July 1, 2022
Paid: July 14, 2022
Payment Made 13 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Seventh Default**

$12,978.67 Interest Payment
Due: February 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Fourth Default**

$1,590.00 Lien Placed on Property
November 17, 2022
Lienor: DC Department of Buildings
Reason: "Failure to Pay Fines and Penalties"
Land Records Document #2022114185
*See* Deed of Trust §§ 1.0; 4.1; 4.2; 5.1; 7.2

**Eighth Default**

$11,722.67 Interest Payment
Due: March 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Ninth Default**

Payment of Full Sum at Maturity
Due: March 31, 2023
Paid: n/a
Payment Never Made
Amount Now Due: $1,569,730.80
*See* Promissory Note § 3;
Deed of Trust § 7.1

# Exhibit C

| Name | Status Reas | Payment Due On | Days Past I | Payment Paid On | Payment Method | Servicing Status | mount Due nterest | mount Due ate ee | mount Due De ault nterest |
|---|---|---|---|---|---|---|---|---|---|
| LPAY-113012 | Unpaid | 8/1/2023 | -13 | | | O | 12978 67 | 0 00 | 12978 67 |
| LPAY-111259 | Unpaid | 7/1/2023 | 18 | | | Defaulted | 12560 00 | 0 00 | 12560 00 |
| LPAY-109379 | Unpaid | 6/1/2023 | 48 | | | Defaulted | 12978 67 | 0 00 | 12978 67 |
| LPAY-108293 | Unpaid | 5/1/2023 | 79 | | | Defaulted | 12560 00 | 0 00 | 12560 00 |
| LPAY-106376 | Unpaid | 4/1/2023 | 109 | | | Defaulted | 12978 67 | 0 00 | 12978 67 |
| LPAY-104932 | Unpaid | 3/1/2023 | 140 | | | Defaulted | 11722 67 | 0 00 | 11722 67 |
| LPAY-103819 | Unpaid | 2/1/2023 | 168 | | | Defaulted | 12978 67 | 0 00 | 12978 67 |
| LPAY-102228 | Unpaid | 1/1/2023 | 199 | | | Defaulted | 12978 67 | 0 00 | 12978 67 |
| LPAY-100115 | Paid | 12/1/2022 | 230 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 12560 00 | 0 00 | 0 00 |
| LPAY-098554 | Paid | 11/1/2022 | 260 | 11/4/2022 14:05 | Stripe | Current | 12978 67 | 0 00 | 0 00 |
| LPAY-096476 | Paid | 10/1/2022 | 291 | 9/26/2022 8:00 | Wire | Current | 12560 00 | 0 00 | 0 00 |
| LPAY-093144 | Paid | 9/1/2022 | 321 | 9/1/2022 8:00 | ACH | Current | 12978 67 | 0 00 | 0 00 |
| LPAY-090203 | Paid | 8/1/2022 | 352 | 8/1/2022 8:00 | Wire | Current | 12978 67 | 0 00 | 0 00 |
| LPAY-087896 | Paid | 7/1/2022 | 383 | 7/14/2022 8:00 | Wire | Late (5-15 Days) | 12560 00 | 0 00 | 0 00 |
| LPAY-085179 | Paid | 6/1/2022 | 413 | 7/14/2022 8:00 | Wire | Delin uent (30-60 D | 12978 67 | 0 00 | 0 00 |
| LPAY-083482 | Paid | 5/1/2022 | 444 | 7/14/2022 8:00 | Wire | Delin uent (60-90 D | 12560 00 | 0 00 | 0 00 |
| LPAY-082525 | Paid | 3/31/2022 | 475 | 3/31/2022 0:00 | HUD | Originated | 418 67 | 0 00 | 0 00 |

| Name | Status Reason | Payment Due On | Days Past Due | Payment Paid On | Payment Method | Servicing Status | Amount Due Interest | Amount Due Late | Amount Due Default | Amount Due P. | Amount Due Total | Amount Paid Interest | Amount Paid Pre-paid | Amount Paid Late | Amount Paid Default | Amount Paid P. | Amount Paid Total | Remaining Princ. Online Princ. Cumulative Interest | Fwd Princ. al Pmt Balance Total | Scheduled Payment Status Balance Due Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-113012 | Unpaid | 8/1/2023 | -13 | | | O | 12978.67 | 0.00 | 12978.67 | 25957.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25957.34 Uns. eduled | 25957.34 |
| LPAY-111259 | Unpaid | 7/1/2023 | 18 | | | Defaulted | 12560.00 | 0.00 | 12560.00 | 25120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25120.00 Uns. eduled | 25120.00 |
| LPAY-109379 | Unpaid | 6/1/2023 | 48 | | | Defaulted | 12978.67 | 0.00 | 12978.67 | 25957.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25957.34 Uns. eduled | 25957.34 |
| LPAY-108293 | Unpaid | 5/1/2023 | 79 | | | Defaulted | 12560.00 | 0.00 | 12560.00 | 25120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25120.00 Uns. eduled | 25120.00 |
| LPAY-106376 | Unpaid | 4/1/2023 | 109 | | | Defaulted | 12978.67 | 0.00 | 12978.67 | 25957.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25957.34 Uns. eduled | 25957.34 |
| LPAY-104932 | Unpaid | 3/1/2023 | 140 | | | Defaulted | 11722.67 | 0.00 | 11722.67 | 23445.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 23445.34 Uns. eduled | 23445.34 |
| LPAY-103819 | Unpaid | 2/1/2023 | 168 | | | Defaulted | 12978.67 | 0.00 | 12978.67 | 25957.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25957.34 Uns. eduled | 25957.34 |
| LPAY-102228 | Unpaid | 1/1/2023 | 199 | | | Defaulted | 12978.67 | 0.00 | 12978.67 | 25957.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25957.34 Uns. eduled | 25957.34 |
| LPAY-100115 | Paid | 12/1/2022 | 230 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 12560.00 | 0.00 | 0.00 | 12560.00 | 12560.00 | 0.00 | 0.00 | 0.00 | 12560.00 | 0.00 | 0.00 | 0.00 Uns. eduled | |
| LPAY-098554 | Paid | 11/1/2022 | 260 | 11/4/2022 14:05 | Stripe | Current | 12978.67 | 0.00 | 0.00 | 12978.67 | 12978.67 | 0.00 | 0.00 | 0.00 | 12978.67 | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPAY-096476 | Paid | 10/1/2022 | 291 | 9/26/2022 8:00 | Wire | Current | 12560.00 | 0.00 | 0.00 | 12560.00 | 12560.00 | 0.00 | 0.00 | 0.00 | 12560.00 | 0.00 | 0.00 | 0.00 ACH - elled | |
| LPAY-093144 | Paid | 9/1/2022 | 321 | 9/1/2022 8:00 | ACH | Current | 12978.67 | 0.00 | 0.00 | 12978.67 | 12978.67 | 0.00 | 0.00 | 0.00 | 12978.67 | 0.00 | 0.00 | 0.00 Uns. eduled | |
| LPAY-090203 | Paid | 8/1/2022 | 352 | 8/1/2022 8:00 | Wire | Current | 12978.67 | 0.00 | 0.00 | 12978.67 | 12978.67 | 0.00 | 0.00 | 0.00 | 12978.67 | 0.00 | 0.00 | 0.00 Uns. eduled | |
| LPAY-087866 | Paid | 7/1/2022 | 383 | 7/14/2022 8:00 | Wire | Late (5-15 Days) | 12560.00 | 0.00 | 0.00 | 12560.00 | 12560.00 | 0.00 | 0.00 | 0.00 | 12560.00 | 0.00 | 0.00 | 0.00 Uns. eduled | |
| LPAY-085179 | Paid | 6/1/2022 | 413 | 7/14/2022 8:00 | Wire | Delin. uent (30-60 Days) | 12978.67 | 0.00 | 0.00 | 12978.67 | 12978.67 | 0.00 | 0.00 | 0.00 | 12978.67 | 0.00 | 0.00 | 0.00 Uns. eduled | |
| LPAY-083682 | Paid | 5/1/2022 | 444 | 7/14/2022 8:00 | Wire | Delin. uent (60-90 Days) | 12560.00 | 0.00 | 0.00 | 12560.00 | 12560.00 | 0.00 | 0.00 | 0.00 | 12560.00 | 0.00 | 0.00 | 0.00 Uns. eduled | |
| LPAY-082525 | Paid | 3/31/2022 | 475 | 3/31/2022 0:00 | HUD | Originated | 418.67 | 0.00 | 0.00 | 418.67 | 418.67 | 0.00 | 0.00 | 0.00 | 418.67 | 0.00 | 0.00 | 0.00 Uns. eduled | |

Exhibit D

Doc #: 2022114185
Filed & Recorded
11/17/2022 05:67 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### DC DEPARTMENT OF BUILDINGS
### OFFICE OF CIVIL INFRACTIONS

## CERTIFICATE OF DELINQUENT FINES
### FOR FAILURE TO PAY FINES AND PENALTIES ASSESSED PURSUANT TO THE CIVIL INFRACTIONS ACT OF 1985, AS AMENDED

DISTRICT OF COLUMBIA

vs.

423 KENNEDY ST HOLDINGS LLC

Owner of Record

1629 K ST NW STE 300

Washington, DC 20006

Date: 11/17/2022

Square: 3260  Suffix:   Lot: 0056

NOI No. : VR22-00182

Address of Premises:

423 KENNEDY ST NW

This Certificate is filed under the authority of and pursuant to Section 2-1802.03(i)(1) of the D.C. Code, which establishes a continuing lien upon the real property (including improvements) and personal property of an owner in the District of Columbia who fails to pay all outstanding fines, penalties or other costs associated with a final adjudication of a Notice of Infraction issued pursuant to the Civil Infractions Act of 1985, as amended.

This Certificate, from the date of its filing, has the force and effect, as against the aforesaid delinquent party or parties, of a lien created by a judgment granted by the Superior Court of the District of Columbia. This lien remains in force and effect until the entire assessed amount set forth below, together with penalties and other costs (including, but not limited to, court costs and administrative fees) are paid. Failure to pay the outstanding amount within ninety (90) days after the date to appeal the final decision and order, if no appeal has been filed, may result in the sale of the owner's property for costs at the next tax sale in the same manner and under the same conditions as property sold for delinquent general taxes.

Document No: 1                                        Assessed Amount: $1590.00

By: _____

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

Exhibit E

Exhibit B - All Pleadings Ad Hoc Date Foreclosure (Part 3) Page 1256 of 1716

| Name | Status Reason | Payment Due On | Payment Paid On | Payment Method | Servicing Status | Amount Due Interest | Amount Due Late Fee | Amount Due Default Interest | Amount Due Total |
|---|---|---|---|---|---|---|---|---|---|
| LPAY-113319 | Unpaid | 8/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-111607 | Unpaid | 7/1/2023 | | | Defaulted | 44 846 67 | - | 74 877 47 | 119 724 14 |
| LPAY-109740 | Unpaid | 6/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-108036 | Unpaid | 5/1/2023 | | | Defaulted | 44 846 67 | - | 74 877 47 | 119 724 14 |
| LPAY-106114 | Unpaid | 4/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-104722 | Unpaid | 3/1/2023 | | | Defaulted | 41 856 89 | - | 69 885 64 | 111 742 53 |
| LPAY-103615 | Unpaid | 2/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-102023 | Unpaid | 1/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-100623 | Paid | 12/1/2022 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 44 846 67 | - | - | 44 846 67 |
| LPAY-098385 | Paid | 11/1/2022 | 11/1/2022 8:00 | ACH | Current | 46 166 18 | - | - | 46 166 18 |
| LPAY-096363 | Paid | 10/1/2022 | 10/1/2022 0:00 | Pre-Paid Interest | Current | 43 025 07 | - | - | 43 025 07 |
| LPAY-093110 | Paid | 9/1/2022 | 9/1/2022 0:00 | Pre-Paid Interest | Current | 42 427 02 | - | - | 42 427 02 |
| LPAY-090197 | Paid | 8/1/2022 | 8/1/2022 0:00 | Pre-Paid Interest | Current | 40 014 28 | - | - | 40 014 28 |
| LPAY-087965 | Paid | 7/1/2022 | 7/1/2022 0:00 | Pre-Paid Interest | Current | 37 151 17 | - | - | 37 151 17 |
| LPAY-085266 | Paid | 6/1/2022 | 6/1/2022 0:00 | Pre-Paid Interest | Current | 36 924 24 | - | - | 36 924 24 |
| LPAY-083485 | Paid | 5/1/2022 | 5/1/2022 0:00 | Pre-Paid Interest | Current | 31 628 07 | - | - | 31 628 07 |
| LPAY-080468 | Paid | 3/31/2022 | 3/31/2022 0:00 | HUD | Originated | 1 008 80 | - | - | 1 008 80 |

Case 24-10023-ELG Doc 15-1 Filed 09/04/25 Entered 09/04/25 09:35:24 Desc
Exhibit B - All Pleadings And All Docket Entries (Part 2) Page 1257 of 1716

| Name | Status Reason | Payment Due On | Payment Paid On | Payment Method | Servicing Status | mount Due nterest | mount Due ate ee | mount Due De ault nterest | mount Due otal | mount Paid nterest | mount Paid nterest Pre aid | mount Paid ate ee | mount Paid De ault nterest | mount Paid Princi al | mount Paid otal | alance otal | alance no late ee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-113319 | Unpaid | 8/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-111607 | Unpaid | 7/1/2023 | | | Defaulted | 44 846 67 | - | 74 877 47 | 119 724 14 | - | - | - | - | - | - | 119 724 14 | 119 724 14 |
| LPAY-109740 | Unpaid | 6/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-108036 | Unpaid | 5/1/2023 | | | Defaulted | 44 846 67 | - | 74 877 47 | 119 724 14 | - | - | - | - | - | - | 119 724 14 | 119 724 14 |
| LPAY-106114 | Unpaid | 4/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-104722 | Unpaid | 3/1/2023 | | | Defaulted | 41 856 89 | - | 69 885 64 | 111 742 53 | - | - | - | - | - | - | 111 742 53 | 111 742 53 |
| LPAY-103615 | Unpaid | 2/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-102023 | Unpaid | 1/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-100623 | Paid | 12/1/2022 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 44 846 67 | - | - | 44 846 67 | 44 846 67 | - | - | - | - | 44 846 67 | - | |
| LPAY-098385 | Paid | 11/1/2022 | 11/1/2022 8:00 | ACH | Current | 46 166 18 | - | - | 46 166 18 | 30 573 03 | 15 593 15 | - | - | - | 46 166 18 | - | |
| LPAY-096363 | Paid | 10/1/2022 | 10/1/2022 0:00 | Pre-Paid Interest | Current | 43 025 07 | - | - | 43 025 07 | - | 43 025 07 | - | - | - | 43 025 07 | - | |
| LPAY-093110 | Paid | 9/1/2022 | 9/1/2022 0:00 | Pre-Paid Interest | Current | 42 427 02 | - | - | 42 427 02 | - | 42 427 02 | - | - | - | 42 427 02 | - | |
| LPAY-090197 | Paid | 8/1/2022 | 8/1/2022 0:00 | Pre-Paid Interest | Current | 40 014 28 | - | - | 40 014 28 | - | 40 014 28 | - | - | - | 40 014 28 | - | |
| LPAY-087965 | Paid | 7/1/2022 | 7/1/2022 0:00 | Pre-Paid Interest | Current | 37 151 17 | - | - | 37 151 17 | - | 37 151 17 | - | - | - | 37 151 17 | - | |
| LPAY-085266 | Paid | 6/1/2022 | 6/1/2022 0:00 | Pre-Paid Interest | Current | 36 924 24 | - | - | 36 924 24 | - | 36 924 24 | - | - | - | 36 924 24 | - | |
| LPAY-083485 | Paid | 5/1/2022 | 5/1/2022 0:00 | Pre-Paid Interest | Current | 31 628 07 | - | - | 31 628 07 | - | 31 628 07 | - | - | - | 31 628 07 | - | |
| LPAY-080468 | Paid | 3/31/2022 | 3/31/2022 0:00 | HUD | Originated | 1 008 80 | - | - | 1 008 80 | 1 008 80 | - | - | - | - | 1 008 80 | - | |

Exhibit F

**A. Settlement Statement** U.S. Department of Housing and Urban Development

| | | | | | 6. File No. 22-0210 | 7. Loan No. | 8. Mortgage Insurance Case No. |
|---|---|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | | | | | |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: 423 Kennedy St Holdings LLC 1629 K Street Northwest Washington, DC 20006 | E. Name & Address of Seller: | F. Name & Address of Lender: WCP Fund I, LLC 2815 Hartland Road Suite 200 Falls Church, VA 22043 |
|---|---|---|
| G. Property Location: 419-423 Kennedy Street, NW Washington, DC 20011 3260-0000-0056 | H. Settlement Agent: District Title Place of Settlement: 1775 I Street Northwest #560 Washington, DC 20006 | I. Settlement Date: 03/31/2022 Funding Date: 03/31/2022 Disbursement Date: 03/31/2022 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $5,319,912.45 | 403. | |
| 104. Payoff to Washington Capital Partners | $4,546,765.88 | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | $9,866,678.33 | **420. Gross Amount Due to Seller** | |
| **200. Amount Paid by or in Behalf of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $8,689,693.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Transfer from 22-0210A | $1,176,985.33 | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | $9,866,678.33 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $9,866,678.33 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $9,866,678.33 | 602. Less reductions in amounts due seller (line 520) | |
| 303. Cash ☐ From ☒ To Borrower | | 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

Certified True Copy

Previous editions are obsolete    Page 1 of 2    HUD-1 / Order #22-0210 / March 31, 2022

Settlement Charges

| | | |
|---|---|---|
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 801. Our origination charge payable to DP Capital, LLC | $217,242.33 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee to CL Group LLC | $2,950.00 | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Construction Draw to WCP Fund I LLC | $4,650,000.00 | |
| 808. Loan Processing Fee to DP Capital LLC - POC by $1,000.00 | $2,000.00 | |
| 809. | | |
| 810. | | |
| 901. Daily interest charges from 03/31/2022 to 04/01/2022 @ $1008.8000 /day | $1,008.80 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's insurance to Chenault Insurance Services, LLC | $22,185.00 | |
| 904. Prepaid Interest to WCP Fund I LLC | $246,763.00 | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $20,796.05 | |
| 1104. Lender's title policy limit $10,862,116.25 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. Title Commitment Fee to District Title | $738.56 | |
| 1108. Release Tracking Fee to Require | $38.49 | |
| 1109. E- Recording Fee to Simplifile | $5.02 | |
| 1110. Abstract Fee to Executive Abstracting Company | $160.00 | |
| 1111. Draw Fees 6 @ $100 to District Title | $600.00 | |
| 1112. CPL (Lender) to Fidelity National Title Insurance Company | $50.00 | |
| 1113. Notary Fees to Bancserv | $200.00 | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $0.00 Mortgage $116,250.00 to District of Columbia District Recording Office | $116,250.00 | |
| 1204. | | |
| 1301. Property Taxes GT 04/01/2022 to DC Treasurer | $37,547.52 | |
| 1302. Special Assessment Due - A2200101 to DC Treasurer | $726.18 | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | $5,319,912.45 | |

**See signature addendum**

423 Kennedy St Holdings LLC, a District of Columbia Limited
Liability Company

By: _____ 3/31/2022

By: Mel Melaku Negussie, Manager

Date _____

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

Settlement Agent _____

3/31/2022
Date

## A. Settlement Statement

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No. **22-0210-A** | 7. Loan No. | 8. Mortgage Insurance Case No. | |
| 4. ☐ VA | 5. ☐ Conv Ins. | | | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| 423 Kennedy St Holdings LLC 1629 K Street Northwest Washington, DC 20006 | | WCP Fund I, LLC 2815 Hartland Road Suite 200 Falls Church, VA 22043 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: 03/31/2022 |
|---|---|---|
| 419-423 Kennedy Street, NW Washington, DC 20011 3260-0000-0056 | **District Title** Place of Settlement: 1775 I Street Northwest #560 Washington, DC 20006 | Funding Date: 03/31/2022 Disbursement Date: 03/31/2022 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $79,014.67 | 403. | |
| 104. Transfer to 22-0210 | $1,176,985.33 | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due from Borrower** | $1,256,000.00 | **420. Gross Amount Due to Seller** | |
| **200. Amount Paid by or in Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $1,256,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | $1,256,000.00 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $1,256,000.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $1,256,000.00 | 602. Less reductions in amounts due seller (line 520) | |
| 303. Cash ☐ From ☒ To Borrower | | 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

*Certified True Copy*

1382

| Division of commission (line 700) as follows : | | |
|---|---|---|
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 801. Our origination charge to DP Capital, LLC (3.5%) | $43,960.00 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee | | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Processing Fee to DP Capital LLC | $1,250.00 | |
| 808. | | |
| 809. | | |
| 810. | | |
| 901. Daily interest charges from 03/31/2022 to 04/01/2022 @ $418.6667 /day | $418.67 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's insurance | | |
| 904. | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $1,334.50 | |
| 1104. Lender's title policy limit $1,570,000.00 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. | | |
| 1108. | | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $ Mortgage $31,400.00 to District of Columbia District Recording Office | $31,400.00 | |
| 1204. | | |
| 1301. Property Taxes to DC Treasurer - POC by borrower $34263.90 | | |
| 1302. | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | $79,014.67 | |

**See signature addendum**

1338

███████████████

423 Kennedy St Holdings LLC, a District of Columbia Limited
Liability Company

By: _____

By: Mel Melaku Negussie, Manager

Date _____

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

Settlement Agent _____    Date 3/31/2027

Previous editions are obsolete                                                     HUD-1

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

---

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2023-CAB-004760
Judge Milton Lee
Next Event:  Initial Conference
              10/13/2023 at 9:30 am

---

**[PROPOSED] ORDER GRANTING PLAINTIFF'S
CONSENT MOTION TO EXCEED PAGE LIMIT**

UPON CONSIDERATION of the Plaintiff's Consent Motion to Exceed Page Limit in an Emergency Filing ("Motion"), and any opposition thereto, the Court funds good cause to grant the relief requested in the Motion.

Accordingly, it is this ___21st___ day of ___July___, 2023, hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Plaintiff may file an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale that does not exceed twenty-three (23) pages, including the signature page, the request for a hearing, the certificate of consent, and the certificate of service. The Exhibits are excluded from the page count. The Opposition may also exceed the page limit by an equal number of pages as the Emergency Motion.

SO ORDERED.

                            *M. Lee*
_____
The Honorable Milton Lee
Superior Court of the District of Columbia

4894-3367-7681

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

4894-3367-7681

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

423 KENNEDY ST HOLDINGS LLC,   :
            **Plaintiff**     :
                    :
                    :
 **vs**                : **Docket No. 2023 CAB 4260**
                    :
                    :
DP CAPITAL /D/B/A WASHINGTON  :
PARTNERS, ET. AL.         :
           **Defendant**    :

### ORDER

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of Contract (Count 1); tortious interference with business relations (Court II); breach of duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee (Count VI). The Complaint also seeks declaratory judgments regarding the meaning of provisions in the two Deeds of Trusts and a determination that the liquidated damages provisions are unenforceable because those provisions constitute a penalty (Count IV). Plaintiff also makes a claim that the trustee cannot serve in that position because of the existence of a conflict (Count VII). Finally, in Count V plaintiff's seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale. On July, 20, 2023 defendants filed an opposition. The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order, plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3) that the balance of injuries favors granting an injunction, and 4) that the public interest would be served by granting the request for an injunction. *Ifill v. District of Columbia,* 665 A.2d 185, 187-88 (D.C. 1995). The moving party has the burden to demonstrate that each of the factors, taken together, weigh in favor of issuing an injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

## I. Likelihood of Success on the Merits

### A. The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the existence of a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of that duty; 4) damages caused by the breach. *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009). There is no real dispute regarding whether there was a valid contract between the parties. The parties do not agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants improperly discontinued performance of the contract by stopping construction draws for the 423 Kennedy Street property (the project). When defendants discontinued construction draws, they knew that plaintiff would not be able to move forward with the project. Shortly after the construction draws stopped, defendant gave notice of default to plaintiffs. Plaintiffs claim that there is no basis for the default because plaintiffs had complied with the terms of both deeds of trust and the reasons advanced by defendants for the default is nothing more than a pretext. According to plaintiff, the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain

control of the 423 Kennedy Street project before its completion.  Plaintiffs argues that

it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to

continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust

because plaintiffs continually made late payments the loan.  In addition, defendant

argues that plaintiff was in default because the District of Columbia Department of

Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine

due on that infraction remained unpaid causing a lien to be placed on the 423

property.  Based on the terms of the deed of trust, defendants argue, that this failure to

cure the lien caused by the failure to pay the infraction created a basis to default

loan.[1]  Lastly, defendants claim that plaintiffs have defaulted on the loan because they

failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423

Kennedy ST. Holdings along with several small investors known as Brighton KSDC

that owns the remaining shares.  423 Kennedy ST. Holdings is a sole purpose, limited

liability company that owns and has developed the 423 Kennedy Street property.

According to Mr. Negussie, his company entered into a construction financing loan

with the defendants and executed two deeds of trusts and two commercial deeds of

trust for each deed on March 31, 2022.  Approximately 50% of the project was

completed at the time of the refinancing.  The first commercial deed of trust was for

$8,689,693.00 and the second deed of trust was for $1,256.000.00.  Defendants claim

that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.  Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy. According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble. 423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance. Those payoff statements did not reflect a default or late fees.[3] On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development. Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6] When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin. On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7] The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868,969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default." Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022. Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws. Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment. Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street.  There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction. Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan.  Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws.  Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws.  In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11]  Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022. Defendants provided notice there would be no further construction draws after October 2022.[13] In that same email Daniel Huertas inquired about the "status of the payoffs of both loans." Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14] The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96. There is no reference to a construction draw for the second deed of trust. A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15] The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022. Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing. Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id,* at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022. The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street. Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18] Neither notice identifies the basis for the default. Each of the payoff statements make no reference to unpaid late fees. Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants. While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement. In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws. Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.? What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced payments as construction draws. Perhaps some of the most compelling evidence supporting the fact that the construction draws were part of the contract is that the payoff statements that reflect the terms of payments between the parties includes a reference to a construction draw balance that remained due. In addition, Negussie testified that construction draws were consistently distributed for five or six months following each request made by plaintiffs with the last payment occurring in October 2022. These facts are sufficient to establish that the parties acted as if the construction draws were part of the agreement that obligated the parties and that the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs. Defendants argue that the failure of defendants to make construction draws does not excuse plaintiffs' noncompliance with the second deeds because there was no requirement for a construction draw on that agreement. Defendants' argument glosses over the point that both deeds and their commercial counterparts were identical in almost all respects, were executed at the same time and were part and parcel of the same objective of the parties: the refinancing and development of the 423 Kennedy Street mixed use project. Too conclude otherwise is to simply ignore the uncontroverted testimony of Negussie on each of these points and the objective facts that support that testimony. The testimony further established that the parties treated the construction draws as a part of the contract and plaintiffs relied on those terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date. In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default. First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments. It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem. Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments. According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current. Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately. Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.

[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's connection as an affiliate of Developer REI.  This does order not address that basis for the default because the only testimony on this point was received from Mr. Negussie who indicated under oath that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record indicates that there was no basis for a default based on an affiliation.

creation.  This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022.  There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped.  Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext.  Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall.  When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued.  It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract.  The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext.  A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract.  *District Cablevision v. Limited

Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003).  The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the parties and that initial breach caused plaintiff to be unable to make future payments on the loan.

### B. The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate 1) the existence of a valid contractual or other business relationship; 2) the defendant's knowledge of the relationship; 3) intentional interference with that relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279 (D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in November 2022 that plaintiffs were engaged in efforts to refinance the loan. The email exchanges between Negussie and Huertas demonstrates this knowledge. As Negussie testified, defendants provided "clean" payoff statements that were necessary for the completion of the refinancing on two occasions close in time to the Huertas emails and prior to December 2022. The closing with Main Street Bank was scheduled to take place prior to Thanksgiving but was delayed because of the holiday. When the closing was delayed, defendants issued new payoff statements on December 8, 2022 that reflected for the first time the default as well as default interest and penalties that were due. As Negussie testified these new payoff statements would prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were engaged in business relationship with Main Street Bank that included the creation of a term sheet for a new loan. Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank.  The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank.  The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan.  As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere.  Defendants have failed to

produce any evidence that would indicate otherwise.

### C.  The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale.  Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463,

465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding. There is some support for this position in
that the deeds of trust in Section 8.0 details the obligations of the trustee in the event
of a default and foreclosure. Defendants further argue that the trustee's service is
largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of
default in December 2022, he had no contact with Mr. Drazin in connection with his
duties as trustee. Contact with Drazin was suggested by Dan Huertas when Negussie
sought an explanation for the default. According to Negussie, Huertas indicated that
additional information regarding the default would have to come from WCP's
attorney, Russell Drazin. In a December 9th email, Drazin indicated that he
represented WCP in connection with the loans and went on to explain the basis for
the default issued on December 8, 2022. The record does not indicate that plaintiffs
had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and
> duties imposed by the trust instrument itself, coupled with
> the applicable statute governing foreclosure sales in the
> District of Columbia." Trustees on deeds must exercise
> their powers "with religious fidelity to ethical principles."
> Where a trustee has conflicting interest, the trustee bears
> the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In
re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994). The trustee has a duty to both
the borrower and the lender. Here, the record establishes that Drazin served as trustee
under the terms of the deed and had a fiduciary duty to act faithfully to both. The
record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default. At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure. Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee. *Sheridan,* 299 F.2d at 465 Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits. Plaintiffs seek the appointment of substitute trustee given the existence of the conflict. The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II. Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them. Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project. In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units. A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project. As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money. The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III. Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant. The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023. In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well. In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action. As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project. The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project. While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the rule creates a mandatory imposition of a bond for the protection of the enjoined party has not been directly addressed by the District of Columbia Court of appeals.  The local rule is almost identical to the federal version, so federal precedent is instructive. The circuits are split on this issue and the circuits that have interpreted the rule as being discretionary have recognized several exceptions to the mandatory language. The District of Columbia Court of Appeals has suggested that the security requirement is phrased in mandatory terms with the amount of any bond imposed being left to the discretion of the trial court.  If the trial court exercises its discretion to waive the bond requirement, it is important that the trial judge states the reasons for taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354 A.2d 233, 237 (D.C. 1976).

Considering the underlying facts discussed in this order, the Court declines to impose a bond for the following reasons.  First, defendant have not provided any evidence of what an appropriate bond might be under the circumstances.  While defendants' counsel made a proffer of what might be appropriate, that proffer was not accompanied by any direct evidence that would demonstrate that the suggested bond was rationally related to any potential harm.  Second, plaintiffs testified that they made payments on the loan through the end of December 2022 even though defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward.  The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project.  If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review.  Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits.  It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI.  Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order.  The parties should also consider a more

expediated discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of this order.

<u>  July 24, 2023  </u>
      Date

<div align="right">

<u>      /s/      </u>
MILTON C. LEE, JR.
ASSOCIATE JUDGE

</div>

cc:  James D. Sadowski, Esq.
     Alexandria J. Smith, Esq.
     Counsel for Plaintiffs
     jds@gdllaw.com

     Maurice B. Versandig
     Counsel for Defendants
     mac@mbvesq.com

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

423 Kennedy St Holdings LLC,

  Plaintiff,

v.

DP Capital, LLC, et al.

  Defendants.

Case No. 2023 CAB 004260
Judge Milton Lee

**SUPPLEMENT TO OPPOSITION TO PLAINTIFF'S
OPPOSED MOTION FOR TEMPORARY RESTRAINING
ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (DPCL, WCP, Mr. Huertas and Mr. Drazin being collectively known as the "Defendants"), by and through undersigned counsel, in supplement to their prior opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff") and state as follows:

At a hearing on the Motion on July 21, 2023, the Plaintiff's claim for breach of contract – which had previously received minimal attention in the Motion – was highlighted in some detail, with the core of said claim being a contention that WCP was required to advance constructions draws under a promissory note secured by a first deed of trust. It accordingly bears observation that the subject promissory – admitted into evidence by stipulation at the same hearing – provides, *inter alia*:

> Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on

the loan amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion.

*See* Promissory Note, attached hereto as Exhibit A, at § 1.

In light of the foregoing, the record makes evident that (i) the parties had agreed in the loan documents that WCP was under no obligation to advance any construction draws, and (ii) as a consequence of such, the Plaintiff's claim for breach of contract fails as a matter of law.

Dated: July 22, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 22nd day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

**Case Caption:**    Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.

**To:**  Maurice B. Verstandigm                        **Case Number:**    2022-CAB-005935

### NOTICE OF IN PERSON MOTION HEARING

Your case is scheduled for a(n) **Motion Hearing** on **07/25/2023** at **10:30 AM**

  Courtroom Number: Courtroom 219

  Courtroom Address: 500 Indiana Ave NW, Washington DC 20001


For questions, please contact the Civil Actions Branch Clerk's Office at 202-879-1133.

To change your method of hearing participation, visit www.dccourts.gov/services/remote-hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Maurice B. Verstandigm
THE VERSTANDIG LAW FIRM LLC
9812 Falls Road #114-160
POTOMAC MD  20854

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.


For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.      2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS, *et al.*,** | **Next Event: Remote Emergency Motion Hearing** |
| **Defendant.** | **July 25, 2023 at 10:30 A.M.** |

<u>**ORDER SETTING MOTION HEARING**</u>

This matter is before the Court on (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023. The Court shall set a Motion Hearing for July 25, 2023, at 10:30 a.m., and shall resolve the pending matters above.

Accordingly, based upon the entire record herein, it is this 24th day of July 2023, hereby:

**ORDERED** that the parties **SHALL APPEAR** for a Motion Hearing on Tuesday, July 25, 2023, at 10:30 a.m., before Judge Ebony M. Scott in courtroom 219.  Instructions for participation in the Hearing are below.

**SO ORDERED**.

_____
**Associate Judge Ebony M. Scott**

1388

*(Signed in Chambers)*

**<u>Copies via Odyssey to</u>:**

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

## VIRTUAL COURTROOM INSTRUCTIONS FOR COURTROOM 219

During the period of remote operation, as determined by the Chief Judge of the Superior Court, some proceedings in matters on Calendar 8 will take place in Virtual Courtroom 219, which the parties and counsel may access in the following ways:

(1)     Going to the WebEx website at https://dccourts.webex.com/meet/ctb219 or going to https://dccourts.webex.com and entering meeting ID number 129 315 2924; or

(2)     Downloading the WebEx Meetings app, opening the app, selecting Join Meeting, and entering https://dccourts.webex.com/meet/ctb219; or

(3)     Calling 1-844-992-4726 or 202-860-2110, then entering meeting ID number 129 315 2924#, then pressing # again to enter the meeting.

Parties having trouble connecting to their remote hearing may contact chambers at judgescottchambers@dcsc.gov as staff will be monitoring the e-mails closely during hearings.

**Failure to appear at a remote proceeding may result in the Court entering an unfavorable ruling against you, including dismissal of a case or entry of default.**

## COURTROOM PROTOCOL

**Guidelines**:  When entering the virtual courtroom (by dialing in on a phone, or signing in through the website or app), a party or counsel should not attempt to speak because another hearing may be underway.  Each party should be automatically muted by the courtroom clerk when you first arrive.  If you are using the WebEx website or the app, you may check in with the courtroom clerk using the "chat" function.  If you are on a telephone, you should wait for your case to be called.

**Option to Appear In-Person for Remote Hearings**:  Even though your case has been set as a remote hearing, you have the choice to come in person to the Court for your hearing. If you would like to participate in person, please try to notify the Court before your hearing date. Whether you come in person or participate remotely, your case will still be fully heard by the Judge. Instructions for participation in remote hearings may be found above and here: https://www.dccourts.gov/services/remote-hearing-information.

**Exhibits**:  If you intend to rely on exhibits or other documents during the hearing, you must e-mail the exhibits to the Court at judgescottchambers@dcsc.gov, copying all sides, no later than 5:00 p.m. three business days before the hearing.  You must also file the exhibits on the docket and provide a copy of the exhibits to any witness before the hearing.  The exhibits must be separately labeled so that they can be easily identified by all parties and the Court during the remote hearing

Page **3** of **3**

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

  *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

  *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
          8/10/2023

## PLAINTIFF'S REPLY TO THE DEFENDANTS' OPPOSITION TO THE OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

The Plaintiff, Developer RE1 LLC ("Developer RE1"), hereby files its reply to the Defendants' Opposition to the pending emergency motion to stop a foreclosure sale. Because time is of the essence as the foreclosure sale that Developer RE1 is trying to stop will take place tomorrow, July 25, 2023 at 2:00 p.m., and because today Judge Milton Lee issued an order granting a temporary restraining order in the related case, this Reply will be a short one.

1.      Developer RE1 filed its motion for a temporary restraining order on July 11, 2023 ("Emergency Motion"). The gravamen of Developer RE1's arguments were that the Defendants deliberately sabotaged Developer RE1's refinancing to try to force Developer RE1 to pay it more money under two loans under a threat of foreclosure. Developer RE1 also argues that the Defendants allegations of a default were pretextual. The Emergency Motion was verified by Mel Negussie.

2.      On July 17, 2023, Developer RE1 filed a notice of related cases to alert the Court that there were two cases pending involving similar facts, similar loan documents, and nearly all

1

4866-9264-3442

of the same Defendants.  The related case is *423 Kennedy St Holdings, LLC v. DP Capital, LLC*

*d/b/a Washington Capital Partners, et al.* (2023-CAB-004260).  On July 18, 2023, the Plaintiff

in the related case filed a nearly identical motion for a temporary restraining order as the TRO

Motion in this case.

3.       The Defendants filed an Opposition to the TRO Motion in this case on July 17,

2023 and in the related case on July 20, 2023.   In both Oppositions, the Defendants did not

include any affidavit or other sworn testimony to contradict the facts that were verified by Mr.

Negussie.  Rather, the Defendants made legal arguments only as to why the borrowers were not

likely to prevail and why injunctive relief was not appropriate.  The legal arguments made by the

Defendants in the related case were almost identical to the legal arguments made in the

Opposition in this case.

4.       On Friday, July 21, 2023, Judge Milton Lee held a hearing on the TRO motion in

the related case.  At that hearing, Mr. Negussie testified and was subject to cross-examination by

counsel for the Defendants.  In opposing the TRO motion in the related case, Counsel for the

Defendants made many of the same arguments that have been made in this case.

5.       This morning, Judge Lee issued an order granting the TRO motion filed by 423

Kennedy that stops the foreclosure in the related case until the related case is concluded.  In that

detailed, twenty-two page decision, Judge Lee found that evidence before him – which included

many facts identical to the facts alleged in this case -- supported 423 Kennedy's position that the

defaults alleged by the lender (WCP Fund I, LLC) and its servicing agent (DP Capital, LLC),

both of whom are defendants in this case, were pretextual.  Judge Lee further found that 423

Kennedy had met all of the required elements for granting injunctive relief.  A copy Judge Lee's

2

4866-9264-3442

July 24, 2023 order granting a temporary restraining order in the related case is attached as
Exhibit A.

6.     Although Judge Lee's decision in the related case is not binding, Developer RE1
requests that the Court take judicial notice of that decision.  Given that Judge Lee found that, on
nearly similar facts involving a different borrower, that (a) the same Defendants in this case
engaged in inequitable conduct and (b) all of the elements necessary for injunctive relief were
present, at a minimum this Court should issue a temporary restraining order to stop the pending
foreclosure sale until an evidentiary hearing can be scheduled in this case.

7.     A temporary stay of the foreclosure sale until this Court can schedule an
evidentiary hearing will cause no harm to the Defendants.  Such a stay would also allow both
judges and the parties to consider whether judicial resources can be preserved by a consolidation
of the two cases.  Alternatively, given that some discovery has already been completed in this
case, the Court could issue an order enjoining the foreclosure sale, then consolidate the
preliminary injunction hearing with the trial in this case.

For these reasons, and for any reasons that may be advanced at a hearing on the
Emergency Motion, the Plaintiff, Developer RE1 LLC, requests that this Honorable Court:  (a)
schedule an emergency hearing on this Motion, or (b) enter an order enjoining any foreclosure
sale until this case is concluded.

3

4866-9264-3442

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 24, 2022

/s/ James D. Sadowski

Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Reply was served by the Court's

electronic filing system this 24th day of July 2023, and a notice of filing should be served on all

counsel of record.

/s/ James D. Sadowski

James D. Sadowski

4866-9264-3442

4

# EXHIBIT A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

423 KENNEDY ST HOLDINGS LLC,　　:
　　　　　　　Plaintiff　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　vs　　　　　　　　　　　　: <mark>Docket No. 2023</mark> CAB 4260
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
DP CAPITAL /D/B/A WASHINGTON　:
PARTNERS, ET. AL.　　　　　　:
　　　　　　　Defendant　　　:

## ORDER

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of Contract (Count 1); tortious interference with business relations (Court II); breach of duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee (Count VI). The Complaint also seeks declaratory judgments regarding the meaning of provisions in the two Deeds of Trusts and a determination that the liquidated damages provisions are unenforceable because those provisions constitute a penalty (Count IV). Plaintiff also makes a claim that the trustee cannot serve in that position because of the existence of a conflict (Count VII). Finally, in Count V plaintiff's seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale. On July, 20, 2023 defendants filed an opposition. The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order, plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3) that the balance of injuries favors granting an injunction, and 4) that the public interest would be served by granting the request for an injunction. *Ifill v. District of Columbia,* <mark>665 A.2d 185, 187-88</mark> (D.C. 1995). The moving party has the burden to demonstrate that each of the factors, taken together, weigh in favor of issuing an injunction. *Davis v. Pension Be. Guar. Corp.,* <mark>571 F.3d 1288</mark> (D.C. D.C. Cir. 2009).

## I. Likelihood of Success on the Merits

### A. The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the existence of a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of that duty; 4) damages caused by the breach. *Tsintolas Realty Co. v. Mendez,* <mark>984 A.2d 181, 186</mark> (D.C. 2009). There is no real dispute regarding whether there was a valid contract between the parties. The parties do not agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants improperly discontinued performance of the contract by stopping construction draws for the 423 Kennedy Street property (the project). When defendants discontinued construction draws, they knew that plaintiff would not be able to move forward with the project. Shortly after the construction draws stopped, defendant gave notice of default to plaintiffs. Plaintiffs claim that there is no basis for the default because plaintiffs had complied with the terms of both deeds of trust and the reasons advanced by defendants for the default is nothing more than a pretext. According to plaintiff, the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain control of the 423 Kennedy Street project before its completion. Plaintiffs argues that it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust because plaintiffs continually made late payments the loan. In addition, defendant argues that plaintiff was in default because the District of Columbia Department of Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine due on that infraction remained unpaid causing a lien to be placed on the 423 property. Based on the terms of the deed of trust, defendants argue, that this failure to cure the lien caused by the failure to pay the infraction created a basis to default loan.[1] Lastly, defendants claim that plaintiffs have defaulted on the loan because they failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423 Kennedy ST. Holdings along with several small investors known as Brighton KSDC that owns the remaining shares. 423 Kennedy ST. Holdings is a sole purpose, limited liability company that owns and has developed the 423 Kennedy Street property. According to Mr. Negussie, his company entered into a construction financing loan with the defendants and executed two deeds of trusts and two commercial deeds of trust for each deed on March 31, 2022. Approximately 50% of the project was completed at the time of the refinancing. The first commercial deed of trust was for $8,689,693.00 and the second deed of trust was for $1,256.000.00. Defendants claim that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.  Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy.  According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble.  423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance.  Those payoff statements did not reflect a default or late fees.[3]  On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development.  Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6]  When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin.  On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7]  The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default." Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022. Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws. Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment. Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street. There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction. Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan. Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws. Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws. In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11] Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022. Defendants provided notice there would be no further construction draws after October 2022.[13] In that same email Daniel Huertas inquired about the "status of the payoffs of both loans." Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14] The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96. There is no reference to a construction draw for the second deed of trust. A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15] The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022. Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing. Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id,* at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022. The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street. Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18] Neither notice identifies the basis for the default. Each of the payoff statements make no reference to unpaid late fees. Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants. While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement. In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws. Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.? What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced

payments as construction draws. Perhaps some of the most compelling evidence

supporting the fact that the construction draws were part of the contract is that the

payoff statements that reflect the terms of payments between the parties includes a

reference to a construction draw balance that remained due. In addition, Negussie

testified that construction draws were consistently distributed for five or six months

following each request made by plaintiffs with the last payment occurring in October

2022. These facts are sufficient to establish that the parties acted as if the

construction draws were part of the agreement that obligated the parties and that the

parties understood that the construction draws were an essential part of the agreement

because the project could not move forward without those funds being available to

plaintiffs. Defendants argue that the failure of defendants to make construction draws

does not excuse plaintiffs' noncompliance with the second deeds because there was

no requirement for a construction draw on that agreement. Defendants' argument

glosses over the point that both deeds and their commercial counterparts were

identical in almost all respects, were executed at the same time and were part and

parcel of the same objective of the parties: the refinancing and development of the

423 Kennedy Street mixed use project. Too conclude otherwise is to simply ignore

the uncontroverted testimony of Negussie on each of these points and the objective

facts that support that testimony. The testimony further established that the parties

treated the construction draws as a part of the contract and plaintiffs relied on those

terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date. In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default. First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments. It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem. Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments. According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current. Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately. Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.

[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's connection as an affiliate of Developer REI.  This does order not address that basis for the default because the only testimony on this point was received from Mr. Negussie who indicated under oath that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record indicates that there was no basis for a default based on an affiliation.

creation.  This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022.  There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped.  Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext.  Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall.  When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued.  It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract.  The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext.  A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract.  *District Cablevision v. Limited

Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003).  The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the parties and that initial breach caused plaintiff to be unable to make future payments on the loan.

### B. The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate 1) the existence of a valid contractual or other business relationship; 2) the defendant's knowledge of the relationship; 3) intentional interference with that relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279 (D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in November 2022 that plaintiffs were engaged in efforts to refinance the loan. The email exchanges between Negussie and Huertas demonstrates this knowledge. As Negussie testified, defendants provided "clean" payoff statements that were necessary for the completion of the refinancing on two occasions close in time to the Huertas emails and prior to December 2022. The closing with Main Street Bank was scheduled to take place prior to Thanksgiving but was delayed because of the holiday. When the closing was delayed, defendants issued new payoff statements on December 8, 2022 that reflected for the first time the default as well as default interest and penalties that were due. As Negussie testified these new payoff statements would prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were engaged in business relationship with Main Street Bank that included the creation of a term sheet for a new loan. Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank. The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank. The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan. As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere. Defendants have failed to

produce any evidence that would indicate otherwise.

## C. The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale. Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463,

465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding.  There is some support for this position in

that the deeds of trust in Section 8.0 details the obligations of the trustee in the event

of a default and foreclosure.  Defendants further argue that the trustee's service is

largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of

default in December 2022, he had no contact with Mr. Drazin in connection with his

duties as trustee.  Contact with Drazin was suggested by Dan Huertas when Negussie

sought an explanation for the default.  According to Negussie, Huertas indicated that

additional information regarding the default would have to come from WCP's

attorney, Russell Drazin.  In a December 9th email, Drazin indicated that he

represented WCP in connection with the loans and went on to explain the basis for

the default issued on December 8, 2022.  The record does not indicate that plaintiffs

had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and
> duties imposed by the trust instrument itself, coupled with
> the applicable statute governing foreclosure sales in the
> District of Columbia."  Trustees on deeds must exercise
> their powers "with religious fidelity to ethical principles."
> Where a trustee has conflicting interest, the trustee bears
> the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In

re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994).  The trustee has a duty to both

the borrower and the lender.  Here, the record establishes that Drazin served as trustee

under the terms of the deed and had a fiduciary duty to act faithfully to both.  The

record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units. A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project. As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money. The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III. Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant. The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023. In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well. In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action. As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project. The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project. While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

## IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

## V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the rule creates a mandatory imposition of a bond for the protection of the enjoined party has not been directly addressed by the District of Columbia Court of appeals.  The local rule is almost identical to the federal version, so federal precedent is instructive.  The circuits are split on this issue and the circuits that have interpreted the rule as being discretionary have recognized several exceptions to the mandatory language.  The District of Columbia Court of Appeals has suggested that the security requirement is phrased in mandatory terms with the amount of any bond imposed being left to the discretion of the trial court.  If the trial court exercises its discretion to waive the bond requirement, it is important that the trial judge states the reasons for taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354 A.2d 233, 237 (D.C. 1976).

Considering the underlying facts discussed in this order, the Court declines to impose a bond for the following reasons.  First, defendant have not provided any evidence of what an appropriate bond might be under the circumstances.  While defendants' counsel made a proffer of what might be appropriate, that proffer was not accompanied by any direct evidence that would demonstrate that the suggested bond was rationally related to any potential harm.  Second, plaintiffs testified that they made payments on the loan through the end of December 2022 even though defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward. The clear import of that testimony was that plaintiffs had limited funds available to continue in the project. If the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review. Lastly, equity would support the waiver of the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary injunction hearing with the trial on the merits. It is the Court's intention to schedule this matter for a combined hearing on a date convenient to the Court and available to the parties.

## VI. Conclusion

The Court concludes that plaintiffs have made the showing necessary to support the issuance of an order enjoining defendants from foreclosing on the 423 Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits defendants from conducting a foreclosure sale on the property located at 423 Kennedy Street until further order of this Court or at any time before the conclusion of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what track should be used for a scheduling order. The parties should also consider a more expediated discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.

|  |  |
|---|---|
|   July 24, 2023   | /s/ |
| Date | MILTON C. LEE, JR. |
|  | ASSOCIATE JUDGE |

cc:  James D. Sadowski, Esq.
 Alexandria J. Smith, Esq.
 Counsel for Plaintiffs
 jds@gdllaw.com

 Maurice B. Versandig
 Counsel for Defendants
 mac@mbvesq.com

eFiled
07/25/2023 8:12:06 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

    Plaintiff,

v.

DP Capital, LLC, et al.

    Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## DEFENDANTS' EXHIBIT LIST FOR JULY 25, 2023 HEARING

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, and furnish he attached exhibit list – with the subject exhibits attached hereto – for the hearing in this matter set for July 25, 2023:

1. Payment history for first loan

2. Payment history for second loan

3. First promissory note

4. First deed of trust

5. Second promissory note

6. Second deed of trust

7. Water lien

8. Department of Building lien

9. February 15, 2023 tax bill

Dated: July 25, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 25th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

Exhibit 1

| Name | Status Reason | Payment Due On | Days Past Due | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F) | Amount Due (Default Int) | Amount Due (Pri) | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest) Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int) | Amount Paid (Pri) | Amount Paid (Total) | Beginning Princi | Ending Principal | Cumulative Inte | Unapplied Funds | Principal Paydow | Balance (Total) | Scheduled Payment Stat | balance (no late) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111556 | Unpaid | 7/1/2023 | -11 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 71580.01 | Unscheduled | 71580.01 |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 71580.01 | Unscheduled | 71580.01 |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 22241.50 | 0.00 | 44566.50 | 66808.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 66808.00 | Unscheduled | 66808.00 |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 Wire | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 Wire | Late (5-15 Days) | | 23830.18 | 2383.02 | 0.00 | 26213.20 | 23830.18 | 0.00 | 0.00 | 0.00 | 23830.18 | | | | | 0.00 | 0.00 | 2383.02 | ACH - Cleared | 0.00 |
| LPAY-098044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 Wire | Late (5-15 Days) | | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | Late (5-15 Days) | | 23830.18 | 2383.02 | 0.00 | 26213.20 | 23830.18 | 0.00 | 0.00 | 0.00 | 23830.18 | | | | | 0.00 | 0.00 | 2383.02 | ACH - Cleared | 0.00 |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 Stripe | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 Stripe | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | Late (5-15 Days) | | 23830.18 | 0.00 | 0.00 | 23830.18 | 615.39 | 23214.79 | 0.00 | 0.00 | 23830.18 | | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-085019 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 24624.51 | | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | Current | | 23830.18 | 0.00 | 0.00 | 23830.18 | 0.00 | 23830.18 | 0.00 | 0.00 | 23830.18 | | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 24624.51 | | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | Current | | 22241.50 | 0.00 | 0.00 | 22241.50 | 0.00 | 22241.50 | 0.00 | 0.00 | 22241.50 | | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 24624.51 | | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | Originated | | 7149.05 | 0.00 | 0.00 | 7149.05 | 7149.05 | 0.00 | 0.00 | 0.00 | 7149.05 | | | | | 0.00 | 0.00 | 0.00 | Unscheduled | |

WCP0708

| Name | Status Reason | Payment Due On | Days Past Due Cal | Payment Paid On | Payment Method | Servicing Status |
|---|---|---|---|---|---|---|
| LPAY-111556 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 | Wire | Late (5-15 Days) |
| LPAY-098044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 | Wire | Late (5-15 Days) |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085019 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 1

Exhibit 2

| Name | Status Reason | Payment Due On | Days Past Due C | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F | Amount Due (Default Int | Amount Due (Pri | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest) Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int | Amount Paid (Pr | Amount Paid (Total) | Beginning Princi | Ending Principal | Cumulative Inter | Unapplied Funds | Principal Paydov | Balance (Total) | Scheduled Payment Stat | balance (no late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | 10480.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10480.00 | Unscheduled | | 10480.00 |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10829.33 | Unscheduled | | 10829.33 |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | 10480.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10480.00 | Unscheduled | | 10480.00 |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10829.33 | Unscheduled | | 10829.33 |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 4886.59 | 0.00 | 4894.74 | 9781.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 9781.33 | Unscheduled | | 9781.33 |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10829.33 | Unscheduled | | 10829.33 |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 Wire | | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 12/6/2022 0:06 Wire | | Late (5-15 Days) | 5235.63 | 0.00 | 0.00 | 5759.19 | 6029.96 | 0.00 | 0.00 | 0.00 | 0.00 | 6029.96 | | | 0.00 | 0.00 | -270.77 | ACH - Cleared | | |
| LPAY-098596 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 Stripe | | Late (5-15 Days) | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | | |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | | Late (5-15 Days) | 5235.63 | 523.56 | 0.00 | 5759.19 | 5235.63 | 0.00 | 0.00 | 0.00 | 0.00 | 5235.63 | | | 0.00 | 0.00 | 523.56 | ACH - Cleared | | 0.00 |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 Stripe | | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | | |
| LPAY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 Stripe | | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | | |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | | Late (5-15 Days) | 5235.63 | 0.00 | 0.00 | 5235.63 | 148.30 | 5087.33 | 0.00 | 0.00 | 0.00 | 5235.63 | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | | |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-083035 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | | Current | 5235.63 | 0.00 | 0.00 | 5235.63 | 0.00 | 5235.63 | 0.00 | 0.00 | 0.00 | 5235.63 | | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | | Current | 4886.59 | 0.00 | 0.00 | 4886.59 | 0.00 | 4886.59 | 0.00 | 0.00 | 0.00 | 4886.59 | | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | Unscheduled | | |
| LPAY-075596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | | Originated | 1570.69 | 0.00 | 0.00 | 1570.69 | 1570.69 | 0.00 | 0.00 | 0.00 | 0.00 | 1570.69 | | | 0.00 | 0.00 | 0.00 | Unscheduled | | |

WCP0054

| Name | Status Reason | Payment Due On | Days Past Due Ca | Payment Paid On | Payment Method | Servicing Status |
|---|---|---|---|---|---|---|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 12/6/2022 0:06 | Wire | Late (5-15 Days) |
| LPAY-098596 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 | Stripe | Late (5-15 Days) |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083035 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 2

Exhibit 3

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

December 23, 2021                                     $3,579,000.00

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION
WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY
HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A
JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District
of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of
**WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200,
Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-
lending agreement (together with its successors and assigns, the "Lender"), at such address
and place, or at such other place or places as the Lender may from time to time designate
in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest
at the rate hereinafter provided, from the date of this Note (as set forth above) until paid.
All amounts due under this Note are secured by a Deed of Trust of even date herewith
("Deed of Trust") on the real property referenced in the Deed of Trust ("Property").
Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not
otherwise defined herein shall retain the meaning ascribed to such term in the Deed of
Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and
contract rights in connection with the Property. So long as no default or Event of Default
exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to
use the contracts and contract rights to increase the value of the Property. However, upon
a default or Event of Default under this Note or the related Deed of Trust, Borrower's
license shall immediately and automatically be revoked.    **[ASSIGNMENT OF
CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan
Amount memorialized by this Note and may be funded, if at all, in Lender's sole and
absolute discretion. Borrower further expressly and specifically agrees that interest shall
accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                      Page 1 of 9

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2.   **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

## 3.   **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                      Page **2** of **9**

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

   a.   If default be made in any payment due under this Note;
   b.   If default be made in the performance of any other covenant contained in this Note;
   c.   If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
   d.   If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

Page 4 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

7.   **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

8.   **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                                                    Page **5** of **9**

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.   SUCCESSORS AND ASSIGNS

(a)      Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)      Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)      Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**).  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

1432

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                           Page 7 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

Page **8** of **9**

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:    Solomon Abebaw Desta
Its:    Member


COUNTY OF _____
STATE OF _____

I hereby certify on this 24 day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.


_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____


Rev 12.2015                                                          Page **9** of **9**

Exhibit 4

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">ARTICLE I</div>

<div align="center">DEFINITIONS</div>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                                                    Page 2 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                                   Page 3 of 25

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

ARTICLE II

GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                                Page 5 of 25

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<div align="center">ARTICLE IV</div>

<div align="center">AFFIRMATIVE COVENANTS</div>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016                                                                                   Page 6 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

1448

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016 Page 8 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

ARTICLE V

NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016

1445

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

### ARTICLE VI

### EMINENT DOMAIN – CONDEMNATION

#### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

#### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

#### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

### 7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

### 7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

### 7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

### 7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

### 7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page 12 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

## 7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

### 8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

### 8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

Page 13 of 25